**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RODNEY JONES,

        *Plaintiff*,

    -against-

SEAN COMBS, JUSTIN DIOR COMBS, ETHIOPIA
HABTEMARIAM, LUCIAN CHARLES GRAINGE,
KRISTINA KHORRAM, CHALICE RECORDING
STUDIOS, LOVE RECORDS, MOTOWN RECORDS,
UNIVERSAL MUSIC GROUP, COMBS GLOBAL
ENTERPRISES, JOHN and JANE DOES 1-10 and ABC
CORPORATIONS.  1-10,

        *Defendants*.

---

Case No.: 1:24-cv-01457

**MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO**
**DISMISS THE FIRST**
**AMENDED COMPLAINT**

**PRYOR CASHMAN LLP**
Donald S. Zakarin
James A. Janowitz
William L. Charron
Nicholas G. Saady
Alina Jamil Mian
7 Times Square, New York, NY 10036
Tel.: (212) 421-4100
Fax: (212) 798-6307

*Attorneys for the UMG Defendants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT ALLEGATIONS AND FACTS..................................................................5

"Facts" Alleged In Amended Complaint ..........................................................................5

There Are No New York Personal Jurisdiction Allegations.............................................6

Plaintiff's RICO And TVPA Allegations Concerning Grainge And Habtemariam .......7

Plaintiff's RICO, TVPA And California Premises Liability Claims
Against Corporate Defendants UMG Recordings And Motown Records....................10

ARGUMENT ...................................................................................................................11

   I.   PLAINTIFF'S RICO CLAIM AGAINST THE UMG DEFENDANTS SHOULD BE
       DISMISSED ...........................................................................................................11

      A.  Plaintiff Fails To Allege With Requisite Particularity Two
           Or More Predicate Acts Of Fraudulent Racketeering Activity...................................12

      B.  Plaintiff Fails To Allege A Continuous Pattern Of Racketeering Activity ................14

      C.  Plaintiff Fails To Allege A Viable Enterprise...........................................................15

      D.  Plaintiff Fails To Allege "Operation And Management" Of The Enterprise .............16

      E.  Plaintiff Fails To Allege Loss Causation ..................................................................17

   II.  THE TVPA CLAIMS SHOULD BE DISMISSED....................................................19

      A.  Plaintiff's Aiding And Abetting TVPA Violations Claim Should Be Dismissed .......19

      B.  Plaintiff's TVPA Fourteenth Cause Of Action Should Be Dismissed .......................20

      C.  Plaintiff's Obstruction Claim Should Be Dismissed ..................................................22

## TABLE OF CONTENTS, *Cont'd*

III.   PLAINTIFF'S CALIFORNIA PREMISES LIABILITY CLAIM AGAINST
       UMG RECORDINGS AND MOTOWN RECORDS SHOULD BE DISMISSED..........23

CONCLUSION........................................................................................................................24

## TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                              <u>**PAGE(s)**</u>

*4 K & D Corp. v. Concierge Auctions, LLC,*
   2 F. Supp. 3d 525 (S.D.N.Y. 2014) ......................................................17

*Achtman v. Kirby, McInerney & Squire, LLP,*
   464 F.3d 328 (2d Cir. 2006)...............................................................11

*AJ Energy LLC v. Woori Bank,*
   No. 18-CV-3735, 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019)...........................11

*Anza v. Ideal Steel Supply Corp.,*
   547 U.S. 451 (2006).......................................................................18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...................................................................11, 24

*Azzarmi v. Neubauer,*
   No. 20-CV-9155, 2022 WL 4357865 (S.D.N.Y. Sept. 20, 2022)............................1

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).......................................................................11

*CPF Premium Funding, Inc. v. Ferrarini,*
   No. 95-CV-4621, 1997 WL 158361 (S.D.N.Y. Apr. 3, 1997) ...............................14

*Canosa v. Ziff,*
   No. 18-CV-4115, 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ..............................18

*Cedar Swamp Holdings, Inc. v. Zaman,*
   487 F. Supp. 2d 444 (S.D.N.Y. 2007)....................................................15

*Cedric Kushner Promotions, Ltd. v. King,*
   533 U.S. 158 (2001).......................................................................15

*Continental Kraft Corp. v. Euro-Asia Dev. Grp., Inc.,*
   No. 97-CV-0619, 1997 WL 642350 (E.D.N.Y. Sept. 8, 1997) .............................12

*Cummings v. Adidas USA,*
   No. 08-CV-9860, 2009 WL 3270888 (S.D.N.Y. Oct. 5, 2009)...............................1

*Doe 1 v. Deutsche Bank Aktiengesellschaft,*
   671 F. Supp. 3d 387 (S.D.N.Y. 2023).....................................................22

*FD Prop. Holding, Inc. v. US Traffic Corp.,*
   206 F. Supp. 2d 362 (E.D.N.Y. 2002) .....................................................14

## TABLE OF AUTHORITIES, *Cont'd*

**CASES**                                                                        **PAGE(s)**

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
    20 F. Supp. 3d 451 (S.D.N.Y. 2014).................................................................17

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019)..........................................................20, 21

*Gilbert v. United States Olympic Comm.*,
    423 F. Supp. 3d 1112 (D. Colo. 2019)...............................................................22

*Goldfine v. Sichenzia*,
    118 F. Supp. 2d 392 (S.D.N.Y. 2000)......................................................11, 15, 16

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    429 U.S. 229 (1989)............................................................................................14

*Hall v. National R.R. Passenger Corp.*,
    No. C19-02312, 2020 WL 4923966 (N.D. Cal. Aug. 21, 2020)..........................23

*Heffernan v. HSBC Banks USA*,
    No. 99-CV-07981, 2001 WL 803719 (E.D.N.Y. Mar. 29, 2001).........................15

*Heinrich v. Dean*,
    655 F. Supp. 3d 184 (S.D.N.Y. 2023).................................................................15

*Hemi Grp., LLC v. City of N.Y., N.Y.*,
    559 U.S. 1 (2010)...............................................................................................18

*Herrnson v. Hoffman*,
    No. 19-CV-7110 (JPO), 2020 WL 6323637 (S.D.N.Y. Oct. 28, 2020)..................8

*Highlands Ins. Co. v. PRG Brokerage, Inc.*,
    No. 01-CV-2272, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004) ..........................12, 13

*Jane Doe No. 1 et al v. Daniel S. Fitzgerald*,
    No. CV2010713, 2022 WL 425016 (C.D. Cal. Jan. 6, 2022).................................22

*Kalderon v. Finkelstein*,
    495 F. App'x 103 (2d Cir. 2012) .........................................................................10

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).................11

*Kaul v. Intercontinental Exch.*,
    No. 21-CV-6992, 2022 WL 4133427 (S.D.N.Y. Sept. 12, 2022)..........................10

## **TABLE OF AUTHORITIES**, *Cont'd*

**CASES**                                                                                                    **PAGE(s)**

*Lawson v. Rubin*,
   No. 17-CV-6404, 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ...............................17, 18, 21

*Lundy v. Cath. Health Sys. of Long Island Inc.*,
   711 F.3d 106 (2d Cir. 2013)...............................................................................................12

*Makowski v. United Bhd. of Carpenters & Joiners of Am.*,
   No. 08-CV-6150, 2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010).............................................17

*Martinez v. Navy League of U.S.*,
   No. 2:13-CV-5533, 2014 WL 4078647 (C.D. Cal. Aug. 18, 2014), *aff'd sub nom.*
   *Martinez v. Navy League of United States*, 688 F. App'x 465 (9th Cir. 2017) .....................23

*Morgens Waterfall Holdings, L.L.C. v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
   198 F.R.D. 608 (S.D.N.Y. 2001) ...................................................................................10, 13

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
   165 F. Supp. 2d 514 (S.D.N.Y. 2001)........................................................................12, 13, 15

*Nesbeth v. New York City Mgmt LLC*,
   No. No. 17-CV-8650, 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) .........................................10

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018).........................................................................19, 21, 22

*Ortega v. Kmart Corp.*,
   36 P.3d 11 (Cal. 2001) .....................................................................................................23

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
   No. 19-CV-1861, 2021 WL 960394 (E.D.N.Y. Mar. 15, 2021), *aff'd*,
   No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022) ........................................................18

*Petrosurance, Inc. v. National Ass'n of Ins. Comm'rs*,
   888 F. Supp. 2d 491 (S.D.N.Y. 2012), *aff'd*, 514 F. App'x 51 (2d Cir. 2013).......................17

*Rajaratnam v. Motley Rice, LLC*,
   449 F. Supp. 3d 45 (E.D.N.Y. 2020) ..................................................................................13

*Redtail Leasing, Inc. v. Belleza*,
   No. 95-CV-5191, 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) ...........................................16

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
   30 F.3d 339 (2d Cir. 1994)................................................................................................15

## TABLE OF AUTHORITIES, *Cont'd*

**CASES**                                                                    **PAGE(s)**

*Rosenson v. Mordowitz*,
    No. 11-CV-6145, 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012)............................................12

*Silva v. Warren Res. of Cal., Inc.*,
    No. B302669, 2021 WL 4304594 (Cal. Ct. App. Sept. 22, 2021).........................................23

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008) ............................................................................................14

*Targum v. Citrin Cooperman & Co., LLP*,
    No. 12-CV-6909, 2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013).........................................17

*Technomarine SA v. Jacob Time, Inc.*,
    905 F. Supp. 2d 482 (S.D.N.Y. 2012).............................................................................11

*U1it4less, Inc. v. Fedex Corp*.,
    871 F.3d 199 (2d Cir. 2017)..............................................................................................15

*United States v. Farah*,
    766 F.3d 599 (6th Cir. 2014) ............................................................................................22

*United States v. Turkette*,
    452 U.S. 576 (1981)...........................................................................................................15

*Villanueva v. Clifford*,
    No. E052368, 2011 WL 4528338 (Cal. Ct. App. Sept. 30, 2011).........................................23

*Zuhovitzky v. UBS AG CHE 101.329.562*,
    No. 21-CV-11124, 2023 WL 4584452 (S.D.N.Y. July 18, 2023)....................................17, 18

## <u>STATUTES AND RULES</u>

18 U.S.C. § 2 ................................................................................................................5

18 U.S.C. § 1341 ..........................................................................................................12

18 U.S.C. § 1343 ..........................................................................................................12

18 U.S.C. § 1591 ................................................................................................5, 20, 22

18 U.S.C. § 1595 ....................................................................................................5, 20

18 U.S.C. § 1961 ....................................................................................................12, 14

18 U.S.C. § 1962 ......................................................................................................5, 15

18 U.S.C. § 1964 ..........................................................................................................18

18 U.S.C. § 1965 ............................................................................................................6

Fed. R. Civ. P. 8 ......................................................................................................1, 10

Fed. R. Civ. P. 9 ....................................................................................................12, 13

Fed. R. Civ. P. 11 ....................................................................................................1, 2

Fed. R. Civ. P. 12 ..........................................................................................1, 2, 8, 11

Defendants, Sir Lucian Grainge ("Grainge"), Motown Records ("Motown") and UMG Recordings, Inc. ("UMG Recordings," incorrectly identified in the First Amended Complaint ("FAC") as Universal Music Group, which is not a juridical entity), submit this Memorandum of Law in support of their motion, pursuant to FRCP Rules 8, 12(b)(2) and 12(b)(6) to dismiss the FAC and pursuant to Rule 12(f) to strike impertinent and scandalous allegations in the FAC.[1]

## PRELIMINARY STATEMENT

Plaintiff and his counsel have made criminal accusations against Sean Combs ("Combs") and his associates.  Whatever the truth or falsity of those accusations, without the slightest factual or legal basis and in reckless disregard for Rule 11, they have also improperly accused Grainge, UMG Recordings and Motown (collectively, the "UMG Defendants") of assisting, participating in or helping to conceal the alleged conduct of Combs and his associates.  But not only do both the FAC and unauthorized SAC, as to the UMG Defendants violate Rules 8 and 12(f), the theories underlying the FAC and SAC for the same claims are completely different and irreconcilable.

As set forth in the Zakarin Declaration (¶¶ 2-19), while the FAC alleges Motown Records was the "parent company" of Love Records, that Grainge allegedly knew of the alleged Combs' sex trafficking because he supposedly saw it ongoing at Combs' homes and the UMG Defendants allegedly delivered bags of "cash" to Combs, the unauthorized SAC jettisons every one of these allegations.  Instead, now Love Records and Motown/UMG Recordings are supposedly in a "general partnership."  Grainge never was at Combs' homes and no cash was ever delivered. Instead, the UMG Defendants supposedly should have known that the payments made to Love Records under the license agreement were allegedly misused by Combs for his sex trafficking

---

[1] As discussed in the Declaration of Donald S. Zakarin in Support of this Motion, on March 26, 2024, Plaintiff purported to file the SAC, without authorization and in violation of the Federal Rules and Rules of this Court.  *See, e.g., Cummings v. Adidas USA,* No. 08-CV-9860, 2009 WL 3270888, *1 (S.D.N.Y. Oct. 5, 2009) (striking violative second amended complaint); *Azzarmi v. Neubauer,* No. 20-CV-9155, 2022 WL 4357865, at *5 (S.D.N.Y. Sept. 20, 2022) ("Failure to obtain leave of court or consent of adversaries can be met with myriad consequences" including "striking the pleading" to "dismissing the action with prejudice") (citations omitted).

activity (although money is fungible, Combs, who Forbes reported was a billionaire in 2022, supposedly did not use his own money).  These newly minted allegations were entirely invented by Mr. Blackburn.  And they are as false as the theories of the FAC.

This Court can readily determine, just from the Argument section below, that the FAC should be dismissed pursuant to Rule 12(b)(6) because Plaintiff has not stated and cannot state a claim against the UMG Defendants.  But the FAC (and unauthorized SAC) are so filled with knowingly false allegations, publicly smearing the UMG Defendants, that this Memorandum of Law will document, as the accompanying declarations do, the offensive falsity of the allegations of the FAC.  The FAC's flaws are not cured by the unauthorized SAC.  If anything, the unauthorized SAC conclusively demonstrates how indifferent Plaintiff and his counsel are to the requirements of Rule 11.

The foundation of the claims against the UMG Defendants in the FAC is a throw-away line in Paragraph 9 alleging Motown is the "parent company" of Love Records, Inc. ("Love Records"). Based on this assertion, the FAC alleges that the UMG Defendants had a duty to supervise and control Combs and failed to perform that duty.

Motown was never Love Records' parent company.  Their sole relationship was pursuant to a license agreement entered into in May 2022 granting Motown the right to distribute a single Love Records' album featuring Combs' performance (the license agreement was terminated as of February 1, 2023).  The license agreement is a commonplace commercial contract; it is not a "general partnership."  Motown is not Love Records' "parent company."   Every claim based on the alleged failure to perform non-existent supervisory control over Combs is baseless.

Linked to the false "parent company" allegation, the FAC alleges that Grainge and Ethiopia Habtemariam (who has been dismissed from the case) supposedly attended "listening parties" at Combs' houses in Los Angeles, Miami and New York at which underage girls and sex workers

were plied with drugs and alcohol (and at which Plaintiff claims he was sexually abused).  Again based on a non-existent "respondent [sic] superior" relationship, the FAC falsely claims that Grainge and Ms. Habtemariam should have, but did not, stop Combs' alleged misconduct.

But Grainge has never been in any of Combs' homes, and Habtemariam was in his Los Angeles home only four times (she was never in his Miami or New York homes), all of which were for business, before Plaintiff started working with Combs in September 2022.  So Plaintiff never saw Grainge or Habtemariam at any of  Combs' homes (and Habtemariam never saw any sex workers or underage girls or drugs at Combs' home).  Grainge and Habtemariam had no knowledge, nor any way of knowing, of any such alleged activity and no duty to control Combs. Having been put on notice of the falsity of these assertions, all of these allegations are jettisoned in the unauthorized SAC.

The FAC also alleges that the UMG Defendants supposedly supplied Combs with "cash" he allegedly used for his sex trafficking activity, another false allegation jettisoned in the unauthorized SAC  And it asserts the UMG Defendants supposedly should have known about Combs' alleged sex trafficking activity because of the claims asserted by Cassie Ventura (and a person named Jonathan Oddi).  These assertions are not only false (and legally baseless), they are chronologically false.

The FAC is based entirely on naked conclusions.  Not a single fact is pleaded showing that any "cash" was ever provided to Combs or Love Records.  Motown paid or reimbursed Love Records for its invoiced recording costs pursuant to the license agreement as part of an "advance" against Love Records' share of album revenues, it did not provide cash.[2]

---

[2] The FAC also accuses the UMG Defendants of failing to file tax documents reflecting these non-existent "cash" payments.  But Plaintiff and his counsel could not possibly know whether tax documents were filed.  So either the tax filing assertion is made without the slightest knowledge or, knowing that their "cash" allegations are false, Plaintiff and his counsel also know that no tax documents were filed because none were required.

Second, Cassie Ventura's complaint was filed November 16, 2023, months after Motown's license agreement with Love Records was terminated (Oddi's claims were not publicly reported until December 2023). As a chronological fact, neither provided any notice to the UMG Defendants. Yet the FAC makes offensively false criminal accusations against the UMG Defendants, indifferent to these facts or the impact the accusations would have on them.

Plaintiff and his counsel lacked any good faith basis for asserting the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Trafficking Victims Protection Act ("TVPA") claims against the UMG Defendants. As will be shown below, the RICO claims are wholly conclusory and fail for numerous reasons, including: (i) lack of particularity; (ii) lack of any viably pleaded predicate acts; (iii) lack of a viably pleaded enterprise; (iv) lack of alleged direction and operation of the management of any assumed enterprise by the UMG Defendants; and (v) lack of causation.

Plaintiff's TVPA claims against the UMG Defendants are scurrilous, lacking a single pleaded fact (as distinguished from unsupported conclusions and "group" pleadings). They fail for numerous reasons, including: (i) there is no private cause of action for aiding and abetting violations of the TVPA; (ii) there are no allegations from which anyone could plausibly infer that the UMG Defendants knew or could have known of and facilitated the alleged sexual misconduct of others described in the FAC; and (iii) there are no facts pleaded showing that the UMG Defendants financially benefitted because of the alleged sexual misconduct described in the FAC (and the now jettisoned "cash" allegations are completely false).

Plaintiff's claim against UMG Recordings and Motown for negligent security of a California premises also fails because the claim is predicated on the false "parent company" allegation. The UMG Defendants never provided security at Chalice Recording Studio ("Chalice"), had no duty to provide security, and did not fail to perform a duty they did not have.

A license to practice law is a privilege.  Mr. Blackburn, Plaintiff's lawyer, has misused that license to self-promote, gratuitously, falsely and recklessly accusing the UMG Defendants of criminal behavior (in two diametrically opposed pleadings).  Mr. Blackburn has conducted no good faith inquiry into the facts, instead pleading only demonstrably false conclusions.[3]  The UMG Defendants will be filing a Rule 11 motion in this case against Plaintiff and Mr. Blackburn.

## RELEVANT ALLEGATIONS AND FACTS

The FAC alleges five claims against the UMG Defendants:

1.    First Cause of Action for violations of the RICO Act, 18 U.S.C. §§ 1962(A), (C)-(D) (ECF No. 2 ¶¶ 199-246);

2.    Eighth Cause of Action for "California Premise Liability – Inadequate or Negligent Security," only against UMG Recordings and Motown Records (*id.* ¶¶ 292-296);

3.    Ninth Cause of Action for aiding and abetting violations of the TVPA, 18 U.S.C. §§ 2, 1591(a)(1), (a)(2), 1595 (ECF No. 2 ¶¶ 297-314);

4.    Fourteenth Cause of Action for benefitting from violations of the TVPA, 18 U.S.C. §§ 1591(a)(2), 1595 (ECF No. 2 ¶¶ 337-344); and

5.    Fifteenth Cause of Action for obstructing enforcement of the TVPA, under 18 U.S.C. § 1591(d), (ECF No. 2 ¶¶ 345-361).

**"Facts" Alleged In FAC**

Plaintiff claims he periodically lived with Combs during that time in various residences in California, New York and Florida while working on a Combs album.  (*Id.* ¶¶ 20-21, 24-26.)  He supposedly "witnessed, experienced, and endured" an alleged shooting at Chalice in Los Angeles,

---

[3] Mr. Blackburn cannot simply fob off his own failure to investigate onto his client.  Mr. Blackburn has his own obligations under Rule 11 (and his client, who apparently has a long criminal record, is not a credible source).  Indeed, the blithely changed theories of the SAC, which are as false as the allegations of the FAC, point directly at Mr. Blackburn.

California (the "Shooting"), and various acts of sexual pressure and sex trafficking at Combs's residences.  (*See generally id.* ¶¶ 27-161.)

Whatever the "truth" of Plaintiff's allegations against Combs and his associates, the allegations against the UMG Defendants are fabricated.  (*See* Declaration of Donald S. Zakarin in Support of this Motion dated March 26, 2024  ("Zakarin Decl.") and the Declarations of Sir Lucian Grainge dated March 25, 2024 ("Grainge Decl."), Martha Braithwaite dated March 25, 2024 ("Braithwaite Decl."), and Ethiopia Habtemariam dated March 27, 2024 ("Habtemariam Decl.") which are exhibits to the Zakarin Decl.)  The conclusions pleaded veer between Grainge and Habtemariam being Combs' victims, to being unwittingly used as "bait," and to then either supposedly enabling or failing to control Combs' alleged conduct.  Plaintiff's allegations place Grainge and Habtemariam in Combs' homes they were never in, witnessing alleged events they never saw, and imposing duties on the UMG Defendants that they did not have.  Every conclusory allegation is, in fact, false (and the ready abandonment of the allegations in the unauthorized SAC only confirms their falsity).

**There Are No New York Personal Jurisdiction Allegations**

The FAC admits that Grainge and Habtemariam reside in California.  (ECF No. 2 ¶¶ 8, 9.)  It admits UMG Recordings' and Motown's principal place of business are in California.  (*Id.* ¶¶ 12, 13.)  Plaintiff describes the Shooting, and all of the alleged events connected to the Shooting, as having occurred in California.  (*Id.* ¶¶ 31-73.)  Beyond an unsupported claim that he was groped by Combs "in LA, NY, FL, and the United States Virgin Islands," every event alleged in the FAC relating to Plaintiff's claims against the UMG Defendants occurred in California.  (*Id.* ¶¶ 74-75, 94, 103-105, 108, 112, 114, 118, 162, 164, 171, 174, 177, 185.)  The only arguable basis for personal jurisdiction and venue over the UMG Defendants is under nationwide service of process pursuant to the RICO statute, 18 U.S.C. § 1965(d).  As shown below, because the RICO claim

against the UMG Defendants is so patently lacking in merit, upon its dismissal, there is not even an arguable basis for personal jurisdiction over the UMG Defendants for any of the other equally baseless claims.

**Plaintiff's RICO And TVPA Allegations Concerning Grainge And Habtemariam**

Plaintiff alleges that a supposed 20 year-long "RICO enterprise" somehow caused him to witness and participate in various acts of sexual misconduct at Combs's residences in Florida and California. (*Id.* ¶¶ 162-188.) Plaintiff alleges that the "enterprise" was "instrumental[ly]" directed and operated by co-defendants Combs and his chief of staff, Kristina Khorram, with assistance from five other individuals (none of whom are the UMG Defendants): Stevie J; Justin Combs; Brendan Paul; Frankie Santella; and Moy Baun. (*Id.* ¶ 184.) Plaintiff alleges, in pure conclusory terms, that these people "ordered sex workers, and prostitutes," "ordered and distributed" a number of narcotics, procured date rape drugs that were used against female attendees, and "acquire[d], and distribute[d]" guns and drugs. (*Id.* ¶¶ 178-184.)

Nowhere does the FAC allege that any of the UMG Defendants did anything to direct or operate the alleged enterprise.

First, Plaintiff alleges, in verbatim terms, that he "recalls seeing [Grainge and Habtemariam] visiting" Combs' homes in Florida and California at unspecified dates during evening hours, and that they would both "disappear for hours in Mr. Combs['] bedroom." (*Id.* ¶¶ 162, 163, 171, 172.) The allegations are complete fabrications (and the SAC jettisons them). Plaintiff never saw Grainge at any of Combs' homes because he was never there. (Grainge Decl. at ¶ 15.) And he never saw Habtemariam because her visits were only to Combs' home in Los Angeles and all preceded Plaintiff starting to work for Combs. (Habtemariam Decl. at ¶¶ 5-12.)

Plaintiff's allegations that Grainge and Habtemariam "attended several Love Album listening parties at Mr. Combs' home in Los Angeles, California" where "sex workers and

underage girls" were allegedly present are thus completely false.  (*Id.* ¶¶ 164, 174.)  Compounding the falsity, the UMG Defendants did not financially sponsor "listening parties" (Braithwaite Decl. at ¶ 5; Habtemariam Decl. at ¶ 19.)  These allegations are fabrications.  *See also* Fed. R. Civ. P. 12(f) (allowing court on its own accord to strike "from a pleading … any redundant, immaterial, impertinent, or scandalous material.").[4]

Predicated on the baseless "parent company" allegation and the utterly false assertion that Grainge and Habtemariam attended Combs's "listening parties" (both abandoned in the unauthorized SAC), Plaintiff conclusorily alleges that they "knew or should have known" that Combs was "drugging the attendees [of listening parties] through laced bottles of [alcohol]," and that Grainge and Habtemariam "had a duty and obligation to ensure that sex workers and underaged girls were not present, and that Mr. Combs was not spiking the alcohol with date rape drugs."  (*Id.* ¶¶ 166-167, 175-176.)

Motown was not Love Records' parent company, and Grainge and Habtemariam were never at any "listening party."  They had no knowledge of any such alleged activity and no duty (or ability) to prevent it.  But even if one ignored the actual facts (as Plaintiff and his counsel do), as shown below, the FAC still provides no basis to plausibly infer that Grainge and Habtemariam directed and operated the management of a RICO enterprise and caused RICO damages, nor do they create any liability under the TVPA.

<u>Second</u>, in a "group pleading," Plaintiff offers the unsupported conclusion that Grainge and Habtemariam (and others) "control[led] and participate[d] in the activities of the enterprise in a variety of ways," including by "developing and marketing scores of writing camps, and listening

---

[4] It is submitted that the declarations submitted by the UMG Defendants' address matters that are integral to or incorporated by reference in Plaintiff's pleading.  However, if the Court converts portions of this Motion to one for summary judgment, it will become glaringly apparent that Plaintiff and his counsel made vile accusations of criminal behavior against the UMG Defendants without the slightest factual basis.  *See, e.g.*, *Herrnson v. Hoffman*, No. 19-CV-7110, 2020 WL 6323637, at *1 (S.D.N.Y. Oct. 28, 2020) (Oetken J.).

party services" through the use of "the mail and interstate wires to solicit Plaintiff" and others to work with Combs.  (*Id.* ¶¶ 219-221.)  Nowhere identifying the content, sender or recipient of any such alleged communications, Plaintiff conclusorily asserts that interstate mail and wires were used to solicit sex workers, firearms and drugs, and that "[e]ach of these acts [of solicitation] was undertaken with the knowledge and approval of all other Defendants in furtherance of the goals of their conspiracy."  (*Id.* ¶ 221.)

Again, relying on the now abandoned false "parent company" assertion, Plaintiff alleges that Grainge and Habtemariam, and others, "direct[ed], control[led], and participate[d] in the activities of the enterprise … as the employer, parent company, sponsor and respondent superior [sic] of [Combs and certain of the other six individuals described above]."  (*Id.* ¶ 222.)  Yet, even as he lumps Grainge and Habtemariam into the alleged "enterprise" through his conclusory "group pleadings," Plaintiff also places them outside the "enterprise," alleging that Combs used them as "bait," as "influential music industry executives" whom Plaintiff could "meet[]".  (*E.g.*, *id.* ¶¶ 214, 217.)

These non-specific group pleadings are not only improper, they are completely false as to Grainge and Habtemariam (and their abandonment confirms their falsity).  As a matter of law, they are also totally insufficient to support any of the RICO or TVPA claims.  Plaintiff's conclusory group pleadings concerning supposed wire and mail fraud, which fail to identify a single communication, the sender or recipient, are likewise not actionable.  (ECF No. 2 ¶¶ 234-244.)

<u>Third</u>, without pleading a single fact, Plaintiff contends that Grainge and Habtemariam "provide[d] large amounts of cash to Mr. Combs []as the quid pro quo for it [sic] receiving financial benefits from Mr. Combs," that Combs "did not have an apparent legitimate need for such extravagant sums," and that Grainge and Habtemariam (and others) knew or should have known that such cash was used by Combs to recruit Plaintiff and for "feeding Mr. Combs['] sexual

deviancy." (*Id.* ¶¶ 339-341.)   Plaintiff lards his pleading with six pages of single-spaced

conclusory accusations about supposed cash payments (abandoned in the unauthorized SAC) and,

despite the fact Plaintiff and his counsel have no knowledge, also claims tax filings to reflect these

non-existent cash payments were not made (*Id.* ¶¶ 343(a)-(ff).)

The cash assertions are knowingly false.   (Grainge Decl. at ¶ 21; Habtemariam Decl. at ¶

26.)  *Kalderon v. Finkelstein*, 495 F. App'x 103, 105-06 (2d Cir. 2012) ("Kalderon's rambling,

126-page complaint (though submitted by counsel) was neither short nor plain, and contained

factual allegations that were often repetitive, inconsistent, and contradicted by documents

referenced within it."); *see also Kaul v. Intercontinental Exch.*, No. 21-CV-6992, 2022 WL

4133427, at *4-5 (S.D.N.Y. Sept. 12, 2022) (Oetken J.); *Morgens Waterfall Holdings, L.L.C. v.

Donaldson, Lufkin & Jenrette Secs. Corp.*, 198 F.R.D. 608, 609-10 (S.D.N.Y. 2001); *Nesbeth v.

New York City Mgmt LLC*, No. 17-CV-8650, 2019 WL 110953, at *3-4 (S.D.N.Y. Jan. 4, 2019)

(*sua sponte* dismissing complaint under Rule 8(a)(2) that had "nearly 400 paragraphs, runs forty-

five pages, and alleges sixteen causes of action").

### Plaintiff's RICO, TVPA And California Premises Liability Claims Against Corporate Defendants UMG Recordings And Motown Records

Plaintiff's RICO and TVPA claims try to rope in UMG Recordings and Motown because
they supposedly knew of Combs' conduct (which they did not), failed to prevent it (which they

had no duty to prevent) or allegedly facilitated it (which is completely fabricated).  As noted above,

contrary to Plaintiff's assertions, UMG Recordings and Motown did not financially sponsor

Combs's "listening parties."  (ECF No. 2 ¶¶ 164, 174.)  And beyond pleading conclusions, no facts

show any cash payments.  Rather, under the license agreement's advance, Motown paid or

reimbursed Love Records for invoiced recording costs.  (Grainge Decl. at ¶ 21; Braithewaite, Decl.

at ¶ 5; Habtemariam Decl. at ¶ 27.)

Finally, based on the false "parent company" assertion, Plaintiff alleges Motown and UMG Recordings "provided private security for the writers' camp" held at Chalice when the Shooting occurred (ECF No. 2 ¶¶ 51-53), asserting a California premises liability claim against them.  (*Id.* ¶¶ 292-296.)  Motown was not Love Records' "parent company" and was not involved with security at Chalice.  (Braithwaite Decl. at ¶¶ 2, 5; Zakarin Decl. at ¶¶ 32-44.)

## ARGUMENT

To survive Rule 12(b)(6) dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).  Nor do "legal conclusions masquerading as factual conclusions." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal quotations and citation omitted); *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735, 2019 WL 4688629, at *5 (S.D.N.Y. Sept. 26, 2019).  Moreover, where "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Technomarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 487 (S.D.N.Y. 2012) (citation omitted).

## I.   PLAINTIFF'S RICO CLAIM AGAINST THE UMG DEFENDANTS SHOULD BE DISMISSED

Courts "look[] with particular scrutiny at [c]ivil RICO claims to ensure that the Statute is used for the purposes intended by Congress." *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 396-97 (S.D.N.Y. 2000).  As the court in *Katzman v. Victoria's Secret Catalogue* explained: "'Civil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device.'… Because

the 'mere assertion of a RICO claim … has an almost inevitable stigmatizing effect on those named as defendants, … courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quotations and citation omitted), *aff'd*, 113 F.3d 1229 (2d Cir. 1997); *accord Rosenson v. Mordowitz*, No. 11-CV-6145, 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012) (Oetken J.). Thus, "bald contentions, unsupported characterizations, and legal conclusions and not well-pleaded allegations, will not suffice to defeat a motion to dismiss." *Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01-CV-2272, 2004 WL 35439, at *2 (S.D.N.Y. Jan. 6, 2004) (citation omitted).

As discussed below, a civil RICO claim requires that each defendant: (1) committed two or more predicate acts of "racketeering activity," (2) constituting a "pattern," (3) through an "enterprise," (4) which each defendant directed the operation and management of, (5) causing property loss for the Plaintiff. *Lundy v. Cath. Health Sys. of Long Island Inc*., 711 F.3d 106, 119 (2d Cir. 2013). The RICO claim against the UMG Defendants fails to satisfy <u>any</u> of these requirements.

### A.    Plaintiff Fails To Allege With Requisite Particularity Two Or More Predicate Acts Of Fraudulent Racketeering Activity

"A RICO claim must charge each named defendant with the commission of two or more predicate acts of racketeering activity." 18 U.S.C. § 1961(5); *id.*; *Continental Kraft Corp. v. Euro-Asia Dev. Grp., Inc.*, No. 97-CV-0619, 1997 WL 642350, at *4 (E.D.N.Y. Sept. 8, 1997) (citation omitted). "Racketeering activities" include a number of criminal acts, and can also include the commission of interstate mail or wire fraud, pursuant to 18 U.S.C. §§ 1961, 1341 and 1343.

Because Plaintiff invokes alleged mail and wire fraud as his predicate acts (ECF No. 2 ¶¶ 234-246), he is required to satisfy the heightened pleading requirement of Rule 9(b) — indeed, "[t]he courts of this Circuit have recognized that the policies behind Rule 9(b)'s particularity requirement apply with particular force in RICO actions." *E.g.*, *Nasik Breeding & Research Farm*

*Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001) (citation omitted).  As here, "where multiple defendants are accused of mail or wire fraud, plaintiffs must plead fraud with particularity *as to each defendant*."  *Id.* (emphasis supplied) (citations omitted); *accord Morgens*, 198 F.R.D. at 609-10 ("A plaintiff may not circumvent [Rule 9(b)] by identifying the defendants as members of various groups…."); *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 68 (E.D.N.Y. 2020) (same) (citations omitted).  Thus, Plaintiff must specifically allege the circumstances of the fraud, including the content of the alleged misrepresentations, the date and place of the misrepresentations, and the identity of the speakers or writers.  *See, e.g.*, *id.*; *Highlands*, 2004 WL 35439, at *2-4.

The FAC does not remotely satisfy the Rule 9(b) standard of identifying two or more particular acts of mail and/or wire fraud by any of the UMG Defendants.  Instead, in a non-specific and patently insufficient group pleading, Plaintiff alleges:

- "**Defendants** used the mail and interstate wires to solicit Plaintiff Jones and [others] to utilize their talents and labor to produce music, and other tangible goods and services without compensation, as well as the solicitation of sexual encounters with prostitutes, sex workers, and minors, and the purchasing and distribution of illegal firearms and drugs";

- "**Defendants** agreed to rely on the mail to secure wire frauds [sic], cash payments from purchasers of the illegal firearms and drugs **Defendants** required others to sell and distribute";

- "**Defendants**, either individually or in combination with themselves, used and caused to be used the U.S. mail by both placing and causing to be placed cash, letters, marketing materials, advertisements, agreements and other matters in depositories and by removing or causing to be removed letters and other mailable matters from depositories";

- "**Defendants** agreed to rely on interstate wires to disseminate funds and to submit payment to sex workers and prostitutes, as well as to transfer payment for the distribution and procurement of drugs and guns";

- "**Defendants** illegally acquired wire transfers, money transfers, credit cards, and bank cards via search engines and other online platforms to further their collective goal of furthering their RICO enterprise."

(ECF No. 2 ¶¶ 221, 236, 237, 240.)

Here, not only does Plaintiff fail to specify what any defendant did, he also does not identify the content of the alleged communications, when they were sent, who sent them and to whom, in violation of Rule 9(b).  Two predicate acts of racketeering activity by the UMG Defendants are nowhere pleaded, requiring the dismissal of the RICO claim against them.

### B.     Plaintiff Fails To Allege A Continuous Pattern Of Racketeering Activity

The RICO statute defines a "pattern of racketeering" as at least two predicate acts occurring within ten years of each other.  18 U.S.C. § 1961(5).  However, "simply alleging two predicate acts without more is not sufficient to establish a pattern, which requires that a plaintiff must show both that the acts are related and continuous."  *FD Prop. Holding, Inc. v. US Traffic Corp.*, 206 F. Supp. 2d 362, 369 (E.D.N.Y. 2002) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 429 U.S. 229, 239 (1989)).[5]

Plaintiff tries to manufacture a pattern by offering a conclusory claim that the alleged "RICO enterprise has existed for at least 20 years, dating back to [a] 1999 Nightclub shooting in NYC," when Combs allegedly framed someone for that shooting and "used his power, money, and influence to bribe jurors and witnesses."  (ECF No. 2 ¶ 210.)  Plaintiff then skips forward 23 years, saying the "RICO enterprise continued from September 2022 to the present day."  (*Id.* ¶ 212.)  There is no connection between the two.

Even if one pretended there were some link between a 1999 event and Plaintiff's 2022-2023 allegations, nowhere are the UMG Defendants linked to any alleged "related and continuous" pattern of racketeering activity.  Nothing links the UMG Defendants to the 1999 Nightclub shooting, nor are they linked, outside of conclusions, to the any other alleged misconduct of other

---

[5] "The continuity requirement may be satisfied in one of two ways.  A plaintiff must allege either an 'open-ended' pattern of racketeering activity (i.e., past criminal conduct combined with a threat of future criminal conduct), or a 'closed-ended pattern of racketeering activity (i.e., past criminal conduct) extending over a substantial period of time.'"  *CPF Premium Funding, Inc. v. Ferrarini*, No. 95-CV-4621, 1997 WL 158361, at *7 (S.D.N.Y. Apr. 3, 1997) (citation omitted); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citations omitted).  Plaintiff does neither.

defendants in this Action.  Nor are there are any facts showing of the use of interstate mails and wires, which are the supposed predicate acts supporting Plaintiff's baseless claims against the UMG Defendants.

### C.   Plaintiff Fails To Allege A Viable Enterprise

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities:  (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *accord U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017).  "This requirement focuses the section on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity."  *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (quotation omitted); *accord Cedric Kushner*, 533 U.S. at 164.  "The heart of any civil RICO claim is the enterprise.  There can be no RICO violation without one."  *Heinrich v. Dean*, 655 F. Supp. 3d 184, 189 (S.D.N.Y. 2023) (citations omitted) (dismissing RICO claims because plaintiffs alleged only that defendants acted to further their own interests, not the interests of a separate RICO enterprise).

Plaintiff does not identify the alleged "RICO enterprise."  At most, the enterprise might be argued to be an association-in-fact among some of the named defendants.  But to be viable, Plaintiff must allege that the association-in-fact enterprise exists separate and apart from the alleged pattern, with its own "hierarchy, organization, and activities."  *Heffernan v. HSBC Banks USA*, No. 99-CV-07981, 2001 WL 803719, at *5 (E.D.N.Y. Mar. 29, 2001) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)); *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007) ("[M]erely stringing together a list of defendants and labeling them an enterprise is insufficient."); *accord Goldfine*, 118 F. Supp. 2d at 401 ("There is no allegation … of what activity, if any, the alleged enterprise even engage in *other than* the alleged predicate

acts … Additionally, Plaintiffs fail to allege any chain of command of the enterprise, or how, if at all, the alleged 'members' functioned as an integrated group or directed the affairs of the alleged enterprise apart from the predicate acts themselves."); *Nasik*, 165 F. Supp. 2d at 539 ("[The plaintiff] has simply 'strung together all of the defendants in this action and labeled the resulting group an association-in-fact enterprise.'") (quotation omitted).

The FAC here suffers from all of these same defects. It does not allege that any of the UMG Defendants fits within a hierarchy or command structure of the alleged enterprise, or that the enterprise exists *with the UMG Defendants* in any continuous conduct that is separate and apart from the specific alleged predicate acts themselves. At most, Plaintiff tosses off conclusions that the UMG Defendants "ignored … red flags" (which did not exist), and "knew or should have known" that they were allegedly witnessing and supporting a criminal enterprise that financially furthered their own interests (when they witnessed nothing and supported nothing). (*See, e.g.*, ECF No. 2 ¶¶ 165, 175, 341, 343, 348.) The claim is fatally deficient (and factually false).

### D.   Plaintiff Fails To Allege "Operation And Management" Of The Enterprise

The FAC nowhere alleges how each of the UMG Defendants had "'some part in directing' the 'operation or management' of the enterprise itself," which is a pleading prerequisite. *See, e.g.*, *Goldfine*, 118 F. Supp. 2d at 402-03. "'As interpreted by courts in this district and others, the "operation and management" test … is a very difficult test to satisfy.' … In addition, the mere fact that a defendant may have *aided* in the alleged scheme to defraud, *even if that aid was intentional*, does not give rise to liability under § 1962(c)." *Id.* (citations omitted); *accord Redtail Leasing, Inc. v. Belleza*, No. 95-CV-5191, 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997) ("A defendant does not 'direct' an enterprise's affairs … merely by engaging in wrongful conduct that assists the enterprise.").

Here, at most, Plaintiff alleges the UMG Defendants aided the enterprise (which they did not). All of the alleged "wrongful" conduct is attributed to Combs and his associates, not to the UMG Defendants. (ECF No. 2 ¶¶ 177-184). The UMG Defendants are not "central figures" nor "respondent [sic] superior" in the alleged enterprise scheme. *See, e.g., Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08-CV-6150, 2010 WL 3026510, at *6 (S.D.N.Y. Aug. 2, 2010) (explaining that courts in Second Circuit do not impose vicarious liability under RICO unless the defendant is shown to be the "central figure"); *Targum v. Citrin Cooperman & Co., LLP*, No. 12-CV-6909, 2013 WL 6087400, at *7 (S.D.N.Y. Nov. 19, 2013).

### E.   Plaintiff Fails To Allege Loss Causation

A RICO claim requires allegation and proof that the alleged RICO violation was (1) the but-for, or transactional, cause of the plaintiff's *property* loss, *and* (2) the proximate cause of the loss. *E.g.*, *Petrosurance, Inc. v. National Ass'n of Ins. Comm'rs*, 888 F. Supp. 2d 491, 507 (S.D.N.Y. 2012) (dismissing RICO claims because plaintiff "falters under both types of causation"), *aff'd*, 514 F. App'x 51 (2d Cir. 2013); *accord FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 458 (S.D.N.Y. 2014); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 540 (S.D.N.Y. 2014). "[C]ivil RICO's direct relation requirement is rigorous and requires dismissal where substantial intervening factors attenuate the causal connection between defendant's conduct and plaintiff's injury." *Zuhovitzky v. UBS AG CHE 101.329.562*, No. 21-CV-11124, 2023 WL 4584452, at *9 (S.D.N.Y. July 18, 2023) (citations omitted); *see also Lawson v. Rubin*, No. 17-CV-6404, 2018 WL 2012869, at *9-10 (E.D.N.Y. Apr. 29, 2018).

The only "loss" Plaintiff alleges — that his alleged services to Love Records warranted $50,000 and Combs offered only $29,000 — has nothing to do with his RICO claims and even less to do with the UMG Defendants. He contends that the UMG Defendants supposedly knew of, had the obligation to supervise and failed to control Combs' alleged sexual misconduct — every

one of which assertions is completely untrue — somehow contributed to the deprivation of Plaintiff's property rights.  However, there is no "but for" allegation, nor could there be.

Plaintiff also does not plausibly allege that he suffered a *property* loss "by reason of" any of the alleged acts or omissions of the UMG Defendants.  Instead, the independent and intervening acts of the other defendants sever the causal link to any of the UMG Defendants.  *Zuhovitzky*, 2023 WL 4584452, at *9 (finding that plaintiff's theory of harm rested on independent actions of third parties, which was "plainly insufficient to establish proximate causation").  *See also Lawson*, 2018 WL 2012869, at *9-10; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 464 (2006) (finding no proximate cause because of "attenuated relationship" between the alleged RICO acts and plaintiff's purported injury); *Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 9 (2010) (dismissing RICO claims where plaintiff's "causal theory [was] far [too] attenuated*"*).

Moreover, outside of a possible $21,000 breach of contract claim against Love Records, the FAC fails to allege any <u>business</u> or <u>property</u> loss.  Plaintiff claims only physical and emotional loss due to the alleged conduct of Combs, not the UMG Defendants.  *See* 18 U.S.C. § 1964(c) (plaintiff must be "injured in his business or property"); *Canosa v. Ziff*, No. 18-CV-4115, 2019 WL 498865, at *25 (S.D.N.Y. Jan. 28, 2019) ("RICO provides a civil remedy to '[a]ny person injured in [her] *business or property* by' a RICO violation…. '[C]ourts have uniformly held that injuries such as emotional distress or physical injury are not cognizable under RICO.'") (citations omitted); *Lawson*, 2018 WL 2012869, at *9-10 ("Personal injuries – and damages flowing from them – are simply not injuries to 'business or property' under RICO.") (citations omitted); *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-CV-1861, 2021 WL 960394, at *12 (E.D.N.Y. Mar. 15, 2021), *aff'd*, No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022).

Plaintiff's First Cause of Action for civil RICO violations should be dismissed with prejudice as against the UMG Defendants.

## II.     THE TVPA CLAIMS SHOULD BE DISMISSED

Plaintiff alleges three TVPA claims against the UMG Defendants: the Ninth Cause of Action for aiding and abetting TVPA violations by others; the Fourteenth Cause of Action for "participating in" TVPA violations by others; and the Fifteenth Cause of Action for obstructing enforcement of the TVPA.  The claims are offensively baseless.

### A.     Plaintiff's Aiding And Abetting TVPA Violations Claim Should Be Dismissed

There is no private right of action for aiding and abetting violations of the TVPA.  *E.g.*, *Noble v. Weinstein*, 335 F. Supp. 3d 504, 525 (S.D.N.Y. 2018) ("To be clear, aiding and abetting liability is not provided for in Section 1595.  And 'when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, *there is no general presumption that the plaintiff may also sue aiders and abettors*.'") (citation omitted).

Moreover, Plaintiff has not pleaded and cannot plausibly plead such claim against the UMG Defendants.  "To plead secondary civil liability on a theory of aiding and abetting, plaintiff must sufficiently plead: (i) a primary violation of the statute by the primary defendant, (ii) knowledge by the secondary defendant of his role in the illegal conduct; and (iii) 'substantial assistance' by the secondary defendant in the primary violation."  *Noble*, 335 F. Supp. 3d at 525 (citations omitted).  "Substantial assistance" means more than just alleged ownership or control of a primary wrongdoer — *i.e.*, substantial assistance is not a *respondeat superior* concept.  *See id.* at 525-26.  To plausibly plead "substantial assistance," a plaintiff must allege that the supposed aiding and abetting defendant directly and materially participated in conduct that furthered the alleged sex trafficking scheme.  *See id.*  Here, nowhere is there alleged any direct and knowing assistance by the UMG Defendants.

19

Plaintiff instead alleges the UMG Defendants supposedly knew "or should have known" that sex trafficking was taking place at "listening parties."[6]  But the UMG Defendants never attended any "listening parties" and were never aware of any alleged sex trafficking that supposedly occurred.  Nor are there allegations that the UMG Defendants knew they were supposedly participating in an alleged sex trafficking scheme that affected interstate commerce (and they were not).

Plaintiff's Ninth Cause of Action should be dismissed against the UMG Defendants.

### B.    Plaintiff's TVPA Fourteenth Cause Of Action Should Be Dismissed

Plaintiff's Fourteenth Cause of Action claims that the UMG Defendants are liable under the TVPA for knowingly "participating in" and benefitting financially from the alleged sex trafficking scheme of others  (ECF No. 2 ¶ 338.)  "Participation" in sex trafficking requires allegations and proof that a defendant "knowingly '*benefit[ted]*, financially or by receiving anything of value, from participation in a venture which has engaged in' sex trafficking."  *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169-170 (S.D.N.Y. 2019) (citing 18 U.S.C. §§ 1591(a)(2), 1595(a)).  Here, outside of unsupported conclusions, there is not one fact showing any such participation or benefit alleged.

"Participation" liability under the TVPA requires "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship."  *Id.*  In *Geiss*, for example, Judge Hellerstein held there were no allegations "that would plausibly support [] a conclusion" that Harvey provided benefits to TWC [The Weinstein Company] "*because of* TWC's facilitation of [Harvey's] sexual misconduct."  *Id.*  The complaint did not allege that TWC's complicity was

---

[6] Again, the Cassie Ventura complaint theory is chronologically impossible.

a condition of Weinstein's employment or that any officer or director was compensated for their alleged participation.  *Id.* (citations omitted) (emphasis supplied).

In *Noble*, Judge Sweet dismissed the plaintiff's TVPA "participation" claim against Harvey's brother, Robert Weinstein ("Robert"), because, even though the plaintiff alleged that Robert "facilitated" Harvey's travel (during which Harvey engaged in sex trafficking) and "benefitted financially from Harvey['s] promotion of films and other business-related activities in foreign commerce," the plaintiff did *not* allege anything "that link[ed] Robert's actions to Harvey's 2014 conduct toward [the plaintiff]."  335 F. Supp. 3d at 524.  There were no facts to support a plausible conclusion that Robert acted with "'knowledge or willful disregard'" of Harvey's assaults.  *Id.* (citing *Lawson*, 2018 WL 2012869, at *11).  Judge Sweet explained that "'mere *membership*'" in an alleged sex trafficking venture is insufficient and the TVPA *"'does not target [those] who turn a blind eye to the source of their financial sponsorship.'"*  *Noble*, 335 F. Supp. 3d at 524 (quotations omitted) (emphasis supplied).

Here, there is no basis for Plaintiff's claims against the UMG Defendants.  Motown was not Love Records' "parent company."  Grainge and Habtemariam did not attend any "listening parties," never saw the alleged activities at such parties, and none of the UMG Defendants had any duty to supervise or control Combs or supervise any other Defendant in this Action.  The financial benefits alleged are both conclusory and false (indeed, the fabricated "cash" allegations are not alleged to be received by UMG) and nothing links such non-existent benefits to the Combs' alleged sex trafficking (as opposed to his recording services).  (*See, e.g.*, ECF No. 2 ¶¶ 139-140, alleging that UMG Recordings and Motown Records "benefited [sic] from [Plaintiff's] *work product*" as a producer of songs on Combs' records (emphasis supplied); ¶¶ 200, 220, 222, invoking the baseless "respondent [sic] superior" assertion, alleging the UMG Defendants received "profits from the artists, creatives, musicians, and producers;" ¶¶ 221, 238, alleging that "Defendants" engaged in

21

mail and wire fraud to solicit people like Plaintiff **"to utilize their talents and labor to produce music"** for Defendants' financial benefit) (emphasis supplied).[7]  *Noble*, 335 F. Supp. 3d at 324.

       **C.**        <u>**Plaintiff's Obstruction Claim Should Be Dismissed**</u>

Plaintiff's Fifteenth Cause of Action for obstruction of enforcement of the TVPA should be dismissed because there is no private right of action to bring such a claim.  *Jane Doe No. 1 et al v. Daniel S. Fitzgerald*, No. CV2010713, 2022 WL 425016, at *4 (C.D. Cal. Jan. 6, 2022) ("Plaintiffs do not have a private right of action under subsection (d).  Rather, that provision is limited to government enforcement"); *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1143 (D. Colo. 2019) (holding that "the TVPA's obstruction provisions are concerned only with governmental enforcement of the TVPA").[8]  But, even if there were a private right of action for obstruction, Plaintiff has not pleaded and cannot plead the necessary elements against the UMG Defendants.

Plaintiff must plausibly plead that each Defendant: (1) knew of an effort to enforce the TVPA; and (2) intentionally obstructed, interfered with, or prevented that enforcement.  *See, e.g.*, *United States v. Farah*, 766 F.3d 599, 612 (6th Cir. 2014).  No facts are pleaded that (a) there was an effort to enforce the TVPA; (b) the UMG Defendants knew of any violation of TVPA and of an effort to enforce the statute; and (c) obstructed the statute's enforcement.  Plaintiff instead makes unsupported allegations of cash payments to Combs and failures to file tax reports, which fail to satisfy the requirements for an obstruction claim even if one existed (and there were no cash payments and no failure to file tax reports).

---

[7] Again, the UMG Defendants never solicited Plaintiff nor any other artist in connection with Motown's license with Love Records.

[8] Last year, Judge Rakoff disagreed with these authorities and found that a private right of action could arise under 18 U.S.C. § 1591(d).  *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 409 (S.D.N.Y. 2023).  Defendants respectfully submit that the textual analysis conducted by the courts in *Jane Doe* and *Gilbert* are correct.

Plaintiff's Ninth, Fourteenth and Fifteenth Causes of Action for TVPA-based violations should be dismissed as against the UMG Defendants.

### III.   PLAINTIFF'S CALIFORNIA PREMISES LIABILITY CLAIM AGAINST UMG RECORDINGS AND MOTOWN RECORDS SHOULD BE DISMISSED

Under California law, premises liability is a form of negligence.  *Ortega v. Kmart Corp.,* 36 P.3d 11, 14 (Cal. 2001).  To state a viable claim for negligence, Plaintiff must plausibly plead that UMG Recordings and Motown each breached a duty of care that was owed to Plaintiff in connection with the Shooting at Chalice, thereby causing damages to Plaintiff.  *Id.*  There is no plausible basis for such claim.

"To establish that a party had a duty of due care in premises liability cases, courts require a showing that the party had control and supervision over the premises."  *Martinez v. Navy League of U.S.*, No. 2:13-CV-5533, 2014 WL 4078647, at *3 (C.D. Cal. Aug. 18, 2014) (citations omitted), *aff'd sub nom. Martinez v. Navy League of United States*, 688 F. App'x 465 (9th Cir. 2017); *Hall v. National R.R. Passenger Corp.,* No. C19-02312, 2020 WL 4923966, at *6 (N.D. Cal. Aug. 21, 2020); *Silva v. Warren Res. of Cal., Inc.*, No. B302669, 2021 WL 4304594, at *2 (Cal. Ct. App. Sept. 22, 2021); *Villanueva v. Clifford*, No. E052368, 2011 WL 4528338, at *5 (Cal. Ct. App. Sept. 30, 2011).

Plaintiff's claim is based on the false "parent company" assertion and that in such capacity Motown or UMG Recordings were responsible for security at Chalice under concepts of "agency, employment, and representation of each other and with the knowledge, consent, direction, approval, and ratification of each other's act, omissions and conduct, on or about [the day of the Shooting in September 2022] at [Chalice] …."  (ECF No. 2 ¶¶ 9, 293.)  Without the slightest basis, Plaintiff alleges that Motown and UMG Recordings "provided private security" at the time of the Shooting.  (*Id.* ¶ 51.)

All three of these conclusory allegations are false.  Motown was not Love Records' parent company.  (Grainge Decl. at ¶ 12; Braithwaite Decl. at ¶ 2; Habtemariam Decl. at ¶ 13.)  Neither UMG Recordings nor Motown provided or paid for whatever security was in place at the time of the Shooting.  (Braithwaite Decl. at ¶ 5; Habtemariam Decl. at ¶ 19.)  The "legal" assertions about the supposed relationship between UMG Recordings, Motown, Love Records and Chalice have no factual basis whatsoever.  *E.g.*, *Iqbal*, 556 U.S. at 678.

Plaintiff's Eighth Cause of Action as against UMG Recordings and Motown Records (which is also jettisoned in the unauthorized SAC) should be dismissed.

## CONCLUSION

For the foregoing reasons, the UMG Defendants respectfully request that all claims against them be dismissed, and that the Court award them such other further relief as deemed just and proper.


Dated: New York, New York
March 27, 2024

**PRYOR CASHMAN LLP**

By: _____
Donald S. Zakarin
James A. Janowitz
William L. Charron
Nicholas G. Saady
Alina Jamil Mian
7 Times Square
New York, New York  10036
(212) 421-4100
dzakarin@pryorcashman.com

*Attorneys for the UMG Defendants*

24