# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RODNEY JONES,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>SEAN COMBS,<br>JUSTIN DIOR COMBS,<br>ETHIOPIA HABTEMARIAM,<br>LUCIAN CHARLES GRAINGE,<br>KRISTINA KHORRAM,<br>CHALICE RECORDING STUDIOS,<br>LOVE RECORDS,<br>MOTOWN RECORDS,<br>UNIVERSAL MUSIC GROUP,<br>COMBS GLOBAL ENTERPRISES,<br>JOHN and JANE DOES 1-10; and<br>ABC CORPORATIONS 1-10,<br><br>　　　　　Defendants. | CASE NO.: 24-1457<br><br><br><br>**DECLARATION OF SIR LUCIAN GRAINGE IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS UNIVERSAL MUSIC GROUP, MOTOWN RECORDS, SIR LUCIAN GRAINGE AND ETHIOPIA HABTEMARIAM** |

I, Sir Lucian Grainge, CBE declare as follows:

　　　1.　　I am the Chairman and Chief Executive Officer of Universal Music Group, N.V. ("UMG NV"). UMG NV is a public company organized and existing under the laws of the Netherlands with its principal operating offices and companies located in Santa Monica, California. I have personal knowledge of the facts set forth in this Declaration and if called and sworn as a witness, I could and would competently testify thereto.

　　　2.　　I have been named personally as a Defendant in this action along with Ethiopia Habtemariam, the former chairman and chief executive officer of Motown Records (which is not an independent company but a record label that is a division of UMG Recordings, Inc. ("UMG

1

Recordings") which is an indirect wholly owned subsidiary of UMG, NV).[1] I am also the Chairman and Chief Executive Officer of UMG Recordings, which is a Delaware corporation with its principal place of business in Santa Monica, California. Universal Music Group and Motown Records are also named as Defendants.[2]

### A. The Court Lacks Personal Jurisdiction Over Me

3. As the Amended Complaint (¶ 8) admits, I am a resident of California, not New York.[3] As I will detail below, I engaged in no activity in New York whatsoever with respect to this matter.

4. The Amended Complaint makes four completely conclusory and factually unsupported allegations about my supposed New York activity: (i) that I was involved in disseminating unidentified false information to unidentified artists in New York (¶ 214); (ii) that I sent unidentified advertisements to unidentified artists in New York (¶ 220); (iii) that I oversaw the unidentified marketing and soliciting to unidentified artists in New York (¶ 222); and (iv) that I was supposedly present in Mr. Combs' alleged home in New York at which Mr. Combs engaged in alleged sex trafficking (¶ 343(f)).

5. Not only are none of these allegations supported by a single fact, they are completely untrue and absurd (and I fully intend to pursue both Plaintiff and his counsel for having made such false accusations against me). As I will detail below, I had nothing to do with

---

[1] Ms. Habtemariam left Motown Records as of the end of November 2022. I understand that on March 23, 2024, Plaintiff's counsel sent a letter to the Court advising he intended to dismiss Ms. Habtemariam from this action.

[2] Universal Music Group is not an actual entity but a name commonly used to refer generally to the various companies and labels owned by UMG NV. I assume Plaintiff intended to name UMG Recordings.

[3] The Plaintiff and his counsel identified my California addresses in the Amended Complaint for no purpose other than to harass me.

Mr. Combs or Love Records, Inc. ("Love Records"). I have never been inside any of Mr. Combs' homes (and have no idea if he even has a home in New York). I mailed and wired nothing to any artist with respect to Love Records or Mr. Combs.

6. I am the Chairman and Chief Executive Officer of a multi-national public company. That alone is a full-time job and I am also deeply committed to various philanthropic causes. I do not get involved in the day-to-day operation of the thousands of agreements UMG and its labels and publishers have entered into with artists and writers and did not do so with respect to Motown Records' license agreement with Mr. Combs' company, Love Records. In short, I had nothing to do with any of the actions alleged in the Amended Complaint.

### B. The Claims Against Me, Ms. Habtemariam, Motown Records and UMG Recordings Are Factually And Offensively False

#### (i) The Amended Complaint Advances Inconsistent Allegations

7. The fact that the allegations of my contacts with New York with respect to this matter are completely false is probably the least of the glaring flaws of the Amended Complaint. Based solely on offensively false accusations and without there being the slightest factual basis for such accusations – and as set forth in the accompanying Declaration of our counsel, Donald S. Zakarin, in complete disregard for the obligations imposed on counsel by Rule 11 of the Federal Rules of Civil Procedure – the Amended Complaint accuses me of engaging in a criminal racketeering enterprise and participating in, aiding and abetting and obstructing discovery of, sex trafficking activity allegedly engaged in by Sean Combs and people associated with him.

8. At one and the same time, the Amended Complaint inconsistently alleges that I was the unwitting victim of extortionate activity by defendant Sean Combs, who allegedly surreptitiously recorded me in his homes in Miami and Los Angeles, with the implication that he did so to exert leverage or influence over me (¶¶ 190-191), yet also alleges that I supposedly

3

collaborated with Mr. Combs in an alleged criminal racketeering "enterprise" that has gone on for over twenty years.[4]

9. The Amended Complaint also inconsistently describes me as some sort of "bait," supposedly "paraded" about by Combs as someone he could introduce to Plaintiff in order to induce the Plaintiff to provide his music production services to Combs for inadequate consideration (¶¶ 187, 208, 214). But at the same time, the entire underlying premise that supposedly links me, Ms. Habtemariam, Motown Records and UMG Recordings to Combs and his purported scheme to deprive Plaintiff of what he claims was promised compensation for his work (it appears that, at bottom, this lawsuit is about a disagreement between Mr. Combs and Plaintiff over some $21,000) is Plaintiff's baseless assertion that Motown Records is the "parent company" of Love Records. Based on this false "parent company" allegation, Plaintiff claims that Ms. Habtemariam, Motown Records, UMG Recordings and I occupied what Plaintiff and his counsel have called a "respondent superior" position with respect to Love Records and Mr. Combs (¶¶ 9, 14, 200, 222).[5]

### (ii) The False Premise of the Amended Complaint that Motown Records is the Parent Company of Love Records

10. The Amended Complaint alleges that given Motown Records' supposed ownership of Love Records and "respondent superior"[sic] role, UMG Recordings, Motown Records, Ms. Habtemariam and I had a duty to supervise and control the activities of Mr. Combs and that we failed to do so. The Amended Complaint alleges that I personally attended listening parties at Mr. Combs' homes in Los Angeles and Miami (and New York) where there were allegedly sex workers and underage women being sexually exploited and plied with alcohol and

---

[4] Again, as I will detail below, Mr. Combs could not have recorded video of me in his homes because I was never there.
[5] I assume Plaintiff and his counsel mean "respondeat superior."

drugs and that I had a duty to prevent these things from happening. The Amended Complaint alleges that there was a shooting at Chalice Studios (which I gather was a recording studio in Los Angeles where Mr. Combs was recording his Love Records album) and that Motown and/or UMG Recordings were supposedly responsible for providing security and failed to do so adequately.

11. Every one of these unsupported allegations is completely false.

12. First of all, completely contrary to the Amended Complaint, Motown Records is not the "parent company" of Love Records. Motown Records does not own any interest in Love Records and has never owned any interest in Love Records. And for the record, no UMG company has or ever had any interest in Love Records. As such, the entire underlying premise for every one of Plaintiff's claims against me, Ms. Habtemariam, Motown Records and UMG Recordings – this fabricated ownership and "respondent superior"[sic] duty – is completely untrue.

13. As shown in the accompanying declaration of Martha Braithwaite, Motown Record's sole involvement with Love Records was that it entered into an arm's length negotiated license agreement in May 2022 to obtain the right to distribute, for a period of time, a single album to be produced and recorded by Love Records featuring the performance of Mr. Combs. And as shown in the declaration of Mr. Zakarin, Love Records was incorporated in Delaware on January 7, 2021, more than a year before Motown Records entered into the license agreement with Love Records. As Mr. Zakarin points out, the lack of any "parent company" relationship

between Motown Records and Love Records is something that would have taken Plaintiff's counsel, Mr. Blackburn, only minutes to ascertain from public records.[6]

14. In short, Motown Records, UMG Recordings, Ms. Habtemariam and I had no right or ability to exercise supervisory control or authority over Love Records or Mr. Combs and no obligation to do so. Mr. Combs was not, as is falsely alleged in the Amended Complaint, our employee. Motown Records' sole relationship to Mr. Combs and Love Records was through a commonplace and ordinary arms-length relationship of a licensor (Love Records) and licensee (Motown Records). And as Ms. Braithwaite states, that relationship was terminated as of February 1, 2023.

### (iii) I Have Never Been In Mr. Combs' Houses

15. Second, contrary to the unsupported allegations in the Amended Complaint (¶¶ 162-167), I have never been in Mr. Combs' house in Los Angeles, Miami or anywhere else and I did not sponsor, or attend any "listening parties" at Mr. Combs' homes. As I have already said, as the Chairman and CEO of a large public company with thousands of artists and writers, there is no way I could or would ever get involved in the minutiae of any individual agreement. So Plaintiff's claim that he saw me at Combs' homes (and that I disappeared for hours into Mr. Combs' bedroom – and oddly, the Amended Complaint makes the identical allegation as to Ms. Habtemariam, in identical words) is completely false. And the allegation that I was aware that there were allegedly underage girls and sex workers being sexually exploited and plied with alcohol and drugs at these listening parties at Mr. Combs' house (and what Plaintiff calls "freak offs") and that, allegedly being present, I had a duty to prevent these things from happening, are both offensive and completely false. I do not take lightly being falsely and publicly accused of

---

[6] As also shown in Ms. Braithwaite's declaration, Motown Records and Love Records terminated the license agreement as of February 1, 2023.

criminal activity and, as I said, I intend to pursue those who have made these outrageous allegations against me.

### (iv) Neither Motown Records Nor UMG Recordings Provided Or Was Responsible For Providing Security At Chalice Studios

16. The Amended Complaint also alleges that there was a shooting at Chalice Studios (which I gather was a recording studio in Los Angeles where Mr. Combs was recording his Love Records album) and that Motown Records and/or UMG Recordings were supposedly responsible for providing security and failed to do so adequately (¶¶ 51, 292-294).[7] While I had nothing to do with Motown's license agreement with Love Records, Ms. Braithwaite's declaration makes clear that neither Motown Records nor UMG Recordings were responsible for security at Chalice Studios and neither Motown Records nor UMG Recordings were invoiced for and did not pay for security at Chalice Records.

### (v) The Sex Trafficking Allegations Are Completely Conclusory, Chronologically Baseless and Completely False

17. Third, the Amended Complaint also accuses me personally, along with Ms. Habtemariam, Motown Records and UMG Recordings, of the most scurrilously false allegations, claiming that we participated in, aided and abetted and obstructed discovery of Mr. Combs' alleged sex trafficking (Ninth, Fourteenth and Fifteenth "Causes of Action"). There is not a single fact, as opposed to conclusions, supporting any such claim pleaded anywhere in the Amended Complaint, nor could there be as the claims are totally false. The claims are based on alleged knowledge that we did not have and could not have had about Mr. Combs' supposed

---

[7] I am advised that Mr. Combs' counsel has provided Plaintiff's counsel, Mr. Blackburn, with indisputable evidence showing that, contrary to what is alleged in the Amended Complaint, no alleged shooting took place at Chalice Studios.

activity and the unsupported (and completely false) allegations in the Amended Complaint about our supposedly providing Mr. Combs with "cash" (¶¶ 339-343, 350-352, 354-355).

18. First, as I said above, contrary to the allegations in the Amended Complaint, I was never at any of Mr. Combs' houses and never saw or knew of any alleged activity involving sex workers or underage girls or drugs and alcohol (even assuming that they occurred, which I do not assume). And I most assuredly did not participate in or aid and abet or obstruct anything relating to such alleged activity about which I knew nothing, never participated in, and never observed.

19. Second, the Amended Complaint also points to a complaint filed by a Cassie Ventura which supposedly should have put me on notice of Mr. Combs' alleged activities. However, as documented in Mr. Zakarin's declaration, Ms. Ventura's complaint was not filed until November 16, 2023, long after the activities alleged in the Amended Complaint supposedly occurred and, as Ms. Braithwaite's declaration states, long after Motown Records terminated its license agreement with Love Records.

20. As Mr. Zakarin's declaration also notes, the Amended Complaint also points to some person by the name of Jonathan Oddi, who apparently also made some allegations against Mr. Combs on or about December 17, 2023. Again, our relationship with Mr. Combs and Love Records under the license agreement ended long before Mr. Oddi's allegations.

21. Third, at no time did UMG Recordings, Motown Records or I ever provide Love Records or Mr. Combs with "cash." As Ms. Habtemariam's declaration states, pursuant to the license agreement with Love Records, Motown Records agreed to pay certain invoiced recording costs, as is customary in the industry, we did not give Mr. Combs "cash."[8]

---

[8] As noted in Mr. Zakarin's declaration, not only is there no factual basis provided for all of these allegations regarding the supposedly delivery of "cash" to Mr. Combs, there is no factual basis for the allegations that we failed to file tax forms respecting these non-existent cash payments

8

### C. The Amended Complaint Should Be Dismissed With Prejudice

22. Accordingly, for all of the reasons stated above and in the accompanying Declarations of Donald S. Zakarin, Martha Braithwaite and Ethiopia Habtemariam, and as set forth in detail in the accompanying Memorandum of Law, not only does the Amended Complaint fail to state any claim against me, Ms. Habtemariam, UMG Recordings and Motown Records, but the claims are based on completely unsupported conclusions masquerading as "facts" - and the actual facts completely refute the fabrications of the Amended Complaint.

23. I have devoted my entire professional career to the music industry and have tried to lead an honorable personal and professional life. I believe I have succeeded in doing so. I have had the honor of being appointed Commander of the Order of The British Empire (CBE) in 2010. I was knighted in 2016 and inaugurated to the Order of the British Empire and Knight Bachelor in 2016. I have received honors, recognizing my devotion to philanthropic causes, that I value highly, including the Spirit of Life Award from the City of Hope.

24. It has been said that a single lie can destroy a reputation of integrity and that while it takes years to build a reputation, it can be ruined in five minutes. The Amended Complaint is filled with lies and is beyond reckless in its accusations against me, none of which have any factual basis but are instead are knowingly and maliciously false and defamatory.[9]

25. The Amended Complaint as against me, Ms. Habtemariam, UMG Recordings and Motown Records should be dismissed with prejudice and we should be awarded sanctions against the Plaintiff and his counsel.

---

(and I know of no way that the Plaintiff or his counsel, Mr. Blackburn, could even have any such knowledge regarding any tax filings to begin with).

[9] I expect that my attorneys will do everything in their power to remedy the maliciously false accusations leveled in the Amended Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 25, 2024

_____
Sir Lucian Grainge, CBE