# EXHIBIT 4

**UNITED STATES FEDERAL COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RODNEY JONES,

           Plaintiff,

v.

SEAN COMBS,
JUSTIN DIOR COMBS,
ETHIOPIA HABTEMARIAM,
LUCIAN CHARLES GRAINGE,
KRISTINA KHORRAM,
CHALICE RECORDING STUDIOS,
LOVE RECORDS,
MOTOWN RECORDS,
UNIVERSAL MUSIC GROUP,
COMBS GLOBAL ENTERPRISES,
JOHN and JANE DOES 1-10 and
ABC CORPORATIONS. 1-10

           Defendants.

Case Number: 24-1457

**<u>Complaint</u>**
**<u>Civil Action</u>**

**Jury Demand**

---

<div style="color:red; text-align:center">

**TRIGGER WARNING:**
**THIS DOCUMENT CONTAINS HIGHLY GRAPHIC INFORMATION OF A SEXUAL NATURE, INCLUDING SEXUAL ASSAULT. ADDITIONALLY, THERE ARE GRAPHIC IMAGES OF THE AFTERMATH OF A SHOOTING, REDACTED IMAGES OF SEXUAL INTERCOURSE, REDACTED IMAGES OF MINORS, SEX WORKERS, AND PROSTITUTES, DETAILS OF SEX TRAFFICKING, AND THE ILLEGAL DISTRIBUTION OF GUNS, AND DRUGS**

</div>

---

Plaintiff Rodney "Lil Rod" Jones ("Mr. Jones") hereby alleges, as and for his Complaint against Defendant Sean Combs ("Mr. Combs"), Defendant Justin Dior Combs ("J. Combs"), Defendant Lucian Charles Grainge ("Mr. Grainge"), Defendant Ethiopia Habtemariam ("Ms. Habtemariam"), Defendant Kristina Khorram ("Ms. Khorram"), Defendant Chalice Recording Studios ("CRS"), Defendant Love Records ("LR"), Defendant Motown Records ("MR"), Defendant Universal Music Group ("UMG"), Defendant Combs Global Enterprises ("CGE"), John and Jane Does 1-10, ABC Corporations 1-10, as follows:

## JURISDICTION AND VENUE

1.  This Court has personal jurisdiction over the Defendants under and consistent with the Constitutional requirements of Due Process in that the Defendants, acting directly or through his agents or apparent agents, committed one or more of the following:

    a.  The transaction of any business within the state;

    b.  The making of any contract within the state;

    c.  The commission of a tortious act within this district and

    d.  The ownership, use, or possession of any real estate in this state.

2.  From September 2022 to the date of this filing, Defendants have consistently and purposefully availed themselves of the privilege of conducting activities within New York, thus invoking the benefits and protections of New York law. In return for these benefits and protections, Defendants must submit to the burdens of litigation in New York.

3.  This litigation arises from or relates to the tortious activities defendants visited upon defendants in the states of New York, California, Florida, and the United States Virgin Island. This tortious conduct violated United States Federal Rico Laws.

4.  Requiring Defendants to litigate these claims in this District does not offend traditional notions of fair play and substantial justice. Plaintiffs' claims arise from some conduct occurring by Defendants in New York.

## PARTIES

5.  Plaintiff Rodney Jones is an American artist and music producer. Mr. Jones resides in the states of New York, and California.

6.  Defendant Sean Combs is a rapper and record executive popularly known by his stage names Puff Daddy, Puffy, P. Diddy, Diddy, Brother Love or Love. Mr. Combs came to fame in the early 1990s with his record label Bad Boy Records. He rose to prominence in the music and entertainment industry over the decades and is regularly referred to as a hip-hop mogul. Mr. Combs resides at 200 South Mapleton Dr., Beverly Hills, California 90024.

2



**Defendant Sean Combs**

7. Defendant Justin Dior Combs is the son of Mr. Combs and Misa Hylton.  J. Combs was born on December 30, 1993.  J. Combs is a producer and actor. He has appeared on TV series like Catfish: The TV Show, Wild' N Out and Hip-Hop Squares.   Defendant Justin Dior Combs resides at 1550 N El Centro Ave, Los Angeles, CA 90028.



**Defendant Justin Dior Combs**

8. Defendant Lucian Charles Grainge is the CEO of Defendant Universal Music Group. Defendant Lucian Charles Grainge resides at 53551 Ross Ave Unit 34A, La Quinta, CA 92253; and 668 Chautauqua Blvd, Pacific Palisades, CA 90272.

3



**Lucian Charles Grainge**

9. Defendant Ethiopia Habtemariam is the Former CEO of Defendant Motown Records the parent company of Defendant Love Records. Defendant Habtemariam resides at 13701 Riverside Dr Apt 8Flr, Sherman Oaks, CA 91423-2430.



**Ethiopia Habtemariam**

10. Defendant Kristina Khorram is the Chief of Staff to Sean "Diddy" Combs, Combs Global Enterprises. She resides at 10445 Wilshire Blvd Apt 501, Los Angeles, CA 90024.



**Kristina Khorram, Chief of Staff to Sean "Diddy" Combs**

11. Defendant Chalice Recording Studios is a popular recording studio located at 845 Highland Ave, Los Angeles, CA 90038, United States.



12. Defendant Motown Records is a record label with a principal place of business located at 1750 Vine St, Los Angeles, CA. Ethiopia Habtemariam was the chairman and CEO of Universal Music Group's Motown Records.



13. Defendant Universal Music Group is a record label with a principal place of business located at 2220 Colorado Avenue in Santa Monica, California. Lucian Grainge is the Chairman & CEO, Universal Music Group.



14. Defendant Love Records is a record label with a principal place of business located at 6255 Sunset Boulevard Suite 713. Los Angeles, CA, United States 90028. Defendant Love Records was founded by Mr. Combs and Defendant Motown Records.



5

15. Defendant Combs Enterprises is a diverse portfolio of businesses and investments that includes music, fashion, fragrance, beverage, marketing, film, television, and media properties. They have a principal place of business located in New York, New York.



**Combs Global**

## <u>RODNEY LIL ROD JONES</u>

16. Rodney "Lil Rod" Jones Jr. is from the Windy City [Chi-town]. He was born and raised in Chicago, Illinois. Mr. Jones is the second oldest son and fourth child out of nine siblings. Mr. Jones comes from a long line of Gospel Music influencers.

17. Mr. Jones started playing instruments at the age of five. He began playing drums in church, and at the age of thirteen he picked up playing the guitar. From thirteen to present day, Mr. Jones has taught himself to play over thirteen instruments.



**Mr. Jones, the Child Prodigy**

18. Mr. Jones is considered a musical prodigy. His talents have led him to produce and create a commercial marketplace for music that has been recorded by some of the most prestigious and highly acclaimed artists in music history.

19. Throughout the duration of his career, Mr. Jones has worked the south side of Chicago Music scene, playing with the following legendary greats: Georgia Mass Choir, Donald Lawrence, The Clark Sisters and The Smokie Norful.

20. On or about, August 2022 Mr. Jones received a call from Mr. Combs requesting that he produce several songs on a rhythm and blues album titled, "The Love Album: Off the Grid," ("Love Album").

21. Mr. Jones agreed, and his life has been detrimentally impacted ever since.

22. During the relevant period, Defendants John and Jane Does 1-10 are currently unknown individuals and/or employees who aided and/or abetted in the commission of conduct complained of herein and/or who either acted within the scope of their employment, Defendants ratified, embraced, and added to this conduct. As parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.

23. During the relevant period, Defendants ABC Corps. 1-10 are currently unknown entities who employed Plaintiff or aided and/or abetted in the commission of conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities or individuals by name.

## SUMMARY OF EVENTS

24. From September 2022 to November 2023, Mr. Jones produced nine songs on Mr. Combs' Love album.

25. Mr. Jones lived with Mr. Combs for months at a time, spending holidays, birthdays, and missing major family events.

26. Mr. Jones resided at Mr. Combs residence located in Los Angeles, California, New York City, and Miami, Florida. Mr. Jones also spent several weeks on a yacht rented by Mr. Combs in the US Virgin Islands.

27. Throughout his time with Mr. Combs, Mr. Jones witnessed, experienced, and endured many things that went far beyond his role as a Producer on the Love album.

7

28. The claims raised in this complaint have been corroborated through witness statements, video/audio recordings, and images that Mr. Jones has in his possession.

29. Mr. Combs required Mr. Jones to record him constantly. On several occasions, Mr. Combs took Mr. Jones cellphone and began recording himself. As a result, Mr. Jones has secured **HUNDREDS** of hours of footage and audio recordings of Mr. Combs, his staff, and his guests engaging in serious illegal activity.

30. Mr. Jones has secured irrefutable evidence of:

    a. The acquisition, use, and distribution of ecstasy, cocaine, GHB, ketamine, marijuana, and mushrooms,

    b. The displaying and distribution of unregistered illegal firearms,

    c. Mr. Combs providing laced alcoholic beverages to minors and sex workers at his homes in California, New York, the U. S. Virgin Islands[1], and Florida,

    d. Mr. Combs Chief of Staff, Kristina Khorram ("KK") instructing her staff to retrieve drugs so she can provide it to Mr. Combs for his consumption,

    e. Christian Combs drugging and sexually assaulting a woman[2],

    f. Mr. Combs detailing how he planned to leverage his relationship with Bishop T.D. Jakes to soften the impact on his public image of Cassie Ventura's lawsuit,

    g. Yung Miami's cousin, and or assistant sexually assaulting Mr. Jones,

    h. Actor Cuba Gooding Jr. sexually harassing and assaulting Mr. Jones,

    i. Rapper[3] (REDACTED) on Mr. Combs yacht consorting with underaged girls, sex workers, and

    j. R&B Singer[4] (REDACTED) in Mr. Combs Los Angeles home consorting with underaged girls and sex workers.

///
///
///
///
///

---

[1] This writer spoke with several employees of the yacht rented by Mr. Combs in the U.S. Virgin Islands who personally witnessed Defendant Khorram instruct her staff, Brendan Paul, Frankie Santella, and Moy Baun spike bottles of champagne with ecstasy.
[2] A complaint is forthcoming.
[3] He is a Philadelphia Rapper who dated Nicki Minaj.
[4] He is a Grammy Award winning R&B singer who had trouble with law enforcement after assaulting a Bajan Billionaire.

## CHALICE RECORDING STUDIOS SHOOTING

31. On or about September 12, 2022, Mr. Combs held a writers and producers camp at Chalice Recording Studio at 845 Highland Ave, Los Angeles, CA 90038.

32. Present at this camp were Mr. Combs, his son Justin Combs, and Justin's friend named G.

33. Mr. G is a 30-year-old tall African American male.

34. In addition to these individuals, other musicians were present at the camp. This writer has spoken to several musicians who attended the camp.

35. One evening during this camp, Mr. Combs, J. Combs, and G were in a heated conversation.

36. That conversation was moved out of the studio and into a restroom adjacent to where Mr. Jones was sitting.

37. Mr. Jones was approximately 2 feet away from the bathroom when gunshots rang out. Mr. Jones recalls hearing multiple gunshots.

38. Mr. Jones immediately went into a state of shock and feared that he would be shot next. Mr. Jones genuinely believed that he would be shot through the door due to how close he was.

39. After the shooting ended, a crowd gathered around the restroom.

40. When the door finally opened, Mr. Combs and J. Combs exited.

41. G was lying on the restroom floor in a fetal position, holding his stomach and bleeding out of his leg/hip area.

42. Everyone stood around looking upon G. Frustrated by the lack of aid to G, Mr. Jones dropped everything, ran to G, and immediately began placing pressure on G's gunshot wound to his stomach.

43. As he was applying pressure on his stomach, Mr. Jones realized that G was gushing blood from another area near his leg/hip.

44. He decided to lift G and placed him to sit on the toilet. Mr. Jones asked the crowd to call the ambulance.

45. Mr. Jones lifted G and brought him to the ambulance at the studio's front. At this time, Mr. Combs and Justin disappeared to another part of the studio.

46. Mr. Combs gave strict instructions to inform the police that he had nothing to do with the shooting. He also forced Mr. Jones to lie to the police by telling them that G was shot standing outside the studio by a drive-by assailant.



47. Mr. Jones has several corroborating witnesses who spoke with this writer anonymously due to fear of retaliation from Mr. Combs.  They have agreed to speak publicly when subpoenaed.

48. Mr. Jones has the clothing he wore that day and believes it may still have the stains and DNA of G's blood.

49. The following are screenshots of the aftermath of the restroom where G was shot by either Mr. Combs or J. Combs:



**Aftermath of the Shooting of G**

50. Clearly, G was **<u>NOT</u>** shot outside of the studio as Mr. Combs instructed his team to report to law enforcement.

51. Mr. Combs and Defendant's LR, MR, UMG, and CRS provided private security for the writers' camp at Defendant CRS.

52. The Security was porous and lackluster at best.

53. The fact that either Mr. Combs and J. Combs were allowed to enter CRS with guns, and those guns were not confiscated by security is a clear breach of duty by Mr. Combs, Defendant's LR, MR, and UMG to protect Mr. Jones and the other attendees of this writers' camp.

54. As a result of this shooting, Mr. Jones is severely traumatized.  Mr. Jones now suffers from PTSD, severe anxiety, depression, and insomnia.

55. The following is an image of Mr. Combs a couple of hours before G is shot in the restroom of Defendant CRS:





**This photo of Mr. Combs was taken at Chalice Recording Studios outside of Studio G hours before G was shot.**

### DEFENDANT CHALICE RECORDING STUDIOS, AND DEFENDANTS SEAN COMBS AND JUSTIN COMBS REPRESENTATIVE SHAWN HOLLEY PROVIDE CONFLICTING AND INTELLECTUALLY DISHONEST ACCOUNTS CONCERNING THE SHOOTING

56. On or about, February 28, 2024, Defendant CRS sent an Instagram message which alleges that G was shot a "half a block <u>away</u> from Chalice."

12



**Instagram Message From Chalice Recording Studios**

57. Upon information and belief, Shawn Holley[5] claimed that she had "evidence" the shooting took place several blocks away and that G returned to the studio after being shot.

58. Upon information and belief, TMZ[6] reports that their "law enforcement sources" claim that "the story that was told to cops that night -- namely, that the victim was robbed at gunpoint and shot by unknown assailants outside. The gunshot victim [G] stepped outside of the studio around 3:30 AM and was accosted by two individuals ... at which point they tried to rob him. … the man suffered a gunshot wound."

59. Below is an image of the front of Chalice Recording Studios:

---

[5] Shawn Holley previously represented Tory Lanez and Danny Masterson.
[6] https://www.tmz.com/2024/02/28/diddy-lawyer-women-come-forward-deny-underage-claim-lawsuit/



**Photo of Chalice Recording Studios**

60. In the photo above, there is a security gate that is being blocked by the white van.

61. Upon information and belief, to enter the building, you must buzz the gate and announce which session you are there to attend.

62. Once the correct session is confirmed, you then must go past another layer of security before you can enter the reception area.

63. Once inside the reception area you must identify yourself and the receptionist will check to ensure that you are on the list of visitors for that session.  Once you are confirmed, you are then allowed in.

64. To get to the restroom where G was bleeding out, you would have to follow a maze.  Once you've passed the receptionist, you must walk down a long hallway, walk past three recording studios, turn left, and go past a lounge area before you arrive at the restroom where G was bleeding out.

65. TMZ also reported that Mr. Combs and J. Combs were not present in the studio when the police arrived.  That is also factually inaccurate.

14

66. Mr. Combs and J. Combs were both located in Studio G across the parking lot from the building where G was shot (near studio A). Mr. Combs and J. Combs hid out in Recording Studio G while the police "investigated," and were the first to depart after the officers left[7].



**Mr. Combs Published the Love Records Chalice Recording Studios
Assignment List. Mr. Combs Stayed in Studio G
Throughout The Duration of the Writers Camp**

67. After being shot in the stomach and hip/leg, G was physically incapable of walking therefore the notion that he was shot several blocks away (Shawn Holley), half a block away (CRS), or as he stepped outside of the studio is implausible.

68. If G could do as much walking as Shawn Holley and CRS claims, then Mr. Jones would not have been required to physically pick him up off the restroom floor and walk him through the maze that is CRS for him to receive care from the ambulance.

---

[7] This FACT will be made crystal clear in discovery.

15

69. As of the date of this filing, neither the Los Angeles Police Department, nor the Los Angeles Fire Department have released any official reports surrounding this shooting.  There has been no body camera footage, and no 911 call recording.  What is even more disturbing, is that there has been no citing of G.

    a.  The LAPD has only released a vaguely written "News Release" dated September 12, 2022.

70. The unfortunate shooting of G, the unexplained disappearance of G, the lack of disclosures by the LAPD and LAFD, and the incoherent nature of Shawn Holley and Chalice Recording Studios account of the shooting raises more questions than answers, points to foul play, and a **massive coverup**.


### THE DEAFENING SILENCE FROM THE ATTENDEES OF THE CRS SHOOTING STEMS FROM UNDERSTANDABLE FEAR THAT THE ATTENDEES WOULD BE SUED BY MR. COMBS FOR VIOLATING A NON-DISCLOSURE AGREEMENT

71. A few days prior to the September 12, 2022, shooting inside of Chalice Recording Studio, Mr. Combs required all attendees of the CRS shooting to sign a Non-disclosure Agreement.

72. Mr. Jones did not sign the agreement.

73. A copy of the non-disclosure agreement[8] that a witness who has asked to remain anonymous provided this writer is attached.  (**Attachment A**).


### MR. JONES WAS SEXUALLY HARASSED, AND ASSAULTED BY MR. COMBS

74. Throughout his time living with Mr. Jones, Mr. Jones was the victim of constant unsolicited and unauthorized groping and touching of his anus by Mr. Combs.

75. These events took place in LA, NY, FL, and the United States Virgin Islands.

76. In addition to the unsolicited and unauthorized touching, Mr. Jones was forced by Mr. Combs to work in Mr. Combs' bathroom as Mr. Combs walked around naked and showered in a clear glass enclosure.

77. As a heterosexual Christian man, Mr. Jones was uncomfortable with Mr. Combs' advances and expressed his discomfort to Mr. Combs Chief of Staff, Kristina Khorram ("KK").

---

[8] Unfortunately for the attendees of the writers camp, they are unaware that NDA's are non-binding when it comes to reporting **criminal activity** such as a shooting, sex trafficking, and the distribution and use of illegal drugs and guns.

78. KK responded to Mr. Jones complaint with, "you know, Sean will be Sean."

79. KK also attempted to downplay Mr. Combs groping of Mr. Jones anus and genitals, as friendly horseplay, stating that those acts were Mr. Combs way of "showing that he likes you [Mr. Jones]".

80. Despite these assurances, on several occasions when Mr. Combs began to undress and walk around his house naked, KK would say, "okay, I am leaving now," and she would disappear.

81. KK's hypocrisy is breathtaking at best or enabling at worst.

82. Mr. Jones believes that KK aided and abetted Mr. Combs' sexual assault of him and was working with Mr. Combs to groom him into accepting a homosexual relationship.

83. Through these sexually deviant acts, one would say Mr. Combs has a pattern and practice of engaging in such nefarious activity. This ongoing conduct shows that Mr. Combs cannot be rehabilitated.


**MR. COMBS ATTEMPTED TO GROOM MR. JONES INTO ENGAGING IN GAY SEX**

84. Mr. Combs was aware that Mr. Jones looked up to, and idolized music Producer Steven Aaron Jordan ("Stevie J").

85. Stevie J is an American DJ, record producer, and television personality.

86. Stevie J was part of the Bad Boy Records production team the Hitmen.

87. In 1997, Stevie J won a Grammy Award for his work on Puff Daddy's debut album.

88. Throughout the late 1990s, Stevie J produced for several artists including Mariah Carey, Tevin Campbell, The Notorious B.I.G., 112, Jodeci, Faith Evans, Jay-Z, and Eve.

89. Stevie J was one of the producers on the Love Album.

90. Mr. Combs used access to Stevie J, and his knowledge of Mr. Jones admiration of Stevie J to groom and entice Mr. Jones to engage in homosexuality.

91. Mr. Combs went so far as to share a video of who he claims was Stevie J[9] anally penetrating a Caucasian male without a condom.  This was done to ease Mr. Jones' anxiety concerning homosexuality.  According to Mr. Combs, "this is a normal practice in the music industry, look even Stevie J[10] is doing it."

---

[9] This writer is in possession of the video and will provide a copy to the court.
[10] Stevie J denies that he is the person in the video.  A male porn star claimed that he was the black male in the video. Mr. Jones stands by his position that Mr. Combs provided him with the video and identified the individual in the video as Stevie J.

92. Mr. Combs informed Mr. Jones that he had engaged in sexual intercourse with rapper[11] (REDACTED), R&B singer[12] (REDACTED), and Stevie J.

93. Mr. Combs promised to make sure that Mr. Jones wins producer of the year at the Grammys if he engaged in homosexuality.

## THANKSGIVING 2022, MR. JONES IS SEXUALLY ASSAULTED BY YUNG MIAMI'S COUSIN

94. On Thanksgiving Day 2022, Mr. Jones was in Mr. Combs house located in Miami, Florida. Yung Miami and her female cousins were also present.

95. Mr. Combs was intoxicated and offered cocaine to Mr. Jones. Mr. Jones rejected him and proceeded to walk to the restroom.

96. While using the restroom Yung Miami's cousin burst into the bathroom and began groping Mr. Jones. Mr. Jones believes that Mr. Combs sent her in there to sexually assault Mr. Jones.

97. As she entered the bathroom she dropped to her knees and began performing oral sex on Mr. Jones exposed penis. Mr. Jones pushed her away and exited the bathroom.

98. Yung Miami's cousin did not accept Mr. Jones rejection, as she proceeded to follow Mr. Jones out of the bathroom.

99. She started undressing and attempted to straddle him and have sex with him in the presence of Mr. Combs and his staff.

100. Once again Mr. Jones pushed her off. The following are images from a video[13] of Yung Miami, her cousin, Mr. Jones, and Mr. Combs:



**Mr. Jones and Mr. Combs on Thanksgiving Day right before Mr. Combs invites Mr. Jones into the restroom and attempted to force him to take cocaine**.

---

[11] He is a Philadelphia Rapper who dated Nicki Minaj.
[12] He performed at the Superbowl and had a successful Vegas residency.
[13] This writer is in possession of the video and will provide a copy to the court.



**Yung Miami, and her female cousin who sexually assaulted Mr. Jones on Thanksgiving Day 2022**

## TRAFFICKING AND VICTIMS' PROTECTION ACT

101.  Throughout his time with Mr. Combs, Mr. Jones was transported from California to New York, Florida, and the United States Virgin Islands.

102.  During this time, Mr. Jones was forced to solicit sex workers and perform sex acts to the pleasure of Mr. Combs.

103.  On or about February 4, 2023, Mr. Combs forced Mr. Jones to bring prostitutes and sex workers back to his home in Miami, Florida.



**The Sex Workers That Mr. Combs Forced Mr. Jones To Bring Back To His Home**

104.    On or about, February 2, 2023, incident, Mr. Jones believes Mr. Combs drugged him.  Mr. Jones recalls waking up naked, dizzy, and confused.  He was in bed with two sex workers and Mr. Combs.  He also recalls aimlessly wandering around the house with no clothes on.



**Sex Workers In Mr. Jones Bed The Morning After Being Drugged**

105.    On another occasion in Miami, Florida, on Thanksgiving night of 2022, Mr. Combs asked Mr. Jones and DeForrest Taylor to enter the studio bathroom.

106.    He asked them for a hundred-dollar bill because he wanted them to do cocaine with him.

107.    Mr. Jones was scared, but luckily, he didn't have a hundred-dollar bill, so Mr. Combs waited a little later to do coke with Yung Miami.

108.    Later that evening, he required Mr. Jones to solicit sex workers from Booby Trap on the River located at 3615 NW S River Dr, Miami, FL 33142.  Mr. Jones did so, and Mr. Combs forced him to engage in unsolicited sex acts with these workers.

20



**Booby Trap on the River**

109.   As part of Mr. Jones sex worker recruitment tools, Mr. Combs provided Mr. Jones with an exclusive Bad Boy baseball cap and required him to wear it to Booby Trap on the River as a signal to any sex worker he approached that Mr. Combs was in town and had sent Mr. Jones to recruit them.

110.   Mr. Jones had no desire to visit Booby Trap on the River.  Mr. Jones had no desire to solicit sex workers from Booby Trap on the River.  Mr. Combs used his power and influence, to intimidate and force Mr. Jones into soliciting sex workers from Booby Trap on the River.  As detailed below, Mr. Combs used many tactics to maintain dominion and control of Mr. Jones.

111.   Apparently, these workers were accustomed to servicing Mr. Combs, and would know that he is in town by the sight of the Bad Boys baseball cap.

112.   The following are Instagram Profiles of two of the sex workers that Mr. Combs required Mr. Jones to solicit and have sex with at his home in Miami, Florida:



113.  Mr. Jones had no desire to solicit and or have sex with the individuals in the previous paragraph.  Mr. Combs used his power and influence, to intimidate and force Mr. Jones into soliciting and sleeping with these women.

114.  The following is the phone number of another sex worker that Mr. Combs required Mr. Jones to solicit and perform sex acts with at his home in Miami, Florida:



115.  Mr. Jones had no desire to solicit and or have sex with the individual in the previous paragraphs.  Mr. Combs used his power, and influence, to intimidate and force Mr. Jones into soliciting and sleeping with the individuals above.

116.  Mr. Combs used many tactics to maintain dominion and control of Mr. Jones.  He promised him a Grammy for Producer of the Year for the Love Album.  He offered him $250,000.00 to purchase all the instruments he wanted.  He promised him ownership of his $20,000,000 property, 1 Star Island, in Miami, Florida.  He promised access to record label executives like Defendants Lucian Charles Grainge and Ethiopia Habtemariam.

117.  Mr. Combs would often switch up his approach.  He would go from promising Mr. Jones the world to threatening Mr. Jones with physical harm.  Mr. Combs threatened to eat Mr. Jones face and informed Mr. Jones that he is willing to kill his mother, Janice Combs, if he must in order to get what he wants, so he wouldn't think twice to harm Mr. Jones.

///
///
///
///
///
///
///

22

## MR. COMBS AND J. COMBS SOLICITS, DRUGS AND ENGAGES IN ILLICIT SEX ACTS WITH MINORS AND SEX WORKERS

118.   On or about July 2, 2023, in California, Mr. Combs had a "listening party" at his home.

119.   Present at this party was a R&B artist[14] (REDACTED), J. Combs, sex workers, and some underaged girls.

120.   The event began at 7 pm.  Mr. Combs requested female sex workers and required Mr. Jones to solicit them.  An hour later, several sex workers appeared.

121.   In addition to sex workers, there were at least five women in the crowd that were under the age of sixteen.

122.   Mr. Combs forced all the women to drink laced DeLeon liquor.  Upon information and belief, Mr. Combs laced the liquor with ecstasy.

123.   Mr. Combs did not check the identification of any of these underage girls.

124.   The presence of these underage women made Mr. Jones very uncomfortable.

125.   He attempted to leave, and Mr. Combs forced him to stay.

126.   Mr. Combs went so far as to take Mr. Jones' car keys to prevent him from leaving.

127.   After being forced to drink laced DeLeon shots Mr. Jones began feeling lightheaded and recalls passing out and waking up at 4 am the following morning naked with a sex worker sleeping next to him.

128.   Screenshots of a video[15] from that night is imbedded below:

---

[14] He is a Grammy Award winning R&B singer who had trouble with law enforcement after assaulting a Bajan Billionaire.
[15] This writer is in possession of the video and will provide a copy to the court.



**Mr. Combs With an                    Underage Female                    Sex Worker**
**Underage Female**



**Justin Combs With an**
**Underage Female**

## MR. COMBS ATTEMPTS TO PASS OFF MR. JONES TO CUBA GOODING JR.

129.    Mr. Jones believes that Mr. Combs was grooming him to pass him off to his friends.

130.    This fear became reality when Mr. Combs introduced Mr. Jones to Cuba Gooding Jr. while
they were on Mr. Combs' yacht.

24

131.   During the introduction, Mr. Combs suggested that Cuba "get to know" Mr. Jones better. He then left them alone in a makeshift studio on the yacht.



**Mr. Combs and Cuba Gooding Jr. Moments Before Mr. Jones is Assaulted**

132.   As evidenced by a video, of which screenshots are imbedded below, Cuba Gooding Jr. began touching, groping, and fondling Mr. Jones' legs, his upper inner thighs near his groin, the small of his back near his buttocks and his shoulders.

133.   Mr. Jones was extremely uncomfortable, and proceeded to lean away from Mr. Gooding Jr.

134.   He rejected his advances and Mr. Gooding Jr. did not stop until Mr. Jones forcibly pushed him away.  The following is a screenshot[16] of the encounter with Cuba Gooding Jr.:

---

[16] This writer is in possession of the video and will provide a copy to the court.



**Cuba Gooding Jr[17]. Forcibly Touching Mr. Jones on Mr. Combs yacht**

## **THE LOVE ALBUM**

135.   Throughout his time with Mr. Combs, Mr. Jones was under an implied work-for-hire agreement.

136.   He was not compensated for his time living with Mr. Combs or for the songs he produced.

137.   Mr. Jones was recruited by **Frankie Santella** to work on the Love Album.  Mr. Jones informed Mr. Santella that he required the following to work on the Love Album:

   a.   $20,000.00 per song,

   b.   4 royalty points,

   c.   Credit as producer and credited for each instrument Mr. Jones played, and

   d.   Mr. Jones must retain his publishing rights.

138.   After meeting with Frankie Santella, they orally agreed to the terms detailed above.  Mr. Jones met with Defendant Combs who further reiterated and guaranteed that the terms detailed above was accepted.  As a result, Mr. Jones began working on the album.

139.   As evidence, he was listed as a producer for the following songs on the Love Albums final release:  *Deliver Me, Stay PT 1, Reachin', What's Love, Stay Awhile, Moments, Need Somebody, Homecoming,* and *Tough Love.*

140.   Mr. Combs and Defendants LR, MR, UMG all benefited from Mr. Jones' work product.

141.   They failed to compensate Mr. Jones for his work.

---

[17] Mr. Gooding Jr. has a storied history of sexually assaulting and forcibly touching individuals against their well. https://www.usatoday.com/story/entertainment/celebrities/2023/11/22/cuba-gooding-jr-lawsuits-sexual-assault-battery/71682417007/

142.   As a result, Mr. Combs, and Defendants LR, MR, UMG were all unjustly enriched at the expense of Mr. Jones.

143.   Mr. Jones attempted to work with Mr. Combs to secure his publishing and royalty rights for the work he completed on the Love album.  Mr. Combs only offered Mr. Jones $29,000.00 for 13 months, thousands of hours of work, and 9 songs that made it to the Love album. Ironically, Mr. Jones was willing to take $50,000.00, his publishing and royalties.  Mr. Combs self-serving greed would not allow him to pay[18] Mr. Jones an additional $21,000.

144.   Mr. Combs deceptive business practices became so bad that Mr. Jones was left with no choice other than to make a public plea on social media for Mr. Combs to pay him for his work.

145.   After publicly requesting that Mr. Combs do the right thing, and pay him fairly, Mr. Jones received an onslaught of threating messages from Stevie J and Love Records A&R DeForrest Taylor[19].



**DeForrest Taylor Threatening Mr. Jones**

---

[18] This writer has retained other creatives, artists, and writers who have experienced this same treatment from Mr. Combs and will file suit in the coming weeks.

[19] As the A&R of Love Records, DeForrest Taylor did not require Mr. Jones or any of the other creatives, musicians, or artists to sign an NDA.

## MR. COMBS USED HIS POWER, AND INFLUENCE TO
## THREATEN AND INTIMIDATE MR. JONES

146.    According to Mr. Jones, Mr. Combs is very forceful and demanding.

147.    Mr. Combs does not take no for an answer and would often threaten to inflict bodily harm
on Mr. Jones if Mr. Jones did not comply with his demands.

148.    As detailed above, Mr. Combs threatened to eat Mr. Jones' face.

149.    On another occasion, while standing in Mr. Combs' bedroom, Mr. Jones was forced to
watch as Mr. Combs displayed his guns and bragged about getting away with shooting people.

150.    Mr. Combs shared that he was responsible for the shooting in the nightclub in New York
City with rapper Shyne.



151.    He shared that artist, and Mr. Combs' girlfriend at the time, Jennifer Lopez, aka, J-Lo
carried the gun into the club for him and passed him the gun after he got into an altercation
with another individual.

28



152. The shooting in Chalice Recording Studios confirmed Mr. Combs' statements.

153. These statements reinforced Mr. Jones's fear of Mr. Combs and strengthened Mr. Combs dominion and control of Mr. Jones.

154. Mr. Jones was terrified of Mr. Combs. He felt like he could not tell him no.

155. Mr. Combs consistently made it clear that he has immense power in the music industry and with law enforcement.

156. Mr. Combs made it clear that his head of security, Faheem Muhammad ("Mr. Muhammad") had the power to make people and problems disappear.



**Faheem Muhammad**

157.   Mr. Combs instructs his staff to always contact Mr. Muhammad if they are ever pulled over by the police in Miami or California.

158.   Upon information and belief, Mr. Muhammad spoke with the LAPD after G was shot at CRS.  The LAPD was in CRS and witnessed the blood in the restroom, and they went with the bogus claim that the shooting of G occurred outside of the studio.  This was all thanks to Mr. Muhammad's connections within law enforcement.

159.   Mr. Jones had no reason to disbelieve Mr. Combs as he had seen firsthand through the shooting of G and the subsequent silence of the LAPD and the media that Mr. Combs indeed had the power to harm him.

160.   The LAPD spent **<u>HOURS</u>** in CRS after the shooting of G, yet there were no arrests.  Mr. Jones witnessed the LAPD in the restroom pictured above, yet no arrests were made at the scene.

161.   The morning after the shooting, Mr. Jones and several others arrived at CRS and G's blood was still on the floor of the restroom, and Mr. Combs hired a cleaning crew to clean it up.

///
///
///
///
///
///
///
///
///
///

**DEFENDANTS ETHIOPIA HABTEMARIAM, LUCIAN CHARLES GRAINGE, MOTOWN RECORDS, LOVE RECORDS, AND UNIVERSAL MUSIC GROUP AIDED, ABETTED, AND PROFITED OFF OF SEAN COMBS RICO ENTERPRISE**

162.   Mr. Jones recalls seeing Defendant Grainge[20] visiting Mr. Combs home in Miami, Florida, and Los Angeles, California.

163.   According to Mr. Jones, whenever Defendant Grainge visited Mr. Combs at his homes, it would be in the evening, and he and Mr. Combs would disappear for hours in Mr. Combs bedroom.

164.   Defendant Grainge sponsored and attended several Love Album listening parties at Mr. Combs' home in Los Angeles, California.  These parties were sponsored by Defendants MR, LR, and UMG.  As evidence above, these parties had sex workers and underage girls present.

165.   During these parties, Defendant Grainge knew or should have known that Mr. Combs was drugging the attendees through laced bottles of DeLeon Tequila, and Ciroc Vodka.



166.   It is no secret that Mr. Combs had specific bottles of alcohol designated for females, and other bottles designated for his staff, his artists, and himself.   This fact was detailed by former artists and bodyguards of Mr. Combs.

167.   As a sponsor of these events, Defendant Grainge had a duty and obligation to ensure that sex workers and underaged girls were not present, and that Mr. Combs was not spiking the alcohol with date rape drugs.

---

[20] TikTok is one of the most important short video platforms in the world. It has a significant impact on the spread of global music. Today it is believed that artists are paying more and more attention to producing music suitable for dissemination on TikTok. Due to failed contractual renewal negotiations between Universal and TikTok, a lot of music had to be removed from TikTok. This comes from the alleged lack of protection TikTok takes to ensure UMG artists' rights and creativity is preserved as well as fair compensation. On the contrary it has been alleged that the renewal failed due to UMG's own financial agenda and putting their interest first before the artist. This move has costs artists affected huge opportunities to further their growth and development within their art as well as huge financial loss. However, UMG will still continue to profit off these artist whether their music will be released back to TikTok or not.

168.   On YouTube Channel, the Art of Dialogue, former bodyguard Gene Deal exposed Mr. Combs Pill Mixing method used to spike cranberry juice and orange juice.  According to Mr. Deal, Mr. Combs would place ecstasy and other date rape drugs in the juices[21].

169.   On YouTube, the Art of Dialogue, former artist Mark Curry exposed Mr. Combs spiking bottles of Moet champagne in the VIP section of night clubs.  Mr. Combs would have a set of Moet champagne bottles for his artists, and a set for women[22].

170.   This writer has spoken with several former employees of Mr. Combs who witnessed Defendant Khorram instruct her staff to lace Champagne, DeLeon, and Ciroc liquor bottles with ecstasy and other elicit drugs.

171.   Mr. Jones recalls seeing Defendant Habtemariam visiting Mr. Combs home in Miami, Florida, and Los Angeles, California.

172.   According to Mr. Jones, whenever Defendant Habtemariam visited Mr. Combs at his homes, it would be in the evening, and she and Mr. Combs would disappear for hours in Mr. Combs bedroom.

173.   According to Mr. Jones, Defendant Habtemariam visited Mr. Combs at Defendant CRS during Mr. Combs writing camp.

174.   Defendant Habtemariam sponsored and attended several Love Album listening parties at Mr. Combs' home in Los Angeles, California.  These parties were sponsored by Defendants MR, LR, and UMG.  As evidence above, these parties had sex workers and underage girls present.

175.   During these parties, Defendant Habtemariam knew or should have known that Mr. Combs was drugging the attendees through laced bottles of DeLeon Tequila, and Ciroc Vodka.

176.   As a sponsor of these events, Defendant Habtemariam had a duty and obligation to ensure that sex workers and underaged girls were not present, and that Mr. Combs was not spiking the alcohol with date rape drugs.

///
///
///
///

---

[21] https://youtu.be/MFIP8b2IDeg?si=VVM397WmKXlnbHU-
[22] https://youtu.be/pjvhfwUmMQw?si=6-5_W6evemGP_AI0

## DEFENDANT KRISTINA KHORRAM IS THE GHISLAINE MAXWELL TO SEAN COMBS JEFFREY EPSTEIN



177.   According to Mr. Jones during the thirteen months he lived and traveled with Mr. Combs, he witnessed Mr. Combs display and distribute guns from his bedroom closet in Miami, Florida and Los Angeles, California to questionable individuals dressed in all black.

178.   According to Mr. Jones during the thirteen months he lived and traveled with Mr. Combs, he witnessed Defendant Khorram openly order her assistants to keep Mr. Combs "high" off gummies and pills[23].

179.   Defendant Khorram required all employees from the butler, the chef to the housekeepers, to walk around with a pouch or fanny pack filled with cocaine, GHB, ecstasy, marijuana gummies (100 - 250 mg's each), and Tuci (a pink drug that is a combination of ecstasy and cocaine).



**TUCI**

180.   It was important to Defendant Khorram to have Mr. Combs' drug of choice immediately ready when he asks for it.

181.   Defendant Khorram ordered sex workers, and prostitutes for Mr. Combs.

---

[23] We have a recording of this and will provide it to the court.

33

182.   Defendant Khorram ordered and distributed ecstasy, cocaine, GHB, ketamine, marijuana, and mushrooms to Mr. Combs and his celebrity guests who were present on his rented yacht, and in his homes in LA, NYC, and Miami.

183.   On multiple occasions, Defendant Khorram forced Mr. Jones to carry Mr. Combs drug pouch against his will.

184.   As the Chief of Staff, Defendant Khorram was instrumental in organizing and executing the RICO Enterprise.   Defendant Khorram had the following individuals execute the following tasks for the RICO enterprise:

   a.   **Stevie J**: Recruits sex workers and attends and participates in freak offs[24].
   b.   **Justin Combs**:   Solicits Prostitutes, Underaged Girls, and Sex Workers.   Would engage in Freak Offs.
   c.   **Brendan Paul**: Works as Mr. Combs Mule.   He acquires, and distributes, Mr. Combs Drugs, and Guns.



**Brendan Paul and Mr. Combs**

   d.   **Frankie Santella[25]**:   Works alongside Brendan.   While Brendan acquires, and distributes, Mr. Combs Drugs, and Guns.   Frankie carries the money and pays for the Guns and Drugs.

---

[24] We have a video of Mr. Combs, Stevie J, and Plaintiff Jones at a strip club.   Mr. Combs is recording the video, while coaching and training Plaintiff Jones how to recruit the sex workers.
[25] Vice President of Music Management & Strategic Partnerships Vice President of Music Management & Strategic Partnerships, Combs Global.



**Frankie Santella and Sean Combs**

e. **Moy Baun**: Hires sex workers, attends and participates in freak offs.



**Moy Baun, Thanksgiving 2022 When Mr. Combs Offered Mr. Jones Cocaine**.

185.   Mr. Combs funded and used his affiliation with local gangs and gang leaders[26] who would frequent his homes in LA, and Miami to secure the drugs and guns he obtained and distributed out of his homes in LA and Miami.

---

[26] Plaintiff has intentionally left the names, and images of these individuals out of the pleading out of fear of retaliation.

35

186.   Defendants executed their RICO Enterprise with threats of violence: threatening to eat Plaintiff's face, displaying and distributing guns in Plaintiff's presence, bragging about having law enforcement under control, bragging about murdering people, and bragging about bribing witnesses, and jurors in the criminal case concerning the 1999 NYC nightclub shooting with Shyne.

187.   Defendants executed their RICO Enterprise with threats of isolation from the music and entertainment industry: parading powerful music industry executives such as Defendants Lucian Charles Grainge, Ethiopia Habtemariam at his parties filled with sex workers, minors, and illegal drugs, such as ecstasy, cocaine, GHB, ketamine, marijuana, and mushrooms.

188.   Defendants executed their RICO Enterprise with threats of nonpayment for work completed, fake promises of cash payments ($250,000), producer of the year Grammy awards, and guaranteed access to future projects, and a $20 million dollar home on Star Island in Miami.

**MR. COMBS IS ALLOWED TO WREAK HAVOC**

189.   While living and traveling with Mr. Combs, Mr. Jones discovered that Mr. Combs has hidden cameras in every room of his homes.

190.   Mr. Jones believes that Mr. Combs has recordings of Defendants Lucian Charles Grainge, Ethiopia Habtemariam, as well as other celebrities, music label executives, politicians, and athletes.

191.   Upon information and belief, these individuals were recorded without their knowledge and consent, and as is the case with the homosexual sex tape of Stevie J that Mr. Combs provided to Mr. Jones, Mr. Combs possesses compromising footage of every person that has attended his freak off parties, and his house parties.

192.   Upon information and belief, due to this treasure trove of evidence he has in his possession, Mr. Combs believes that he is above the law and is untouchable.

193.   Upon information and belief, Mr. Combs employs Jose Cruz as his IT director.  This writer has spoken to several former employees of Mr. Combs, who confirmed that Jose Cruz is the gatekeeper to all of Mr. Coms recordings.

194.  Upon information and belief, Jose Cruz intentionally hides behind the camera, and from
social media and the internet due to all of the incriminating acts he was required to record for
Mr. Combs.



## DEFENDANT MR. COMBS HIRED PRIVATE INVESTIGATOR RUSSELL L. GREENE TO SEEK OUT, HARASS, AND BRIBE INDIVIDUALS TO PROVIDE DIRT ON MR. JONES

195.  On or about March 2, 2024, Mr. Jones was informed by a close friend from his church that
Mr. Combs' engineer Matt Testa provided an individual's phone number to Los Angeles based
private investigator Russell L. Greene[27].

---

[27] https://nextdoor.com/pages/blue-diamond-investigationscom/

37



196. Upon information and belief, Mr. Greene attempted to bribe this anonymous individual with an uncertain amount of money in exchange for her producing text messages, or any evidence that this individual can produce to paint Mr. Jones in a bad light.

197. This individual is now terrified for their safety and the safety of their family.

198. This is a clear example of some of the tactics that are implemented by Mr. Combs and the members of the Combs Rico Enterprise.

/// 
///
///

## FIRST CAUSE OF ACTION
## CONDUCT AND PARTICIPATE IN A RICO ENTERPRISE
## THROUGH A PATTERN OF RACKETEERING ACTIVITY
## VIOLATION OF RACKETEER INFLUENCED AND
## CORRUPT ORGANIZATION ACT, CODIFIED AT 18 U.S.C. § 1962(A), (C)-(D)
**(against, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Sean Combs, Justin Combs, Kristina Khorram, Combs Global, Motown Records, Love Records, And Universal Music Group)**

199.   Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

200.   As respondent superior, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Combs Global, Motown Records, Love Records, and Universal Music Group ("the respondent superior collective") are 100% liable for the actions of Sean Combs, Justin Combs, Kristina Khorram as they were acting in their capacities as the respondent superior collectives' employees when they committed the acts detailed below.  The respondent superior collective failed to adequately monitor, warn, or supervise the actions of Sean Combs, Justin Combs and Kristina Khorram.

201.   Defendants are individuals and/or entities within the meaning of "person" as defined in 18 U.S.C. § 1961(3) because each is capable of holding, and does hold, "a legal or beneficial interest in property." The association is composed of Lucian Charles Grainge, Ethiopia Habtemariam, Sean Combs, Justin Combs, Kristina Khorram, Combs Global, Motown Records, Love Records, Universal Music Group, JOHN, and JANE DOES 1-10, and ABC CORPORATIONS 1-10.

202.   Section 1962(a) makes it:

unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through a collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, Title18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce.  18 U.S.C. § 1962(a).

203.   Section 1962(c) makes it:

unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.  18 U.S.C. §1962(c).

204.   Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(a) and (c), among other provisions. 18 U.S.C. § 1962(d).

205.   Defendants are associated with each other as an enterprise within the meaning of "enterprise" as defined in 18 U.S.C. § 1961(4).

206.   Defendants have unlawfully increased their profits by luring, and deceiving producers, musicians, writers, creators, and artists such as Plaintiff to transport drugs (ecstasy, cocaine, GHB, ketamine, marijuana, and mushrooms), transport firearms, solicit minors, exotic dancers, sex workers, and to utilize their talents and labor to produce music, and other tangible goods and services without compensation.

207.   The RICO enterprise, which all Defendants have engaged in, and the activities of which affected interstate and foreign commerce, is comprised of an association, in fact, of persons, including each Defendant and other unnamed co-conspirators. That association, in fact, was structured by various contracts and non-contractual relationships between the Defendants, by which Defendants assumed different roles in agreeing to carry out a mail and wire fraud scheme to acquire drugs, firearms, prostitutes, minors, sex workers and the labor of producers, musicians, writers, creators, and artists such as Plaintiff to utilize their talents and labor to produce music, and other tangible goods and services without compensation.

208.   The members of the RICO enterprise all share a common purpose: to enrich themselves financially and sexually at the expense of producers, musicians, writers, creators, and artists by maximizing Defendants' revenues through fraudulent means.   As set forth herein, Defendants benefitted financially from their scheme to defraud Plaintiff, by intimidating Plaintiff with threats of violence (threatening to eat Plaintiff's face, displaying and distributing guns in Plaintiff's presence, bragging about having law enforcement under control, bragging about murdering people, and bragging about bribing witnesses, and jurors in the criminal case concerning the 1999 NYC nightclub shooting with Shyne), threats of isolation from the music and entertainment industry (parading powerful music industry executives such as Defendants Lucian Charles Grainge, Ethiopia Habtemariam at his parties filled with sex workers, minors, and illegal drugs, such as ecstasy, cocaine, GHB, ketamine, marijuana, and mushrooms), threats of nonpayment for work completed, fake promises of cash payments ($250,000), producer of the year Grammy awards, and guaranteed access to future projects, a $20 million

dollar home on Star Island in Miami, which Defendants would not have done but for the existence of the scheme.

209.  The members of the RICO enterprise all share a common purpose: to enrich themselves financially and sexually at the expense of producers, musicians, writers, creators, and artists by maximizing Defendants' revenues through fraudulent means. As set forth herein, Defendants benefitted financially from their scheme to defraud Plaintiff, including by making false representations that claim that loyalty and obedience to Mr. Combs will result in cash payments ($250,000), Grammy awards, access to future projects, access to famous celebrities, access to famous athletes, a $20 million home on Star Island in Miami.  Promises that Plaintiff can increase his chances of securing cash payments ($250,000), Grammy awards, access to future projects, access to famous celebrities, access to famous athletes, a $20 million home on Star Island in Miami by soliciting sex workers, by soliciting prostitutes, by engaging is homosexual acts, by distributing and transporting firearms, by distributing and transporting drugs (ecstasy, cocaine, GHB, ketamine, marijuana, and mushrooms), by involuntarily sleeping with sex workers in the presence of Mr. Combs, and by utilizing their talents and labor to produce music, and other tangible goods and services without compensation, which Defendants would not have done but for the existence of the scheme.

210.  Upon information and belief, this RICO enterprise has existed for at least 20 years, dating back to the 1999 Nightclub shooting in NYC, when Mr. Combs required his then-girlfriend, Jennifer Lopez, to transport his illegal firearm into the NYC nightclub. Mr. Combs forced his then-artist, Shyne, to assume responsibility for the shooting of several individuals. Mr. Combs used his power, money, and influence to bribe jurors and witnesses, such as the friend of the shooting victim, Natania Reuben[28], who reported to law enforcement that she saw Mr. Combs and not Shyne pull the trigger and shoot her friend in the face. Natania Reuben's friend later testified at Mr. Combs' criminal trial that she was tying her shoe and may not have seen who shot the gun. She later confessed that Mr. Combs paid her.

211.  The RICO enterprise continued throughout the years, including during Mr. Combs's ten-year relationship with his girlfriend, Cassie Ventura.  According to Ms. Ventura's civil complaint, this RICO enterprise continued in her relationship when Mr. Combs forced her to

---

[28] Sean Combs Shot Natania Reuben in the face.
https://twitter.com/artofdialogue_/status/1763077925312626840?s=10&t=BXbfHrW6wd_dVPFNUUlOUQ

carry his gun in her purse, forced her to engage in unwanted sexual acts with male prostitutes/sex workers, forced her to consume dangerous amounts of ecstasy, cocaine, GHB, ketamine, marijuana and alcohol, and paying a member of his security team $5,000, to blow up the vehicle of Kid Cudi because he was jealous and insecure of their relationship.

212.  The RICO enterprise continued from September 2022 to the present day.  As evidenced by the hundreds of hours of video and audio recordings in Plaintiff's possession, Defendants Sean Combs, Justin Combs, Kristina Khorram, his assistants and staff all orchestrated, participated, managed and executed the RICO Enterprise by purchasing and distributing ecstasy, cocaine, GHB, ketamine, marijuana, and mushrooms, by purchase and distributing firearms, by requiring the solicitation of sexual encounters with prostitutes, sex workers, and minors, and by forcing artists, creatives, musicians, and producers to utilize their talents and labor to produce music, and other tangible goods and services without compensation.  The RICO enterprise has functioned as a continuing unit and maintains an ascertainable structure separate and distinct from the pattern of racketeering activity.

213.  The enterprise was characterized by the Defendants' pattern of false representations and omissions made by Defendants Sean Combs, Justin Combs, Kristina Khorram, and other current and former members of the Defendants' associates and staff to Defendants' artists, creatives, musicians, and producers.  These false representations and omissions were designed to induce Defendants' artists, creatives, musicians, and producers to utilize their talents and labor to produce music and other tangible goods and services without compensation, as well as the solicitation of sexual encounters with prostitutes, sex workers, and minors, and the purchasing and distribution of illegal firearms and drugs.

214.  As part of this scheme, Defendants required their artists, creatives, musicians, and producers to visit strip clubs wearing exclusive authentic Bad Boy merchandise and to use the name and reputation of Mr. Combs to solicit sex workers and prostitutes.  Additionally, Mr. Combs used the prospects of winning Grammy awards, purchasing $20 million dollar homes, participating in future projects, making $250,000 cash payments, and meeting influential music industry executives such as Defendants Lucian Charles Grainge and Ethiopia Habtemariam.  This pattern of false representations was disseminated to artists, creatives, musicians, and producers who reside in California, Florida, New York, and around the country by Defendants based in California and New York under the direction and on behalf of

42

Defendants in New York. The dissemination typically used interstate telephone wires, social media messages, and electronic mail.

215. The true nature of Defendants' scheme was left undisclosed, was omitted, and/or was affirmatively misrepresented, all to fraudulently increase Defendants' profits, at least some of which were used to expand the enterprise, causing further injury to Plaintiff Jones and other unwitting artists, creatives, musicians, and producers.

216. Defendants profited from the enterprise, and Plaintiff Jones suffered because the enterprise diminished Plaintiff Jones finances due to 13 months of nonpayment and diminished Plaintiff Jones health through consistent drugging and forced sexual encounters with prostitutes and sex workers. Defendants used the proceeds from this scheme to advance the scheme by funding and operating their marketing machine, including through the use of the mail, social media, word of mouth, and interstate wires to sell the illusion that Mr. Combs was serious about the talents and skills of the artists, creatives, musicians, and producers, and wanted to use those skills to make music when nothing could be further from the truth. Defendants provided their artists, creatives, musicians, and producers with this misrepresentative information, including via email all over interstate wireline communications systems and obtaining free labor, the distribution of drugs and firearms, as well as prostitutes, sex workers, and minors. Defendants obtained revenue via wire transfers, documents, and banking transactions that were exchanged via electronic means over interstate wires, thereby growing the enterprise and causing further injury to Plaintiff Jones as described throughout.

217. The Defendants' scheme was reasonably calculated to deceive Plaintiff Jones, artists, creatives, musicians, and producers of ordinary prudence and comprehension through the execution of their complex and illegal scheme to misrepresent the effectiveness of soliciting prostitutes, sex workers, and minors and distributing drugs and guns that did not, would not, and could not lead to securing Grammy Awards, purchasing $20 million homes, participating on future projects, $250,000 cash payments, and meeting influential music industry executives such as Defendants Lucian Charles Grainge, and Ethiopia Habtemariam. Plaintiff Jones would not have lived with Mr. Combs for 13 months, missing birthdays, holidays, and family events, but for the illegal racketeering scheme operated by Defendants.

218. Defendants each had the specific intent to participate in the overall RICO enterprise and the scheme to defraud Plaintiff Jones and each participated in the enterprise as follows:

219.   Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Combs Global, Motown Records, Love Records, and Universal Music Group control and participate in the activities of the enterprise in a variety of ways as set forth herein, including but not limited to developing and marketing scores of writing camps, and listening parties services that are marketed to innocent, unassuming artists, creatives, musicians, and producers who are vulnerable and in seek of opportunities to work and share their craft.

220.   Throughout the relevant period, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Combs Global, Motown Records, Love Records, and Universal Music Group oversaw the activities of Defendants Sean Combs, Justin Combs, Kristina Khorram and other current and former members of the Defendants' associates and staff (collectively, "Individual Defendants"). Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Combs Global, Motown Records, Love Records, and Universal Music Group has an ethical obligation as respondent superior to supervise the actions and activities of the individual defendants. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Combs Global, Motown Records, Love Records, and Universal Music Group failed miserably to do so. Individual defendants relied on the mail, email, social media, and the telephone to distribute advertisements to secure artists, creatives, musicians, and producers whom they would promise Grammy Awards, purchasing $20 million dollar homes, participating on future projects, $250,000 cash payments, and meeting powerful music industry executives such as Defendants Lucian Charles Grainge, Ethiopia Habtemariam. These advertisements originated from and were sent from Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Combs Global, Motown Records, Love Records, and Universal Music Group's offices in the state of New York to consumers in New York and around the country, relying on the mail, email. social media messenger, and telephone to distribute and interstate wires to disseminate the misleading information described herein as well as to receive profits from the artists, creatives, musicians, and producers.

221.   In connection with Defendants acting from New York, these Defendants used the mail and interstate wires to solicit Plaintiff Jones and artists, creatives, musicians, and producers, and to use Plaintiff Jones and the artists, creatives, musicians, and producers to utilize their talents and labor to produce music, and other tangible goods and services without compensation, as well as the solicitation of sexual encounters with prostitutes, sex workers, and minors, and the

purchasing and distribution of illegal firearms and drugs. Each of these acts was undertaken with the knowledge and approval of all other Defendants in furtherance of the goals of their conspiracy.

222. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Combs Global, Motown Records, Love Records, and Universal Music Group, directs, controls, and participates in the activities of the enterprise in a variety of ways as set forth herein, including as the employer, parent company, sponsor and respondent superior of Defendants Sean Combs, Justin Combs, Kristina Khorram and other current and former members of the Defendants' associates and staff. Throughout the relevant period, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Combs Global, Motown Records, Love Records, and Universal Music Group, oversaw the marketing and soliciting of potential artists, creatives, musicians, and producers from their Headquarters in New York, California and Florida to consumers in New York, California and Florida, and around the country, relying on the mail, email, social media, text messages, and WhatsApp messages to distribute, interstate wires to disseminate the misleading information described herein as well as to receive profits from the artists, creatives, musicians, and producers from their forced solicitation of sex workers, and the solicitation of sexual encounters with prostitutes, sex workers, and minors, and the purchasing and distribution of illegal firearms and drugs. Each of these acts was undertaken with the knowledge and approval of all other Defendants in furtherance of the goals of their conspiracy.

223. Robin Greenhill, the accountant, would ensure the wiring, funds transfer, or cash payments to sex workers. Frankie Santella, Moy Baun, Brendan Paul, and KK would also be responsible for ensuring payment to sex workers in cash. Yung Miami, Jade, and Daphne Joy were paid a monthly fee to work as Mr. Combs' sex workers and received payment via wire transfer from Robin Greenhill which outlined Defendants ongoing criminal operation.

224. During the ten (10) years preceding the filing of this action and to the present, all Defendants did cooperate jointly and severally in the commission of three (3) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. 1962(d), as described in this Complaint.

225. Beginning at an exact date unknown to Plaintiff, but within ten (10) years preceding the filing of this action, Defendants have knowingly, willfully, and unlawfully participated in a pattern of racketeering activity that continues to this day.

226.   The acts set below ("Racketeering Acts") had the same pattern and purpose to defraud Plaintiff for the benefit of Defendants.  Each Racketeering Act involved the same or similar methods of commission and participants.

227.   Without the repeated predicate acts, the ability to conduct their fraud using the mail and telecommunications wires, and the money laundering, the Defendants' business would not have succeeded.

228.   The separate Racketeering Acts all relate to each other in that they were part of concerted actions by Defendants to use the endorsement and channels of the enterprise to operate their businesses to fraudulently induce Plaintiff Jones and the artists, creatives, musicians, and producers to utilize their talents and labor to produce music, and other tangible goods and services without compensation, as well as the solicitation of and sexual encounters with prostitutes, sex workers, and minors, and the purchasing and distribution of illegal firearms and drugs.

229.   The separate Racketeering Acts all relate to each other in that they were part of concerted actions by Defendants to use the endorsement and channels of the enterprise to operate their businesses to fraudulently induce Plaintiff Jones and the artists, creatives, musicians, and producers to utilize their talents and labor to produce music, and other tangible goods and services without compensation, as well as the solicitation of and sexual encounters with prostitutes, sex workers, and minors, and the purchasing and distribution of illegal firearms and drugs.

230.   The Defendants' wrongful conduct has caused injury to Plaintiff Jones, remains a part of their ongoing business practices, and remains a continuing threat to Plaintiff Jones and the public.

231.   Defendants' association with the enterprise enabled Defendants to conduct, direct, and control a pattern of fraudulent, illegal activities over a substantial number of years, which continues to this day.

232.   To further their goals, Defendants, working in concert, engaged in various forms of criminal activity, including the solicitation of and sexual encounters with prostitutes, sex workers, and minors, and the purchasing and distribution of illegal firearms and drugs.

233.   Defendants' ongoing pattern of racketeering activity has injured and continues to injure Plaintiff Jones.  The Defendants' pattern of forcing Plaintiff Jones and the artists, creatives,

musicians, and producers to solicit sexual encounters with prostitutes, sex workers, and minors, and to purchase and distribute illegal firearms and drugs was the proximate cause of the injuries suffered by Plaintiff.

**Defendants Committed Multiple Acts of Mail Fraud in Violation of 18 U.S.C. § 1341 in Furtherance of the Enterprise**

234. Defendants voluntarily and intentionally devised and participated in a scheme to defraud Plaintiffs out of money, in reliance on the mail. Defendants committed these acts with the intent to defraud Plaintiff Jones and the artists, creatives, musicians, and producers.

235. Defendants used the mail for the purpose of executing the fraudulent scheme herein.

236. Specifically, Defendants agreed to each of the acts of mail fraud described throughout this Complaint. In addition, Defendants agreed to rely on the mail to secure wire frauds, cash payments from purchasers of the illegal firearms and drugs Defendants required others to sell and distribute.

237. In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme to defraud, Defendants, either individually or in combination with themselves, used and caused to be used the U.S. mail by both placing and causing to be placed cash, letters, marketing materials, advertisements, agreements and other matters in depositories and by removing or causing to be removed letters and other mailable matters from depositories, in violation of the mail fraud statute, 18 U.S.C. § 1341.

238. Defendants could not have furthered their fraud without the use of the mail. For example, Defendants sought to acquire wire transfers, cash payments, and to utilize their talents and labor to produce music, and other tangible goods and services without compensation. Defendants also required the mail to distribute misleading advertisements to various states, including New York. For these reasons, the use of mail to conduct fraudulent activity was necessary and inevitable.

**Defendants Committed Multiple Acts of Wire Fraud in Violation of 18 U.S.C. § 1343 in Furtherance of the Enterprise**

239. Defendants voluntarily and intentionally devised and participated in a scheme to defraud Plaintiff out of money, in reliance on the mail. Defendants committed these acts with the intent to defraud Plaintiff Jones and the artists, creatives, musicians, and producers.

240. Specifically, Defendants agreed to each of the acts of wire fraud described throughout this Complaint. In addition, Defendants agreed to rely on interstate wires to disseminate funds and

to submit payment to sex workers and prostitutes, as well as to transfer payment for the distribution and procurement of drugs and guns. Defendants illegally acquired wire transfers, money transfers, credit cards, and bank cards via search engines and other online platforms to further their collective goal of furthering their RICO enterprise. Defendants knew that these online purchases were illegally made.

241.   Additionally, Defendants agreed that Defendants should facilitate these fraudulent purchases over interstate wires in furtherance of the fraud. Sex workers, and prostitutes nationwide have received payment from Defendants.

242.   In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice to defraud, Defendants, either individually or in combination with themselves, used or caused to be used interstate wire communications to transmit or disseminate false, fraudulent, and misleading communications and information, in violation of the wire fraud statute, 18 U.S.C. § 1343.

243.   Defendants could not have furthered their fraud without the ability to use telecommunications to share information with clients and retailers nationwide. Because Defendants needed to communicate with clients and retailers around the country, the use of interstate telecommunications wires to conduct the fraudulent activity was necessary and inevitable.

244.   Plaintiffs have been damaged in their business or property because Defendants violated 18 U.S.C. § 1962(a), (c)-(d)), and, therefore, he is entitled to recover the damages and other remedies enumerated therein.

245.   Defendants' acts or omissions were actuated by actual malice and/or a willful and wanton disregard for the consequences suffered by the Plaintiff and/or with knowledge of a high degree of probability of harm to the Plaintiff and reckless indifference to the consequences of their acts or omissions.

246.   Compensatory damages alone will be insufficient to deter such conduct in the future. There needs to be a criminal referral to the United States Justice Department, as well as to the States Attorney General's Office.

**WHEREFORE,** Plaintiff requests that the Court issue an Order and grant Judgment to the Plaintiffs as follows:

a. Granting Plaintiff statutory, common law, and punitive damages, and applicable pre- and post-judgment interest, in full recompense for damages;[29]

b. Entering judgment according to the declaratory relief sought;

c. Granting Plaintiff such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances; and

d. Granting Plaintiff an Incentive or Service Award reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

## <u>SECOND CAUSE OF ACTION</u>
## SEXUAL ASSAULT AND SEXUAL HARASSMENT
### (against Mr. Combs)

247. Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

248. As described above, Mr. Combs frightened and placed Plaintiff in apprehension of harm when he physically and sexually assaulted him from October 2022 to October 2023 in Mr. Combs home in Miami, New York, United States Virgin Islands, and Los Angeles.

249. Mr. Combs forcibly touched and attempted and/or threatened to touch Plaintiff's intimate areas and/or touched Plaintiff with his own intimate body parts.

250. Mr. Combs violently gripped and palmed Mr. Jones anus and crotch without consent. Mr. Combs forced Mr. Jones to work in Mr. Combs' bathroom and watch Mr. Combs as he showered. Mr. Combs forced Mr. Jones to work in the studio while Mr. Combs stripped naked to get his body massaged. Mr. Combs forced Mr. Jones to work while Mr. Combs walked around naked.

251. As a result of Mr. Combs' conduct, Plaintiff has suffered and continues to suffer harm, including physical injury, severe emotional distress, humiliation, anxiety, and other consequential damages for which he is entitled to an award of monetary damages and other relief.

252. The conduct of Mr. Combs described above was willful, wanton, and malicious. At all relevant times, Mr. Combs acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury

---

[29] Damages shall include, but not be limited to, all damages permitted under the New Jersey Racketeer Influenced and Corrupt Organizations Act.

and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

### THIRD CAUSE OF ACTION
### CALIFORNIA'S BYSTANDER NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (against, Mr. Combs and Defendant Justin Combs)

253. Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

254. Mr. Jones brings this claim against Mr. Combs and J. Combs for the CRS shooting of G.

255. The elements of Bystander NIED are: 1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." *Ra v. Superior Court*, 154 Cal. App. 4th 142, 148, 64 Cal. Rptr. 3d 539, 542 (2007).

256. As detailed above, Mr. Jones was 2 feet away from G, as either J. Combs or Mr. Combs shot him multiple times in the restroom of CRS. As detailed above, Mr. Jones was the only individual that aided G as he laid on the bathroom floor in a fetal position bleeding out. As detailed above, Mr. Combs and J. Combs orchestrated a coverup, and through Faheem Muhammad, lied to the LAPD and forced Mr. Jones and all of the other attendees of the writers camp to lie to the police as well. Mr. Combs and J. Combs knew that they shot G in the restroom, and that G was shot as he was leaving the studio.

257. Mr. Combs and J. Combs' intentional deception caused a delay in G receiving immediate medical care, as the ambulance parked 3 blocks away from CRS out of fear that there was an active shooting. Mr. Jones had to run down the block and convince them that the shooting had ended.

258. These events traumatized Mr. Jones. It caused Mr. Jones to suffer from insomnia, PTSD, severe anxiety, and depression. Additionally, the fear and silence from the remaining witnesses aided in the reinforcement of Mr. Combs statements that he is untouchable.

259. As a result of Mr. Combs and J. Combs conduct, Plaintiff Jones has suffered and continues to suffer harm, including severe emotional distress, anxiety, and other consequential damages for which he is entitled to an award of monetary damages and other relief.

260.   The conduct of Mr. Combs and J. Combs described above was willful, wanton, and malicious.  At all relevant times, Mr. Combs and J. Combs acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury to Plaintiff, and intended to cause fear, physical injury and/or pain and suffering to Plaintiff.  By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

### FOURTH CAUSE OF ACTION
### SEXUAL ASSAULT
### (against Jane Doe 1 (Yung Miami's Cousin))

261.   Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

262.   As described above, Jane Doe 1 frightened and placed Plaintiff in apprehension of harm when she physically and sexually assaulted him on Thanksgiving Day 2022, in Mr. Combs home in Miami Florida.

263.   Jane Doe 1 forcibly touched and attempted and/or threatened to touch Plaintiff's intimate areas and/or touched Plaintiff with her own intimate body parts.  Jane Doe 1 used her mouth and performed oral sex on Plaintiff while he was urinating in the restroom.  Plaintiff fought her off, while Mr. Combs and his associates sat outside loudly laughing.  Jane Doe 1 then followed Mr. Jones outside of the restroom and began undressing in front of Mr. Combs and his associates, straddled Mr. Jones and attempted to have forced sexual intercourse with him.

264.   As a result of Jane Doe 1's conduct, Plaintiff has suffered and continues to suffer harm, including physical injury, severe emotional distress, humiliation, anxiety, and other consequential damages for which he is entitled to an award of monetary damages and other relief.

265.   The conduct of Jane Doe 1 described above was willful, wanton, and malicious.  At all relevant times, Jane Doe 1 acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that her conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury and/or pain and suffering to Plaintiff.  By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

///
///

## FIFTH CAUSE OF ACTION
## PREMISES LIABILITY FOR THE SEXUAL ASSAULT COMMITTED BY
## JANE DOE 1 (YUNG MIAMI'S COUSIN)
### (against Mr. Combs)

266.   Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

267.   Mr. Jones was sexually assaulted by Jane Doe 1 in Miami, Florida on Thanksgiving 2022. Mr. Combs was present while Mr. Jones was being assaulted by Jane Doe 1.  Mr. Jones was legally on the premises as a guest and invitee of Mr. Combs.  Jane Doe 1 was legally on the premises as a guest and invitee of Mr. Combs.  Mr. Combs owned the premises and had dominion and control over the premises where Mr. Jones was harmed.  Mr. Combs had dominion and control over the actions of Jane Doe 1 and failed to step in and stop Jane Doe 1 from sexually assaulting Mr. Jones.

268.   As the owner of the property, Mr. Combs had a duty to protect Mr. Jones from the harm he suffered at the hands of Jane Doe 1.  Mr. Combs breached his duty when he failed to stop Jane Doe 1 from sexually assaulting Mr. Jones.  In furtherance of this breach, Mr. Combs was laughing and encouraging Jane Doe 1 to continue her assault of Mr. Jones.  Mr. Jones has suffered immensely because of Mr. Combs intentional breach of his duty to him.

269.   As a result of Mr. Combs breach of his duty, Mr. Jones has suffered and continues to suffer harm, including severe emotional distress, anxiety, and other consequential damages for which he is entitled to an award of monetary damages and other relief.

270.   The conduct of Mr. Combs described above was willful, wanton, and malicious.  At all relevant times, Mr. Combs acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury to Plaintiff, and intended to cause fear, physical injury and/or pain and suffering to Plaintiff.  By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

///
///
///
///
///
///
///
///

52

## SIXTH CAUSE OF ACTION
## PREMISES LIABILITY FOR THE SEXUAL ASSAULT COMMITTED
## BY CUBA GOODING, JR.
### (against, Mr. Combs)

271.   Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

272.   Here, Mr. Jones was sexually assaulted by Cuba Gooding Jr. on a yacht rented by Mr. Combs in the US Virgin Islands in January 2023.  Mr. Combs was present while Mr. Jones was being assaulted by Cuba Gooding Jr.  Mr. Jones was legally on the premises as a guest and invitee of Mr. Combs.  Cuba Gooding Jr was legally on the premises as a guest and invitee of Mr. Combs.  Mr. Combs owned (through renting) the premises and had dominion and control over the premises where Mr. Jones was harmed.  Mr. Combs had dominion and control over the actions of Cuba Gooding Jr and failed to step in and stop Cuba Gooding Jr from sexually assaulting Mr. Jones.

273.   As the owner of the property, Mr. Combs had a duty to protect Mr. Jones from the harm he suffered at the hands of Cuba Gooding Jr.  Mr. Combs breached his duty when he failed to stop Cuba Gooding Jr from sexually assaulting Mr. Jones.  In furtherance of this breach, Mr. Combs encouraged Cuba Gooding Jr to continue his assault of Mr. Jones when he said that Cuba Gooding Jr should privately get to know Mr. Jones better.  Mr. Jones has suffered immensely because of Mr. Combs intentional breach of his duty to him.

274.   As a result of Mr. Combs breach of his duty, Mr. Jones has suffered and continues to suffer harm, including severe emotional distress, anxiety, and other consequential damages for which he is entitled to an award of monetary damages and other relief.

275.   The conduct of Mr. Combs described above was willful, wanton, and malicious.  At all relevant times, Mr. Combs acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury to Plaintiff, and intended to cause fear, physical injury and/or pain and suffering to Plaintiff.  By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

///
///
///
///
///

53

## SEVENTH CAUSE OF ACTION
## TRAFFICKING AND VICTIMS' PROTECTION ACT
### (against, Defendants Sean Combs, Justin Combs, Kristina Khorram, And Combs Global)

276.   Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

277.   Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global knowingly and intentionally participated in, perpetrated, assisted, supported, facilitated a sex-trafficking venture that was in and affecting interstate and foreign commerce, together and with others, in violation of 18 U.S.C. § 1591(a)(1).

278.   Among other things, Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global knowingly and intentionally recruited, enticed, provided, obtained, advertised, and solicited by various means Mr. Jones, as well as other Class Members, knowing that Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global would use means of force, threats of force, fraud, coercion, and a combination of such means to cause Mr. Jones, as well as others, some of whom were under the age of seventeen, to engage in commercial sex acts.

279.   Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global and its employees had actual knowledge that they were perpetrating and facilitating Mr. Combs' sexual abuse and sex trafficking conspiracy to recruit, solicit, entice, coerce, harbor, transport, obtain, and provide Mr. Jones as well as others whom were under the age of seventeen, into commercial sex acts, through the means of force, threats of force, fraud, abuse of process, and coercion.

280.   Despite such knowledge, Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global intentionally paid for, facilitated, perpetrated, and participated in Mr. Combs' violations of 18 U.S.C. § 1591(a)(1), which Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global knew, and were in reckless disregard of the fact that, Mr. Combs would coerce, defraud, and force Mr. Jones to engage in commercial sex acts.

281.   Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global's actions were in and affecting interstate and foreign commerce, including its music distributing and publishing activities which were in and affecting interstate and foreign commerce.

282.   By taking the concrete steps alleged in this complaint, Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global knowingly participated in sex trafficking and furthered the Combs' sex-trafficking venture. The concrete steps constituted taking part in the sex-trafficking venture and were necessary for its success. The concrete steps constituted active engagement by Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global in Mr. Combs's sex-trafficking venture. Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global knew that its active engagement would lead to and cause coercive commercial sex-trafficking.

283.   As part of perpetrating TVPA violations, between on or about September 12, 2022, and through about November 2023, Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global concealed its delivery of hundreds of thousands of dollars in cash to Mr. Combs and his associates.

284.   As part of perpetrating TVPA violations, Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global also willfully failed to file required taxes with the federal government.

285.   Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global's affirmative conduct was committed knowing, and in reckless disregard of the facts, that Mr. Combs would use cash and the financial support provided by Defendants Love Records, Motown Records, and the Universal Music Group as a means of defrauding, forcing, and coercing sex acts from Plaintiff Jones as well as others.  Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global's conduct was outrageous and intentional.  On or about January 2023 Justin Combs engaged in a freak off session on a yacht with his father and sex workers.

286.   Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global's knowing and intentional conduct has caused Mr. Jones serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm.

287.   Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global's knowing and intentional conduct has caused Mr. Jones harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, in order to avoid incurring that harm.

288. This case does not involve mere fraud. Instead, Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global's criminal conduct in perpetrating TVPA violations was outrageous and intentional, because it was in deliberate furtherance of a widespread and dangerous criminal sex trafficking organization. Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global's criminal conduct also evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations. Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global's criminal conduct was directed specifically at Mr. Jones who was the victim of Mr. Combs' sexual abuse and sex trafficking harassment.

289. Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global's outrageous and intentional conduct in this case is part of a pattern and practice of Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global profiting by undertaking illegal "high risk, high reward" actions.

290. By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1), 1595, Defendants Sean Combs, Justin Combs, Kristina Khorram, and Combs Global is liable to Mr. Jones for the damages they sustained and reasonable attorneys' fees.

291. By virtue of these intentional and outrageous violations of 18 U.S.C. § 1591(a)(1), 1595, Defendants Sean Combs, Justin Combs, Kristina Khorram is liable to Mr. Jones.

## EIGHT CAUSE OF ACTION
### CALIFORNIA PREMISE LIABILITY - INADEQUATE OR NEGLIGENT SECURITY
#### (against, Defendants LR, MR, UMG, CRS, and Sean Combs)

292. Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

293. At all times herein mentioned, Defendants LR, MR, UMG, CRS, AND SEAN COMBS, acting in the course and scope of their agency, employment, and representation of each other and with the knowledge, consent, direction, approval, and ratification of each other's act, omissions and conduct, on or about September 12, 2022 at the Chalice Recording Studios located at 845 Highland Ave, Los Angeles, CA 90038, did so negligently, carelessly and without due care, regard and concern for the rights, safety and health of the Plaintiff, and in regard to such premises did so control, own, supervise, manage, lease and had responsibility

for the safety of Plaintiff and adequate security, security personnel and security devices of the CRS.

294.   At the aforementioned time and place, Defendants LR, MR, UMG, CRS, AND SEAN COMBS, and each of them, negligently maintained, managed, controlled, and operated the Chalice Recording Studios, in that they did not maintain and provide adequate security for the Plaintiff or the other artists, producers, and songwriters and creatives who attended Sean Combs Love Album writers camp.  Defendants knew, or in the exercise of reasonable care should have known, security was required and necessary and the lack of such security could constitute a dangerous condition and unreasonable risk of harm of which Plaintiff was at all times herein mentioned unaware. Defendants LR, MR, UMG, CRS, AND SEAN COMBS had security check the song writers, producers, and artists, but neglected to search Justin Combs and Sean Combs for the possession of firearms when they entered CRS.  Defendants LR, MR, UMG, CRS, AND SEAN COMBS negligently failed to take steps to either provide adequate security and make the condition safe or warn Plaintiff of the dangerous condition, all of which caused Plaintiff to suffer injuries.

295.   As a proximate result of the negligence of defendants, and each of them, Plaintiff was hurt and injured in his health, strength, and activity, sustaining injuries to their nervous system and person, all of which injuries have caused, and continue to cause, Plaintiff great mental, physical, and nervous pain and suffering. As a result of such injuries, Plaintiff have suffered general damages in an amount according to proof.

296.   As a further proximate result of the negligence of defendants Plaintiff has incurred, and will continue to incur, medical and related expenses in an amount according to proof.

WHEREFORE, Plaintiff pray for judgment against Defendants, and each of them, as follows:

     a.   General damages according to proof;
     b.   For actual medical expenses incurred;
     c.   For future medical expenses, according to proof;
     d.   For loss of earning;
     e.   For interest, according to law;
     f.   For costs of suit incurred herein; and
     g.   For such other and further relief as the Court may deem just and proper.

///
///
///
///
///

## NINTH CAUSE OF ACTION
### AIDING, ABETTING, AND INDUCING A SEX-TRAFFICKING VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS' PROTECTION ACT, 18 U.S.C. §§ 2, 1591(a)(1) & (2), 1595
### (against Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group)

297.   Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

298.   Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group aided, abetted, and induced Sean Combs' sex-trafficking venture that was in and affecting interstate and foreign commerce, together and with others, in violation of 18 U.S.C. §§ 2, 1591(a)(1) & (a)(2).

299.   The crimes that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group aided and abetted are (1) Mr. Combs's perpetrating of coercive sex trafficking, in violation of 18 U.S.C. § 1591(a)(1), and (2) Mr. Combs' co-conspirators knowingly benefitting from coercive sex trafficking, in violation of 18 U.S.C. § 1591(a)(2). These crimes were in and affecting interstate and foreign commerce.

300.   Mr. Combs' co-conspirators benefitted financially and received things of value from their participation in the Combs sex-trafficking venture, including payments and other compensation from Mr. Combs. The co-conspirators who benefitted financially include Defendants J. Combs, Khorram and her direct reports: Brendan Paul, Frankie Santella, and Moy Baun.

301.   Under 18 U.S.C. § 2, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group are punishable as a principal under 18 U.S.C. §§ 1591(a)(1) & (a)(2) and thereby committed and perpetrated violations of Chapter 77, Title 18, U.S. Code, when it aided, abetted, counseled, commanded, induced, and procured Combs' and his co-conspirators sex-trafficking venture and sex trafficking of Plaintiff Jones, as well as other underaged persons.

302.   Under 18 U.S.C. § 2, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group committed and perpetrated crimes in violation of 18 U.S.C. §§ 1591(a)(1) & (a)(2) by aiding, abetting, inducing, and procuring Combs' and his co-conspirator's sex-trafficking venture and the sex trafficking of Mr. Jones. As a consequence, Mr. Jones is a victim of Defendants J. Combs, Khorram and her direct

reports: Brendan Paul, Frankie Santella, and Moy Baun's criminally aided, abettted, and inducing Combs' and his co-conspirators' violations of 18 U.S.C. §§ 1591(a)(1) & (a)(2).

303.    Defendants J. Combs, Khorram and her direct reports: Brendan Paul, Frankie Santella, and Moy Baun itself directly committed and perpetrated violations of Chapter 77, Title 18, U.S. Code, including 18 U.S.C. §§ 1591(a)(1) & (a)(2), by aiding, abetting, and inducing the sex-trafficking venture and the sex trafficking of Plaintiff Jones.  Defendants J. Combs, Khorram and her direct reports: Brendan Paul, Frankie Santella, and Moy Baun themselves directly violated Chapter 77 by committing and perpetrating these violations.

304.    Among other things, Defendants J. Combs, Khorram and her direct reports: Brendan Paul, Frankie Santella, and Moy Baun aided, abetted, and induced Combs' and his co-conspirators' sex-trafficking venture and sex trafficking of Plaintiff Jones knowing that Combs and his-conspirators would use means of force, threats of force, fraud, coercion, and a combination of such means to cause Mr. Jones some of whom were under the age of eighteen, to engage in commercial sex acts.

305.    By aiding, abetting, and inducing Mr. Combs' and his co-conspirators' sex-trafficking venture and sex trafficking of Plaintiff.  Defendants J. Combs, Khorram and her direct reports: Brendan Paul, Frankie Santella, and Moy Baun benefited, both financially and by receiving things of value, from participating in Combs' sex-trafficking venture.

306.    Defendants J. Combs, Khorram and her direct reports: Brendan Paul, Frankie Santella, and Moy Baun and its employees had actual knowledge that they were aiding, abetting, and inducing Combs' and his co-conspirators' sexual abuse and sex trafficking conspiracy to recruit, solicit, entice, coerce, harbor, transport, obtain, and provide Mr. Jones as well as others, into commercial sex acts, through the means of force, threats of force, fraud, abuse of process, and coercion.  Defendants knew, and should have known, that Mr. Combs had engaged in acts in violation of the TVPA.

307.    Despite such knowledge, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group intentionally paid for and aided, abetted, and induced Combs' violations of 18 U.S.C. §§ 1591(a)(1) & (a)(2), which constituted perpetrating violations of those laws under 18 U.S.C. § 2. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music

Group knew, and acted in reckless disregard of the fact that, Combs would coerce, defraud, and force Mr. Jones to engage in commercial sex acts.

308. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group's affirmative conduct of aiding, abetting, and inducing Combs' violations was committed knowingly, and in reckless disregard of the facts, that Mr. Combs would use cash and financial support provided by Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group as a means of defrauding, forcing, and coercing sex acts from Mr. Jones. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group's conduct was outrageous and intentional.

309. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group's knowing and intentional conduct of aiding, abetting, and inducing Combs's violations has caused Mr. Jones serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm.

310. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group's knowing and intentional conduct of aiding, abetting, and inducing Combs's violations has caused Mr. Jones harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, in order to avoid incurring that harm.

311. This case does not involve mere fraud. Instead, Defendants' criminal conduct in aiding, abetting, and inducing Combs's violations of the TVPA was outrageous and intentional, because it was in deliberate furtherance of a widespread and dangerous criminal sex trafficking organization. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group's criminal conduct also evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group's criminal conduct was directed specifically at Mr. Jones, who was the victim of Mr. Combs's sexual abuse and sex trafficking organization.

312.   Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group's outrageous and intentional conduct in this case is part of a pattern and practice of Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group profiting by undertaking illegal "high risk, high reward" sponsorships, and partnerships.

313.   By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1), 1595, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group is liable to Mr. Jones for the damages he sustained and reasonable attorneys' fees.

314.   By virtue of these intentional and outrageous violations of 18 U.S.C. §§ 1591(a)(1), 1595, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, Universal Music Group is liable to Mr. Jones for punitive damages.

## TENTH CAUSE OF ACTION
### NIED (FOR SEXUAL ASSAULT)
#### (against Defendant Jane Doe 1 (Yung Miami's Cousin))

315.   Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

316.   Jane Doe 1's conduct created an unreasonable risk of causing emotional distress to Plaintiff, and Jane Doe 1 knew or should have known that such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

317.   Plaintiff's emotional distress was foreseeable to Jane Doe 1.

318.   As a direct and proximate result of the negligent conduct of Jane Doe 1, Plaintiff suffered and will continue to suffer severe emotional distress.

319.   Jane Doe 1's conduct was wanton, malicious, willful, and/or cruel, entitling the plaintiff to punitive damages.

///
///
///
///
///
///
///
///
///

## ELEVENTH CAUSE OF ACTION
### NIED (FOR SEXUAL ASSAULT)
### (against Mr. Combs)

320.   Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

321.   Mr. Combs' conduct created an unreasonable risk of causing emotional distress to Plaintiff, and Mr. Combs knew or should have known that such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

322.   Plaintiff's emotional distress was foreseeable to Mr. Combs.

323.   As a direct and proximate result of the negligent conduct of Mr. Combs, Plaintiff suffered and will continue to suffer severe emotional distress.

324.   Mr. Combs' conduct was wanton, malicious, willful, and/or cruel, entitling the plaintiff to punitive damages.

## TWELFTH CAUSE OF ACTION
### IIED (FOR SEXUAL ASSAULT)
### Defendant Jane Doe 1 (Yung Miami's Cousin)

325.   Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

326.   Jane Doe 1 engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the Baunds of decency in a civilized society, namely by, *inter alia,* subjecting him to sexual assault and misconduct.

327.   The sexual assault and misconduct by Jane Doe 1 were extreme and outrageous conduct that shocks the conscience.

328.   These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

329.   As a direct and proximate result of Jane Doe 1's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

330.   The Defendant's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

///
///
///
///
///

## THIRTEENTH CAUSE OF ACTION
### IIED (FOR SEXUAL ASSAULT)
### (against Mr. Combs)

331. Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

332. Mr. Combs engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the Baunds of decency in a civilized society, namely by, *inter alia,* subjecting him to sexual assault and misconduct.

333. The sexual assault and misconduct by Mr. Combs were extreme and outrageous conduct that shocks the conscience.

334. These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

335. As a direct and proximate result of Mr. Combs' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

336. The Defendant's conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## FOURTEENTH CAUSE OF ACTION
### KNOWING BENEFICIARY IN A SEX-TRAFFICKING VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS' PROTECTION ACT, 18 U.S.C. §§ 1591(A)(2), 1595
### (against Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group)

337. Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

338. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knowingly and intentionally benefitted, financially and by receiving things of value, from participating in, assisting, supporting, and facilitating an illegal coercive sex-trafficking venture that was in and affecting interstate and foreign commerce, together and with others, in violation of 18 U.S.C. § 1591(a)(2).

339. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group took many concrete steps to aid and participate in Mr. Combs' sex-trafficking venture. Among the concrete steps that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group took to aid Mr. Combs was providing vast sums of cash, which made the sex-trafficking venture possible. Providing Mr. Combs with large sum of U.S. currency caused

63

Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group to receive financial benefits. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group willingness to provide large amounts of cash to Mr. Combs was the quid pro quo for it receiving financial benefits from Mr. Combs.

340.   The cash that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group provided was necessary for Mr. Combs to coerce Plaintiff Jones to engage in commercial sex acts. The cash directly formed part of the commercial nature of the sex acts. The cash was also a necessary and required part of Mr. Combs' recruitment of Plaintiff Jones, as well as other sex workers, prostitutes and underage minors. By providing cash that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew would be used to fund the sex trafficking venture, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group actively participated in the recruitment of victims of the venture.

341.   The cash that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group provided went far beyond providing routine sponsorship, partnership, and employer compensation for a subordinate. It was far from routine for Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group to provide substantial sums of cash per year to Mr. Combs, who did not have an apparent legitimate need for such extravagant sums. The sheer number of "listening parties," yacht parties, and nighttime writers camp after parties which Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group sponsored, went far beyond normal for the music industry. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew or should have known that they were feeding Mr. Combs sexual deviancy. Moreover, the circumstances in which Mr. Combs was requesting such large amounts were far from routine and should have raised numerous "red flags"— taking it well outside routine circumstances.

342.   Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group providing large sums of cash to Mr. Combs, under the

circumstances of this case, was entirely inconsistent with the ordinary duties of a record label, music group, publishing partner or as an employer employee.

343. The reason that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group ignored the numerous red flags about Mr. Combs was to receive financial benefits from Mr. Combs and his sex-trafficking venture. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew that it would gain far-from-routine financial benefits by ignoring the red flags associated with Mr. Combs and by participating in his sex- trafficking venture.

    a.  Among the concrete steps that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group took to aid and participate in the Combs sex-trafficking venture were opening up numerous lines of credit for Mr. Combs's production of the Love Album, his related entities, and associates. By opening these lines of credit, and by consistently sponsoring his freak off parties, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group received many benefits from participating in Mr. Combs's venture. The sponsoring of these events was affirmative conduct that caused Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group to receive those benefits.

    b.  Among the concrete steps that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group took to aid the Combs sex- trafficking venture, between about 2000 and continuing through about November 2023, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group concealed its delivery of vast sums of cash (likely millions of dollars) to Mr. Combs and his associates. In order to benefit from the Combs sex- trafficking venture, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group willfully failed to timely file required tax disclosures surrounding the funding of these sex trafficking parties with the federal government, because doing so would imperil its ability to profit from the sex-trafficking venture. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group concealment of the cash transactions caused it to receive financial benefits through continuation of the Combs sex-trafficking venture.

    c.  Among the concrete steps that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group took to aid the Combs sex- trafficking venture were its failure to follow AML requirements. This failure was not just passive facilitation, but a deliberate omission by Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group. This omission was specific act of concealment, which allowed Combs to continue funding his sex- trafficking venture through suspicious transactions that would have otherwise been prevented.

65

d.  By taking the concrete steps outlined above (along with the others alleged in this complaint), Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knowingly participated in sex trafficking and furthered the Combs sex-trafficking venture. The concrete steps above constituted taking part in the sex-trafficking venture and were necessary for its success. The concrete steps above constituted active engagement by Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group in Combs's sex- trafficking venture.

e.  Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knowingly and intentionally benefited financially from, and received value for, its participation in the sex-trafficking venture, in which Mr. Combs, with Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's knowledge, or their reckless disregard of the fact, that Combs would use means of force, threats of force, fraud, coercion, and a combination of such means to cause Plaintiff Jones, as well as others, some of whom were under the age of seventeen, to engage in commercial sex acts.

f.  Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew, through years of lawsuits, hush money settlements, and notice that was provided by Ms. Cassie Venture at the beginning of 2023, that Mr. Combs was engaging in sex trafficking, and that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group was participating in a particular sex-trafficking venture—*i.e.*, the coercive Combs sex-trafficking venture outlined above. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's knowledge went far beyond having an abstract awareness of sex trafficking in general. Indeed, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, were present at Chalice Recording Studios and in Mr. Combs Miami, LA, and NYC homes while he was actively engaging in freak off parties and sex trafficking and the large amounts of cash that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group were giving him. Thus, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group did not simply fail to adequately detect signs of Combs' sex trafficking; it did detect multiple signs of Combs' coercive sex-trafficking venture and continued to participate in the venture. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew that the venture was on-going, which was why Combs required vast sums of cash.

g.  Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's actions extend well beyond a situation of failing to train themselves and their staff about recognizing the warning signs of sex trafficking. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's employees did recognize the signs of Combs' sex trafficking. Indeed, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's employees knew about Combs' sex-trafficking venture. But Defendants Lucian

Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group decided to continue facilitating the Combs sex-trafficking venture rather than ending its participation in the venture.

h. Among the signs that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group was facilitating Combs sex trafficking venture were those facts that came to the attention of Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group from the reporting of Mr. Cassie Ventura mentioned above.

i. Among the signs that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group was facilitating Combs' sex trafficking venture were those facts that came to the attention of Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group were those facts that came to its attention through complaints filed by Cassie Ventura of Combs' sex trafficking. Because of those complaints, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group — knew to a certainty that Combs was engaged in sex trafficking.

j. Defendants Lucian Charles Grainge, Ethiopia Habtemariam's are officers of Defendants Motown Records, Love Records, and Universal Music Group and knew the names of the many of Combs' sex trafficking/ freak off participates (Yung Miami, Daphne Joy, Stevie J, and Jade).

k. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group helped to conceal the names of Combs' victims from the public and from law enforcement and prosecuting agencies by helping to conceal the existence of the sex-trafficking venture. Among the ways in which Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group helped to conceal the venture's existence was by providing the cash necessary for the venture to avoid leaving a visible "paper trail." Additionally, they employed and empowered Faheem Muhammad, and Defendant Khorram to pay off law enforcement, and to compensate the sex workers with cash.

l. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's concealment included failing to provide enhanced monitoring that was required for someone like Combs. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group failed to implement an enhanced monitoring of Mr. Combs sexual parties to ensure that underaged girls and sex workers were not present. They failed to do this specifically to help conceal Combs' ongoing sex-trafficking. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew that if it implemented that enhanced monitoring, it would have to stop providing Combs with the cash needed to run his sex-trafficking venture.

m. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group 's concealment included failing to report Mr. Combs' suspicious sex trafficking activities to law enforcement, and for failing to report their financial support and sponsorship of Mr. Combs sex trafficking parties to the federal government for tax purposes.

n. In addition to having actual knowledge that it was participating in Combs' sex trafficking venture, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group had constructive knowledge that it was participating in Combs' sex trafficking venture. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group also had constructive knowledge that Plaintiff James, and other underaged minors were being coercively sex trafficked by Combs. Its constructive knowledge extended to the names of Combs' victims, because Combs and his associates knew the names of the victims. Mr. Combs had hundreds of cameras in his homes in LA, NYC, and Miami. Mr. Combs required the sex workers, and underaged girls to sign NDAs prior entering his parties, and prior to being drugged and sex trafficked at these parties.

o. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group had constructive knowledge of Combs' sex-trafficking venture because of specific acts by Mr. Combs that put it on notice of a particular and ongoing sex trafficking venture. Among the specific acts were Combs' use of vast sums of cash, drugs, fake promises of career opportunities and access to music industry executives in circumstances that should have prompted Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group employees to specifically raise questions about Combs's sex-trafficking.

p. Also, among the specific acts giving rise to constructive knowledge were the facts that associates of Mr. Combs made numerous cash withdrawals from Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group accounts through Mr. Combs accountant Robin Greenhill. The circumstances of these withdrawals gave Defendants notice that Mr. Combs' sex-trafficking enterprise was being funded.

q. Among the financial benefits that the Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group received for participating in and facilitating Combs' sex-trafficking venture were the affiliation and access to Mr. Combs popularity. Mr. Combs was known for throwing the "best" parties. Affiliation with, and or sponsorship of Mr. Combs sex-trafficking parties garnered legitimacy and access to celebrities such as famous athletes, political figures, artist, musicians, and international dignitaries like British Royal, Prince Harry. Mr. Combs and Combs-controlled entities made to Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group profited from their affiliation with Mr. Combs and their sponsorship of his sex-trafficking parties. Mr. Combs and Combs-controlled entities used the sponsorship funds in exchange for Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's facilitation and participation in the sex trafficking venture, including its willingness to provide large amounts of cash in suspicious circumstances and to allow their failure to report these sponsorships on their taxes to the US Federal Government to avoid triggering suspicions of the Federal Government.

r.  Among the financial benefits that Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group received for participating in Combs' sex-trafficking venture was referral of business opportunities from Mr. Combs and his co-conspirators. Access to up-and-coming artist, producers, song writers and creatives. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group profited from these referred business opportunities. Mr. Combs referred business entities and business opportunities to Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group in exchange for its facilitation and participation in the sex trafficking venture. These referrals were a quid pro quo for Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's participation in the sex-trafficking venture.

s.  Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group financially profited from the deposits made by Combs and Combs-controlled entities and from the business opportunities referred to Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group by Combs in exchange for its facilitation and participation in Combs' sex trafficking venture.

t.  Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knowingly received financial benefits in return for its assistance, support, and facilitation of Combs' sex-trafficking venture. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew that if it stopped assisting, supporting, and facilitating of Combs' sex-trafficking venture, it would no longer receive those benefits.

u.  Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew, and was in reckless disregard of the fact, that it was Combs's pattern and practice to use the channels and instrumentalities of interstate and foreign commerce (private jets, yachts, and commercial airplanes) to entice, recruit, solicit, harbor, provide, obtain, and transport young women, young men, and underage girls for purposes of causing commercial sex acts, in violation of 18 U.S.C. § 1591(a)(1).

v.  Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group and its employees had actual knowledge that they were facilitating Combs' sexual abuse and sex trafficking conspiracy to recruit, solicit, entice, coerce, harbor, transport, obtain and provide Mr. Jones into commercial sex acts, through the means of force, threats of force, fraud, abuse of process, and coercion, and a combination of all these means.

w.  Despite such knowledge, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group intentionally paid for, facilitated, and participated in Combs' violations of 18 U.S.C. § 1591(a)(1), which Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew, and were in reckless disregard of the fact that, Combs would coerce, defraud, and force Mr. Jones to engage in commercial sex acts.

x.  Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group, through its employees and agents, actively participated in the sex trafficking conspiracy and led Mr. Jones, sex workers, and underage girls to believe that they would be rewarded if they cooperated and acquiesced to Mr. Combs' coercive demands.

y.  Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's affirmative conduct was committed knowingly, and in reckless disregard of the facts, that Mr. Combs would use cash and financial support provided by Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group as a means of defrauding, forcing, and coercing sex acts from Mr. Jones.  Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's conduct was outrageous and intentional.

z.  In addition to actual knowledge that it was participating in and facilitating the Combs sex-trafficking venture, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group also should have known that it was participating in and facilitating a venture that had engaged in coercive sex trafficking, as covered by 18 U.S.C. § 1595(a).

aa. In exchange for facilitating and covering up Combs' commercial sex trafficking, the Defendants Lucian Charles Grainge, Ethiopia Habtemariam advanced in their careers at Defendants Motown Records, Love Records, and Universal Music Group and received financial benefits therefrom by securing the Defendants Motown Records, Love Records, and Universal Music Group – Sean Combs relationship.

bb. Facilitating and covering up Combs' sexual trafficking and misconduct was a means of obtaining economic success and promotion within the Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group hierarchy.

cc. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's knowing, and intentional conduct has caused Mr. Jones serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm.

dd. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's knowing, and intentional conduct has caused Mr. Jones harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, to avoid incurring that harm.

ee. This case does not involve mere fraud. Instead, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's criminal conduct in violating the TVPA was outrageous and intentional because it was in deliberate furtherance of a widespread and dangerous criminal sex trafficking organization. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group 's criminal conduct also evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal

Music Group's criminal conduct was directed specifically at Mr. Jones who was the victim of Combs' sexual abuse and sex trafficking organization.

    ff. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's outrageous and intentional conduct in this case is part of a pattern and practice of Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group profiting by undertaking illegal "high risk, high reward" partnerships and sponsorships.

344. By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2), 1595, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group is liable to Mr. Jones for the damages he sustained and reasonable attorneys' fees.

**FIFTEENTH CAUSE OF ACTION**
**OBSTRUCTION OF THE ENFORCEMENT OF THE TRAFFICKING VICTIM PROTECTION ACT, 18 U.S.C. § 1591(d)**
**(against, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group)**

345. Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

346. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group and its officers and employees knowingly and intentionally obstructed, attempted to obstruct, interfered with, and prevented the enforcement of 18 U.S.C. §§ 1591(a)(1) & (a)(2), all in violation of 18 U.S.C. § 1591(d). This activity is hereinafter referred to collectively simply as "obstruction."

347. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's obstruction of the enforcement of 18 U.S.C. §§ 1591(a)(1) and (a)(2) was forbidden by 18 U.S.C. § 1591(d), and Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group thereby violated Chapter 77, Title 18. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's obstruction described here and in the preceding paragraph directly, proximately, and foreseeably harmed Mr. Jones by directly resulting in him coercively being caused to engage in commercial sex acts and in other ways.

348. Defendant Sean Combs has a well-documented history of criminal investigations. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records,

and Universal Music Group were on notice of Mr. Combs proclivity to criminal activity. They knew or should have known that Mr. Combs sex-trafficking operation would or could result in a criminal investigation by State and Federal prosecutors for violating (among other laws) the TVPA. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group should have taken a que from the Federal Prosecutors arrest and prosecution of Jeffrey Epstein on or about July 8, 2019. On or about that date, the U.S. Attorney's Office for the Southern District of New York indicted Epstein (and unnamed "associates") for violating the TVPA. Later, on about June 29, 2020, the same Office indicted Epstein's co-conspirator, Ghislaine Maxwell, for conspiracy to entice minor victims to travel to be abused by Epstein. Mr. Combs, Defendants J. Combs, Khorram and her direct reports: Brendan Paul, Frankie Santella, and Moy Baun all engaged in the same activities as Mr. Epstein and Ms. Maxwell. In fact, Mr. Combs, Defendants J. Combs, Khorram and her direct reports: Brendan Paul, Frankie Santella, and Moy Baun may have done worse.

349. By providing financing for Mr. Combs' sex trafficking organization, and concealing its actions thereafter, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group obstructed, interfered with, and prevented the state and federal government enforcement of the TVPA against Mr. Combs, Defendants J. Combs, Khorram and her direct reports: Brendan Paul, Frankie Santella, and Moy Baun. To the extent that the federal government was able to ultimately charge Mr. Combs, Defendants J. Combs, Khorram and her direct reports: Brendan Paul, Frankie Santella, and Moy Baun with TVPA violations, the filing of those charges was delayed by Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's actions. Because of that delay, Mr. Jones was coercively caused to engage in commercial sex acts.

350. As one example of how Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group obstructed, attempted to obstruct, interfered with, and prevented state and federal government's enforcement of the TVPA, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group provided large amounts of cash to Mr. Combs and his associates so that the coercive commercial sex acts would escape the detection of state and

federal law enforcement and prosecuting agencies. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group provided large amounts of cash to further the Mr. Combs, Defendants J. Combs, Khorram and her direct reports: Brendan Paul, Frankie Santella, and Moy Baun sex-trafficking venture and with the purpose of helping Mr. Combs, Defendants J. Combs, Khorram and her direct reports: Brendan Paul, Frankie Santella, and Moy Baun evade criminal liability for violating the TVPA.

351. As an example of how Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group obstructed, attempted to obstruct, interfered with, and prevented state and federal government's enforcement of the TVPA, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group failed to timely file with the state and federal government the required tax forms that detailed the sponsorship and partnership payments provided by defendants to Mr. Combs. Timely filing of these reports is required by the United States Tax code and related laws and regulations. These reports are tools that the state and federal government uses to detect and prosecute, among other illegal activities, sex trafficking in violation of the TVPA. By failing to timely file, the required tax reporting documents regarding Mr. Combs' sponsorship cash transactions, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group obstructed, attempted to obstruct, interfered with, and prevented the government's enforcement of the TVPA by concealing from the government's attention Mr. Combs' cash transaction in aid of sex trafficking.

352. By providing large amounts of cash to Mr. Combs and his associates, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group intended and knew that Mr. Combs' coercive commercial sex acts would escape the detection of law enforcement and prosecuting agencies for some period of time. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group provided large amounts of cash to further the Combs sex-trafficking venture and with the purpose of helping Mr. Combs evade criminal liability for violating the TVPA.

353.   Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's obstruction, attempted obstruction, interference with, and prevention of the enforcement of the TVPA were all done intentionally and knowingly. For example, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew that Mr. Combs was high risk—specifically, high risk to violate the TVPA through continuing criminal sex trafficking activities.  As evidenced by Cassie Ventura's civil complaint, she informed members of Mr. Combs parent label about the abuses he was visiting upon her, and instead of coming to her rescue, they forced her to return his calls and to return to his sex trafficking enterprise.

354.   Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group was aware Mr. Combs had a laundry list of criminal charges, and barely escaped serving prison time.  Upon information and belief Mr. Combs engaged in witness intimidation, and bribery to escape criminal liability for shooting Natania Reuben in the face.  Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group was aware that there were public allegations that Mr. Combs illegal conduct was facilitated by several named co-conspirators. They were made aware of this through complaints made my Cassie Ventura, and the lawsuit by former Diddy sex worker Jonathan Oddi.  Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group concealed from state and federal government its numerous cash payments to those co-conspirators. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group continued its affirmative conduct of providing cash to Mr. Combs, and his associates so that he could make those cash payments to his co-conspirators with knowledge that such cash transaction did not produce a clear paper trail. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's intentional conduct obstructed, attempted to obstruct, in many ways interfered with, and prevented the enforcement of the TVPA by investigators and prosecuting agencies.

355.   Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's relationship with Mr. Combs in providing to his sex-trafficking venture with vast sums of cash each year went far beyond a normal (and lawful) sponsorship, partnership, and employer employee relationships. Defendants Lucian Charles

74

Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew, and intended, that its relationship with Mr. Combs would go far beyond a normal music industry relationship. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew that its decision to go beyond a normal music relationship with Mr. Combs obstructed the ability of law enforcement and prosecuting agencies to enforce the TVPA.

356. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's obstruction of the government's TVPA and other law enforcement efforts was intentional and willful and, therefore, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group intentionally and willfully caused Mr. Combs' commission of the forcible commercial sex acts with Mr. Jones through its obstruction supporting the concealment of Mr. Combs' sex-trafficking venture. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew that Mr. Combs and his other co-conspirators would use means of force, threats of force fraud, coercion, and a combination of such means to cause Mr. Jones to engage in commercial sex acts.

357. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group knew, acted in reckless disregard of the fact, and should have known, that its obstruction in violation of 18 U.S.C. § 1591(d) would directly and proximately lead to unlawful coercive commercial sex acts by Mr. Combs with men, like Plaintiff Jones, young men, women and young girls.

358. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's obstruction has caused Mr. Jones serious harm, including, without limitation, physical, psychological, financial, and reputational harm. That harm was directly and proximately caused by the obstruction and the harm resulting from obstruction was foreseeable.

359. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's obstruction has caused Mr. Jones harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity to avoid incurring that harm.

75

360. This case does not involve mere fraud. Instead, Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's criminal conduct in obstructing enforcement of the TVPA was outrageous and intentional because it was in deliberate furtherance of a widespread and dangerous criminal sex trafficking organization. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's obstruction also evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group's obstruction was directed specifically at Mr. Jones who was the victim of Mr. Combs' sex trafficking organization.

361. By virtue of these violations of 18 U.S.C. § 1591(d), Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group is liable to Mr. Jones for the damages he sustained and reasonable attorneys' fees by operation of 18 U.S.C. § 1595. Defendants Lucian Charles Grainge, Ethiopia Habtemariam, Motown Records, Love Records, and Universal Music Group perpetrated an obstruction of the TVPA, and therefore perpetrated a violation of Chapter 77, Title 18.

## COUNT SIXTEEN
## Breach of Oral Contract
### (against, Love Records, and Sean Combs)

362. Mr. Jones incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

363. Plaintiff Jones and Defendants Mr. Combs and LR had an oral contract for Mr. Jones to receive $20,000 for every song he produced on the Love Album. Mr. Combs agreed to allow Mr. Jones to keep his publishing, as well as 4 royalty points per song, and to credit him as a producer for every song that he touched, as well as credit him for each instrument he played.

364. Mr. Jones fully executed his obligations under the contract when he produced: *Deliver Me, Stay PT 1, Reachin', What's Love, Stay Awhile, Moments, Need Somebody, Homecoming*, and *Tough Love.*

365. Mr. Jones worked on the following songs: *Brought My Love, and Creepin Remix.*

366. Mr. Jones lived and traveled with Mr. Combs from September 2022 to October 2023. Through the duration of that time Mr. Combs did not compensate Mr. Jones for his time or

the work he did on the above-mentioned songs. Mr. Combs also failed to provide Mr. Jones with producer credit, or 4 royalty points for all songs.

367. As a result of Mr. Combs' actions, Mr. Jones has suffered the following losses: $180,000, 4 royalty points, and producer credit for the following songs: *Deliver Me, Stay PT 1, Reachin', What's Love, Stay Awhile, Moments, Need Somebody, Homecoming*, and *Tough Love.*

368. As a result of Mr. Combs' actions, Mr. Jones has suffered the following losses: $40,000, 4 royalty points, and producer credit for the following songs: *Brought My Love, and Creepin Remix.*

369. As a result of Mr. Combs' breach of contract, Mr. Jones has suffered and continues to suffer harm, including severe emotional distress, anxiety, and other consequential damages for which he is entitled to an award of monetary damages and other relief.

370. The conduct of Mr. Combs described above was willful, wanton, and malicious. At all relevant times, Mr. Combs acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury to Plaintiff Jones. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

a. A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violate the laws of the State of New York;

b. An award of damages against Defendant, in an amount to be determined at Trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, loss of past and future income, wages, compensation, seniority, and other benefits of employment;

c. An award of damages against Defendant, in an amount to be determined at Trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

d. An award of punitive damages, in an amount to be determined at Trial;

e. Prejudgment interest on all amounts due;

f. An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

g. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: March 2, 2024
Brooklyn, New York

T. A. BLACKBURN LAW, PLLC.
By: *Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

## PRESERVATION NOTICE

The term "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the respondents and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors. From this point forward, you are directed to prevent "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any information set forth hereafter.

If you cause any such alteration, destruction, or change, direct it, or allow it to occur, you may be charged with discovery rule violations for which sanctions may be imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation.

Electronically Stored Information:

In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook), electronic spreadsheet files and file fragments, pertaining in any way to this controversy of the parties or any potential witnesses. This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation (or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved, copied, and produced.

You are directed not to modify, alter, or delete or allow modifications, alterations, or deletions to be made to any electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

78

<u>Paper Information</u>:

Regarding the paper information, you are directed to preserve any emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative information, or other documents about the controversy, parties, or witnesses. We expect to obtain several documents and other data from you through discovery, including text messages, emails, photographs, and other information stored on computers, electronic devices, and telephones.

Although we may bring a motion with a court for order-preserving documents and other data from destruction or alteration, your obligation to preserve documents and other data for discovery, in this case, arises independently from any order on such motion. Electronic documents and the storage media, including but not limited to telephones on which they reside, contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we will likely seek all documents in their original, electronic form, along with metadata or information about those documents on the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner they apply to other evidence. Due to its format, electronic information is quickly deleted, modified, or corrupted. Accordingly, the demand is made that you take every reasonable step to preserve this information until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after this Complaint's delivery date, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.

Dated: March 2, 2024
Brooklyn, New York

<div style="text-align: right;">

T. A. BLACKBURN LAW, PLLC.
By: *Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

</div>

## **DEMAND FOR INSURANCE COVERAGE**

Defendants are demanded to provide a complete copy of their applicable insurance policies and declaration sheets demonstrating coverage within thirty (30) days of service of this Complaint.

Dated: March 2, 2024
Brooklyn, New York

<div style="text-align: right;">

T. A. BLACKBURN LAW, PLLC.
By: *Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

</div>