

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806                                            pryorcashman.com

April 1, 2024

Hon. J. Paul Oetken
Thurgood Marshall, United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    <u>*Jones v. Combs, et. al,* Case No. 24-1457, Letter Response to ECF No. 30</u>

Dear Judge Oetken:

      We are counsel to defendants UMG Recordings, Inc. (erroneously sued as "Universal Music Group"), Motown Records and Sir Lucian Grainge (collectively, the "UMG Defendants") in the above-referenced Action. We respectfully submit this letter in opposition to the letter motion dated March 28, 2024 filed by Plaintiff's counsel, Tyrone Blackburn (ECF No. 30), which seeks to amend the First Amended Complaint ("FAC") in this Action to file a Second Amended Complaint ("SAC").

      As Plaintiff and Mr. Blackburn no doubt intended, the baseless claims made against the UMG Defendants in the FAC have attracted press attention, causing immediate reputational harm. In an effort to mitigate that harm, the UMG Defendants voluntarily waived service so they could file a motion to dismiss as soon as possible. Now Plaintiff and Mr. Blackburn want to further delay dismissal of the claims by seeking this Court's permission to amend the FAC. For all the reasons set forth below and in the UMG Defendants' pending motion to dismiss the FAC, the motion to amend should be denied as futile, so the motion to dismiss can be promptly addressed.

      In accordance with Rule 11, Mr. Blackburn represented to this Court that the allegations of the FAC had a proper legal and factual basis. Why then does the proposed SAC abandon every single maliciously false foundational allegation of the FAC? No explanation is offered for where the completely baseless "parent company" allegation in the FAC came from, why it was abandoned or what facts support the "general partnership" allegation.[1] No explanation for the disappearance of the "vast sums of cash" allegations is offered. The only change Mr. Blackburn tries to explain is the jettisoning of the accusations that Sir Lucian Grainge attended and sponsored parties at Mr.

---

[1] Mr. Blackburn relies solely on legally meaningless press reports and website shorthand descriptions, explained and rejected in the declaration of Ms. Habtemariam in support of the UMG Defendants' motion to dismiss, Exhibit 1 hereto (which also notes her rejection of his attempt to foist a false declaration on her). Attached as Exhibit 2 is a letter from Ashley Lin to Mr. Blackburn stating he had been specifically advised that his partnership allegation was false. Attached as Exhibit 3 is the declaration of Ms. Braithwaite in support of the UMG Defendants' motion to dismiss, attaching the redacted license agreement, which at paragraph 16.11 specifically provides that there is no partnership between Motown and Love Records (the UMG Defendants are prepared to provide the Court with an unredacted license agreement for review).



April 1, 2024
Page 2

Combs's homes where alleged "sex trafficking" activities supposedly occurred. His letter states that the FAC did not say Plaintiff saw Grainge at Combs' homes, only that Combs told Plaintiff he was there. Mr. Blackburn flat out misrepresents what the FAC says. Paragraphs 162-164 of the FAC specifically say Plaintiff personally saw Grainge there, not that Combs told him he was there. Grainge was never in any of Combs' homes. Thus, Plaintiff was lying in the FAC.

The Courts in this Circuit deny leave to amend in cases of: (1) bad faith or dilatory motive on the part of the movant; (2) repeated failure to cure deficiencies by previous amendments; (3) undue prejudice to the opposing party by virtue of allowance of the amendment; or (4) futility of amendment. *Acevado v. Citibank, N.A*., No. 10-CV-8030, 2015 WL 13860934, at *2 (S.D.N.Y. Mar. 13, 2015); *Carroll v. Trump*, 590 F. Supp. 3d 575, 578 (S.D.N.Y. 2022) (citations omitted). On all of these bases, amendment should be denied.

First and foremost, as to the UMG Defendants, the proposed SAC has no more legal validity than the FAC and as such, an amendment would be futile. *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC,* 783 F.3d 383, 389 (2d Cir. 2015) ("[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss."); *Sorotzkin v. EmblemHealth Inc*., No. 22-3194, 2023 WL 7383169, at *4 (2d Cir. Nov. 8, 2023) (citing and quoting same); *Bus. Casual Holdings, LLC v. YouTube, LLC*, No. 22-3007-CV, 2023 WL 6842449, at *1 (2d Cir. Oct. 17, 2023) (same).

On page two of his letter, Mr. Blackburn states that "many of the claims raised by Plaintiff" are supposedly validated by "events of March 25, 2024." But the "events" he refers to are public reports that Homeland Security is investigating Mr. Combs. No facts about such investigation have been disclosed. Mr. Blackburn thus has no knowledge about such investigation, not that the absence of knowledge seems to deter Mr. Blackburn from making baseless accusations. The UMG Defendants also anticipate, based on Mr. Blackburn's statements to the press, that he will argue the UMG Defendants must prove that Motown's payments under the license agreement were not misused by Combs. The claims are legally baseless but even were they not, Plaintiff must plead facts, not mere conclusions, and then must also prove that the license agreement payments were misused by Combs and the UMG Defendants knew they were misused. It is not incumbent on the UMG Defendants to prove the falsity of the unsupported and conclusory allegations in Mr. Blackburn included in the FAC or SAC.

As discussed below, even without regard to the falsity of the allegations made in the FAC and the SAC, the RICO claim asserted in both the FAC and the proposed SAC have no legal merit as to the UMG Defendants for all of the reasons set forth in the UMG Defendants' Memorandum of Law in support of their motion to dismiss (ECF No. 25). Even without regard to the falsity of the allegations made in the FAC and proposed SAC, the "sex trafficking" claims asserted in both the FAC and the SAC too have no legal merit as to the UMG Defendants.

As set forth in the Memorandum of Law, a civil RICO claim requires that each defendant: (1) committed two or more predicate acts of "racketeering activity," *Rajaratnam v. Motley Rice,*

**PRYOR CASHMAN LLP**

April 1, 2024
Page 3

*LLC*, 449 F. Supp. 3d 45, 68 (E.D.N.Y. 2020); (2) constituting a "pattern," *FD Prop. Holding, Inc. v. US Traffic Corp.*, 206 F. Supp. 2d 362, 369 (E.D.N.Y. 2002) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 429 U.S. 229, 239 (1989)); (3) through an "enterprise," *Heinrich v. Dean*, 655 F. Supp. 3d 184, 189 (S.D.N.Y. 2023); *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007); (4) which each defendant directed the operation and management of *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 396-97 (S.D.N.Y. 2000); *Redtail Leasing, Inc. v. Belleza*, No. 95-CV-5191, 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997); (5) causing property loss for the Plaintiff. *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).

The proposed SAC fails, as did the FAC, to satisfy these requirements. The new foundational theory of the SAC, the "general partnership" allegation, is based solely on press reports and website shorthand language loosely describing the license agreement as Motown and Love Records "partnering" with respect to one album.[2] But the cases cited by Mr. Blackburn actually refute his reliance on such language to create a general partnership under law. *Brodsky v Stadlen*, 138 A.D.2d 662 (2nd Dept. 1988) (rejecting claimed partnership based "on certain documents which refer to the production company . . . as a partnership. **It should be noted that calling an organization a partnership does not make it one**.") (emphasis added); *DeCristofaro v. Nest Seekers East End, LLC*, No. 35876-11, 2017 WL 350803 (N.Y. Sup. Ct. Jan. 11, 2017).

Three of the five partnership cases cited in Mr. Blackburn's letter involve Texas, not New York, law, and reject any partnership. *See Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 709 (Tex. App. 2019) (Texas Court of Appeals decision interpreting Texas Business Organizations Code and finding no partnership); *Westside Wrecker Serv., Inc. v. Skafi*, 361 S.W.3d 153, 166 (Tex. App. 2011) (Texas Court of Appeals Decision evaluating Texas Revised Partnership Act and rejecting partnership); *Offshore Expl. & Prod., LLC v. De Jong Cap., LLC*, N.Y.S.3d 915 (N.Y. Sup. Ct. 2023), *aff'd*, No. 1810, 2024 WL 969040 (N.Y. App. Div. Mar. 7, 2024) (determining no partnership existed under Texas law "**even though the parties allegedly told each other that they were partners, and their emails to each other refer to a partnership.**") (emphasis added).

Beyond his misplaced reliance on press and website language, nowhere does the SAC allege, nor could it in good faith allege, any of the factors to establish a partnership: (1) sharing of profits; (2) sharing of losses; (3) ownership of partnership assets; (4) joint management and control; (5) joint liability to creditors; (6) intention of the parties; (7) compensation; (8) contribution of capital; and (9) loans to the organization. *See generally*, 43 N.Y. Jur, Partnership, §§ 30-40. As the license agreement makes clear, as Ms. Habtemariam makes clear, and as the law makes clear, there was no "general partnership" between Motown and Love Records.

---

[2] As noted above, not only do the press reports and website provide no factual basis for a partnership allegation, especially in the face of specific denials by Ms. Habtemariam and the express terms of the license agreement, Mr. Blackburn has also fabricated a New York partnership for Motown and Love Records, which the SAC admits are both located in California.



April 1, 2024
Page 4

But even if there were, the SAC still fails to assert a viable RICO claim (or any other claim) against the UMG Defendants. Indeed, on page 2 of his letter, Mr. Blackburn admits that Motown was "funding" the Love Album under the license agreement (a lawful activity barring Plaintiff's claims) and alleges, without the slightest factual basis (in lieu of the abandoned "vast sums of cash" allegations) that the UMG Defendants were somehow responsible to monitor how Love Records used the monies (ignoring that money is fungible and that Combs is wealthy with many business sources of money). There is no such duty, but even if there were, it still would not satisfy the RICO requirements for all of the reasons set forth in the Memorandum of Law in support of the motion to dismiss.

Moreover, showing that the entire SAC is a pure "guess" by Mr. Blackburn, on the very first page of his letter, he admits his RICO claims against the UMG Defendants are baseless, saying the UMG Defendants "**either negligently or intentionally**" funded Mr. Combs. RICO is not a negligence statute and Mr. Blackburn has unwittingly admitted that he is only guessing about whether there is any supposed basis for his criminal accusations against the UMG Defendants.

The "sex trafficking" claims too remain as baseless in the SAC (the Seventh, Fifteenth and Sixteenth Claims), as they were in the FAC. There is no private right of action for aiding and abetting violations of the TVPA. *E.g.*, *Noble v. Weinstein*, 335 F. Supp. 3d 504, 525 (S.D.N.Y. 2018). The SAC admits that the UMG Defendants were obligated to pay certain monies pursuant to the license agreement (again, inventing the non-existent general partnership based on nothing but press and website shorthand descriptions) and allege only that they negligently or intentionally failed to somehow control the use of the monies by Love Records. There is no such duty in commercial transactions, and the claim remains legally and factually baseless.[3]

The "sex trafficking" participation claim remains equally baseless, as in the FAC. *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169-170 (S.D.N.Y. 2019) (citing 18 U.S.C. §§ 1591(a)(2), 1595(a)). Here, outside of unsupported conclusions, there is not one fact showing any such participation or benefit alleged. Indeed, Motown ended up not distributing the album, as the license agreement was terminated. The UMG Defendants did not "profit" from the album, but even if they had, that is not profit or benefit from (or any knowledge of) any alleged "sex trafficking" activity. At most, the SAC theorizes the UMG Defendants somehow should have known what Combs was allegedly doing, and again, as in the FAC, the SAC invokes the chronologically impossible November 2023 Cassie Ventura complaint as supposedly providing some sort of notice, ignoring that it was filed months after Motown severed its relationship with Love Records (as detailed in the motion to dismiss).

---

[3] The claims against Grainge are, if possible, even more absurd. Not only did he have nothing to do with Love Records or Combs, there is no basis on which the Chairman and CEO of a company can somehow be held responsible for Motown's non-existent "failure to monitor" Love Records' use of funds that Motown was contractually obligated to pay under the license agreement.



April 1, 2024
Page 5

And finally the "obstruction" claim (Sixteenth Claim), beyond not providing any private right of action, shows how Mr. Blackburn, having jettisoned the allegations of the FAC, is trying to fit a square peg into a round hole.  The cash payment allegations are gone but the bogus tax filing failure assertion (about which Mr. Blackburn has no knowledge) remains.  For an obstruction claim, there must be a plausible pleading that each Defendant: (1) knew of an effort to enforce the TVPA; and (2) intentionally obstructed, interfered with, or prevented that enforcement.  *See, e.g.*, *United States v. Farah*, 766 F.3d 599, 612 (6th Cir. 2014).  The SAC pleads no facts to support any of these requirements, nor could it in good faith.

All of the above clearly illustrates the bad faith of Plaintiff and Mr. Blackburn, using an unauthorized SAC to garner publicity and only then seeking leave to amend.  The UMG Defendants have already suffered from the offensively false accusations that Plaintiff and Mr. Blackburn have leveled against them.  This Court's determination of the UMG Defendants' motion to dismiss, giving lie to Plaintiff's claims against them, will hopefully help mitigate that harm.

Mr. Blackburn has demonstrated his contempt for the requirements of Rule 11.  He has demonstrated his willingness to "say anything," regardless of whether he has the slightest factual basis for his allegations, and when caught, simply invent new and totally contrary allegations.  He is indifferent to the harm caused to the UMG Defendants.  The completely different theories of the SAC as compared to the FAC, the completely contrary "facts" underpinning the very same claims, shows how baseless both the FAC and SAC are.

Leave to amend a second time should be denied, and the UMG Defendants' motion to dismiss should be granted.  *See Sorotzkin*, 2023 WL 7383169, at *4 ("[A] district court acts within its discretion to deny a motion to amend or to replead when a plaintiff has filed successive motions and had prior opportunities to amend but 'failed to cure deficiencies'").[4]

        Respectfully submitted

        **PRYOR CASHMAN LLP**

        _____
        Donald Zakarin

---

[4] Mr. Blackburn has been actively posting about this case.  In a recent post, attached hereto as Exhibit 4, he has already decided this motion for the Court.