

# T. A. Blackburn Law

TYRONE A. BLACKBURN

---

MEMBER OF
NY, DC & NJ BAR

---

FEDERAL MEMBERSHIP
EDNY, NDNY, SDNY, ILND & DNJ

---

1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236

April 8, 2024

VIA PACER:
Hon. J. Paul Oetken
Thurgood Marshall, United States Courthouse
40 Foley Square
New York, NY 10007

Re: <u>Jones v. Combs, et al.; Case No. 24-1457</u>

Dear Judge Oetken,

This firm represents the Plaintiff Rodney Jones ("Plaintiff") in the above-referenced case. This letter addresses the defendants' opposition to the Plaintiff's request to file the Second Amended Complaint ("SAC"). The Plaintiff respectfully requests that the Court allow the parties to engage in limited discovery as Defendants are desperately relying on Plaintiffs lack of access to wire transactions, emails, phones records, tax records and financial records to justify dismissing the Plaintiffs case, and or denying the Plaintiffs leave to amend. On multiple occasions, Plaintiff provided Defendants with a preservation notice informing them that they were required to preserve all financial records associated with Sean Combs, Love Records, and all of Sean Combs' shell companies. This includes and is not limited to, all tax documents, bank statements, and wire transfers (both domestic and international). Plaintiff has reason to believe the "Exclusive Recording Agreement" ("ERA") defendants rely on is a *ruse*. (*see*, **Attached Exhibit A, the ERA**). As detailed below, Defendants violated several provisions of their ERA.

**Plaintiff Proposed Second Amended Complaint Is Not Plead In Bad Faith**:
In their April 1, 2024, letter, Defendants Lucian Grainge in his capacity as CEO of Universal Music Group ("UMG"), Motown Records, and UMG (collectively, "Defendants"), questioned why Plaintiffs SAC changed the basis for Plaintiff claims against the Defendants. The Plaintiff stands by the facts as written in his First Amended Complaint ("FAC") as it was written with the knowledge, documents, videos, and audio recordings he possessed when the pleading was written and filed.

As evidenced by his declaration, Plaintiff based the claims raised in his FAC on evidence he has in his possession and firsthand accounts from conversations he had with Defendant Sean Combs. (*see*, **Exhibit B, Plaintiff Rodney Jones Declaration**). Plaintiffs proposed SAC puts forth a new theory for Defendant's liability, which is not done in bad faith but instead comports with the standard set forth in this circuit. "Indeed, it is often true that during the discovery process, a party learns of previously unknown facts that support the cause of action alleged in the complaint.



## T. A. Blackburn Law

"Litigants who must frame their claims before obtaining discovery often find it necessary to conform their theories to the facts as time goes on." Moriarty v. Larry G. Lewis Funeral Directors Ltd., 150 F.3d 773, 777 (7th Cir. 1998). *Kennedy v. Lehman*, No. 03-CV-531, 2007 U.S. Dist. LEXIS 100124, at *26 (W.D.N.Y. June 26, 2007).

Plaintiff only changed the basis for his SAC after he received new information from Ethiopia Habtemariams declaration and the appearance letter from Defendant's counsel. Still, corrective amendments often avoid unnecessary motion practice, and amended pleadings may naturally be at odds with original pleadings. *See Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 266-67 (S.D.N.Y. 2008) ("It would be a harsh rule of law indeed if a litigant were to change a statement in an amended pleading to repair a weakness cited by an adversary or by the [c]ourt, only to have the case dismissed because the conforming change in some way may conflict with an allegation in the earlier pleadings."). *Morris v. City of N.Y.*, 2022 U.S. Dist. LEXIS 129953, at *3 (S.D.N.Y. July 21, 2022).

On March 4, 2024, Defendants sent an "angry" letter, accusing Plaintiff of lying and fabricating the claims in the FAC. As he is required to do, Plaintiff considered the new information provided in the Defendants letter coupled with the Declaration of Ms. Habtemariam and made the necessary changes in the proposed SAC. Apparently, this is not good enough for the Defendants as they are desperate to distance themselves from Defendant Sean Combs. Defendants are terrified to let this case enter the phase of discovery. They know they do not possess any of the documents that Sean Combs and Love Records were required to provide to satisfy provisions 4.01, 4.02(a), 4.02(b), and 4.04(b) of their agreement with Sean Combs. The ERA confirms the Plaintiffs position that Sean Combs had access to free money (at least 1.3 million) according to section 7.02(a) of the agreement.

**Plaintiffs' Claims Are Not Conclusory Or False**:
As previously stated, the Defendants did not require Sean Combs and Love Records to adhere to the terms of their contract. They were complicit, sloppy, and grossly negligent. They provided Sean Combs with $1.3 million upon signing the ERA without ever receiving an invoice or proof of what he was using that money for.

Defendants did not have any intention to enforce the terms of ERA. Section 4.04(a) of this sham ERA states, "Subject to the terms of this Article 4, you shall engage each producer pursuant to a written producer agreement containing material terms approved by Motown…". Plaintiff produced nine songs on the Love Album – Off the Grid. The Plaintiff was not compensated for his work. Additionally, Plaintiff did not have a written agreement with Love Records or Sean Combs as required by section 4.04(a) of the sham ERA. Defendants did not contact Mr. Combs or Love Records to obtain a copy of the Plaintiff's signed producer agreement. If they had done so, they would have discovered that Plaintiffs' work on the Love Album – Off the Grid violated section 4.04(b) of the ERA.
///
///



**The Defendants Are Partners In The Combs RICO Enterprise**:
As much as the Defendants are hoping to distance themselves from Sean Combs and Love Records, they are equally as liable for all of the crimes he committed throughout the duration of ERA. Defendants intentionally redacted essential sections of the ERA to hide the details of how they agreed to share profits, losses, ownership of the partnership assets, liability to creditors, compensation for the defendants, and loans to the organization.

*Management and control*: As detailed in section eight of the ERA, the Defendants had dominion and control over the artists, producers, and musicians for the Love album. According to the ERA, Defendants were the plaintiffs' attorneys, in fact, and had the power to execute documents on Plaintiffs behalf and to control his artistry.

See DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001) (to state a civil claim under 18 U.S.C. 1962(c), a plaintiff must allege that a defendant participated in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity") (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)). To participate in a racketeering enterprise under the relevant provisions of RICO, a defendant must "direct the enterprise's affairs." Reves v. Ernst & Young, 507 U.S. 170, 177, 180, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993). While a defendant need not play the "predominant" part in the operation of the enterprise, it must "exert" some "control" over it. Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003). *Doe v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 412 (S.D.N.Y. 2023).

Here, if the defendants' sham ERA is to be trusted, the defendants exerted some control over the Combs RICO enterprise through sections 4.01, 4.02, and 4.04, which all required Sean Combs and/or Love Records to provide notification, obtain consultation, and/or obtain approval from the Defendants prior to designating individual producers, engineers/mixers, and musicians; submit a written budget listing for its approval; and obtain written producer agreements.

**Plaintiffs Plausibly Pled Several TVPA Claims In The SAC**:
Defendants erroneously claim no private right of action for an obstruction claim under the TVPA. Defendants position contradicts well-settled law in this Court. In *Doe v. Deutsche Bank Aktiengesellschaft*, the defendants argue that the TVPA does not provide a private right of action for obstruction. Judge Rakoff disagreed.

In his opinion, Judge Rakoff held in the relevant part,
> "As an initial matter, defendants argue that JPM Jane Doe and DB Jane Doe have no right to assert obstruction claims. The TVPA's "civil remedy," 18 U.S.C. § 1595(a), only provides a right of action to a "victim" of a violation of the TVPA. 18 U.S.C. § 1595(a). The defendants argue that JPM Jane Doe and DB Jane Doe are not the victims of any obstruction of an enforcement effort. The only victim of such an action, defendants say, is the government that makes such an effort. See Doe v. Fitzgerald, 2022 U.S. Dist. LEXIS 8194, 2022 WL 425016, at *4 (C.D. Cal. January 6, 2022) ("The 'victim' of the obstruction





## T. A. Blackburn Law

of enforcement set out in section 1591(d) is the state or federal government[.]"). Thus, defendants say, the Jane Does do not have a right to assert their obstruction claims.

The statute cannot be read in this cramped fashion. While 18 U.S.C. § 1595(a) does not define "victim," a different section of the federal criminal code -- which establishes a criminal procedure that is generally applicable across federal crimes -- defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A); see also 34 U.S.C. § 20141(e)(2) (defining a victim as "a person that has suffered direct physical, emotional, or pecuniary harm as a result of the commission of a crime"). This definition accords with ordinary usage, which recognizes a victim as "one that is injured, destroyed, or sacrificed under any of various conditions." Victim, Merriam-Webster's Collegiate Dictionary (10th ed.). Thus, the "victims" of those who obstruct the enforcement of the TVPA include not just the government but also those who suffered harm because the government's enforcement efforts were hindered.

*Doe v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 409 (S.D.N.Y. 2023)

The *Doe v. Deutsche Bank Aktiengesellschaft* standard applies here. Defendants attempt to downplay their role in Sean Combs' sex trafficking operation by stating that Plaintiff has no knowledge of their tax filings or reporting requirements for Mr. Combs and Love Records. The plaintiffs' knowledge stems from Mr. Combs' statements that only poor people pay taxes, meaning he pays little to no taxes. In addition to Mr. Combs' statements, Plaintiff was not compensated for his nearly thirteen months of work on the Love Album. Defendants would know this if they did their due diligence as outlined in their sham ERA and ensured that the Plaintiff producer agreement was signed as required by section 4.04(a). Additionally, if Defendants would have been on notice if they required Mr. Combs to provided itemized Love Album recording invoices. They did not.

**Defendants Recklessly Disregarded The Existence Of Sex Trafficking**:
As detailed in the Plaintiff's Declaration, executives from the Defendants organization visited Mr. Combs' home, Chalice Recording Studios, and Club Love listening parties. In the studios, there were sex workers present. The Plaintiff has videos and photos evidencing this. The Plaintiff also has Uber receipts and text messages from several sex workers Mr. Combs requested to be present during the recording sessions for the Love Album. As stated earlier, Plaintiff was not compensated for his work on the Love Album. There were other producers and engineers present at the studios who were not paid for the work they did on the Love Album. Yet, Plaintiff can show that the sex workers that were present in the recording studios, Love Album listening parties, Club Love parties, and Sean Combs house parties were all paid.

According to Defendants sham ERA, Sean Combs and Love Record were required to get approval from the defendants before hiring the producers of the album. Defendants also had access to all of the recording sessions associated with creating the Love Alum. Plaintiff personally saw executives from the Defendant record label present at the recording sessions during the times that



## T. A. Blackburn Law

sex workers were present.  According to the Plaintiff's Declaration, Sean Combs informed him that those individuals were there scouting for talent. Defendants either knew or should have known through their authorized agents, that Mr. Combs was engaging in sex trafficking, and they benefited from it.  Section 1595 allows for civil liability against facilitators who benefit from what they knew or should have known is a sex trafficking venture.  As a remedial statute, we construe the Act liberally Where, as here, a statute is "remedial," it "should be liberally construed." We cannot read out the language of section 1595 imposing civil liability against a person who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or *should have known* has engaged in an act in violation of this chapter." *A.B. v. Marriott Int'l, Inc*., 455 F. Supp. 3d 171, 189 (E.D. Pa. 2020).

In the end, UMG, Motown, and Lucian Grainge, in his capacity as CEO of UMG, are equally as liable for Sean Combs' sex trafficking and RICO enterprises as Mr. Combs is.  We are certain that if the Court does a deep dive into Defendants financial records as detailed in the introduction it will be abundantly clear that Mr. Combs was provided millions of unchecked dollars by the Defendants which he used for his sex trafficking and Rico enterprise.  Defendants provided funding for the Love Album and Love Records, Inc.  They had a toothless sham ERA, which provided Mr. Combs with 1.3 million dollars cash upon signing the agreement.  It does not matter what document the Defendants produce evidencing the terms of their business partnership with Mr. Combs.  It is important to thoroughly assess what is written versus what was done, as Plaintiff detailed above.

The Plaintiff respectfully requests leave to amend so he can file his second amended complaint. The Plaintiff will cure some of the issues the Defendants raised and add Cuba Gooding, Jr. as a defendant. We thank the Court for its time and attention to this matter.

.

                                              Respectfully Submitted,

                                              *Tyrone A. Blackburn, Esq.*
                                              Tyrone A. Blackburn, Esq.

CC: All attorneys of record via ECF.
*Enclosed*

