**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RODNEY JONES,

        *Plaintiff*,

     -against-

SEAN COMBS, JUSTIN DIOR COMBS, CUBA
GOODING, JR., LUCIAN CHARLES GRAINGE,
KRISTINA KHORRAM, LOVE RECORDS, MOTOWN
RECORDS, UNIVERSAL MUSIC GROUP, COMBS
GLOBAL ENTERPRISES, JOHN and JANE DOES 1-10
and ABC CORPORATIONS.  1-10,

        *Defendants*.

Case No.: 1:24-cv-01457

**MEMORANDUM OF LAW
IN SUPPORT OF THE UMG
DEFENDANTS' MOTION
TO DISMISS THE SECOND
AMENDED COMPLAINT**

**PRYOR CASHMAN LLP**
Donald S. Zakarin
James A. Janowitz
William L. Charron
Nicholas G. Saady
Alina Jamil Mian
7 Times Square, New York, NY 10036
Tel.: (212) 421-4100
Fax: (212) 798-6307

*Attorneys for the UMG Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT ALLEGATIONS AND FACTS...................................................................... 4

"Facts" Alleged In SAC ...................................................................................................... 5

There Are No New York Personal Jurisdiction Allegations............................................... 5

Plaintiff's RICO And TVPA Allegations Concerning Grainge........................................... 6

ARGUMENT ..................................................................................................................... 9

I.   PLAINTIFF'S RICO CLAIM AGAINST THE UMG DEFENDANTS SHOULD BE
     DISMISSED............................................................................................................. 10

     A.  Plaintiff Fails To Allege Two Or More
         Predicate Acts Of Racketeering Activity ...................................................... 11

         1.  Plaintiff Fails To Plead Mail And Wire
             Fraud With Requisite (Or Any) Particularity....................................... 11

         2.  Plaintiff Fails To Plead A Viable Controlled Substances Claim ........... 13

         3.  Plaintiff Fails To Plead A Viable TVPA Claim.................................... 15

     B.  Plaintiff Fails To Allege A Continuous Pattern Of Racketeering Activity ............... 15

     C.  Plaintiff Fails To Allege A Viable Enterprise................................................ 16

     D.  Plaintiff Fails To Allege "Operation And Management" Of The Enterprise ............. 18

     E.  Plaintiff Fails To Allege Loss Causation ...................................................... 19

II.  THE TVPA CLAIMS SHOULD BE DISMISSED.......................................................... 21

     A.  Plaintiff's TVPA Fifteenth Cause Of Action Should Be Dismissed ......................... 21

     B.  Plaintiff's Obstruction Claim Should Be Dismissed ..................................... 24

CONCLUSION.................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                               **<u>PAGE(s)</u>**

*4 K & D Corp. v. Concierge Auctions, LLC*,
  2 F. Supp. 3d 525 (S.D.N.Y. 2014) .......................................................................19

*Achtman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006)..................................................................................9

*AJ Energy LLC v. Woori Bank*,
  No. 18-CV-3735, 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019)............................9

*Anza v. Ideal Steel Supply Corp*.,
  547 U.S. 451 (2006)............................................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................9, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................9

*CPF Premium Funding, Inc. v. Ferrarini*,
  No. 95-CV-4621, 1997 WL 158361 (S.D.N.Y. Apr. 3, 1997) ...............................15

*Canosa v. Ziff*,
  No. 18-CV-4115, 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ..............................20

*Cedar Swamp Holdings, Inc. v. Zaman*,
  487 F. Supp. 2d 444 (S.D.N.Y. 2007).................................................................16

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001)............................................................................................16

*Continental Kraft Corp. v. Euro-Asia Dev. Grp., Inc.*,
  No. 97-CV-0619, 1997 WL 642350 (E.D.N.Y. Sept. 8, 1997) ..............................11

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
  671 F. Supp. 3d 387 (S.D.N.Y. 2023)...............................................................23, 24

*Edmonds v. Seavey*, No. 08-CV-5646, 2009 WL 2949757, at *5 (S.D.N.Y. Sept.
  15, 2009), *aff'd*, 379 F. App'x 62 (2d Cir. 2010)..................................................13

*FD Prop. Holding, Inc. v. US Traffic Corp.*,
  206 F. Supp. 2d 362 (E.D.N.Y. 2002) ...............................................................15

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
  20 F. Supp. 3d 451 (S.D.N.Y. 2014)...................................................................19

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                                      <u>PAGE(s)</u>

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019)............................................................21, 22

*Gilbert v. United States Olympic Comm.*,
    423 F. Supp. 3d 1112 (D. Colo. 2019).................................................................24

*Goldfine v. Sichenzia*,
    118 F. Supp. 2d 392 (S.D.N.Y. 2000).....................................................10, 17, 18

*Grosz v. Museum of Modern Art*,
    772 F. Supp. 2d 473 (S.D.N.Y. 2010) ....................................................................7

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    429 U.S. 229 (1989)..............................................................................................15

*Heffernan v. HSBC Banks USA*,
    No. 99-CV-07981, 2001 WL 803719 (E.D.N.Y. Mar. 29, 2001)...........................16

*Heinrich v. Dean*,
    655 F. Supp. 3d 184 (S.D.N.Y. 2023)...................................................................16

*Hemi Grp., LLC v. City of N.Y., N.Y.*,
    559 U.S. 1 (2010)..................................................................................................20

*Highlands Ins. Co. v. PRG Brokerage, Inc.*,
    No. 01-CV-2272, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004) ............................10, 11

*Jane Doe No. 1 et al v. Daniel S. Fitzgerald*,
    No. CV2010713, 2022 WL 425016 (C.D. Cal. Jan. 6, 2022)................................24

*Kadouri v. Fox*,
    No. 03 CV 1725 (NG), 2005 WL 783255 (E.D.N.Y. Jan. 24, 2005) ....................14

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997)..................10

*Lawson v. Rubin*,
    No. 17-CV-6404, 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) .........................19, 20, 22, 23

*Lundy v. Cath. Health Sys. of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013)..................................................................................10

*Makowski v. United Bhd. of Carpenters & Joiners of Am.*,
    No. 08-CV-6150, 2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010)..............................18

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(s)**

*Morgens Waterfall Holdings, L.L.C. v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
  198 F.R.D. 608 (S.D.N.Y. 2001) ...................................................................................11

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
  165 F. Supp. 2d 514 (S.D.N.Y. 2001)..........................................................................11, 17

*Noble v. Weinstein*,
  335 F. Supp. 3d 504 (S.D.N.Y. 2018).......................................................................22, 23, 24

*Palsgraf v. Long Island R. Co.,*
  162 N.E. 99, 104 (1928) ...............................................................................................19

*People v. Coria*,
  21 Cal. 4th 868 (1999) .................................................................................................14

*People v. Daniels*,
  14 Cal.3d 857 (1975) ...................................................................................................14

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
  No. 19-CV-1861, 2021 WL 960394 (E.D.N.Y. Mar. 15, 2021), *aff'd*,
  No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022) ........................................20

*Petrosurance, Inc. v. National Ass'n of Ins. Comm'rs*,
  888 F. Supp. 2d 491 (S.D.N.Y. 2012), *aff'd*, 514 F. App'x 51 (2d Cir. 2013).......................19

*Rajaratnam v. Motley Rice, LLC*,
  449 F. Supp. 3d 45 (E.D.N.Y. 2020) ...........................................................................11

*Redtail Leasing, Inc. v. Belleza*,
  No. 95-CV-5191, 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) ............................18

*Riker v. Premier Cap., LLC*,
  15-CV-8293, 2016 WL 5334980 (S.D.N.Y. Sept. 22, 2016) .................................12

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
  30 F.3d 339 (2d Cir. 1994).............................................................................................16

*Rosenson v. Mordowitz*,
  No. 11-CV-6145, 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012)...........................10

*Smith v. Home Depot U.S.A., Inc.*,
  No. 20-CV-4125, 2021 WL 4904572  (E.D.N.Y. Oct. 21, 2021)..................................12

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(s)**

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008) ...............................................................................15

*Targum v. Citrin Cooperman & Co., LLP*,
   No. 12-CV-6909, 2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013)...........................18

*Technomarine SA v. Jacob Time, Inc.*,
   905 F. Supp. 2d 482 (S.D.N.Y. 2012)...................................................................10

*U1IT4less, Inc. v. Fedex Corp.*,
   871 F.3d 199 (2d Cir. 2017)..................................................................................16

*United States v. Farah*,
   766 F.3d 599 (6th Cir. 2014) ................................................................................24

*United States v. Turkette*,
   452 U.S. 576 (1981) ..............................................................................................16

*Williams v. GMAC Mortg., Inc.*,
   No. 13-CV-4315, 2014 WL 2560605 (S.D.N.Y. June 6, 2014) ...............................7

*Zuhovitzky v. UBS AG CHE 101.329.562*,
   No. 21-CV-11124, 2023 WL 4584452 (S.D.N.Y. July 18, 2023) ....................19, 20

## STATUTES AND RULES

18 U.S.C. § 2...........................................................................................................5

18 U.S.C. § 1341....................................................................................................11

18 U.S.C. § 1343....................................................................................................11

18 U.S.C. § 1591................................................................................................4, 5, 21, 24

18 U.S.C. § 1595..............................................................................................5, 21

18 U.S.C. § 1961........................................................................................4, 11, 15

18 U.S.C. § 1962......................................................................................5, 16, 18

18 U.S.C. § 1964....................................................................................................20

18 U.S.C. § 1965......................................................................................................6

21 U.S.C. § 1 ....................................................................................................................13

Fed. R. Civ. P. 8 ...........................................................................................................1, 10

Fed. R. Civ. P. 11 .............................................................................................................14

Fed. R. Civ. P. 12 ..................................................................................................1, 3, 6, 7, 9

## **WEBSITE**

https://www.billboard.com/music/rb-hip-hop/sean-diddy-combs-motown-records-love-
records-1235068952/ ....................................................................................................7

Defendants, Sir Lucian Grainge ("Grainge"), Motown Records ("Motown") and UMG Recordings, Inc. ("UMG Recordings," incorrectly named as Universal Music Group, which is not a juridical entity), respectfully submit this Memorandum of Law in support of their motion, pursuant to Fed. R. Civ. P. 8, 12(b)(2) and 12(b)(6), to dismiss the Second Amended Complaint ("SAC") of plaintiff Rodney Jones ("Plaintiff") (ECF No. 38).

## PRELIMINARY STATEMENT

As set forth below in the Argument section of this Memorandum of Law, all of the claims against Grainge, Motown and UMG Recordings (the "UMG Defendants") in the SAC are lacking in any legally cognizable basis.  Every claim is premised on the untenable strict liability theory that when one enters into a commercial contract, the payor under that contract becomes liable for anything that the recipient of payment does with the payment.  There is no law underpinning such theory and the baseless "general business partnership" allegation in the SAC provides no support. The claims against the UMG Defendants are entirely bereft of legal merit and should be dismissed with prejudice.

Plaintiff and his counsel ("Blackburn") have blown up a $50,000 claim for underpayment for production services into criminal accusations against Sean Combs ("Combs") and his associates.  Not content to pursue Combs alone, without any factual or legal basis, Plaintiff and his counsel ("Blackburn") have also improperly accused Grainge, UMG Recordings and Motown (collectively, the "UMG Defendants") of furthering, participating in, and helping to conceal the alleged conduct of Combs and his associates based on a knowingly false "general business partnership" allegation coupled with the fabrication of a non-existent duty to supervise and control how Combs spent his own money.

The First Amended Complaint ("FAC") contained offensively and knowingly false allegations that the UMG Defendants attended, participated in and financially supported Combs'

alleged "sex trafficking" activities.  The FAC also alleged that Motown should be vicariously liable for the conduct of Combs' Love Records as the so-called "parent" company of Love Records.  The SAC abandons virtually all of these allegations.

Gone is Plaintiff's completely fabricated allegation that he personally saw Grainge and former defendant Ethiopia Habtemariam ("Habtemariam") at Combs' alleged sex parties.   In response to the UMG Defendants' motion to dismiss the FAC, Plaintiff and his counsel pivoted to pretending only that Combs told him Grainge was there (and that he was in a drug induced state at the time – things nowhere mentioned in the FAC).  Also gone is the utterly unfounded allegation that Motown was the "parent company" of Love Records, eliminating the FAC's "respondent (sic) superior" alleged basis for trying to affix responsibility on the UMG Defendants for Combs' alleged actions.

But unwilling to acknowledge that they never had a basis for any claim against the UMG Defendants, Plaintiff and Blackburn simply invent new foundational allegations for the claims in the SAC.  These claims and the foundational allegations are no less false than those in the FAC.

Thus, in place of "parent company," Plaintiff and Blackburn now contend (repeated some 46 times) that the UMG Defendants and Combs and his record label Love Records are "general business partners." (*E.g.*, ECF No. 38 at ¶ 231.)  The SAC even falsely alleges (¶¶ 8, 12, 218) that Habtemariam's declaration, attached to the SAC, says that Grainge authorized Motown to enter into a "general business partnership" with Combs.  She says no such thing.  Her declaration  says only that Motown was authorized to enter into **a license agreement**, and Habtemariam and her counsel specifically told Blackburn there was no partnership**.**  And weeks before filing the SAC, Plaintiff and Blackburn were provided a redacted copy of the license agreement (Braithwaite Decl., Ex. A) which specifically states, in paragraph 16.11, that there was no partnership.

Plaintiff and Blackburn ignore all of this.  And instead of pleading any of the required facts to support their "partnership" allegation, content themselves with seizing on colloquial language in the press about Motown and Love Records "partnering" on Love Records' first album (the "Love Album").  Thus, contrary to undisputed evidence and without any legal or factual basis, Plaintiff and Blackburn simply offer the unsupported conclusion that the UMG Defendants are Combs' "general business partners;" and, (b) that as alleged "partners," they were obligated to supervise and control how Combs supposedly spent Motown's license payments to Love Records, somehow making them liable for Combs' alleged actions.  Plaintiff's theory has no legal or factual basis and does not remotely satisfy the plausibility standard that governs Rule 12(b)(6).

Plaintiff admits there is a license agreement between Motown and Love Records to finance the making of music.  He then leaps from that admission to unsupported conclusions: (a) that the UMG Defendants were, wittingly or unwittingly, financing Combs' alleged sex trafficking; and (b) that the UMG Defendants had a duty to supervise Combs in his personal activities and to prevent him from spending money on his alleged illicit behavior.  There are neither any facts nor any law to support this theory.  And if all else were not sufficient to show that the SAC, like the FAC, is pure gibberish, Blackburn's cry that he is "certain" he can prove his theory if only he got discovery (*see* ECF No. 34 at pp. 1, 5), confirms that there is and never was any basis for the SAC's claims against the UMG Defendants.

Money, of course, is fungible — a fact that seems to elude Plaintiff and Blackburn. Nothing in the license agreement between UMG Recordings and Love Records allows any inference that the UMG Defendants were financing the trafficking of sex (and Exhibits B and C to the Braithwaite Dec. confirm the exact opposite).  Under Blackburn's theory, any payor of monies to Combs for any reason  (*e.g.*, Diageo, which distributes his liquor brands, or a bank paying interest on an account) is liable for Combs' actions.  Even if Plaintiff's "general business

partnership" allegations had any basis, the entire theory of the claims against the UMG Defendants is nonsensical.  But, as set forth in the accompanying Declarations of Sir Lucian Grainge, Ethiopia Habtemariam, Martha Braithwaite and Donald S. Zakarin, and the exhibits annexed thereto that are referenced by or integral to the SAC, there is no factual underpinning for the SAC's claims against the UMG Defendants.

The remainder of this Memorandum of Law explains why Plaintiff's claims arising under the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961, *et seq.*, and Trafficking Victims Protection Act of 2000 ("TVPA"), 18 U.S.C. §§ 1591, *et seq.*, are invalidly pleaded and should be dismissed with prejudice.  The absurdity of Plaintiff's attempt to leap a chasm-sized gap between his factually unfounded conclusions and his claims against the UMG Defendants is graphically illustrated in paragraph 250 of his SAC:

> Upon information and belief, this Uber [to transport a sex worker to and from Mr. Combs' home] and this sex worker were compensated from the financial support [the UMG Defendants] provide[d] to Sean Combs and Love Records **for the recording costs associated with the creation of the Love Album**.

(ECF No. 38 at ¶ 250 (emphasis supplied).)  This is both a *non sequitur* and nonsense.

In Plaintiff's application for leave to file his SAC, he acknowledged that he cannot allege that the UMG Defendants "intentionally" did anything, but that he nonetheless seeks to impose federal racketeering and sex trafficking liability upon the UMG Defendants for having "negligently … funded the activities of Defendant Sean Combs."  (ECF No. 30 at p.1 (emphases supplied).)  The UMG Defendants paid and/or reimbursed recording costs under an arm's length license agreement.  They were not "general business partners" and the claims against them go far beyond being frivolous.

## RELEVANT ALLEGATIONS AND FACTS

Plaintiff continues to allege three claims against the UMG Defendants in his SAC:

1.      <u>First Cause of Action</u> for violations of the RICO Act, 18 U.S.C. §§ 1962(A), (C)-(D) (ECF No. 38 ¶¶ 201-276);

2.      <u>Fifteenth Cause of Action</u> for participating in violations of the TVPA, 18 U.S.C. §§ 1591(a)(2), 1595 (ECF No. 38 ¶¶ 370-376); and

3.      <u>Sixteenth Cause of Action</u> for obstructing enforcement of the TVPA, under 18 U.S.C. § 1591(d) (ECF No. 38 ¶¶ 377-393).[1]

**<u>"Facts" Alleged In SAC</u>**

Plaintiff claims he periodically lived with Combs in various residences in California, New York and Florida while working on a Combs album.  (ECF No. 38 ¶¶ 23-25.)  He supposedly "witnessed, experienced, and endured" an alleged shooting at Chalice Recording Studio in Los Angeles, California, and various acts of sexual pressure and sex trafficking at Combs' residences. (*See generally id.* ¶¶ 26-159.)  The UMG Defendants' sole alleged connection to any of this is as the "general business partner" of Combs under the license agreement, they "intentionally or unintentionally" funded his activities.  As set forth in the accompanying Declaration of Donald S. Zakarin in Support of this Motion dated April 24, 2024  ("Zakarin Decl.") and the Declarations of Sir Lucian Grainge dated April 18, 2024 ("Grainge Decl."), Martha Braithwaite dated April 18, 2024 ("Braithwaite Decl."), and Ethiopia Habtemariam dated March 27, 2024 ("Habtemariam Decl."), which are exhibits to the Zakarin Declaration, the factual foundation for all of the claims against the UMG Defendants is indisputably non-existent.

**<u>There Are No New York Personal Jurisdiction Allegations</u>**

Plaintiff admits that Grainge resides in California.  (ECF No. 38 ¶ 8.)  Plaintiff admits UMG Recordings' and Motown's principal places of business are in California.  (*Id.* ¶¶ 11, 12.)

---

[1] During the April 9, 2024 Court hearing, Plaintiff voluntarily withdrew his claim for aiding and abetting violations of the TVPA, 18 U.S.C. §§ 2, 1591(a)(1), (a)(2), 1595.  (Zakarin Decl., Ex. 6 (Transcript of April 9, 2024 Court Telephone Conference) at 24:5-24:16.)

Beyond an unsupported claim that he was groped by Combs "in LA, NY, FL, Saint-Barthélemy, and the United States Virgin Islands," every event alleged in the FAC relating to Plaintiff's claims against the UMG Defendants occurred in California.  (*Id.* ¶¶ 74, 92, 99, 101, 103, 106, 110, 114, 116, 169, 177, 182, 184, 186, 190.)  The only arguable basis for personal jurisdiction and venue over the UMG Defendants is under nationwide service of process pursuant to the RICO statute, 18 U.S.C. § 1965(d).  As shown below, the RICO claim against the UMG Defendants is so patently lacking in merit that, upon its dismissal, there is not even an arguable basis for personal jurisdiction over the UMG Defendants for any of the other equally baseless claims and therefore dismissal would be appropriate under Rule 12(b)(2).

**Plaintiff's RICO And TVPA Allegations Concerning Grainge**

Plaintiff alleges that a supposed 20 year-long "RICO enterprise" somehow caused him to witness and participate in various acts of sexual misconduct at Combs' residences in Florida and California.  (*Id.* ¶¶ 160-189.)  Plaintiff alleges that the "enterprise" was "instrumental[ly]" directed and operated by co-defendants Combs and his "Chief of Staff, Kristina Khorram," with assistance from five other individuals (none of whom is any of the UMG Defendants): Stevie J; Justin Combs; Brendan Paul; Frankie Santella; and Moy Baun.  (*Id.* ¶ 185.)  Plaintiff alleges, in purely conclusory terms, that these people "ordered sex workers, and prostitutes," "ordered and distributed" a number of narcotics, procured date rape drugs that were used against female attendees, and "acquire[d], and distribute[d]" guns and drugs.  (*Id.* ¶¶ 177-186.)

Nowhere does the SAC allege that any of the UMG Defendants did anything to direct or operate the alleged enterprise.  Instead, the SAC adopts a frivolous and legally baseless theory against the UMG Defendants as follows:

First, Plaintiff alleges that the UMG Defendants "enter[ed] into a general business partnership agreement … as that term is defined by the laws of the State of New York ... to provide

financial resources to their general business partners, Defendants Sean Combs and [Combs' record label] Love Records, Inc." (*Id.* ¶¶ 8, 11.) Plaintiff alleges that, through the alleged "general business partnership," the UMG Defendants "provided funding and/or reimbursements for expenses associated with the recording cost of the Love Album [Love Records' first album release]," which "was released on September 23, 2023." (*Id.* ¶ 12.)

But Blackburn knows there is no "general business partnership." He ignores the express terms of the license agreement (Braithwaite Decl., Ex. A ¶ 16.11: **"Nothing herein contemplates or constitutes [Love Records] or [Combs] as Motown's partners, joint venturers, agents or employees."** (*Id.* (emphasis supplied).)[2] He ignores the Habtemariam declaration he himself attached to the SAC. He ignores the explicit advice of Habtemariam's counsel. The SAC pleads no facts to support the existence of any "partnership."[3] Instead, he refers only to colloquial press reports in 2022 announcing that Love Records had "partner[ed]" on "a one-time album deal with Motown Records" to release Love Records' inaugural album. (*E.g.*, https://www.billboard.com/music/rb-hip-hop/sean-diddy-combs-motown-records-love-records-1235068952/.)

<u>Second</u>, using the non-existent "general partnership agreement" as a springboard, the SAC further alleges that:

> [a]s the general business partners of Sean Combs and Love Records, Inc., and the financial backer for the creation of the Love Album, [the UMG Defendants] had a duty to ensure that the financial support they provided to Sean Combs and Love Records was not being used for sex workers, drugs, and laced alcohol.

---

[2] The SAC refers repeatedly to the license agreement but does not attach it. It is integral to the SAC. *Williams v. GMAC Mortg., Inc.*, No. 13-CV-4315, 2014 WL 2560605, at *1 (S.D.N.Y. June 6, 2014) (holding that on a Rule 12(b)(6) motion, the Court may review the Complaint, documents incorporated by reference, documents that are "integral" even if not incorporated, and judicially noticeable facts) (internal quotations omitted); *Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473, 497 (S.D.N.Y. 2010) (plaintiffs could not avoid dismissal by failing to include integral document).

[3] Plaintiff also alleges no reason that New York's partnership laws should even apply where he alleges that Motown and Love Records are both California entities. (ECF No. 38 ¶¶ 11, 13.)

(ECF No. 38 ¶ 173.)   These coupled allegations – the non-existent partnership and non-existent duty – are the sole foundation for Plaintiff's entire case theory against the UMG Defendants.   Not a single fact is alleged to support the "general business partnership" allegation.   No facts or law exist to support the alleged duty the SAC unilaterally imposes on the UMG Defendants, as payors under the license agreement for Combs' <u>making of music,</u> to police all of his personal and business activities.   Indeed, the SAC itself admits that Plaintiff and Blackburn have no knowledge of any intentional act by the UMG Defendants (¶¶ 213, 373) and, in the letter motion belatedly seeking permission to file the SAC, admitted that their wildly attenuated RICO and TVPA claims seek to affix federal RICO and TVPA liability on the UMG Defendants for having "<u>negligently</u> … funded the activities of Defendant Sean Combs."   (ECF No. 30 at p.1 (emphases supplied).)

<u>Third</u>, through vague and improper "group pleading" discussed more fully below, Plaintiff alleges that the UMG Defendants' mere payment of money in connection with the Love Album somehow constitutes mail and wire fraud, sex trafficking, and narcotics distribution predicate acts for purposes of a civil RICO claim, albeit without any specific allegations as to any of the UMG Defendants.   (ECF No. 38 ¶¶ 245-276.)

<u>Fourth</u>, through more than 14 pages of bloated and totally improper pleading – including more than six single-spaced pages of a single paragraph, all of which are purely conclusory, not factual – which cannot distract from the absence of any viable and coherent legal theory, Plaintiff concludes that the UMG Defendants should be liable for sex trafficking under the TVPA for providing so-called "unchecked financing" to Love Records under the License Agreement.   (*See generally id.* ¶¶ 370-393.)   Without a single fact alleged to support "unchecked financing," Plaintiff's theory is that without any actual knowledge or personal participation in the alleged sex trafficking, somehow the UMG Defendants "knew or should have known that the money [paid under the License Agreement to make music] would be used to fund the sex trafficking venture."

(*Id.* ¶ 372.)  Leaping from this nonsensical conclusion, the SAC contends, as a purely vicarious matter, that the UMG Defendants "actively participated in the recruitment of victims of the venture."  (*Id.*)

Plaintiff's RICO and TVPA claims try to rope in Grainge, UMG Recordings and Motown because they supposedly knew of Combs' conduct (which they did not), failed to prevent it (which they had no duty to prevent) or allegedly facilitated it (merely by paying monies due under the license agreement and supposedly not controlling how the monies were used).  And beyond pleading conclusions, no facts are alleged to support any of these conclusions.  The undisputed facts are otherwise: under the license agreement's advance, Motown paid or reimbursed Love Records for invoiced recording costs or marketing and promotional expenses.  (Braithwaite Decl. at ¶ 15, Exhibits B and C; Grainge Decl. at ¶¶ 26, 32; Habtemariam Decl. at ¶ 27)

## ARGUMENT

To survive Rule 12(b)(6) dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).  Nor do "legal conclusions masquerading as factual conclusions." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal quotations and citation omitted); *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735, 2019 WL 4688629, at *5 (S.D.N.Y. Sept. 26, 2019).  Moreover, where "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown –

that the pleader is entitled to relief."  *Technomarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 487 (S.D.N.Y. 2012) (citation omitted).

## I.  PLAINTIFF'S RICO CLAIM AS AGAINST THE UMG DEFENDANTS SHOULD BE DISMISSED

Courts "look[] with particular scrutiny at [c]ivil RICO claims to ensure that the Statute is used for the purposes intended by Congress."  *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 396-97 (S.D.N.Y. 2000).  As the court in *Katzman v. Victoria's Secret Catalogue* explained:  "'Civil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device.'…  Because the 'mere assertion of a RICO claim … has an almost inevitable stigmatizing effect on those named as defendants, … courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'"  167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quotations and citation omitted), *aff'd*, 113 F.3d 1229 (2d Cir. 1997); *accord Rosenson v. Mordowitz*, No. 11-CV-6145, 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012) (Oetken J.).  Thus, "bald contentions, unsupported characterizations, and legal conclusions and not well-pleaded allegations, will not suffice to defeat a motion to dismiss."  *Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01-CV-2272, 2004 WL 35439, at *2 (S.D.N.Y. Jan. 6, 2004) (citation omitted).  The SAC contains only bald conclusions.

As discussed below, a civil RICO claim requires that each defendant:  (1) committed two or more predicate acts of "racketeering activity," (2) constituting a "pattern," (3) through an "enterprise," (4) which each defendant directed the operation and management of, (5) causing property loss for the Plaintiff.  *Lundy v. Catholic Health Sys. of Long Island Inc*., 711 F.3d 106, 119 (2d Cir. 2013).  The RICO claim against the UMG Defendants fails to satisfy any of these requirements.

### A.     Plaintiff Fails To Allege Two Or More Predicate Acts Of Racketeering Activity

"A RICO claim must charge each named defendant with the commission of two or more predicate acts of racketeering activity."  18 U.S.C. § 1961(5); *id.*; *Continental Kraft Corp. v. Euro-Asia Dev. Grp., Inc.*, No. 97-CV-0619, 1997 WL 642350, at *4 (E.D.N.Y. Sept. 8, 1997) (citation omitted).  "Racketeering activities" include a number of criminal acts, including the commission of interstate mail or wire fraud, pursuant to 18 U.S.C. §§ 1961, 1341 and 1343.  Plaintiff does not viably plead any predicate acts against the UMG Defendants.

### 1.     Plaintiff Fails To Plead Mail And Wire Fraud With Requisite (Or Any) Particularity

Because Plaintiff invokes alleged mail and wire fraud as predicate acts, (ECF No. 38 ¶¶ 246-273), he is required to satisfy the heightened pleading requirement of Rule 9(b) – indeed, "[t]he courts of this Circuit have recognized that the policies behind Rule 9(b)'s particularity requirement apply with particular force in RICO actions."  *E.g.*, *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001) (citation omitted).  As here, "where multiple defendants are accused of mail or wire fraud, plaintiffs must plead fraud with particularity *as to each defendant*."  *Id.* (emphasis supplied) (citations omitted); *accord Morgens Waterfall Holdings, L.L.C. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 198 F.R.D. 608, 609-10 (S.D.N.Y. 2001) ("A plaintiff may not circumvent [Rule 9(b)] by identifying the defendants as members of various groups…."); *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 68 (E.D.N.Y. 2020) (same) (citations omitted).  Thus, Plaintiff must specifically allege the circumstances of the fraud, including the content of the alleged misrepresentations, the date and place of the misrepresentations, and the identity of the speakers or writers.  *See, e.g.*, *id.*; *Highlands*, 2004 WL 35439, at *2-4.

The SAC does not remotely satisfy the Rule 9(b) standard of identifying two or more particular acts of mail and/or wire fraud by any of the UMG Defendants.  To be sure, Plaintiff lards the SAC with vague references throughout to "mails" and "wires" being used; but nowhere does Plaintiff particularize any <u>specific</u> allegedly fraudulent mails and wires by any of the UMG Defendants.  In fact, the SAC does not allege any mail or wires being sent by the UMG Defendants nor does it identify the content of the alleged communications, when they were sent, who sent them and to whom, in violation of Rule 9(b).

Blackburn acknowledged he has no knowledge of any mail or wire fraud in his application for leave to file the SAC, when he asked for "limited discovery" <u>to be able to particularize</u> his allegations of mail and wire fraud.  (ECF No. 34 at p.1.)  He has it backwards.  Plaintiff may not first "unlock the doors of discovery" so that he can satisfy the heightened pleading requirements of Rule 9(b); Plaintiff must first satisfy the heightened requirements of Rule 9(b) before being <u>allowed</u> to unlock the doors of discovery.  *E.g.*, *Riker v. Premier Cap., LLC*, 15-CV-8293, 2016 WL 5334980, at *6 (S.D.N.Y. Sept. 22, 2016) ("To allow discovery to substitute for compliance with Rule 9(b) is to put the cart before the horse, as it ignores the fact that discovery has to be tied to a pleading which passes muster ….") (citation omitted); *Smith v. Home Depot U.S.A., Inc.*, No. 20-CV-4125, 2021 WL 4904572, at *6 (E.D.N.Y. Oct. 21, 2021) ("A case warrants discovery *only if* the complaint satisfies the relevant pleading standards.") (citation omitted); *see also Ashcroft*, 556 U.S. at 678-79 (holding that conclusory allegations "do not unlock the doors of discovery" under Rule 8).

Moreover, Blackburn himself admitted he has no civil RICO claim against the UMG Defendants when he admitted this theory is predicated on an assertion that the UMG Defendants "<u>negligently</u> … funded the activities of Defendant Sean Combs."  (ECF No. 30 at p.1 (emphasis supplied).)  Civil RICO liability requires <u>intentional</u> misconduct; not alleged "negligence."  *E.g.*,

*Edmonds v. Seavey*, No. 08-CV-5646, 2009 WL 2949757, at *5 (S.D.N.Y. Sept. 15, 2009), *aff'd*, 379 F. App'x 62 (2d Cir. 2010) ("To be guilty of mail or wire fraud, [d]efendants must have engaged in intentional fraud or acted with reckless indifference to the truth while engaged in the use of the wires or mails.  Mere negligence is insufficient to support a RICO claim that is based on these predicate acts.") (internal citation and citations omitted).

There are **no** predicate acts of mail or wire fraud by the UMG Defendants pleaded, let alone with particularity.  That alone requires dismissal of Plaintiff's RICO claim against them.

## 2.     Plaintiff Fails To Plead A Viable Controlled Substances Claim

In harassing, 'kitchen sink' style pleading, Plaintiff vaguely alleges as additional predicate acts that the UMG Defendants violated the federal Controlled Substances Act ("CSA"), 21 U.S.C. §§ 1, *et seq.*, Florida Penal Code 893.135, California Health and Safety Code § 11352, New York Penal Codes 220.77, 220.18, 220.50 and 220.06, and U.S. Virgin Islands Penal Code title 19, § 614a.  (ECF No. 38 at ¶ 255.)  Plaintiff makes no effort to identify the elements of any of these invoked statutes (he does not even include the correct citation for the CSA), and he fails to plead how any of the UMG Defendants' conduct allegedly violated any of them.  (*See generally id.* at ¶¶ 255-263.)  These alleged predicate acts are nonsense.

Within this part of his SAC, Plaintiff specifically identifies each so-called "Enterprise Member" — none of whom is a UMG Defendant.  (*Id.* at ¶ 260(g) [sic].)  Plaintiff's only allegation concerning the UMG Defendants is that they "provide[d] financial resources to Defendants Sean Combs and Love Records … for certain of the invoiced recording costs incurred by Love Records in making The Love Album."  (*Id.* at ¶ 258.)  Plaintiff then stretches his reasoning beyond all rational bounds and alleges that, "[a]cccording to [him], while the Combs Rico [sic] Enterprise [including other defendants and persons] was procuring, transporting, and distributing [illegal narcotics], it was during the making of The Love Album."  (*Id.*)

Again, the UMG Defendants are not alleged to be involved in any of these activities other than through the non-existent "general business partnership" and by paying monies due under the license agreement for the recording of the "Love Album" and supposedly failing to control how Combs allegedly spent the monies.  There are no facts supporting any of this and no law (nor any good faith basis for changing the law) pleaded.  *See, e.g.*, Fed. R. Civ. P. 11(b)(2)).

Plaintiff does not plausibly allege that the UMG Defendants violated <u>any</u> of the cited statutes because, among a host of other failings, Plaintiff does not allege that the UMG Defendants <u>knew</u> Combs and his associates were allegedly using the UMG Defendants' funds to deal in illegal narcotics (an impossibility given that money is fungible).  Knowledge and specific intent (known by any first-year law student as *mens rea*) is an essential element of each of the criminal statutes that Blackburn has casually tossed into the SAC.  *See, e.g.*, *Kadouri v. Fox*, No. 03 CV 1725 (NG), 2005 WL 783255, at *5 (E.D.N.Y. Jan. 24, 2005) (granting motion to dismiss civil RICO claim based on alleged CSA predicate act liability because plaintiff failed to "identify what conduct was engaged by [the defendant] in furtherance of the enterprise other than he knowingly sublet the home to [another defendant], whose purpose was to grow marijuana there."); Fla. Stat. Ann. § 893.135 (criminalizing the *knowing* sale, purchase, manufacture, delivery, and transport of marijuana (1)(a), cocaine (1)(b), and GHB (1)(h)); *People v. Coria*, 21 Cal. 4th 868, 878 (1999) (noting that California courts interpret California Health and Safety Code § 11352 as requiring that "the accused be aware of the character of the controlled substance at issue.") (citing *People v. Daniels*, 14 Cal.3d 857, 860 (1975)); N.Y. Penal Law § 220.77 (McKinney) (imposing liability upon the "director" of a controlled substance organization or where a profiteer "knowingly" and unlawfully sells or possesses a drug with intent to sell);  *id.* at § 220.50 (imposing liability for the "knowing" possession or sale); *id.* at § 220.18 (same); *id.* at § 220.06 (same); U.S. Virgin Islands

Penal Code title 19, § 614a (criminalizing the *knowing* sale, manufacture, delivery, and transport of marijuana (a)(1) and cocaine (a)(3)).

### 3. Plaintiff Fails To Plead A Viable TVPA Claim

Plaintiff also invokes supposed TVPA violations by the UMG Defendants as a predicate act for purposes of civil RICO liability.  (ECF No. 38 at ¶¶ 245-254.)  For the reasons discussed in Point II, *infra*, however, Plaintiff has not viably stated any TVPA claims against the UMG Defendants.  This alleged predicate act, therefore, is as illusory and non-existent as every other basis advanced for a RICO claim against the UMG Defendants.

### B. Plaintiff Fails To Allege A Continuous Pattern Of Racketeering Activity

The RICO statute defines a "pattern of racketeering" as at least two predicate acts occurring within ten years of each other.  18 U.S.C. § 1961(5).  However, "simply alleging two predicate acts without more is not sufficient to establish a pattern, which requires that a plaintiff must show both that the acts are related and continuous."  *FD Prop. Holding, Inc. v. US Traffic Corp.*, 206 F. Supp. 2d 362, 369 (E.D.N.Y. 2002) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).[4]

Plaintiff tries to manufacture a pattern by offering a conclusory claim that Defendants "have had several partnerships throughout the years," from 2003 to 2005, 2009 to 2015, and 2022 to 2023.  (ECF No. 38 ¶ 216.)  To begin with, as stated in the Braithwaite declaration, there is not now, and never was, any partnership with any Combs entity.  And the self-labeled "chart" in the SAC detailing a "Joint Venture" from 2003 to 2005, a "Worldwide Distribution Deal," from 2009

---

[4] "The continuity requirement may be satisfied in one of two ways.  A plaintiff must allege either an 'open-ended' pattern of racketeering activity (i.e., past criminal conduct combined with a threat of future criminal conduct), or a 'closed-ended pattern of racketeering activity (i.e., past criminal conduct) extending over a substantial period of time.'"  *CPF Premium Funding, Inc. v. Ferrarini*, No. 95-CV-4621, 1997 WL 158361, at *7 (S.D.N.Y. Apr. 3, 1997) (citation omitted); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citations omitted).  Plaintiff does neither.

through 2015, and the "Establish[ment of] Love Records and distribut[ion of] the Love Album"
from 2022 to 2023 is both wrong and meaningless.  (*Id.*)  Nowhere does Plaintiff elaborate upon
the earlier "Joint Venture" or "Worldwide Distribution Deal," and, in any event, there is no
connection between any of the alleged "partnerships."  (*See id.*)

### C.    Plaintiff Fails To Allege A Viable Enterprise

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two
distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred
to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001);
*accord U1IT4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017).  "This requirement
focuses the section on the culpable party and recognizes that the enterprise itself is often a passive
instrument or victim of the racketeering activity."  *Riverwoods Chappaqua Corp. v. Marine
Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (quotation omitted); *accord Cedric Kushner*,
533 U.S. at 164.  "The heart of any civil RICO claim is the enterprise.  There can be no RICO
violation without one."  *Heinrich v. Dean*, 655 F. Supp. 3d 184, 189 (S.D.N.Y. 2023) (citations
omitted) (dismissing RICO claims because plaintiffs alleged only that defendants acted to further
their own interests, not the interests of a separate RICO enterprise).

The SAC does not identify the alleged "RICO enterprise."  At most, the enterprise might
be argued to be an association-in-fact among some of the named defendants.  But to be viable,
Plaintiff must allege that the association-in-fact enterprise exists separate and apart from the
alleged pattern, with its own "hierarchy, organization, and activities."  *Heffernan v. HSBC Banks
USA*, No. 99-CV-07981, 2001 WL 803719, at *5 (E.D.N.Y. Mar. 29, 2001) (citing *United States
v. Turkette*, 452 U.S. 576, 583 (1981)); *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d
444, 450 (S.D.N.Y. 2007) ("[M]erely stringing together a list of defendants and labeling them an
enterprise is insufficient."); *accord Goldfine*, 118 F. Supp. 2d at 401 ("There is no allegation …

of what activity, if any, the alleged enterprise even engage in *other than* the alleged predicate acts …  Additionally, Plaintiffs fail to allege any chain of command of the enterprise, or how, if at all, the alleged 'members' functioned as an integrated group or directed the affairs of the alleged enterprise apart from the predicate acts themselves."); *Nasik*, 165 F. Supp. 2d at 539 ("[The plaintiff] has simply 'strung together all of the defendants in this action and labeled the resulting group an association-in-fact enterprise.'") (quotation omitted).

The SAC here suffers from all of these same defects.  It does not allege that any of the UMG Defendants fits within a hierarchy or command structure of the alleged enterprise, or that the enterprise exists <u>including the UMG Defendants</u> in any continuous conduct that is separate and apart from the specific alleged predicate acts themselves.  At most, Plaintiff tosses off conclusions that the UMG Defendants "ignored … red flags" (which did not exist), and "knew or should have known" that they were allegedly supporting a criminal enterprise that financially furthered their own interests (when Plaintiff now admits the UMG Defendants witnessed <u>nothing and where the license agreement actually produced a loss, not a benefit</u>).  (*See, e.g.*, ECF No. 38 ¶¶ 203, 372, 373, 375(f), 375(k), 380.)

The SAC's impossibly attenuated theory of the UMG's knowledge is based on an unfounded conclusion that the payment of money to Combs and to Love Records in connection with <u>the making of music</u> should have been understood by the UMG Defendants to be capable of being used by Combs for an alleged sex trafficking operation (in which the UMG Defendants were not involved).  Plaintiff's theory of knowledge blinks the obvious point that money is fungible (and that Combs was reputed to be worth a billion dollars in 2022).  This alone too renders the SAC's civil RICO claim entirely implausible (indeed, nonsensical).  *See, e.g.*, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 544, 555.

### D.      Plaintiff Fails To Allege "Operation And Management" Of The Enterprise

The SAC nowhere alleges how each of the UMG Defendants had "'some part in directing' the 'operation or management' of the enterprise itself," which is a pleading prerequisite.  *See, e.g.*, *Goldfine*, 118 F. Supp. 2d at 402-03.  Indeed, the UMG Defendants were intentionally <u>omitted</u> from Plaintiff's allegations regarding the management of the enterprise.  Plaintiff alleges:  "As the Chief of Staff, Defendant Khorram was instrumental in organizing and executing the RICO and TVPA Enterprises," and Plaintiff identifies five specific individuals who "executed the following tasks for the RICO, and TVPA enterprises."    (ECF No. 38 ¶ 185.)  The UMG Defendants are nowhere identified as directing the alleged enterprise's operation, management, or "execution."

"'As interpreted by courts in this district and others, the 'operation and management' test … is a very difficult test to satisfy.' …  In addition, the mere fact that a defendant may have *aided* in the alleged scheme to defraud, *even if that aid was intentional*, does not give rise to liability under § 1962(c)."  *Goldfine*, 118 F. Supp. 2d at 402-03 (citations omitted); *accord Redtail Leasing, Inc. v. Belleza*, No. 95-CV-5191, 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997) ("A defendant does not 'direct' an enterprise's affairs … merely by engaging in wrongful conduct that assists the enterprise.").

Plaintiff's far-fetched theory does not allege any involvement of the UMG Defendants beyond their having supposedly aided the enterprise (which they did not) by paying under the license agreement.  All of the alleged "wrongful" conduct is attributed to Combs and his associates, not to the UMG Defendants.  (ECF No. 38 ¶¶ 177-185).  The UMG Defendants are not "central figures," either directly or vicariously, in the alleged enterprise scheme.  *See, e.g., Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08-CV-6150, 2010 WL 3026510, at *6 (S.D.N.Y. Aug. 2, 2010) (explaining that courts in Second Circuit do not impose vicarious liability under RICO unless the defendant is shown to be the "central figure"); *Targum v. Citrin Cooperman &*

*Co., LLP*, No. 12-CV-6909, 2013 WL 6087400, at *7 (S.D.N.Y. Nov. 19, 2013).  The SAC's RICO claim is baseless and should be dismissed.

          **E.**        **Plaintiff Fails To Allege Loss Causation**

A RICO claim requires allegation and proof that the alleged RICO violation was (1) the but-for, or transactional, cause of the plaintiff's *property* loss, *and* (2) the proximate cause of the loss.  *E.g.*, *Petrosurance, Inc. v. National Ass'n of Ins. Comm'rs*, 888 F. Supp. 2d 491, 507 (S.D.N.Y. 2012) (dismissing RICO claims because plaintiff "falters under both types of causation"), *aff'd*, 514 F. App'x 51 (2d Cir. 2013); *accord FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 458 (S.D.N.Y. 2014); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 540 (S.D.N.Y. 2014).  "[C]ivil RICO's direct relation requirement is rigorous and requires dismissal where substantial intervening factors attenuate the causal connection between defendant's conduct and the plaintiff's injury." *Zuhovitzky v. UBS AG CHE 101.329.562*, No. 21-CV-11124, 2023 WL 4584452, at *9 (S.D.N.Y. July 18, 2023) (citations omitted); *see also Lawson v. Rubin*, No. 17-CV-6404, 2018 WL 2012869, at *9-10 (E.D.N.Y. Apr. 29, 2018).

Plaintiff's causation theory is hopelessly attenuated.  *See, e.g.*, *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 104 (1928).  Plaintiff alleges that the UMG Defendants paid Love Records and Combs for their music recording services, and that Love Records and Combs then supposedly used those proceeds in some unknown, unexplained (and in fact, non-existent) way to support sex trafficking.  (ECF No. 38 at ¶¶ 219, 249, 250, 315.)  Plaintiff now concedes that he cannot allege the UMG Defendants knew how Love Records and Combs were allegedly spending their money, and that the UMG Defendants may have "negligently … funded the activities of Defendant Sean Combs."  (ECF No. 30 at p.1.)

Plaintiff comes nowhere close to alleging both transactional and proximate causation between the funding paid by the UMG Defendants to make music, and the sex trafficking that is alleged to have resulted between Combs and his associates.

Furthermore, Plaintiff does not plausibly allege that he suffered a *property* loss "by reason of" any of the alleged acts or omissions of the UMG Defendants. *Zuhovitzky*, 2023 WL 4584452, at *9. Instead, the independent and intervening acts of the other defendants (*e.g.*, Combs) sever the already non-existent causal link to any of the UMG Defendants. *Id.* at *7 (finding that plaintiff's theory of harm rested on independent actions of third parties, which was "plainly insufficient to establish proximate causation"). *See also Lawson*, 2018 WL 2012869, at *9-10; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 464 (2006) (finding no proximate cause because of "attenuated relationship" between the alleged RICO acts and plaintiff's purported injury); *Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 9 (2010) (dismissing RICO claims where plaintiff's "causal theory [was] far [too] attenuated*"*).

Likewise, Plaintiff claims only physical and emotional loss due to the alleged conduct of Combs, not the UMG Defendants. *See* 18 U.S.C. § 1964(c) (plaintiff must be "injured in his business or property"); *Canosa v. Ziff*, No. 18-CV-4115, 2019 WL 498865, at *25 (S.D.N.Y. Jan. 28, 2019) ("RICO provides a civil remedy to '[a]ny person injured in [her] *business or property* by' a RICO violation…. '[C]ourts have uniformly held that injuries such as emotional distress or physical injury are not cognizable under RICO.'") (citations omitted); *Lawson*, 2018 WL 2012869, at *9-10 ("Personal injuries – and damages flowing from them – are simply not injuries to 'business or property' under RICO.") (citations omitted); *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-CV-1861, 2021 WL 960394, at *12 (E.D.N.Y. Mar. 15, 2021), *aff'd*, No. 21-847, 2022 WL 480475 (2d Cir. 2022).

Plaintiff's First Cause of Action for civil RICO violations should be dismissed with prejudice as against the UMG Defendants.

## II.    THE TVPA CLAIMS SHOULD BE DISMISSED

Having dropped the baseless "aiding and abetting" claim, Plaintiff alleges two TVPA claims against the UMG Defendants: the Fifteenth Cause of Action for "participating in" TVPA violations by others; and the Sixteenth Cause of Action for obstructing enforcement of the TVPA. The claims are offensively baseless.

### A.    Plaintiff's TVPA Fifteenth Cause Of Action Should Be Dismissed

Plaintiff's Fifteenth Cause of Action claims that the UMG Defendants are liable under the TVPA for knowingly "participating in" and benefitting financially from the alleged sex trafficking scheme of others.  (ECF No. 38 ¶ 371.)  "Participation" in sex trafficking requires allegations and proof that a defendant "knowingly '*benefit[ted]*, financially or by receiving anything of value, from participation in a venture which has engaged in' sex trafficking."  *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169-170 (S.D.N.Y. 2019) (citing 18 U.S.C. §§ 1591(a)(2), 1595(a)).  Here, outside of unsupported conclusions, there is not one fact showing any knowledge, any participation or any benefit (and the Braithwaite Decl. refutes any benefit).

"Participation" liability under the TVPA requires "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship."  *Id.*  In *Geiss*, for example, Judge Hellerstein found that The Weinstein Company ("TWC") was not liable for participating in Harvey Weinstein's ("Harvey") violations of the TVPA where there were no allegations "that would plausibly support [] a conclusion" that TWC financially benefitted from Harvey "*because of* TWC's facilitation" of sexual misconduct by Harvey.  *Id.*

Similarly, in *Noble v. Weinstein*, Judge Sweet dismissed the plaintiff's TVPA "participation" claim against Harvey's brother, Robert Weinstein ("Robert"), because, even though the plaintiff alleged that Robert "facilitated" Harvey's travel (during which Harvey engaged in sex trafficking) and "benefitted financially from Harvey['s] promotion of films and other business-related activities in foreign commerce," the plaintiff did *not* allege anything "that link[ed] Robert's actions to Harvey's 2014 conduct toward [the plaintiff]."  335 F. Supp. 3d 504, 524 (S.D.N.Y. Aug. 13, 2018).  In particular, the plaintiff did not allege that Robert "'was present for any of the alleged assaults, was told about them before or after they occurred,'" or facts to support a plausible conclusion that Robert acted with "'knowledge or willful disregard'" of Harvey's assaults.  *Id.* (citing *Lawson*, 2018 WL 2012869, at *11).  Judge Sweet explained that "'mere *membership*'" in a sex trafficking venture is "'insufficient if [the defendant] is ignorant of the venture's sex trafficking activities (and the means and methods thereof),'" and that the TVPA *"'does not target [those] who turn a blind eye to the source of their financial sponsorship.'" Noble*, 335 F. Supp. 3d at 524 (quotations omitted) (emphasis supplied).

Here, there is no basis for Plaintiff's claims against the UMG Defendants.  Plaintiff now admits Motown was not Love Records' "parent company."  Plaintiff now admits Grainge and Habtemariam did not attend any "listening parties" and never saw the alleged activities at such parties.  Plaintiff does not allege any actual participation by the UMG Defendants, or their actual awareness of, any sex trafficking activities by anyone.  Plaintiff merely asserts that Motown's License Agreement with Love Records should provide a hook to make the UMG Defendants strictly liable for all of Combs' extracurricular conduct.  Plaintiff and his counsel have no good faith basis to support their startling position, and no responsible basis whatsoever to have accused the UMG Defendants of "actively participat[ing] in the recruitment of victims of the venture" where Plaintiff's counsel also concedes his theory (which also has no factual or legal support) is

that the UMG Defendants "<u>negligently</u> … funded the activities of Defendant Sean Combs."  (ECF No. 30 at p.1 (emphasis supplied); ECF No. 38 ¶ 372.)  *E.g.*, *Lawson*, 2018 WL 2012869, at *11 (dismissing TVPA claim under § 1591(a)(1) where plaintiff alleged no facts showing that defendant "knowingly benefitted . . . from participation in a trafficking venture, nor that she knew or acted in reckless disregard of the fact that force, threats of force, fraud, or coercion would be used to cause plaintiffs to engage in a commercial sex act.") (cleaned up); *accord Noble*, 335 F. Supp. 3d at 525; *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 409 (S.D.N.Y. 2023) (same for TVPA obstruction claim).

Moreover, Plaintiff does not allege anything that plausibly supports a conclusion that Combs provided financial benefits to the UMG Defendants "because of" their alleged sponsorship of Combs' alleged sex trafficking.  The SAC, at most, alleges that the UMG Defendants benefitted financially (if at all) from Combs (and supposedly Plaintiff) pursuant to a contract <u>to make music</u>. (*See, e.g.*, ECF No. 38 ¶¶ 6 (alleging Combs to be "prominen[t] in the music and entertainment industry over the decades" and "a hip-hop mogul"); 135-136 (alleging that UMG Recordings and Motown Records "benefited [sic] from [Plaintiff's] *work product*" as a producer of songs on Combs' records)[5] (emphasis supplied); 233, 239 (alleging that Grainge, UMG Recordings and Motown Records "profit[ted] from the free labor of [] artists, creatives, musicians, and producers"); 232 (alleging that "Defendants" engaged in mail and wire fraud to solicit people like Plaintiff **"to utilize their talents and labor to produce music"** for Defendants' financial benefit) (emphasis supplied).)  Again, Exhibits B and C to the Braithwaite declaration conclusively refute this unfounded assertion.

---

[5] An assertion that ignores that Motown terminated the license agreement and never distributed the "Love Album."

And even if one were to assume, purely for the sake of argument, that the Defendants "turned a blind eye" to Combs' alleged sex trafficking — which is untrue — that would not state a claim for "participation" liability under the TVPA. *Noble*, 335 F. Supp. 3d at 324.

### B.    Plaintiff's Obstruction Claim Should Be Dismissed

Plaintiff's Sixteenth Cause of Action for obstruction of enforcement of the TVPA should be dismissed because there is no private right of action to bring such a claim. *Jane Doe No. 1 et al v. Daniel S. Fitzgerald*, No. CV20-10713MWF, 2022 WL 425016, at *4 (C.D. Cal. Jan. 6, 2022) ("Plaintiffs do not have a private right of action under subsection (d). Rather, that provision is limited to government enforcement"); *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1143 (D. Colo. 2019) (holding that "the TVPA's obstruction provisions are concerned only with governmental enforcement of the TVPA").[6]

Even if there were a private right of action for obstruction, Plaintiff has not pleaded and cannot plead the necessary elements against the UMG Defendants. Plaintiff must plausibly plead that each Defendant: (1) knew of an effort to enforce the TVPA; and (2) intentionally obstructed, interfered with, or prevented that enforcement. *See, e.g.*, *United States v. Farah*, 766 F.3d 599, 612 (6th Cir. 2014). No facts are pleaded by Plaintiff that: (a) there was an effort to enforce the TVPA; (b) the UMG Defendants knew of any violation of TVPA and of an effort to enforce the statute; and (c) the UMG Defendants obstructed the statute's enforcement. Nor could there be any such facts pleaded for all of the reasons already stated.

Plaintiff's Fifteenth and Sixteenth Causes of Action for TVPA violations should be dismissed with prejudice as against the UMG Defendants.

---

[6] Last year, Judge Rakoff disagreed with these authorities and found that a private right of action could arise under 18 U.S.C. § 1591(d). *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 409 (S.D.N.Y. 2023). Defendants respectfully submit that the straightforward analysis and statutory interpretation conducted by the courts in *Jane Doe* and *Gilbert* are correct, and that Judge Rakoff's analysis was unduly strained and incorrect.

## **CONCLUSION**

For the foregoing reasons, the UMG Defendants respectfully request that all claims against them be dismissed, and that the Court award them such other further relief as deemed just and proper.

Dated: New York, New York
        April 24, 2024

PRYOR CASHMAN LLP

By: _____
        Donald S. Zakarin
        James A. Janowitz
        William L. Charron
        Nicholas G. Saady
        Alina Jamil Mian
7 Times Square
New York, New York  10036
(212) 421-4100
dzakarin@pryorcashman.com

*Attorneys for the UMG Defendants*

25