## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RODNEY JONES,<br><br>           Plaintiff,<br><br>   v.<br><br>SEAN COMBS,<br>JUSTIN DIOR COMBS, CUBA GOODING,<br>Jr., LUCIAN CHARLES GRAINGE,<br>KRISTINA KHORRAM,<br>LOVE RECORDS,<br>MOTOWN RECORDS,<br>UNIVERSAL MUSIC GROUP,<br>COMBS GLOBAL ENTERPRISES,<br>JOHN and JANE DOES 1-10; and<br>ABC CORPORATIONS 1-10,<br><br>           Defendants. | CASE NO.:  24-1457<br><br><br>**DECLARATION OF DONALD S.<br>ZAKARIN IN SUPPORT OF<br>DEFENDANTS' UNIVERSAL MUSIC<br>GROUP, MOTOWN RECORDS AND SIR<br>LUCIAN GRAINGE MOTION TO<br>DISMISS THE SECOND AMENDED<br>COMPLAINT** |

I, Donald S. Zakarin, declare as follows:

1.      I am a member of Pryor Cashman LLP, counsel for Defendants Sir Lucian

Grainge CBE, and Motown Records (a division of UMG Recordings, Inc.).  Plaintiff has also

named Universal Music Group as a defendant but there is no such juridical entity.  Universal

Music Group is an umbrella name commonly used to refer to all of the various companies and

record labels that are encompassed within UMG Recordings, Inc.  I therefore assume that

Plaintiff has misnamed Universal Music Group, intending to actually name UMG Recordings,

Inc., and I will refer to Universal Music Group herein as UMG Recordings, Inc. ("UMG

Recordings").  I have personal knowledge of the facts set forth in this Declaration and if called

and sworn as a witness, I could and would competently testify thereto.

2.      I submit this declaration in support of the motion of Defendants Sir Lucian

Grainge (CBE), Motown Records and UMG Recordings (sometimes collectively referred to

1

herein as the "UMG Defendants") to dismiss the Second Amended Complaint ("SAC") on the following bases: (i) under Federal Rule 12(b)(2) for lack of personal jurisdiction; (ii) under Federal Rule 12(b)(3) for improper venue; (iii) under Federal Rule 8(a)(2) and (d)(1) for failure to plead in simple and concise statements; and (iv) under Federal Rule 12(b)(6) for failure to state a claim.  In addition, I submit this declaration in support of the motion of the UMG Defendants pursuant to Federal Rule 12(f) to strike impertinent and scandalous material from the SAC.

3.      I am mindful that the Court wants us to focus this motion to dismiss on the legal insufficiency of the SAC.  And in furtherance of that, we have narrowly focused the Memorandum of Law on the legal insufficiency to show that, even without regard for the lack of any factual basis for the allegations made against the UMG Defendants in the SAC, the SAC fails to state any claim against the UMG Defendants.

4.      Also, consistent with the approach of the Memorandum of Law, the first portion of this declaration will be focused solely on the undisputed facts and documents that are integrally related to the SAC, establishing that there is no factual or legal basis for any of the claims against the UMG Defendants and that the claims against them should be dismissed with prejudice.

5.      However, because the Plaintiff and Mr. Blackburn have now knowingly filed three complaints filled with offensively false criminal accusations, simply seeking and obtaining the dismissal of the SAC for legal insufficiency does not and cannot fully address the harm that Plaintiff and Mr. Blackburn have visited on my clients.  Accordingly, while I fully understand that, in order to dismiss this case with prejudice against the UMG Defendants, this Court may neither need nor want to examine all of the falsehoods that permeate the SAC and Mr.

2

Blackburn's highly improper conduct, I think it important for this declaration to document the extent to which Plaintiff and Mr. Blackburn have filled the SAC not merely with baseless conclusions but with allegations that they know are completely false. Documenting the falsity of the SAC (and Mr. Blackburn's outright misrepresentations to this Court) will be deferred to the second portion of this declaration.

**A. The Roadmap Through the Accompanying Declarations In Support Of The Motion To Dismiss the SAC**

6.      The primary purpose of this declaration is to assist the Court by summarizing the undisputed facts set forth in the declarations of Sir Lucian Grainge, Martha Braithwaite and Ms. Habtemariam. Those declarations conclusively show the factual and legal baselessness of the SAC and the UMG Defendants' entitlement to its dismissal. A copy of Sir Lucian Grainge's declaration is attached hereto as Exhibit 1. A copy of Ms. Braithwaite's declaration is attached hereto as Exhibit 2. A copy of Ms. Habtemariam's declaration is attached hereto as Exhibit 3.

**B.      Pursuant to FRCP Rule 12(b)(2), There Is No Personal Jurisdiction Over Sir Lucian Grainge**

7.      As set forth in the accompanying declaration of Sir Lucian Grainge, there is no basis for personal jurisdiction over him in this Court. The SAC, a copy of which is attached hereto as Exhibit 4, admits that Mr. Grainge lives in Los Angeles. While the FAC falsely alleged contacts between Mr. Grainge and New York, those allegations have been abandoned in the SAC (instead, attributing the supposed "mail" and "wire" communications to Mr. Combs). As this Court already knows, Mr. Blackburn has been referred by Judge Cote to the Southern District Grievance Committee for his persistent failure, in multiple cases, to properly investigate personal jurisdiction issues.

8.     Moreover, every other defendant (with the exception of a "Combs Enterprises" and the newly added Cuba Gooding, Jr.) is also alleged to be based in Los Angeles, and the activities complained of took place in California or Florida.  Based on my review of online sources, it appears that Combs Enterprises (which has changed its name) is a limited liability company organized under Delaware law and owned by Mr. Combs.  I am informed as well that it is headquartered in Florida.

9.     I understand that a proper RICO claim can support personal jurisdiction over foreign defendants, assuming a sufficient nexus with the forum.  However, because the RICO claims against the UMG Defendants are factually and legally baseless, the objection to personal jurisdiction is being preserved here.

### C.  The SAC Violates FRCP Rule 8

10.    Rule 8 of the Federal Rules requires that Complaints contain short and plain statements and be simple and concise.  The SAC is anything but.  Just by way of example, the RICO claim (the SAC First Cause of Action, ¶¶ 201-276) frequently refers generally to "defendants" without any specificity as to who did what and when.  To the extent it attempts to connect the UMG Defendants to the alleged RICO "conspiracy" or "enterprise," it does so solely with conclusory allegations about a supposed "general business partnership" between Motown Records and/or UMG Recordings with Love Records, Inc. and/or Mr. Combs and the supposed failure of the UMG Defendants to supervise and control how Mr Combs allegedly spent monies payable by Motown Records under the license agreement (attached as Exhibit A to the Braithwaite declaration).

11.    As set forth in the accompanying declaration of Ms. Habtemariam, there never a "partnership" between Motown Records and/or UMG Recordings and Love Records, Inc. and/or

Mr. Combs.  And as documented in the accompanying declaration of Ms. Braithwaite, the license agreement (Exhibit A to the Braithwaite declaration) specifically provides, in paragraph 16.11, that there was no partnership.

12.     Beyond the falsity of the foundational allegations by which the SAC tries to connect the UMG Defendants to the alleged RICO claim, the claim alleges wire and mail fraud without a single specific allegation.  Nor does it identify who supposedly sent what communication (by wire or mail) to whom and when it was sent or what it said that made it fraudulent.  Instead, the allegations generically refer only to communications from the "defendants."  (SAC ¶¶ 264-276).

13.     At bottom, the SAC RICO claim bases a criminal accusation against Sir Lucian Grainge, Motown Records and UMG Recordings not on any wrongful act that any of them are alleged to have committed but solely based on the "general business partnership" allegation that is knowingly false and on the equally false (and legally absurd) conclusion that the UMG Defendants were obligated to supervise and control how Love Records, Inc. spent any of the monies that were paid to Love Records, Inc. under the license agreement.  As set forth in the Memorandum of Law, the RICO claim does not remotely comply with Rule 8 (and patently fails to satisfy Rule 12(b)(6)).

14.     But the Rule 8 violation of the RICO claim pales in comparison to the violation of Rule 8 by the "sex trafficking" claims against the UMG Defendants (the Fifteenth and Sixteenth Causes of Action).[1]  These Causes of Action fail to identify any specific acts, but are instead

---

[1] The Seventh Cause of Action, for aiding and abetting the alleged "sex trafficking" by Combs, while still pleaded in the SAC, has been withdrawn pursuant to Mr. Blackburn's acknowledgement at the hearing on April 9, 2024 that it was baseless.

filled with conclusory allegations and also base the supposed liability of the UMG Defendants

solely on the newly fabricated foundational allegation about a non-existent "general business

partnership" between Motown Records and/or UMG Recordings and Love Records, Inc. and/or

Mr. Combs.  As with the RICO allegations, this non-existent "partnership" is coupled with the

legally non-existent "duty" on the part of the UMG Defendants to supervise and control how Mr.

Combs spent any of the monies required to be paid under the license agreement.

      15.     Based solely on these two factually baseless assertions (the "general business

partnership and supposed duty allegations), which also lack any legal basis, the SAC accuses Sir

Lucian Grainge, Motown Records and UMG Recordings of participating in and benefiting from

Mr. Combs' alleged "sex trafficking venture" and supposedly obstructing enforcement of the sex

trafficking laws under 18 USC § 2 (which does not even provide a private right of action).[2]

      16.     There are no facts contained in the allegations but only strident conclusions in

violation of FRCP Rule 8.  Paragraph 375 is the most glaring example of how far the SAC

deviates from Rule 8.  It starts on page 83 of the SAC and continues on, for six pages of single-

spaced non-factual and conclusory (and redundant) paragraphs, to page 89.  Not only does it

contain no factual matter whatsoever, it is also anything but a short, plain and concise statement

of the claim.

---

[2] As explained in the attached Braithwaite declaration, the UMG Defendants did not benefit from the license agreement.  On the contrary, because the agreement was terminated, Motown Records did not even recoup the monies it paid to Love Records, Inc.

**D. The SAC Contains Prejudicial And Scandalous Accusations In Violation of FRCP Rule 12(f)**

17.     As discussed in detail in the accompanying declarations, and as any review of the SAC shows, it is filled with outrageously offensive accusations against Sir Lucian Grainge. From the gratuitous inclusion of Sir Lucian Grainge's picture to the offensively false RICO and sex trafficking allegations, the SAC should be stricken.

**E. The First Amended Complaint Should Be Dismissed Pursuant to FRCP Rule 12(b)(6) For Failure to State A Claim For Relief Against the UMG Defendants**

**(i) There Is No General Business Partnership Between Love Records, Inc. and Motown Records or any other UMG Entity**

18.     As set forth in the accompanying declaration of Ms. Habtemariam, there was never any partnership between Motown Records and Love Records, Inc. and despite having been provided with the license agreement (attached as Exhibit A to the Braithwaite declaration), which specifically, in paragraph 16.11, makes clear that there was no partnership, the SAC alleges, as its foundational allegation for all of the claims against the UMG Defendants, that Motown Records or UMG Recordings was in a "general business partnership" with Love Records, Inc. and/or Mr. Combs.  Based on this knowingly false foundational allegation, the SAC alleges that the UMG Defendants somehow had some obligation to supervise and control how Love Records, Inc. and/or Mr. Combs spent any of the money paid or reimbursed to Love Records, Inc. under the license agreement.

19.     As detailed in the accompanying declaration of Martha Braithwaite, neither Motown Records nor any other UMG Records company ever had a "general business partnership" with Love Records, Inc.  Rather, Motown Records had a briefly operative arm's

length license agreement to distribute one album, entered into in May 2022 and terminated as of February 1, 2023.[3]

20.     So where did Plaintiff and Mr. Blackburn obtain this information about Motown Records or UMG Recordings supposedly having a "general business partnership" with Love Records, Inc. or Mr. Combs?  Without any investigation into the facts, Plaintiff and Blackburn selectively chose to "rely" on the colloquial and shorthand reference in some press reports to the license agreement between Motown Records and Love Records, Inc. as a "partners" with respect to the single album subject to the license agreement.

21.     The SAC alleges there is a "general business partnership" despite the fact Ms. Habtemariam's declaration attached to the SAC says there was only a license agreement, not a partnership.

22.     Moreover, not content to ignore Ms. Habtemariam's declaration, in paragraph 218 of the SAC, Mr. Blackburn intentionally misrepresents what she says in her declaration.  He states that Ms. Habtemariam "states that she was given approval by Defendant UMG **to enter the partnership with Sean Comes** (sic) to help establish Love Records."

23.     Nowhere in her declaration does Ms. Habtemariam say any such thing.  The word "partnership" is nowhere mentioned in the declaration attached to the SAC (and her declaration in support of this motion specifically refutes any such alleged partnership).  Rather, Ms. Habtemariam's declaration states only that she received approval to enter into **a license agreement**.

---

[3] As noted in the accompanying Memorandum of Law, because the SAC not only references the license agreement (SAC ¶¶ 163-164) but attaches a declaration of Ms. Habtemariam which discusses the license agreement, the UMG Defendants are entitled to include the license agreement in this motion to dismiss.

24.     The "general business partnership" allegation, which forms the basis for every claim and every allegation against the UMG Defendants (there are no less than 46 separate references to the non-existent "general business partnership" in the SAC), also ignores the clear language of paragraph 16.11 of the license agreement, which, as noted above, was provided to Mr. Blackburn in the UMG Defendants' motion to dismiss the FAC.  That paragraph expressly states that Motown Records and Love Records, Inc. were not partners but were independent contractors.

25.     In short, the foundational allegation of the SAC that Motown Records and Love Records, Inc. were in a "general business partnership" is knowingly false.  Any claim based on this completely fabricated and non-existent "general business partnership" allegation must be dismissed.  As every claim against the UMG Defendants is based on this non-existent relationship, all of the claims should be dismissed.

**(ii) Sir Lucian Grainge Has Never Been To Any Of Combs' Homes**

26.     While the FAC falsely and offensively alleged that Sir Lucian Grainge attended what Plaintiff and his counsel have described as "freak off" parties at Mr. Combs' homes in Los Angeles, Miami and New York, where underage girls and sex workers were allegedly plied with drugs and alcohol (and sexually preyed upon, as Plaintiff claims he was), this allegation has been abandoned in the SAC.  To be clear, Sir Lucian Grainge has **never** been to any of Mr. Combs' homes (Grainge Decl. ¶ 25).

27.     So what was the basis for this now abandoned accusation?  The FAC specifically claimed that Plaintiff saw Grainge at Combs' homes, even recounting seeing Grainge disappear into Combs' bedroom with Combs for hours.  Yet, in Mr. Blackburn's letter motion to file the

SAC, he portrayed the allegations as being only what Combs had supposedly told Plaintiff, not on any personal knowledge of the Plaintiff.[4]  That was not what the FAC said.

28.     Regardless, because the SAC no longer pleads that Sir Lucian Grainge had any actual personal knowledge of any of the supposed wrongful acts of Mr. Combs, the RICO and "sex trafficking" claims against the UMG Defendants are now founded on the non-existent "general business partnership" and the equally non-existent duty of the UMG Defendants to supervise and control how Mr. Combs spends his money.

29.     As set forth in the accompanying Memorandum of Law, not only are the claims based on completely fabricated conclusory allegations, there is no basis in law for the RICO claim and the "sex trafficking" claims as against the UMG Defendants.  They should be dismissed with prejudice.

### (iii) The First Amended Complaint's "Should Have Known" Allegations Are Chronologically Impossible

30.     Beyond the non-existent "general business partnership" allegation and the non-existent alleged duty to control Mr. Combs' financial affairs, the SAC repeats the same nonsensical argument made in the FAC: that the UMG Defendants supposedly should have known that Mr. Combs was engaging in alleged sex trafficking activity because of a complaint filed by a Cassie Ventura and a claim made by a Jonathan Oddi accusing Mr. Combs of sex trafficking (SAC ¶¶ 375(h) and (i), 386).

---

[4] Indeed, this Court has Plaintiff's declaration, which was attached to Mr. Blackburn's reply letter in support of his letter motion to file the SAC.  That declaration conclusively demonstrates that the allegations of the SAC are based almost exclusively on, at most, rank hearsay, not any personal knowledge of the Plaintiff.  Virtually every conclusory allegation in the SAC is attributed to things that Mr. Combs supposedly told Plaintiff.

31.     These assertions are both false and chronologically impossible. Attached hereto as Exhibit 5 is the first page of Ms. Ventura's complaint against Mr. Combs. It was filed on November 16, 2023. As Ms. Braithwaite's declaration establishes, Motown's license agreement with Love Records, Inc. was terminated as of February 1, 2023, months before Ms. Ventura's complaint was filed (and that ended any relationship between the UMG Defendants and Mr. Combs and Love Records, Inc.).[5]

### (iv) The SAC Jettisons the "Cash" Allegations of the FAC and Invents A Duty On The Part of the UMG Defendants to Oversee Combs' Tax Filings

32.     The FAC claimed that the UMG Defendants provided "cash" to Mr. Combs (even fantasizing that it was "likely millions of dollars"), the "cash" supposedly enabling Mr. Combs to perpetrate his alleged sex trafficking activity. The SAC abandons these baseless accusations but now invents a wholly new allegation: the UMG Defendants were obligated to assure that their supposed "general business partner" Love Records, Inc. or Mr. Combs properly filed and paid taxes, and are responsible for their alleged failure to make the required filings (SAC ¶¶ 375 (b),(k),(m), 383).

33.     On its face, this allegation is breathtakingly absurd. Aside from the obvious fact that neither Plaintiff nor Mr. Blackburn could have any knowledge of Mr. Combs' tax filings, there is no legal basis on which any such alleged obligation may be imposed on the UMG Defendants, even if there were a "general business partnership," and there is no such partnership.

---

[5] In December 2023, Jonathan Oddi, who, according to public reports, was a porn actor and had been arrested at the Trump Doral Hotel in Miami in 2018 carrying a gun and threatening the then-President, claimed that he had, years ago, engaged in sexual activity with Ms. Ventura and Mr. Combs. Again, even were this assertion true, it surfaced long after the events pleaded in the SAC, after Plaintiff was no longer involved with Mr. Combs (SAC ¶¶ 23- 24) and months after the license agreement between Motown Records and Love Records, Inc. was terminated.

34.     Every claim against the UMG Defendants in the SAC is factually and legally baseless.  They should be dismissed with prejudice.  The UMG Defendants will be serving an updated Rule 11 motion on Mr. Blackburn and anticipate that at the end of the 21 day period, will file it with this Court.

35.     I now turn, as I said above, to the section of this declaration that will document the extent to which Plaintiff and Mr. Blackburn have filled the SAC not merely with baseless conclusions but with allegations that they know are completely false.

**F.     Mr. Blackburn's Lack Of Candor With This Court**

36.     Before I document the purposeful and knowing falsity of the SAC, including by comparing its allegations to the completely different and now abandoned allegations of the FAC, I believe that this Court should be advised of representations Mr. Blackburn made directly to this Court that he knew were untrue when he made them.  On April 9, 2024, this Court held a telephonic hearing attended by me and by Mr. Blackburn.  I am attaching, for the Court's convenience, a copy of the transcript of that hearing as Exhibit 6.

37.     On page 2 of that transcript, the Court asked Mr. Blackburn whether he had served the other defendants (meaning the defendants other than the UMG Defendants).  Given that the FAC was filled with poisonous accusations against all of the Defendants, I believe that the Court wanted to assure that the Plaintiff and Mr. Blackburn were expeditiously undertaking to prosecute their claims.[6]

---

[6] As the transcript also reflects, we voluntarily waived service on behalf of the UMG Defendants, without waiver being sought, so that we could move against the FAC as quickly as possible and try to start correcting the false narrative of the FAC.

38.     Mr. Blackburn represented to the Court that he had sent a Rule 4 waiver form to Mr. Combs' counsel, who did not respond, so he sent out his process server to serve the Combs defendants.

39.     The Court then asked when these things occurred and on page 3 of the transcript, Mr. Blackburn directly represented to the Court that he had emailed the Rule 4 waiver form to Combs' counsel on March 13 and that he sent the complaint to be served on the Combs defendants to the process server 5 days later (on March 18, 2024).

40.     However, contrary to Mr. Blackburn's representation, I was aware that the docket did not reflect any request for the issuance of a summons so that his representation could not have been truthful.  In fact, as shown by ECF 39, Mr. Blackburn did not even request the issuance of a summons until April 17, 2024, a month later than he represented to this Court that he had sent the complaint to a process server for service (and as has been typical of Mr. Blackburn's filings, that request was rejected by the clerk as it was not properly filed and as of the date of this declaration, Mr. Blackburn has yet to refile such request).

41.     In fact, even Mr. Blackburn's representation to this Court about sending an email requesting a Rule 4 waiver of service from the Combs' defendants on March 13, 2024 was untrue.  Attached hereto as Exhibit 7 is an email from Mr. Blackburn to Jonathan Davis dated March 25, 2024 (with some unprofessional emoji's included) requesting a Rule 4 waiver.  I am advised that this is the first and only request that Mr. Blackburn made of Mr. Davis for a waiver.

42.     I provide this background, not because it is directly relevant to the UMG Defendants' motion to dismiss the SAC, but because I believe that Mr. Blackburn's willingness to knowingly speak untruths in response to direct questions from the Court is consistent with his willingness to fill the SAC with offensively false accusations against Sir Lucian Grainge.  It

should be deeply concerning when a member of the bar of this Court cares so little for the truth and is so willing, armed with the litigation privilege, to defame people and companies.

### G. The Changed Allegations Of The SAC Are As False And Baseless As the Allegations Of The FAC

43.     In my original declaration, submitted in support of the motion to dismiss the FAC, I detailed the falsity of the FAC. To the extent it remains relevant, I will cross-reference the allegations of the FAC with the very much different allegations of the SAC.

44.     While very much different, the SAC's allegations against the UMG Defendants, remain offensively false and I do not believe that Mr. Blackburn can attribute the falsity to his client. Mr. Blackburn has completely jettisoned every single one of the original foundational and utterly false allegations of the FAC, on which all of the claims against the UMG Defendants were based, and has fabricated entirely different foundational allegations for the claims against the UMG Defendants.

45.     First, whereas the FAC alleged that Motown Records was the "parent company" of Love Records, Inc. – and Mr. Blackburn has failed to identify a single fact that supports such an allegation – the SAC's foundational allegation is now that Motown Records and/or UMG Recordings were in a "general business partnership" with Love Records, Inc. or Mr. Combs.

46.     Second, the FAC alleged that both Sir Lucian Grainge and Ms. Habtemariam were supposedly aware of the alleged sex trafficking by Combs because, in detailed paragraphs, the FAC purports to recount Plaintiff's supposed personal knowledge that he saw them at "listening parties" where there were underage girls and sex workers allegedly being given alcohol and drugs and being molested. As set forth in detail in the accompanying declaration of Mr. Grainge, he was never at any of Mr. Combs' homes and Ms. Habtemariam was only there

14

for business meetings, there were never any alleged "sex trafficking" going on and she was only there before Plaintiff claims he began working for Mr. Combs in September 2022.

47.     These completely false allegations about the supposed presence of Mr. Grainge and Ms. Habtemariam at Combs' alleged "sex trafficking" parties are jettisoned in the SAC. Instead, the SAC admits that Motown Records was obligated to pay certain monies to or on behalf of Love Records pursuant to a license agreement (SAC ¶ 164). However, without the slightest factual basis (and without any legal foundation whatsoever), the SAC claims that the UMG Defendants, especially Sir Lucian Grainge, were supposedly obligated to oversee and control how Love Records, Inc. and/or Mr. Combs spent the money. And again, without the slightest factual or legal basis, the SAC claims that the monies paid to or on behalf of Love Records, Inc. were supposedly misused by Combs for illicit purposes and that the UMG Defendants were obligated to know that and prevent it.[7]

48.     Third, whereas the FAC alleged that the UMG Defendants supposedly aided and abetted Combs' alleged sex trafficking activities by handing over "cash" to Combs (even alleging it was millions of dollars of cash), these allegations too are now abandoned (and as noted above, the "aiding and abetting" claim has been withdrawn as against the UMG Defendants). Instead, despite admitting that Motown Records was obligated to make certain payments and reimbursements under the license agreement, the SAC alleges that the UMG Defendants should have known the monies that Motown Records to or on behalf of Love

---

[7] Even though the unauthorized SAC is clearly the handiwork of Mr. Blackburn, unlike the FAC, which made virtually no allegations on "information and belief," in the SAC, Mr. Blackburn plainly hoping to find a safe harbor that might spare him Rule 11 sanctions, litters "information and belief" allegations throughout the pleading and attributes the allegations to his client.

Records, Inc. supposedly would be misused by Combs to support the alleged "sex trafficking" activity.

49.     But where do these new and completely contrary foundational allegations come from?  Certainly not from any investigation into the facts conducted by Mr. Blackburn.  He has plainly done none.  Instead, it appears that Mr. Blackburn contends that the SAC is based on the short declaration provided by Ms. Habtemariam in return for Mr. Blackburn's agreement to drop her from this case.

50.     But, as noted above, Ms. Habtemariam's declaration, attached to the SAC, says nothing about a "general business partnership" between UMG Recordings or Motown Records and Love Records, Inc.  In fact, she says the exact opposite.

51.     As Ms. Habtemariam states in the declaration attached to the SAC, Motown Records entered into a **license agreement** with Love Records, Inc. to distribute an album.  It did not enter into a "partnership" of any sort and most assuredly not a "general business partnership."  And she says that under the license agreement, Motown Records paid for invoiced recording costs and expenses.

52.     And because a redacted version of the license agreement was attached to the declaration of Martha Braithwaite (who negotiated and executed the license agreement on behalf of Motown Records) in support of the UMG Defendants' motion to dismiss the FAC (filed on March 27, 2024), by the time Mr. Blackburn filed the SAC (on April 12, 2024) he already knew for certain that there was no "general business partnership."  Paragraph 16.11 of the license agreement specifically provided the business relationship between Motown Records and Love Records, Inc. was as independent contractors, not partners or joint venturers.

53.     So what did Mr. Blackburn do with the information provided to him by Ms. Habtemariam and the license agreement?  He ignored it because he needed to fabricate a supposed basis on which he could try to connect the UMG Defendants to the supposed wrongful acts of the Combs' defendants.  Hence, the non-existent "general business partnership."  Of course, even if it existed – and it does not – it would still not provide any basis for the RICO and "sex trafficking" claims against the UMG Defendants.

54.     And instead of the "cash" allegations in the FAC, the SAC invented the assertion that Mr. Combs misused the completely legitimate payments due under the license agreement for his alleged sex trafficking activity (ignoring that money is fungible and that Combs is a very rich man – according to Forbes, in 2022 his net worth exceeded $1 billion).  As pleaded in the SAC, the UMG Defendants not only were inexplicably required to monitor and control how Combs spent his money, they were somehow required to trace the alleged use of money by Combs, distinguishing all expenditures between Combs' own monies and the payments required to be made by Motown Records under the license agreement.

55.     Not only is there no factual basis for these allegations, there is no such obligation on the UMG Defendants as a matter of law.

56.     The SAC also alleges, and Mr. Blackburn claimed at the hearing on April 9, 2024 (Tr. pp. 8-9), that Motown Records did not administer any budgets or pay any vendors but instead simply handed over money to Mr. Combs to be used as he chose.[8]  The SAC also alleges, and Mr. Blackburn claimed at the April 9, 2024 hearing (Tr. pp. 14-16) that there were no recordings made prior to Plaintiff's arrival on the scene in September 2022 and therefore, the

---

[8] As shown in the accompanying Memorandum of Law, even if this were true – and it is not – it would not provide Plaintiff with any claim against the UMG Defendants.

$1.3 million paid to reimburse Love Records, Inc. for recordings made prior to the license agreement (May 4, 2022) was, in Mr. Blackburn's words, a "ruse."

57.     It is by now perfectly clear that Mr. Blackburn makes statements on subjects about which he has no knowledge because he apparently does not care if what he is saying is true or false.  As stated in the declaration of Ms. Habtemariam and as shown in the accompanying declaration of Martha Braithwaite (and illustrated by its attached Exhibit B), contrary to what Mr. Blackburn represented to this Court on April 9, 2024, not only were there tracks recorded by Love Records, Inc. before the license agreement was executed, at least one of those tracks, 'Gotta Move On," was released as a single by Motown Records in June or July of 2022, and Motown Records marketed and promoted that single recording at considerable expense (paid to third party vendors, not to Love Records, Inc.).  And this track, "Gotta Move On," was included on the expanded version of the album (released by Love Records, Inc. after Motown Records and Love Records, Inc. terminated the license agreement).

58.     And with respect to the recording costs incurred after Plaintiff claims he commenced working for Mr. Combs in September 2022, as illustrated by Exhibit C to Ms. Braithwaite's declaration, Motown Records did not simply pay Love Records, Inc. but in its administration of the payment of recording costs, Motown Records paid third party vendors directly.  So these (and other third party vendor payments) could not have been "misused" by Mr. Combs for alleged "sex trafficking" as the payments were not made to him.

59.     In short, not only is the entire foundational theory of the SAC false – the "general business partnership" – but the accusations that the UMG Defendants simply showered monies on Mr. Combs and that the license agreement was a "ruse" are completely and offensively false.

60.     Again, just as Mr. Blackburn was willing to flat out misrepresent to this Court whether and when he supposedly undertook to serve the Combs defendants in this case, so too are all of the foundational allegations in the SAC completely false.  Mr. Blackburn is content to simply make things up as he goes along and if they are shown to be false, he is perfectly willing to substitute new and equally false allegations.

### H.  The SAC Was Filed In Violation Of Plaintiff's And Mr. Blackburn's Obligations Under FRCP Rule 11

61.     As this Court knows, when the FAC was filed, I wrote to Mr. Blackburn to put him on notice that the allegations he had made against the UMG Defendants were completely false and demanded that he withdraw all of the claims against my clients.  A copy of my letter to him dated March 4, 2024 is attached hereto as Exhibit 8.   While he has abandoned many of the completely false allegations of the FAC, he has not dismissed all of the claims against the UMG Defendants.  Instead, as discussed above and in the accompanying declarations, he invented new completely false allegations and included them in the SAC.

62.     The allegations made against my clients – particularly Sir Lucian Grainge – remain offensively false, conclusory and lacking in any factual support or legal basis.  But for the litigation privilege in this State, falsely accusing individuals and companies of engaging in criminal behavior would be libelous per se.

63.     We have provided Plaintiff and Mr. Blackburn with clear and unequivocal notice that just as the FAC failed to comply with Rule 11, so too does the SAC.  We will be serving and, in due course, filing, an updated motion with this Court for Rule 11 sanctions against Plaintiff and Mr. Blackburn.  But our first and primary goal is to secure the speedy dismissal of the SAC with prejudice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  April **24**, 2024

Donald S. Zakarin