# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RODNEY JONES,<br><br>                     Plaintiff,<br><br>v.<br><br>SEAN COMBS,<br>JUSTIN DIOR COMBS,<br>CUBA GOODING, JR. LUCIAN CHARLES GRAINGE,<br>KRISTINA KHORRAM,<br>CHALICE RECORDING STUDIOS,<br>LOVE RECORDS,<br>MOTOWN RECORDS,<br>UNIVERSAL MUSIC GROUP,<br>COMBS GLOBAL ENTERPRISES,<br>JOHN and JANE DOES 1-10; and<br>ABC CORPORATIONS 1-10,<br><br>                     Defendants. | CASE NO.: 24-1457<br><br><br>**DECLARATION OF SIR LUCIAN GRAINGE IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT BY DEFENDANTS UNIVERSAL MUSIC GROUP, MOTOWN RECORDS AND SIR LUCIAN GRAINGE** |

I, Sir Lucian Grainge, CBE declare as follows:

1.      I am the Chairman and Chief Executive Officer of Universal Music Group, N.V. ("UMG NV").  UMG NV is a public company organized and existing under the laws of the Netherlands with its principal operating offices and companies located in Santa Monica, California.  I have personal knowledge of the facts set forth in this Declaration and, if called and sworn as a witness, I could and would competently testify thereto.

2.      I have been named personally as a Defendant in the original complaint, First Amended Complaint ("FAC") and now in the Second Amended Complaint ("SAC").  Motown Records, which is also a named defendant in the SAC, is not an independent company but a record label that is a division of UMG Recordings, Inc. ("UMG Recordings"), which is an indirect wholly owned subsidiary of UMG, NV.  I am also the Chairman and Chief Executive

1

Officer of UMG Recordings, which is a Delaware corporation with its principal place of business in Santa Monica, California.  Universal Music Group is also named as a Defendant in the SAC.[1]

### A.  The Court Lacks Personal Jurisdiction Over Me

3.      As the SAC (¶ 8) admits, I am a resident of California, not New York.[2]  As I will detail below, I engaged in no activity in New York whatsoever with respect to this matter (in fact, beyond authorizing Ms. Habtemariam to make a deal to distribute one album recorded by Mr. Combs, I engaged in no activity with respect to this matter anywhere).  I understand that Plaintiff's counsel, Mr. Blackburn, has been referred to the Grievance Committee of the Southern District of New York by Judge Cote for repeatedly failing to properly investigate personal jurisdiction over individuals he has sued in other cases.

4.      The SAC has abandoned the every one of the four false allegations about my supposed New York activity that were in the FAC -- (i) that I was involved in disseminating unidentified false information to unidentified artists in New York (¶ 214); (ii) that I sent unidentified advertisements to unidentified artists in New York (¶ 220); (iii) that I oversaw the unidentified marketing and soliciting to unidentified artists in New York (¶ 222); and (iv) that I was supposedly present in Mr. Combs' alleged home in New York at which Mr. Combs engaged in alleged sex trafficking (¶ 343(f)).

5.      The SAC now accuses Combs and his colleagues of the first three actions (SAC ¶¶ 231-234) and the SAC no longer alleges that I was ever at any of Mr. Combs' homes.  Thus,

---

[1] Universal Music Group is not an actual entity but a name commonly used to refer generally to the various companies and labels owned by UMG NV.  I assume Plaintiff intended to name UMG Recordings, but he and his counsel have not bothered to correct this in the SAC.

[2] The Plaintiff and his counsel identified my California addresses in the FAC for no purpose other than to harass me.  Having invaded my privacy unnecessarily, I understand that they have removed my addresses from the SAC.

the bases for jurisdiction over me in New York, which were untrue to begin with, now no longer even exist.

**B. The SAC Completely Changes The Foundational Bases For Claims Against Me, Motown Records and UMG Recordings**

6.     The FAC originally claimed that Motown Records was the supposed "parent company" of Love Records, Inc., and therefore we were responsible for his actions under a "respondent (sic) superior" relationship. The SAC replaces these allegations with the equally baseless "general business partnership" allegation by which Plaintiff and his counsel seek to make me, Motown Records and UMG Recordings responsible for the allegedly wrongful activities of Mr. Combs and his associates.

7.     As detailed in the accompanying declaration of our counsel, Donald Zakarin, based upon a declaration of Plaintiff that was submitted to this Court on April 9, 2024, and based on Mr. Blackburn's own communications with this Court, there was never **any** basis for the "parent company" allegation and the "respondent (sic) superior" allegation. It appears instead that they were simply made up.[3]

8.     The "general business partnership" allegation is completely contrary to the clear and unambiguous language of the license agreement between Motown Records and Love Records, Inc. (which I understand has been provided to Plaintiff and Mr. Blackburn in redacted form). And from this non-existent "general business partnership," Plaintiff and Mr. Blackburn

---

[3] In the FAC, the Plaintiff also specifically alleged personally seeing me at Mr. Combs' homes in Los Angeles and Miami at which there were allegedly "sex trafficking" parties. Indeed, according to the FAC, Plaintiff observed both me and Ms. Habtemariam (at separate times apparently) disappearing into Mr. Combs' bedroom with him for hours. As I was never at any of Mr. Combs' homes, this accusation was knowingly false. I am advised that the Plaintiff's declaration essentially disavows having any personal knowledge of anything, attributing virtually everything that is alleged in the FAC and SAC to what he was supposedly told by Mr. Combs.

fabricate an equally non-existent duty on the part of me, Motown Records and UMG Recordings to supervise and control the manner in which Love Records, Inc. and/or Mr. Combs spent the monies Motown Records was required to pay to or on behalf of Love Records, Inc. under the license agreement.

9. As set forth in the accompanying declaration of Martha Braithwaite, who negotiated and executed the license agreement, there was never any partnership of any kind between Motown Records and/or UMG Recordings with either Mr. Combs or Love Records, Inc. On the contrary, the license agreement itself specifically provided that there was no partnership or joint venture between Motown Records and Love Records, Inc. Instead, the parties were independent contractors.

10. Given it is my understanding that Plaintiff's counsel was provided with a redacted copy of the license agreement, I do not understand how he can, in good faith, make this "general business partnership" allegation in the face of the plain terms of that agreement. Further, I understand that Mr. Blackburn was expressly advised by Ms. Habtemariam, before he ever drafted the SAC, that there was no partnership between Motown Records and Love Records, Inc. As Mr. Zakarin says in his declaration, the only possible explanation for this allegation in the SAC is that Mr. Blackburn has chosen to ignore facts of which he is aware in effort to try to manufacture legally baseless and offensively false claims against me personally, Motown Records and UMG Recordings.

11. The SAC's contention that Motown Records, UMG Recordings and I had some sort of obligation to supervise, monitor and control the use of any of the funds required to be paid to or on behalf of Love Records, Inc. by Motown Records under the terms of the license agreement is contrary to any business or legal principle of which I am aware. I am advised that

4

the SAC even contends that I, Motown Records and UMG Recordings had an obligation to assure that Love Records, Inc. and/or Mr. Combs properly paid their taxes (¶ 383).

12.     While the prior false accusations of the FAC that I personally attended supposed "sex trafficking parties" at Mr. Combs' homes have been removed, the SAC continues to be filled with vile and completely untrue accusations against me personally.  It alleges horrible conduct on the part of Mr. Combs and his associates – never alleging any participation in such allegedly improper activities by me, Motown Records or UMG Recordings.  Instead, the SAC accuses me of "intentionally or unintentionally" funding such improper activities by virtue of our supposedly having provided funding through the license agreement that was allegedly misused by Mr. Combs and by supposedly failing to control how Mr. Combs supposedly used the monies paid to Love Records, Inc. by Motown Records (¶ 373).

13.     As Mr. Zakarin's declaration states, none of these allegations are supported by a single fact.  They are unsupported conclusions that are, in fact, completely untrue and absurd (and I fully intend to pursue both Plaintiff and his counsel for having made such false accusations against me).

14.     As I will detail below, I had nothing to do with Mr. Combs or Love Records, Inc. ("Love Records").  I had no role with respect to the license agreement or any payments made to Love Records, Inc. by Motown Records.  I had no oversight, nor any right to exercise any oversight or control, over Love Records, Inc. or Mr. Combs.  Indeed, given that money is fungible, I have no idea how any contracting party could ever have oversight and control over monies required to be paid to another contracting party under a license agreement once that money has been paid.

5

15.     I am the Chairman and Chief Executive Officer of a multi-national public

company. That alone is a full-time job, and I am also deeply committed to various philanthropic

causes. I do not get involved in the day-to-day operation of the thousands of agreements UMG

and its labels and publishers have entered into with artists and writers and did not do so with

respect to Motown Records' license agreement with Mr. Combs' company, Love Records. In

short, I had nothing to do with any of the actions alleged in the SAC.

**B. The Claims Against Me, Motown Records and UMG Recordings Are Factually And Offensively False**

**(i)     The SAC Advances Knowingly False Allegations**

16.     The SAC purports to link me, Motown Records and UMG Recordings to an

alleged criminal racketeering enterprise and participating in and obstructing the government

from addressing alleged sex trafficking activity supposedly engaged in by Combs and certain of

his named associates. These accusations are based solely on the fabricated "general business

partnership" and the alleged failure on our part to fulfill the non-existent legal duty supposedly

imposed on us to control how Love Records, Inc. and/or Mr. Combs supposedly used the monies

paid by Motown Records under the license agreement.

17.     It is indisputable that Plaintiff's counsel has made these allegations despite the

fact that he is fully aware that they are completely false. He has been advised of the falsity by

Mr. Zakarin. He has been advised of the falsity by Ms. Habtemariam and her counsel. He has

our original motion to dismiss, which sets out the factual falsity of his accusations against me,

Motown Records and UMG Recordings and the legal baselessness of his claims. He has the

redacted license agreement between Motown Records and Love Records, Inc. which specifically

disclaims any partnership. Yet he has persisted in asserting offensively false claims against me,

Motown Records and UMG Recordings that have no basis whatsoever.

18.     As Plaintiff and Mr. Blackburn no doubt intended, these scandalously false

accusations against me (which Mr. Blackburn has commented on in social media), together with

the entirely unnecessary and improper publication of my private home address in the FAC, have

created serious risk to me and my family.  As I have said, I do not intend to simply walk away

from this matter once it is dismissed but intend to pursue the fullest available remedies against

both Plaintiff and Mr. Blackburn, including bringing his conduct to the attention of the Second

Department in New York.

### (ii)     The False Premise of the SAC that Motown Records or UMG Recordings is in a General Business Partnership with Love Records, Inc. or Mr. Combs

19.     Having abandoned the original claim in the FAC that Motown Records

supposedly owned Love Records and therefore had an alleged "respondent superior"[sic] role, as

I said above, the SAC advances an equally baseless "general business partnership" allegation

coupled with the repeated assertion that UMG Recordings, Motown Records and I had a duty to

supervise and control how Mr. Combs and Love Records, Inc. used any of the monies that

Motown Records was obligated to pay to or on behalf of Love Records, Inc. under the license

agreement.

20.     No longer does the SAC claim, as the FAC did, that I personally attended

listening parties at Mr. Combs' homes in Los Angeles and Miami (and New York) where there

were allegedly sex workers and underage women being sexually exploited and plied with alcohol

and drugs and that I had a duty to prevent these things from happening.[4]

---

[4] In language that is unclear to me, in subparagraph (f) of paragraph 375 of the SAC, it appears that Plaintiff and his counsel are continuing to allege that I supposedly was present at Chalice Recording Studio when there was allegedly a shooting there.  I was not present at Chalice Recording Studio or at any of Mr. Combs' homes.

21.    Instead, in the SAC, our supposed responsibility comes from the non-existent "general business partnership" and the alleged duty to control the financial affairs of Love Records, Inc. and Mr. Combs.  Nowhere, other than through the chronologically absurd Cassie Ventura complaint (filed in November 2023, long after Motown Records terminated the license agreement with Love Records, Inc.), and purely fictional conclusions, does the SAC identify any supposed basis on which I, Motown Records or UMG Recordings could supposedly have known of the alleged purposes to which Mr. Combs was supposedly putting the monies paid by Motown Records under the license agreement (even assuming that such knowledge, which we did not have, could create a basis for some liability).[5]

22.    To be clear, Motown Records, UMG Recordings, and I had no right or ability to exercise supervisory control or authority over Love Records or Mr. Combs.  We did not have any control or authority with respect to the financial affairs of Mr. Combs or Love Records, Inc. and no obligation to exercise any such control.  Mr. Combs was not our employee or our partner. Love Records, Inc. was not the partner of Motown Records or UMG Recordings.  Motown Records' sole relationship to Mr. Combs and Love Records, Inc. was through a commonplace and ordinary arms-length relationship of a licensor (Love Records, Inc.) and licensee (Motown Records).  And as Ms. Braithwaite states in her declaration, that relationship was terminated as of February 1, 2023.

23.    The FAC alleged a claim against me, Motown Records and UMG Recordings, claiming we were responsible for security at Chalice Recording Studio that was allegedly

---

[5] The SAC vaguely alleges that some unidentified employees of UMG Recordings or Motown Records supposedly were present at either Chalice Recording Studio or at alleged "listening parties" at Mr. Combs' homes.  Who they are, when they attended and what occurred is nowhere mentioned in the SAC.  I have no reason to believe that such vague allegations are any more truthful than any of the accusations that Plaintiff and Mr. Blackburn have made against me.

deficient. The SAC drops that claim. However, for some reason, the SAC continues to assert that Motown Records and UMG Recordings, along with Combs, Love Records, Inc. and Chalice Recording Studio, were responsible for security.

24.     Again, I do not understand how Plaintiff and Mr. Blackburn can make this allegation as they have no basis for it, and it has already been refuted in our original motion to dismiss. Both Ms. Braithewaite and Ms. Habtemariam specifically stated in their declarations that we were not responsible for any security at Chalice Recording Studio or any other Love Records, Inc. activity. Rather, either Mr. Combs or Love Records, Inc. were responsible for security. As I said above, I do not understand why Plaintiff and Mr. Blackburn persist in pleading claims and allegations that they know are false.[6]

### (iii)     I Have Never Been In Mr. Combs' Houses

25.     As I said in my original declaration in support of the motion to dismiss the FAC, contrary to the unsupported allegations that were in the FAC (¶¶ 162-167), I have never been in Mr. Combs' house in Los Angeles, Miami or anywhere else and I did not sponsor, or attend any "listening parties" at Mr. Combs' homes. I did not know – and do not know – whether there were ever any allegedly underage girls and sex workers supposedly being sexually exploited and plied with alcohol and drugs at any listening parties at Mr. Combs' house (and what Plaintiff calls "freak offs"). The false story in the FAC about my supposedly having spent hours in Mr. Combs' bedroom has not only been abandoned, but it appears that Plaintiff now claims only that he was supposedly told this by Mr. Combs. The notion that Mr. Combs would supposedly tell Plaintiff that I was not only at his homes, when I was never there, but that I also disappeared into

---

[6] I am advised that Mr. Combs' counsel has provided Plaintiff's counsel, Mr. Blackburn, with indisputable evidence showing that, contrary to what is alleged in the SAC, no alleged shooting took place at Chalice Recording Studios.

his bedroom with him for hours, is so completely ridiculous that, on its face, it is plainly one more in a series of fabrications by either, or both, Plaintiff and his counsel.

26.     Further, the SAC's allegations regarding my supposed knowledge of any alleged improper activity engaged in by Mr. Combs and his associates is also completely untrue.  The conclusions that are made throughout the SAC about Motown Records, UMG Recordings and/or I funding Mr. Combs' alleged improper activities are not facts, are not true and make no sense. Mr. Combs was and is, according to public press reports, worth a billion dollars.  I do not know how anyone could possibly determine the source of any dollar that was allegedly misused by Mr. Combs for any supposed improper purpose.

27.     Motown Records had a briefly operative license agreement with Love Records, Inc., and it had payment obligations under that license agreement.  Motown Records had no right, no ability and no duty to control how Love Records, Inc. spent any of the monies paid to it by Motown Records.

### (iv)     The Sex Trafficking Allegations Are Completely Conclusory, Chronologically Baseless and Completely False

28.     The SAC, like the FAC also accuses me personally, along with Motown Records and UMG Recordings, of the most scurrilously false allegations, claiming that we participated in, aided and abetted and obstructed discovery of Mr. Combs' alleged sex trafficking (Seventh, Fifteenth and Sixteenth "Causes of Action").[7]  Just as there was not a single fact, as opposed to conclusions, supporting any such claim pleaded anywhere in the FAC, so too there is not a single fact pleaded in the SAC.  The claims are based on purely conclusory assertions about alleged

---

[7] I am advised that at the Court telephonic hearing on April 9, 2024, Mr. Blackburn advised that he was dropping this aiding and abetting claim.  It is still alleged in the SAC but I believe it has been withdrawn (because it has no legal basis).

knowledge that we did not have, a general business partnership relationship that did not exist and a duty to effectively manage the financial affairs of Love Records, Inc. and Mr. Combs that also does not exist.

29.     As I have said, I have no personal knowledge of any of the alleged activities that supposedly took place at any of Mr. Combs' homes or on his boat (which I was also not on) or at Chalice Recording Studio.  And I most assuredly did not participate in or aid and abet or obstruct anything relating to such alleged activity about which I knew nothing, never participated in, and never observed.

30.     While our original motion to dismiss already pointed out that the FAC's reference to a complaint filed by a Cassie Ventura was chronologically impossible (because, as documented in Mr. Zakarin's declaration, Ms. Ventura's complaint was not filed until November 16, 2023, long after Motown Records terminated its license agreement with Love Records), the SAC continues to make this same chronologically impossible allegation.[8]  As I have said above, Plaintiff and Mr. Blackburn simply refuse to allow facts to deter them from making baseless claims.

31.     As Mr. Zakarin's declaration also notes, both the FAC and the SAC also point to some person by the name of Jonathan Oddi, who apparently also made some allegations against Mr. Combs on or about December 17, 2023.  Again, since Motown Records terminated its agreement with Love Records Inc. long before Mr. Oddi's allegations, it remains chronologically impossible for his allegations to have provided any notice of anything to us.

---

[8] The SAC refers to a fight that took place between Steven Stoute and Mr. Combs some 25 years ago.  I fail to see how a 25 year-old event possibly bears on the SAC's alleged RICO and "sex trafficking" claims that supposedly arose in 2022 and 2023.

32.     The FAC falsely alleged that UMG Recordings, Motown Records and/or I provided Love Records, Inc. and/or Mr. Combs with cash.  The SAC has not entirely dropped this accusation, but the primary allegation now is that monies Motown Records was obligated to pay under the license agreement were supposedly misused by Love Record, Inc. and/or Mr. Combs and that we were obligated to control how the funds were spent.  Yet inconsistently, the SAC admits that Motown Records was obligated to pay or reimburse Love Records, Inc. for recording costs incurred by Love Records, Inc. (SAC ¶ 164).

## C.  The Amended Complaint Should Be Dismissed With Prejudice

33.     Accordingly, for all of the reasons stated above and in the accompanying Declarations of Donald S. Zakarin, Martha Braithwaite and Ethiopia Habtemariam, and as set forth in detail in the accompanying Memorandum of Law, not only does the SAC fail to state any claim against me, UMG Recordings and Motown Records, but the claims are based on completely unsupported conclusions masquerading as "facts" - and the actual facts completely refute the fabrications of the SAC.  Indeed, as noted above, in virtually all instances, the Plaintiff and his counsel already know that their allegations are baseless.  Further, according to Plaintiff's own declaration, at most, the allegations are not even based on any personal knowledge of the Plaintiff but on hearsay statements supposedly made by Mr. Combs to Plaintiff, yet they have refused to eliminate them and dismiss the claims they have asserted against me, Motown Records and UMG Recordings.

34.     I have devoted my entire professional career to the music industry and have tried to lead an honorable personal and professional life.  I believe I have succeeded in doing so.  I have had the honor of being appointed Commander of the Order of The British Empire (CBE) in 2010.  I was knighted in 2016 and inaugurated to the Order of the British Empire and Knight

12

Bachelor in 2016. I have received honors, recognizing my devotion to philanthropic causes, that

I value highly, including the Spirit of Life Award from the City of Hope.

35.     It has been said that a single lie can destroy a reputation of integrity and that while

it takes years to build a reputation, it can be ruined in five minutes. The original complaint, the

FAC and the SAC, despite their completely different theories for attempting to hold me, Motown

Records and UMG Recordings liable activities of which we had no knowledge and as to which

we had no involvement, are filled with lies and are beyond reckless in their accusations against

me, none of which have any factual basis but are instead are knowingly and maliciously false

and defamatory.[9]

36.     The SAC as against me, UMG Recordings and Motown Records should be

dismissed with prejudice and we should be awarded sanctions against the Plaintiff and his

counsel.


I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.


Dated: April 8, 2024

Sir Lucian Grainge, CBE

---

[9] I expect that my attorneys will do everything in their power to remedy the maliciously false
accusations leveled in the Amended Complaint.

13