**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RODNEY JONES,

                *Plaintiff*,

        -against-

SEAN COMBS, JUSTIN DIOR COMBS, CUBA
GOODING JR., LUCIAN CHARLES GRAINGE,
KRISTINA KHORRAM,  LOVE RECORDS, MOTOWN
RECORDS,  UNIVERSAL MUSIC GROUP, COMBS
GLOBAL ENTERPRISES, JOHN and JANE DOES 1-10
and  ABC CORPORATIONS.  1-10,

                *Defendants*.

---

Case No.: 24-cv-01457

**MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR**
**SANCTIONS**

**PRYOR CASHMAN LLP**
Donald S. Zakarin
James A. Janowitz
William L. Charron
Nicholas G. Saady
Alina Jamil Mian
7 Times Square, New York, NY 10036
Tel.: (212) 421-4100
Fax: (212) 798-6307

*Attorneys for Sir Lucian Grainge, Motown*
*Records and UMG Recordings, Inc. (incorrectly*
*named in Complaint as Universal Music Group)*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

RELEVANT FACTS ..................................................................................................4

   A.  The False Claims and Accusations of The Original Complaint and FAC ..............4

   B.  UMG Was Forced to Unnecessarily Incur Additional Legal Fees and Expenses
       in Moving to Dismiss The SAC and Serving a Second Rule 11 Motion.............................7

   C.  Plaintiff's And Blackburn's Belated "Voluntary" Dismissal Of The SAC ...........9

ARGUMENT .............................................................................................................11

   I.   PLAINTIFF AND BLACKBURN SHOULD BE SANCTIONED ....................................11

     A.  Sanctions Should Be Ordered Based on the Objectively False - and Now
        Admittedly False - Allegations of the FAC and SAC.......................................13

     B.  Sanctions Should Be Awarded Based on the Refusal to Dismiss
        Objectively Baseless Claims Even After Being Provided With Notice
        the Claims Were Baseless...............................................................................19

CONCLUSION...........................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                    **<u>PAGE(s)</u>**

*In re 60 E. 80th St. Equities, Inc.*,
    218 F.3d 109 (2d Cir. 2000)...............................................................................12

*ACLI Gov't Sec., Inc. v. Rhoades*,
    907 F. Supp. 66 (S.D.N.Y. 1995) .............................................................. 12, 18-19

*An v. Despins*,
    No. 22-CV-10062 (VEC), 2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023) ...............................17

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)...............................................................................11

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990)...............................................................................11

*Craig v. UMG Recordings, Inc.*,
    380 F. Supp. 3d 324 (S.D.N.Y. 2019)...............................................................16

*Demaree v. Castro*,
    No. 22-CV-8772 (CM), 2023 WL 6465881 (S.D.N.Y. Oct. 4, 2023) .....................................19

*Enmon v. Prospect Cap. Corp.*,
    675 F.3d 138 (2d Cir. 2012)............................................................... 12-14

*Galonsky v. Williams*,
    No. 96-CV-6207 (JSM), 1997 WL 759445 (S.D.N.Y. Dec. 10, 1997) .............................17, 21

*Gong v. Sarnoff*,
    No.23-cv-343 (LJL),2023 WL 5372473 (S.D.N.Y. Aug. 22, 2023) .....................................20

*Huebner v. Midland Credit Mgmt., Inc.*,
    897 F.3d 42 (2d Cir. 2018).............................................................12, 14

*Katzman v.Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. June 25, 1996).............................................................19

*Levine v. F.D.I.C.*,
    2 F.3d 476 (2d Cir. 1993)...........................................................11, 16

*LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*,
    No. 14-CV-9075, 2017 WL 2414805 (S.D.N.Y. June 2, 2017) (Oetken, J.)...........................13

*McCullough v. World Wrestling Ent., Inc.*,
    No. 3:15-CV-001074, 2016 U.S. Dist. LEXIS 156459 (D. Conn. Nov. 10, 2016) .................17

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                    **<u>PAGE(s)</u>**

*Reichmann v. Neumann*,
  553 F. Supp. 2d 307 (S.D.N.Y. 2008)..............................................................................11, 18

*Star Mark Mgmt. v. Koon Chun Hing Kee Soy*,
  682 F.3d 170 (2d Cir. 2012).............................................................................................20, 21


**<u>STATUTES</u>**

18 U.S.C. § 1591.......................................................................................................................5

18 U.S.C. § 1961.......................................................................................................................5

28 U.S.C. § 1927................................................................................................ *passim*

Sir Lucian Grainge ("Grainge"), Motown Records ("Motown") and UMG Recordings, Inc. ("UMG Recordings," incorrectly identified in the Complaint, First Amended Complaint and Second Amended Complaint as Universal Music Group, which is not a juridical entity; hereinafter sometimes collectively referred to as "UMG"), submit this Memorandum of Law in support of their motion, pursuant to 28 U.S.C. § 1927 and the inherent power of this Court, for orders sanctioning plaintiff Rodney Jones ("Plaintiff") and Plaintiff's counsel, Tyrone Anthony Blackburn, Esq. ("Blackburn").[1]

## PRELIMINARY STATEMENT

UMG served its second motion to dismiss on April 24, 2024 and its second motion for Rule 11 sanctions on Plaintiff and Blackburn on April 26, 2024, providing Plaintiff and Blackburn with a 21 day "safe harbor" within which to take action to avoid the imposition of sanctions. Plaintiff's opposition to UMG's motion to dismiss was due on May 15 and the 21 day "safe harbor" period would have expired on May 17, 2024. Thus, despite having filed a complaint, a First Amended Complaint ("FAC") and the SAC, all of which were filled with offensively false accusations against UMG, asserting claims lacking any factual or legal basis whatsoever – until the last minute, ignoring UMG's March 4, 2024 written notice of the falsity of the accusations and lack of legal merit of the claims, ignoring UMG's motion to dismiss the FAC and its first served motion for Rule 11 sanctions, ignoring UMG's motion to dismiss the SAC and UMG's second served Rule 11 motion – by dismissing all of the claims and allegations made against Grainge, Motown and

---

[1] All claims and allegations made in the Second Amended Complaint ("SAC") against Sir Lucian Grainge, Motown Records and "Universal Music Group" (meaning UMG Recordings, Inc.") were dismissed with prejudice on May 14, 2024 pursuant to a motion made by Plaintiff, consented to by UMG, subject to an express reservation of rights by UMG. Plaintiff's motion also requested that all references to Grainge, Motown Records and Universal Music Group in the SAC be deleted or be deemed to have been deleted.

UMG Recordings on May 14, 2024, Plaintiff and Blackburn may be saved by Rule 11's 21 day safe harbor from the imposition of Rule 11 sanctions they richly deserve for their conduct.

But they cannot, and should not be permitted to dodge sanctions under this Court's inherent power and under 28 U.S.C. § 1927.

Courts have the inherent power to manage their own affairs and to assure that litigants do not misuse the courts for their own purposes. While the Court's inherent power includes the right to impose sanctions on both parties and attorneys, 28 U.S.C. § 1927 provides the Court with the power to sanction attorneys for the excess costs, expenses and attorneys' fees incurred by virtue of their unreasonable and vexatious multiplication of proceedings.

As set forth in detail in the accompanying declaration of Donald S. Zakarin ("Zakarin Decl.") and the exhibits thereto, the claims and allegations against UMG were completely baseless to begin with and should never have been brought. Plaintiff and Blackburn had no factual or legal basis for any of the claims asserted in the original Complaint, the FAC or the SAC. At the very outset of this case, on March 4, 2024, before UMG was required to incur virtually all of the more than $450,000 in legal fees and expenses they have incurred, Plaintiff and Blackburn were put on notice that the claims and allegations were completely false and baseless. They could have dismissed the claims and withdrawn all allegations against UMG at that point, but they did not. Instead, they doubled down, requiring UMG to prepare and file a costly motion to dismiss and to prepare and serve a Rule 11 motion.

As of March 27, 2024, before UMG was forced to incur the additional legal fees and expenses it incurred after that date (amounting to some $200,000), Plaintiff and Blackburn were in possession of UMG's motion to dismiss the FAC and by April 1, 2024, had UMG's first motion for Rule 11 sanctions. Those motion papers made clear, as did the March 4, 2024 letter, that

Plaintiff's claims and allegations were completely baseless, both factually and legally. Plaintiff and Blackburn could have then dismissed the claims and withdrawn all allegations against UMG, but again did not. Instead, they again doubled down, moving to amend the FAC, changing all of the theories of their claims in the FAC and changing the "facts" alleged in the FAC (as if the falsity of the allegations they had previously pleaded was meaningless), requiring UMG to incur some $200,000 in additional legal fees and expenses through the end of April (and additional fees and expenses in May, including the costs of this motion).

But the hundreds of thousands of dollars in legal fees and expenses that UMG has been forced to unnecessarily incur are just the tip of the iceberg of the harm that Plaintiff's and Blackburn's reckless and improper conduct have caused UMG. The salacious and utterly unfounded criminal accusations leveled against Sir Lucian Grainge, which Plaintiff and Blackburn fully understood (and undoubtedly intended) would be endlessly republished by the press and on social media (including by Blackburn himself), have seriously and needlessly damaged his reputation, one that has been hard-earned by years of service and philanthropy. Indeed, the original complaint and the FAC purposefully and unnecessarily included both a picture of Grainge and published his home address, requiring Grainge to incur additional expense in obtaining security for himself and his family.

If anything, the fact that there is a litigation privilege, should make attorneys more, not less, careful before they irresponsibly file pleadings accusing people of engaging in vile criminal behavior.

But that is not how Plaintiff and Blackburn see it. Instead, as Judge Cote observed, Blackburn's "pattern of behavior is that he improperly files cases in federal court to garner media attention, embarrass defendants with salacious allegations, and pressure defendants to settle

quickly." (ECF No. 34 at pp.13-14.)  It is obvious that the massively improper actions of Plaintiff and Blackburn here are thus not some outlier or aberration.  They are instead Blackburn's MO. And if Judge Cote's referral to the Southern District's grievance committee was not sufficient to put a stop to Blackburn's improper conduct, perhaps meaningful monetary sanctions that directly impact his wallet will.  One thing is clear: sanctions in this case are absolutely warranted.

## RELEVANT FACTS

### A.   The False Claims and Accusations of The Original Complaint and FAC

As set forth in detail in Exhibit A to the Zakarin Decl. (Exhibit A being the Zakarin Declaration in support of UMG's second motion for Rule 11 sanctions), the original complaint and the FAC both claimed that Motown was the parent company of Love Records and UMG thus had a "respondent (sic) superior" relationship with Sean Combs ("Combs").  That was utterly untrue. The original complaint and FAC also alleged that Plaintiff had personally seen Grainge at Combs' homes in Los Angeles and Miami during "sex trafficking" parties and that Grainge and Combs had disappeared for hours into Combs' bedroom at night. (ECF No. 2 ¶¶ 162-164.)  Blackburn cut and pasted those identical allegations into the original complaint and FAC with respect to Motown's former president, Ethiopia Habtemariam ("Habtemariam") as well.  (*Id.* ¶¶ 171-174.) These incredibly salacious accusations were also completely untrue.

These patently fabricated and highly incendiary allegations provided the foundation for Grainge's supposed knowledge of and alleged involvement in Combs's alleged "sex trafficking." The equally false "parent company" allegation served as the supposed basis for implicating UMG in Plaintiff's federal civil racketeering and sex trafficking claims against the Combs' defendants

under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961, *et seq.*, and the Trafficking Victims Protection Act of 2000 ("TVPA"), 18 U.S.C. §§ 1591, *et seq.*[2]

Before having to spend what would ultimately amount to over $450,000 in legal fees and expenses, on March 4, 2024, UMG put Plaintiff and Blackburn on written notice that the claims and allegations of the FAC were offensively false and unless they were immediately withdrawn, UMG would seek not only dismissal of the claims but sanctions under Rule 11. (Zakarin Decl. at ¶ 8; Exhibit B).  Blackburn rejected UMG's demand, reiterating the false accusations of the FAC.  But Blackburn also made no effort whatsoever to serve the FAC, preferring to have the offensively false and destructive allegations remain unaddressed in a public record.  UMG blunted this tactic by unilaterally waiving service of process so it could file its motion to dismiss, which it did on March 27, 2024, and served its first Rule 11 motion on Blackburn on April 1, 2024.

Informed by the detailed declarations provided by Grainge, Habtemariam, Martha Braithwaite and Mr. Zakarin and the Memorandum of Law, making clear that the allegations of the FAC were utterly false and that Plaintiff had no legal basis for any claim against UMG, instead of dismissing the claims - which is exactly what they should have done - Plaintiff and Blackburn decided to simply change their "facts" and their legal theory but keep their claims.  In a letter to the Court seeking to amend the FAC on March 28, 2024 (ECF No. 30), Blackburn completely misrepresented the content of the FAC, writing that it supposedly only said that "Combs identified" Grainge and Habtemariam to Plaintiff, but that Plaintiff did not himself recognize Grainge or Habtemariam or "meet them and speak with them."  (*Id.* at p.3.)  In actuality, the FAC alleged that

---

[2] UMG believes Blackburn provided the original complaint to the press before filing it as part of his self-promotional activities.

Plaintiff himself personally saw Grainge and Habtemariam at Combs' homes (an impossibility as Grainge was never there).[3]

The proposed SAC thus jettisoned the prior accusation that Grainge had personally attended the alleged "sex trafficking" parties at Combs' homes.  It also abandoned (without any explanation) the FAC's "parent company" allegation.[4]  (ECF No. 2 ¶¶ 9, 222.)  Instead, the SAC invented an entirely new, yet equally false, foundational allegation (repeated some 46 times in the SAC): Motown was the "general business partner" of Love Records, Inc. (*E.g.*, ECF No. 38 ¶¶ 8, 11, 12, 173, 372.)  In fact (as detailed in the Habtemariam declaration attached as Exhibit 3 to Exhibit A to the Zakarin Decl.), Habtemariam explicitly told Blackburn there was no partnership, only an arm's length license agreement (which was attached in redacted form to the Braithwaite declaration in support of UMG's motions to dismiss the FAC and SAC, Exhibit 2 to Exhibit A to the Zakarin Decl.).[5]  And that license agreement, in paragraph 16.11 expressly provided that there was no partnership or joint venture between Motown and Love Records.

Blackburn and Plaintiff had the license agreement in their possession for two weeks before they filed the SAC on April 12, 2024.  They knew, from Habtemariam and from the license agreement, that there was no "general business partnership" between Motown and Love Records.

---

[3] As shown by Exhibit C to the Zakarin Decl., Blackburn posted on social media that the Court would grant him leave to amend, that UMG would move to dismiss the SAC and that he would "crush" UMG with his opposition.  While the first two happened, the third did not.

[4] The Court asked Blackburn about the basis for the "parent company" allegation.  (4/9/24 Hrg. Tr. at 6:25-8:5.)  Blackburn ignored the question because he had made it up out of whole cloth.

[5] Blackburn even totally misrepresented Habtemariam's declaration attached to the SAC, claiming, in paragraph 218 of the SAC, that Habtemariam said she was authorized to enter into a general business partnership with Love Records.  In fact, her declaration states only that she was authorized to have Motown enter into a **license agreement** with Love Records.

But because the "parent company" allegation had no basis and they needed a new foundation for their claims against UMG, they willfully ignored both Habtemariam and the license agreement and persevered with their knowingly false "general business partnership" allegation.

In his April 8, 2024 letter to the Court, (ECF No. 34), without the slightest factual basis, Blackburn blithely told the Court that "Plaintiff has reason to believe the [License Agreement] defendants rely on is a ***ruse***" and "a toothless sham." (*Id.* at pp.1, 5.) Indeed, in that same April 8 letter, Blackburn admitted he was making up his "ruse" argument, conceding that Plaintiff and **he cannot support** such a position and instead asked "that the Court allow the parties to engage in limited discovery."

Nevertheless, in the admitted absence of any basis for challenging the license agreement as a "ruse," based on the newly concocted and knowingly false "general business partnership" allegation, the SAC also invented non-existent obligations on the part of UMG to supervise and control how Love Records/Combs chose to spend the money paid and payable by Motown under the license agreement. There is, of course, no such obligation anywhere in the law. But in order to keep baseless claims alive, Plaintiff and Blackburn included such allegations as the basis for their claims against UMG in the SAC, multiplying the proceedings unnecessarily.

### B.  UMG Was Forced to Unnecessarily Incur Additional Legal Fees and Expenses in Moving to Dismiss The SAC and Serving a Second Rule 11 Motion

However different the theories and "facts" alleged in the SAC were from the FAC, they remained just as offensively false and legally baseless as the theories and "facts" of the FAC and the claims against UMG remained completely unfounded. Accordingly, on April 24, 2024, UMG moved to dismiss the SAC and on April 26, they served Blackburn with their second Rule 11 motion. The UMG motion to dismiss the SAC showed clearly and unequivocally, as the motion

to dismiss the FAC had, that the allegations were false and the claims were completely baseless. (*See generally* ECF No. 41 and Exhibits 1, 2, 3 and 4 to Exhibit A to Zakarin Decl.)

Indeed, Plaintiff and Blackburn persisted with the SAC despite having not only the benefit of UMG's motion to dismiss the FAC and the first Rule 11 motion for some two weeks, but having also heard the Court's expressed dubiety, at the April 9, 2024 telephonic conference, about his theory for the claims against UMG.  This Court told Blackburn:

> I'm not hearing anything that would plausibly give rise to a theory that would make UMG liable because they gave him [Combs] money and because they had a deal with respect to budgets and overseeing certain aspects of their distribution agreement, that they had a duty to babysit him [Combs] and prevent him from doing all these bad things and that somehow gives rise to liability on the part of the company, I just don't know any authority for that.

(4/9/24 Hrg. Tr. at 16:16-23.)[6]

Ignoring this Court, ignoring UMG's motion to dismiss the FAC (which provided ample notice that the allegations and claims against UMG were not only frivolous but they were completely unfounded and false), and ignoring UMG's motion to dismiss the SAC and their second served Rule 11 motion, Blackburn and Plaintiff sat back, allowing the press and social media to continue to blare their hateful and antisemitic tropes about Grainge that were based on and triggered by the completely false and legally baseless allegations they had placed into three successive complaints.  Only at the eleventh hour, before they would be required to file opposition to UMG's motion to dismiss and before the "safe harbor" on UMG's second motion for Rule 11

---

[6] *See also id.* at 7:8–10 (Court: "so without [the license agreement] you thought it was appropriate to file a complaint simply asserting that Motown was the parent company of Love Records with no basis?"), 8:10–8:13 (Court: "But you're saying, because this company was paying money to Sean Combs, that it's responsible for the sexual assaults and other conduct by Mr. Combs in his home; is that the theory?"), 9:7–9:12 (Court: "The fact that he had a deal with his record company to pay him, and there was certain oversight the company was supposed to give, makes them responsible for all these things that he did in his house?"; Mr. Blackburn:  "Not just his house, your Honor.  It wasn't just his house.  It was a yacht.").

sanctions would expire, did Plaintiff and Blackburn initiate an effort to extricate themselves from what they had purposefully wrought by seeking to obtain UMG's agreement to a stipulation allowing them to withdraw the claims in the SAC, initially against Grainge and then also UMG.[7]

### C. Plaintiff's And Blackburn's Belated "Voluntary" Dismissal Of The SAC

After filing three complaints making offensively false allegations against Grainge, Motown and UMG Recordings, Inc., after being served with two detailed motions to dismiss and two even more detailed Rule 11 motions, with the 21 day "safe harbor" coming to an end and facing Rule 11 sanctions for their conduct, Plaintiff and Blackburn belatedly recognized that they needed to do something to avoid sanctions (it being patently obvious that their baseless claims would be dismissed by the Court if they did not dismiss them). UMG refused to stipulate to dismissal - which might enable Plaintiff and Blackburn to falsely and publicly pretend that UMG had made some accommodation with Plaintiff, which UMG did not do and would not do. Instead, UMG advised Blackburn that he should draft a motion, UMG would review his declaration and, if it were accurate, UMG would separately file its consent to the motion.

On May 13, Blackburn filed Plaintiff's motion to dismiss all of the claims and allegations against Grainge, Motown and UMG Recordings, Inc., supported by a declaration that was substantially consistent with a declaration that UMG had approved. In that declaration, Blackburn specifically, but belatedly, admitted that, just as UMG had told Blackburn on March 4, 2024 and in two motions to dismiss and in two Rule 11 motions, all of the claims and allegations in the SAC against Grainge, Motown and UMG Recordings, Inc. had no legal basis (they had no basis whatsoever). Because Blackburn inexplicably characterized his filing as a "stipulation," which it

---

[7] Only after UMG rejected a stipulation and made clear that there was no basis for the claims against Motown and UMG Recordings, Inc. did Blackburn agree to move to dismiss all claims and allegations against UMG with prejudice.

clearly was not, the clerk bounced it on May 14, 2024.  Blackburn then filed the motion for dismissal, appropriately characterizing it as a motion, and UMG filed the declaration of Donald S. Zakarin agreeing to the dismissal with prejudice, while specifically reserving UMG's rights.  (*See* ECF No. 49.)  (Zakarin Decl. ¶¶ 8, 12-17.)

While all of the claims and all of the allegations against Grainge, Motown and UMG Recordings, Inc. have now finally been dismissed with prejudice (this Court retains jurisdiction to consider and determine this motion for sanctions), the harm left in the wake of Plaintiff's and Blackburn's outrageous pleadings remains.  Beyond incurring nearly half a million dollars in legal fees and expenses, virtually all of which should never have been required, Sir Lucian Grainge has had a successful and well-lived life upended, been subjected to antisemitic attacks in social media, had his home address publicized and had to obtain enhanced security for his family.  (Zakarin Decl. ¶16.)  This is not some isolated incident for Blackburn.  As Judge Cote has found, Blackburn has an established pattern of behavior that delights in making vile accusations against people (and even lawyers and law firms) that have little or no basis.  Plaintiff, it would appear, is his vehicle in this case for that conduct.

Plaintiff and Blackburn should have dismissed all of their allegations and claims upon receiving UMG's March 4, 2024 letter.  (Zakarin Decl. ¶¶17-21, Exhibit B.)  They should have dismissed all of their claims and allegations upon receiving UMG's motion to dismiss the FAC and the first Rule 11 motion.  And they should never have sought to breathe life into moribund claims by completely changing their theories and their "facts" in seeking to amend into their SAC. And then, having improperly done so, they should have immediately dismissed the SAC upon being served with UMG's motion to dismiss the SAC and the second Rule 11 motion.

But they did none of the above. Why? Because Plaintiff and Blackburn must have conceived it to be in their interest to allow a completely false and baseless pleading remain publicly available as long as possible, no matter the harm that it had already caused and would continue to cause. They clearly made a judgment that they would wait as long as possible and then dismiss their claims and allegations before their "safe harbor" under Rule 11 expired.

But Rule 11 is not the sole tool that this Court has available to address and remedy the purposeful misuse of the judicial system by people like Blackburn, who are armed with a license to practice law but who have demonstrated, again and again, that they should not have that right. This Court should award sanctions against both Plaintiff and Blackburn in amounts that recognize both the costs that UMG has unnecessarily been forced to incur and the harm that the conduct engaged in by Plaintiff and Blackburn has caused and will cause if not deterred.

## ARGUMENT

## I.   PLAINTIFF AND BLACKBURN SHOULD BE SANCTIONED[8]

Courts have the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" and "to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citations omitted). Courts' inherent "power includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process, such as the assessment of attorneys' fees against a party that has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Reichmann v. Neumann*, 553 F. Supp. 2d 307, 319 (S.D.N.Y. 2008) (citations omitted). To impose

---

[8] The dismissal of all claims against UMG does not deprive this Court of jurisdiction to consider sanctions nor deprive UMG of the right to seek sanctions. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990), superseded by statute on other grounds; *Levine v. F.D.I.C.*, 2 F.3d 476, 478 (2d Cir. 1993).

sanctions pursuant to their inherent power, courts must find that the challenged claims were: (1) without a colorable basis; and (2) brought in bad faith, i.e., motivated by improper purposes such as harassment. *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (citations omitted). Bad faith may be inferred if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose. *Id.*

The record here confirms absolutely that the actions of Plaintiff and Blackburn in persisting with their baseless claims through three complaints with different "facts" and different theories, none of which had any factual or legal basis, were in bad faith.

28 U.S.C. § 1927 "allows a court to require an attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously ... to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (quoting 28 U.S.C. § 1927). Section 1927 "imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics, and provides courts with a cudgel to use, in their discretion, to deter unnecessary delays in litigation." *Id.* (citations omitted and cleaned up).

Sanctions may be imposed under Section 1927 "when there is a finding of conduct constituting or akin to bad faith." *In re 60 E. 80th St. Equities, Inc*., 218 F.3d 109, 115 (2d Cir. 2000). The showing of bad faith required under Section 1927 is "similar to that necessary to invoke the court's inherent power." *Enmon*, 675 F.3d at 143 (citations omitted). Bad faith conduct includes pursuing "frivolous contentions" and engaging in "intentionally dilatory conduct." *ACLI Gov't Sec., Inc. v. Rhoades*, 907 F. Supp. 66, 68 (S.D.N.Y. 1995) (citation omitted).

The only meaningful difference between an award of sanctions under Section 1927 and the inherent power of the Court is that Section 1927 awards can only be made against attorneys, while

awards under the inherent power may be made against an attorney, a party, or both.  *Id.*  Requests

for sanctions under Section 1927 and this court's inherent power may be decided in a single

inquiry.  Under this Court's inherent power, both Plaintiff and Blackburn should be sanctioned.

Under Section 1927, Blackburn should be sanctioned.

### A.      Sanctions Should Be Ordered Based on the Objectively False - and Now Admittedly False - Allegations of the FAC and SAC

It is incontrovertible that the original complaint and FAC dishonestly alleged that Plaintiff

personally saw Grainge at Combs' homes in Miami and Los Angeles and saw him disappear into

Combs' bedroom with Combs for hours (an impossibility as Grainge has never been to Combs'

homes).  (ECF No. 2 at ¶ 162; ECF No. 49.)  Plaintiff abandoned this knowingly false and

scurrilous allegation in the SAC, but it never should have been alleged in the first place.  (Zakarin

Decl. Exhibit 1 to Exhibit A at ¶¶ 26-28, 30.)

Beyond purposefully misrepresenting what the FAC said in his letter to this Court of March

28, 2024 (ECF No. 30), Blackburn has made no effort to explain how he could have pleaded

Plaintiff's actual knowledge in the FAC when Plaintiff had none.  This was not an inconsequential

allegation.  It was the predicate for Grainge's supposed knowledge of Combs' alleged "sex

trafficking."  Its falsity alone warrants sanctions as it affirms that this accusation was made without

any basis and in bad faith.  *See LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*,

No. 14-CV-9075, 2017 WL 2414805, at *6 (S.D.N.Y. June 2, 2017) (Oetken, J.) (imposing

sanctions under Court's inherent authority where party committed fraud on court by submitting

declarations that it later admitted were untrue); *Enmon*, 675 F.3d at 145-146, 148 (affirming

sanctioning of law firm under the court's inherent power and § 1927 where there was "ample

evidence" that papers "contained persistent misrepresentations" and were filed in bad faith, and

because law firm's conduct "multiplied the proceedings before the District Court" and included an

"extraordinary pattern of misrepresentations and unreasonable litigation") (quotations and citations omitted) (cleaned up); *Huebner*, 897 F.3d at 55  (affirming sanctions against law firm under §1927 for "numerous frivolous and vexatious actions," including improperly "chang[ing] its theory of the case" from one legally baseless theory to another which "was plainly untrue.").

Similarly, the original complaint and FAC both asserted RICO and TVPA claims against Grainge, Motown and UMG Recordings based on the foundational allegation that Motown was the "parent company" of Love Records and therefore was responsible for the alleged acts of its supposed employee (Combs) under a "respondent (sic) superior" relationship.  But this "parent company" allegation was completely made up by Blackburn.  Not only was it discarded by Blackburn in the SAC, but Blackburn dodged this Court's question as to where it came from to begin with.  Again, this foundational allegation was the original predicate for the attempt to make UMG responsible for the alleged actions of Combs and his colleagues under RICO and the TVPA.  But the allegation was not only knowingly false, it was completely fabricated.  That too, alone, warrants the imposition of sanctions.

This Court need not try to assess whether Plaintiff lied to Blackburn or whether Blackburn himself fabricated the falsehoods because, under the inherent power of this Court, they both are responsible and under Section 1927, Blackburn himself is responsible for vexatiously multiplying this proceeding and the costs of this action for UMG.  *Enmon*, 675 F.3d at 148 (awarding full costs of litigation, including costs of sanctions motion, in affirming sanctions against law firm).  Whatever his state of knowledge was at the outset in drafting the original complaint, before larding up a pleading with criminal accusations against people and companies completely collateral to Combs and his associates, he was duty bound to conduct a real, not a pretend, investigation into

the facts (an investigation made more critical given that Plaintiff apparently has his own criminal history).

Blackburn knew, or as an attorney practicing before this Court, should have known, how to investigate Plaintiff's allegations.  It is clear that any investigation would have provided **no corroboration** with respect to UMG because they had nothing to do with any of the alleged actions of Combs and his associates.  But Blackburn engaged in no such inquiry, instead electing to file a complaint filled with criminal accusations against Grainge, Motown and UMG Recordings, Inc. based on nothing.  Indeed, it was not merely based on nothing, it was based on allegations that Blackburn knew were untrue: because Blackburn clearly recognized he had nothing to connect UMG to his claims against Combs, he simply invented the "parent company" allegation and the equally fabricated assertion that Grainge was present at Combs' alleged "sex trafficking" parties.

When UMG's motion to dismiss the FAC obliterated those allegations, instead of immediately dismissing the claims and allegations and acknowledging, publicly, that they were wrong and apologizing for the harm they had caused Sir Lucian Grainge and UMG Recordings, Inc., Blackburn and Plaintiff shifted into the SAC.  They changed the "facts" and legal theories, as if their prior pleading did not matter, inventing the "general business partnership" allegation and manufacturing the non-existent obligation of UMG to supervise and control how Love Records spent the monies required to be paid under the license agreement.  And, in the complete absence of any facts to support such an assertion, Blackburn labeled the license agreement a "ruse" – an assertion promptly and conclusively destroyed by the Braithwaite declaration (Exhibit 2 to Exhibit A to Zakarin Decl.).

By these actions, Plaintiff and Blackburn, but especially Blackburn, vexatiously multiplied the proceedings in this action, causing UMG to incur hundreds of thousands of dollars in legal fees

and expenses, before belatedly admitting that, just as UMG had stated at the inception of this case, in the Zakarin March 4, 2024 letter (Zakarin Decl. Exhibit B), the claims and allegations against Grainge, Motown and UMG Recordings, Inc. were baseless.  These actions are sanctionable under both this Court's inherent power and under Section 1927.  *See Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993) (imposing sanctions, including under 28 U.S.C. § 1927 and the district court's inherent power, on attorney and explaining that "the creativity of an attorney may not transcend the facts of a given case; counsel in his attempts at creativity concocted 'facts' that were not well grounded, and therefore exceeded the bounds of conduct."); *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 338 (S.D.N.Y. 2019) (Oetken, J.) (imposing sanctions on attorney under 28 U.S.C. § 1927 where attorney filed "entirely meritless" motion to disqualify expert witness based upon false assertion that expert was conflicted due to plaintiff supposedly sharing confidential information).

Blackburn has and should have no credibility.  He has filed complaints filled with criminal accusations with no factual or legal basis and has now admitted that he did so.  He has also directly lied to this Court.  When the Court asked him on April 9 about what he had done to serve the Combs' defendants, he stated that he had given the complaint to his process server on March 18, 2024.  But that was untrue; he did not even seek the issuance of a summons until April 17, 2024.  But truthfulness seems not to be of much importance to Blackburn.  He first alleged, in the FAC, that UMG provided "vast sums of cash" to Combs, only to drop that false allegation in the SAC.[9] He included an allegation in the FAC that UMG failed to file proper tax forms for the non-existent cash payments, when he could not possibly have any idea if that were true (it was not).

---

[9] Blackburn admitted in his March 28 letter that his **only support** for these allegations was the fact that Motown provided funding for the production of Love Records' first album under the license agreement.  (ECF No. 30 at 2.)

Motown entered into a license agreement to distribute a single album and that license agreement required Motown to make certain payments to or on behalf of Love Records.  From that ordinary and commonplace commercial transaction, Plaintiff and Blackburn manufactured criminal accusations for which they never had any factual basis, indifferent to the harm that such allegations would cause.  And confirming Blackburn's bad faith, he persisted in repeating these baseless criminal accusations even after the "facts" he alleged in the FAC were conclusively shown to be untrue, manufacturing entirely new and equally false "facts" in effort to underpin the baseless claims of the FAC that were carried over to the SAC but based on utterly different "facts."  This conduct is and should be sanctionable.

The facts here compellingly cry out for sanctions.  Not only is Blackburn's conduct part of a consistent pattern of behavior, but he has used the outrageous allegations he pleads to self-promote on social media, even as he purposefully stalled in seeking to serve both the FAC and SAC.  *See Galonsky v. Williams*, No. 96-CV-6207 (JSM), 1997 WL 759445, at *4 (S.D.N.Y. Dec. 10, 1997) (imposing sanctions where frivolous claims were "apparently made for their public relations value and as tactical moves in th[e] litigation."); *An v. Despins*, No. 22-CV-10062 (VEC), 2023 WL 4931832, at *6 (S.D.N.Y. Aug. 2, 2023) ("A court may infer an improper purpose if, in light of Plaintiffs' conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit.") (citation omitted); *McCullough v. World Wrestling Ent., Inc.*, No. 3:15-CV-001074, 2016 U.S. Dist. LEXIS 156459, at *37-38 (D. Conn. Nov. 10, 2016) ("Baseless claims that are included in a complaint as part of a media campaign to pressure the defendant with negative public relations have been found to evidence bad faith and improper purpose on the part of filing counsel.") (citation omitted).  This is precisely what Judge Cote observed in referring Blackburn to the Southern District Grievance Committee.

17

Blackburn and Plaintiff have had multiple opportunities to stand down and dismiss their claims against Grainge, Motown and UMG Recordings, Inc.  And they ignored every single opportunity until at last they confronted the imminent deadline for filing their opposition to UMG's motion to dismiss the SAC – which they had no basis for opposing – and the expiration of their "safe harbor" under Rule 11.  Only then did they finally dismiss the SAC.  Again, that behavior warrants sanctions, even if it had not resulted in increasing the unnecessary legal cost of UMG by hundreds of thousands of dollars.  And it is not merely the legal costs.  Sir Lucian Grainge has had his reputation sullied by absolutely false accusations, which Plaintiff and Blackburn either knew were false or simply did not care whether they were true or false.

Almost identically to the basis for sanctions in *Reichmann*, sanctions are appropriate here because this entire lawsuit was brought against UMG "entirely without color from the start," because Plaintiff's and Blackburn's "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court," and because Plaintiff and Blackburn ignored documents, from the outset, "that absolutely foreclosed [their] constantly changing allegations."  553 F. Supp. 2d at 319.  Further, Blackburn's conduct should be held to be as egregious as the attorneys in *Reichmann* because he too failed to adhere to his obligations to make necessary investigations into whether Plaintiff's claims "were being brought for an improper purpose" and "whether there was any factual support at all for the claims, beyond the representations of the client" — Blackburn "failed to make these investigations and turned a blind eye to the inconvenient facts and documents presented."  553 F. Supp. 2d at 320.

Here, the bad faith of Blackburn and Plaintiff is palpable and indisputable.  An award of meaningful sanctions is necessary to ensure that plaintiffs like Plaintiff and attorneys like Blackburn understand that there are consequences for such conduct.  *See, e.g.*, *ACLI*, 907 F. Supp.

at 71 (sanctioning litigants and their counsel under the court's inherent power and § 1927 because of their "propensity for meritless arguments and their rapidly deteriorating standing before this Court" and for their "blatant disregard of the rules and regulations which permit the judicial machinery to function smoothly") (citations omitted and cleaned up).

**B.     Sanctions Should Be Awarded Based on the Refusal to Dismiss Objectively Baseless Claims Even After Being Provided With Notice the Claims Were Baseless**

Through two motions to dismiss and the service of two Rule 11 motions, UMG has made clear that there was never any basis for the allegations of the original complaint, the FAC and the SAC.  None of the pleadings did or could plead a viable RICO claim against Grainge, Motown or UMG Recordings, Inc.  None of the pleadings did or could plead a viable TVPA claim against Grainge, Motown and UMG Recordings, Inc.  And Plaintiff and Blackburn have now finally admitted as much in Blackburn's declaration in support of their motion to dismiss the SAC and all allegations against Grainge, Motown and UMG Recordings, Inc. with prejudice.

As to RICO, even after having been told, in UMG's first motion to dismiss, the manifest flaws of the FAC's RICO claims against UMG, Plaintiff and Blackburn still failed to viably allege virtually **every necessary element** in the SAC.  (ECF No. 41 at pp. 10-21.)  And that is because there was no basis for any such claim.  *See, e.g.*, *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660-61 (S.D.N.Y. June 25, 1996) ("The total lack of substance [to the RICO claim] gives rise to the inference that the action was filed for improper purposes."); *Demaree v. Castro*, No. 22-CV-8772 (CM), 2023 WL 6465881, at *16 (S.D.N.Y. Oct. 4, 2023) ("Under the 'objectively reasonable' standard, no competent attorney could have formed a reasonable belief that the RICO claims (asserted in the FAC) were well grounded in fact and warranted by existing law.

As explained above, Plaintiff's and Blackburn's entire theory of civil RICO liability in the SAC (after abandoning the non-existent "respondent (sic) superior" claim of the FAC), based upon a non-existent "general business partnership," and upon the mere payment of money by UMG to Love Records under a commonplace commercial license agreement **to make music**, is and always was baseless.  It was brought in bad faith two weeks after Plaintiff and Blackburn already knew, from UMG's first motion to dismiss, that the RICO claim was fatally deficient.  Blackburn's bad faith is properly sanctionable because it has vexatiously multiplied this proceeding and increased, unnecessarily, the litigation costs incurred by UMG.

As to the TVPA, Plaintiff does not even have a private right of action for the obstruction claim asserted (nor did Plaintiff have any basis for the aiding and abetting claim against UMG in the FAC, which Plaintiff belatedly withdrew from the SAC).  (ECF No. 41 at p 24.)  *See Gong v. Sarnoff*, No.23-cv-343 (LJL),2023 WL 5372473, at *11 (S.D.N.Y. Aug. 22, 2023) (finding that federal claim "lacked any chance of success and was objectively frivolous" where, *inter alia*, there was no private right of action under the federal statute).

But even if a private right of action existed, there was still no basis for any TVPA claims against Grainge, Motown and UMG Recordings, Inc.  And again, in their motion to dismiss the SAC as against UMG, Plaintiff and Blackburn have admitted as much.  The SAC alleged nothing beyond bad faith speculation and conclusions to support such a claim against UMG.  (*Id.*)  *See Gong*, 2023 WL 5372473, at *11; *Star Mark Mgmt. v. Koon Chun Hing Kee Soy*, 682 F.3d 170, 177 (2d Cir. 2012) ("[T]he operative question is whether the argument is frivolous, i.e., the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.'") (citations omitted).

Blackburn's acknowledgement in his March 28 letter that Plaintiff was purely guessing whether UMG supposedly engaged in anything more than "negligent[]" conduct alone confirms that the claims should never have been brought.  No such claim alleging liability under civil RICO and the TVPA because of alleged "negligen[ce]" should ever have been brought.  *See, e.g.*, *Star Mark*, 682 F.3d at 177.   In truth, there was not even any negligence as UMG had **nothing to do** with any of the alleged activity of Combs and his associates.

As in *Galonsky*, Plaintiff's and Blackburn's "conduct before this Court has been a study in vexatious and multiplicative litigation" and the "history of this litigation leaves no doubt that" UMG were added to this action "solely for tactical purposes without any regard to legal merit." 1997 WL 759445, at *4.

On its face, the SAC, which alone has cost UMG some $200,000 to defend (not including the costs of this motion for sanctions but only the opposition to Blackburn's motion to amend, the motion to dismiss the SAC and the preparation and service of a second Rule 11 motion), was preposterous.  Blackburn knowingly swapped out the bogus "parent company" allegation of the FAC for an equally baseless "general business partnership" of the SAC as if he were changing his socks.  He abandoned the offensively false allegations regarding Grainge's supposed presence at Combs' homes during "sex trafficking" parties, substituting equally false allegations about the billionaire Combs only being able to fund his alleged sex trafficking through money that UMG supposedly showered on him in an uncontrolled fashion.  The fact that none of these allegations had any factual basis and did not, in any event, provide any legal basis for the claims, did not deter Plaintiff and Blackburn.  They insisted on making up these allegations and including them in the SAC, and then they refused to drop them until they confronted the deadline to respond to the motion to dismiss, their inability to do so and the expiration of the Rule 11 safe harbor.  If that

does not constitute bad faith warranting sanctions under 28 U.S.C § 1927 and warranting sanctions under the inherent power of this Court, then it is difficult to know what might warrant sanctions.

## **CONCLUSION**

Blackburn has vexatiously multiplied this proceeding and increased the costs incurred by UMG in bad faith, warranting the imposition of sanctions equal to the added unnecessary litigation fees and expenses he has caused UMG to incur.  Plaintiff and Blackburn have pressed non-existent claims against Grainge, Motown and UMG Recordings, Inc. through three pleadings, ignoring clear warning from UMG, ignoring two motions to dismiss and two Rule 11 motions which clearly and unequivocally demonstrated that the claims and allegations against UMG were utterly false and legally baseless.  Under the inherent power of this Court, sanctions should be awarded against both Blackburn and Plaintiff to assure that they, and others who would emulate them, are deterred from such conduct.  Further, Blackburn's conduct here and elsewhere should be reported to, at the least, the Southern District Grievance Committee so it can be evaluated in conjunction with Judge Cote's reference.

Dated: New York, New York
May 17, 2024

PRYOR CASHMAN LLP

By: _____

Donald S. Zakarin
James A. Janowitz
William L. Charron
Nicholas G. Saady
Alina Jamil Mian

7 Times Square
New York, New York  10036
(212) 421-4100
dzakarin@pryorcashman.com

22

*Attorneys for Sir Lucian Grainge, Motown Records and UMG Recordings, Inc. (incorrectly named in the complaint as Universal Music Group)*