UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RODNEY JONES,<br><br>                     Plaintiff,<br><br>     v.<br><br>SEAN COMBS,<br>JUSTIN DIOR COMBS,<br>CUBA GOODING, JR.,<br>LUCIAN CHARLES GRAINGE,<br>KRISTINA KHORRAM,<br>LOVE RECORDS,<br>MOTOWN RECORDS,<br>UNIVERSAL MUSIC GROUP,<br>COMBS GLOBAL ENTERPRISES,<br>JOHN and JANE DOES 1-10; and<br>ABC CORPORATIONS 1-10,<br><br>                     Defendants. | CASE NO.: 24-1457<br><br>**DECLARATION OF DONALD S. ZAKARIN IN SUPPORT OF MOTION OF DEFENDANTS UNIVERSAL MUSIC GROUP, MOTOWN RECORDS AND SIR LUCIAN GRAINGE FOR SANCTIONS PURSUANT TO 28 U.S.C. SECTION 1927 AND UNDER THE INHERENT POWER OF THIS COURT** |

I, Donald S. Zakarin, declare as follows:

    1.    I am a member of Pryor Cashman, LLP, counsel for former Defendants Sir Lucian Grainge CBE, and Motown Records (a division of UMG Recordings, Inc.). Plaintiff had also named Universal Music Group as a defendant but there is no such juridical entity. Universal Music Group is an umbrella name commonly used to refer to all of the various companies and record labels that are encompassed within UMG Recordings, Inc. I therefore assume that Plaintiff has misnamed Universal Music Group, intending to actually name UMG Recordings, Inc. and I will refer to Universal Music Group herein as UMG Recordings, Inc. ("UMG Recordings"). I have personal knowledge of the facts set forth in this Declaration and if called and sworn as a witness, I could and would competently testify thereto.

1

2. I am submitting this declaration in support of the motion of Sir Lucian Grainge, Motown Records and UMG Recordings, Inc. (collectively, "UMG") for sanctions against Mr. Blackburn pursuant to 28 U.S.C. § 1927 and against Mr. Blackburn and the Plaintiff pursuant to the inherent power of this Court.

3. While I believe that the Plaintiff and Mr. Blackburn should appropriately have been sanctioned for their conduct in this matter pursuant to Rule 11 of the Federal Rules of Civil Procedure – UMG served two Rule 11 motions detailing the conduct of both Plaintiff and Mr. Blackburn in violation of its requirements, the first directed to the First Amended Complaint ("FAC") in this action and the second directed to the Second Amended Complaint ("SAC") – I recognize that Rule 11 provides a "safe harbor" where the offending submission is withdrawn or corrected within 21 days and the motion for dismissal was filed just barely within that 21 day period. However, that same "safe harbor" does not exist under either 28 U.S.C. § 1927 or the inherent power of this Court.

4. All of the relevant facts are set forth in my declaration in support of UMG's motion for Rule 11 sanctions. I therefore submit that declaration and its attached exhibits, not for purposes of pursuing a Rule 11 motion, but to provide all of the relevant facts applicable to this motion for sanctions pursuant to 28 U.S.C. § 1927 and the inherent power of this Court. A copy of my Rule 11 declaration is attached hereto as Exhibit A. Attached to my Rule 11 declaration as exhibits 1, 2, 3 and 4 thereto are the declarations submitted by UMG in support of their motion to dismiss the SAC: the declaration of Sir Lucian Grainge dated April 18, 2024; the declaration of Martha Braithwaite dated April 18, 2024; the declaration of Ethiopia Habtemariam dated March 27, 2024; and my declaration, dated April 24, 2024.

5. As detailed in my Rule 11 declaration, I sought, at the very outset of this case, on March 4, 2024, to explain to Mr. Blackburn that his allegations against UMG were factually baseless and that there was also no legal merit to the claims asserted in the FAC. A copy of my March 4, 2024 letter to Mr. Blackburn is attached hereto as Exhibit B. Had he conducted a proper examination of the facts and the law, he could not have filed the FAC against UMG and he could have and should have dismissed the FAC at that point, which would have spared my clients the hundreds of thousands of dollars in unnecessary legal fees and expenses that this action has now cost them.

6. Instead, Mr. Blackburn filed not one, not two but three separate versions of the complaint in this action filled with scurrilous accusations of criminal conduct against Sir Lucian Grainge (CBE) personally and against Motown Records and UMG Recordings, Inc. He changed his "facts" and his theories from the FAC to the SAC (confirming that the FAC itself was factually and legally baseless). He forced UMG to file two succeeding motions to dismiss (one directed to the FAC and then, after he amended the FAC, a second directed to the SAC) and to serve two motions for Rule 11 sanctions against both Plaintiff and his counsel Mr. Blackburn.

7. Then, despite having been in possession of UMG's original motion to dismiss since March 27, 2024 (which detailed the factual inaccuracies and legal errors that largely mirrored the factual inaccuracies and legal errors that permeated the SAC and were addressed in the UMG Defendants' motion to dismiss the SAC), on the very eve of when they were required to file their opposition to UMG's motion to dismiss the SAC, Plaintiff and Mr. Blackburn

3

"voluntarily" moved to dismiss all of their allegations and claims against UMG, specifically admitting there was no basis for the allegations and claims.[1]

8. The word "voluntary" is not really applicable here because Plaintiff and Mr. Blackburn had no legal or factual basis on which to oppose UMG's motion to dismiss. And they had no basis for opposing the motion because all of the claims and the accusations against UMG that filled the original complaint, the FAC and the SAC were knowingly false to begin with. As I said, I made that clear at the very outset of this case, in my March 4, 2024 letter to Mr. Blackburn, demanding the dismissal of all of the claims and allegations against UMG, before UMG were forced to incur hundreds of thousands of dollars in legal costs in moving to dismiss two successive complaints and to serve two successive Rule 11 motions. But instead of dismissing the claims and allegations, Mr. Blackburn doubled down on them. So we had no choice but to file our first motion to dismiss directed to the FAC, which we did on March 27, 2024.

9. But just as he ignored my March 4, 2024 letter, instead of actually paying attention to the indisputable facts and law set out in our motion to dismiss the FAC and in our first Rule 11 motion and dismissing the claims and allegations against UMG, Mr. Blackburn filed a letter motion, filled with completely false assertions about the contents of the FAC, seeking leave to file a SAC. We opposed that motion because, while the proposed SAC completely changed the legal theories and the "factual" allegations supposedly supporting the

---

[1] I have practiced law as a member of the bar of this Court since 1976. I have never before served a Rule 11 motion and I have also never before served a motion for sanctions under 28 U.S.C. § 1927. I believe sanctions should be reserved for the most egregious conduct by a litigant and a lawyer. I believe it is absolutely warranted here.

4

claims against UMG, the new "facts" and new legal theories remained offensively false and as legally baseless as the FAC.

10. The Court conducted a telephonic conference on April 9, 2024 to address the Plaintiff's motion to amend. In that conference, in response to Mr. Blackburn's description of his new theory for Plaintiff's claims against UMG, the Court made clear that it did not see any basis for any claim based on his new theory.[2] But that too did not deter Mr. Blackburn. He again doubled down and filed the SAC on April 12, 2024.

11. Thus, we were required to file yet another motion to dismiss, this time directed to the SAC and we served our second Rule 11 motion, requiring UMG to unnecessarily incur additional legal fees and expenses to do so.

12. Mr. Blackburn has not only vexatiously multiplied the proceedings in this matter, contrary to his protestations, he has actively self-promoted on social media. With respect to our opposition to his motion to amend to file the SAC (which he has now admitted was baseless), he announced on social media that not only would the Court grant his motion but that UMG then would move to dismiss the SAC and he would "crush" us with his opposition. A copy of his post is attached hereto as Exhibit C. As it has turned out, Mr. Blackburn has somewhat overstated the outcome of UMG's motion to dismiss the SAC.

13. Plaintiff's opposition to UMG's second motion to dismiss was due on Wednesday May 15, 2024. Late on May 8, 2024, merely a week before Plaintiff's opposition to the motion was due, Mr. Blackburn belatedly reached out, proposing to dismiss only the claims against

---

[2] As detailed in my declaration in support of UMG's second Rule 11 motion (Exhibit A hereto), Mr. Blackburn also misrepresented the status of his non-existent efforts to serve the other defendants in response to a direct question from the Court and he also did not answer the Court's direct question about the factual basis for the prior assertion that Motown Records was the parent company of Love Records.

Lucian Grainge while retaining the claims against Motown Records and UMG Recordings, Inc. We made clear that, while that was unacceptable, as Plaintiff had no basis for any claims against Motown Records and UMG Recordings, we would consider such dismissal only if it were with prejudice.

14. Then, on Friday, May 10, 2024, Mr. Blackburn finally conceded the obvious: there was no basis for the claims and accusations that he had hurled at Sir Lucian Grainge, Motown Records and UMG Recordings, Inc. and he advised that he was belatedly prepared to unconditionally dismiss the SAC as against all of them and strike all of the allegations against them.

15. I made clear to Mr. Blackburn that UMG would not stipulate to the dismissal of the allegations and claims against them – under no circumstances were we willing to allow Mr. Blackburn to falsely suggest to the press and in his active social media postings that UMG had provided any accommodation to obtain dismissal of all claims against them with prejudice - but that he would instead have to make a motion (and that before we would consent, we would have to approve of his declaration). Having seen how Mr. Blackburn had falsely characterized his dismissal of the claims against Ethiopia Habtemariam, UMG were not going to allow Mr. Blackburn to portray the dismissal as anything other than it clearly was: an admission that the claims and allegations that had been leveled at UMG, and, in particular, at Sir Lucian Grainge, were utterly and completely false and were totally lacking in any legal basis whatsoever.

16. On May 13, 2024, Mr. Blackburn initially filed the motion to dismiss, supported by his declaration, admitting that there was no legal basis for the allegations and claims against the UMG Defendants, but characterized it, incorrectly, as a stipulation. I advised Mr. Blackburn that I anticipated that the clerk would bounce this filing, and the clerk did so on May 14, 2024.

Mr. Blackburn then filed the motion to dismiss again, this time properly characterized as a motion for dismissal of the claims against UMG. And we submitted, on behalf of UMG, our consent to the dismissal and the striking of all of the allegations contained in the SAC against UMG, but specifically reserving all of our rights as against the Plaintiff and Mr. Blackburn.

17. Plaintiff's and Mr. Blackburn's belated retreat may enable them, under Rule 11's "21 day safe harbor," to dodge the Rule 11 sanctions that they richly deserve but their conduct cries out for sanctions. Through three complaints, without any basis whatsoever, not legal and not factual, our clients, especially Sir Lucian Grainge, have had their names and reputations dragged through the mud. I am prepared, at a hearing, to provide this Court with exemplars of disgustingly false press and social media postings that have used the allegations of this action as a springboard to attack Sir Lucian Grainge (including antisemitic slurs), necessitating him to secure enhanced security for himself and his family.

18. Moreover, the two motions to dismiss and the two served Rule 11 motions have cost our clients hundreds of thousands of dollars in legal fees that should never have been incurred. Through April 30, 2024, at discounted rates we provide to UMG (and our stated rates are already substantially below our peer firms in New York), the legal fees and expenses that UMG has incurred total in excess of $450,000. I am prepared to submit, for the Court's consideration, our time records and invoices on this matter. All of these legal fees and expenses could have been totally avoided had Mr. Blackburn dismissed these claims after receiving our March 4, 2024 letter. And UMG could have avoided some $200,000 of these legal fees and expenses that were incurred **after** we served our motion to dismiss the FAC and our initial Rule 11 motion.

19. We gave Mr. Blackburn and Plaintiff clear warning, the very same day they first filed the FAC, before we expended the hundreds of thousands of dollars of legal fees and expenses on two motions to dismiss and two Rule 11 motions, that the FAC was factually and legally baseless and that we would seek sanctions against them if it was not immediately dismissed.

20. Yet they did not dismiss the FAC and so we moved to dismiss it. And then, armed with the litigation privilege, instead of dismissing the FAC, they simply changed their theories, changed their "facts" from one set of totally false facts to a new set of totally false facts and filed the SAC. And having done that, we were forced to file a second motion to dismiss and serve a second rule 11 motion.

21. Then, as discussed above, on the very eve of when Plaintiff's opposition to our motion to dismiss was due, and only days before we would be entitled to file our second Rule 11 motion, Plaintiff and Mr. Blackburn belatedly reached out, offering to dismiss all of the claims and all of the allegations made against UMG with prejudice.

22. Perhaps they hoped that by so doing, they could evade any penalty for their conduct. They should not be so allowed. There should be a penalty here and consistent with 28 U.S.C. § 1927, that penalty should bear some correlation to the legal fees and expenses that UMG could have avoided incurring. And even that will not remotely remediate the reputational and professional harm that Sir Lucian Grainge has suffered and the personal cost he has borne due to the offensively false accusations that the Plaintiff and Mr. Blackburn leveled against him.

23. As Judge Cote has already found, Mr. Blackburn has exhibited a disturbing pattern of conduct, filing salacious allegations that have no basis in fact to attract publicity for himself and to try to extract undeserved settlements. From the outset, UMG, having been

unjustly accused, were never going to yield to such tactics. But that does not mean that fighting back against such tactics has been without serious cost. The question here is whether UMG should be forced to bear that cost, with Mr. Blackburn and Plaintiff getting off scot free, or whether Plaintiff and Mr. Blackburn should bear that cost. I submit that, in this case with these facts (as set forth in detail in the accompanying declarations), it is clear that Plaintiff and Mr. Blackburn should be required to pay that cost.

24. For all of the reasons that are detailed in the attached declarations, UMG should be awarded sanctions under 28 U.S.C. § 1927 and under the inherent power of this Court that are meaningful and effective to deter the conduct of Plaintiff and Mr. Blackburn and that will stand as a warning to others who would misuse the Federal Courts as has been done here.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 16, 2024

_____
Donald S. Zakarin