# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RODNEY JONES,<br><br>                Plaintiff,<br><br>     v.<br><br>SEAN COMBS,<br>JUSTIN DIOR COMBS,<br>CUBA GOODING, JR.,<br>LUCIAN CHARLES GRAINGE,<br>KRISTINA KHORRAM,<br>LOVE RECORDS,<br>MOTOWN RECORDS,<br>UNIVERSAL MUSIC GROUP,<br>COMBS GLOBAL ENTERPRISES,<br>JOHN and JANE DOES 1-10; and<br>ABC CORPORATIONS 1-10,<br><br>                Defendants. | CASE NO.:  24-1457<br><br><br><br>**DECLARATION OF DONALD S. ZAKARIN IN SUPPORT OF MOTION OF DEFENDANTS UNIVERSAL MUSIC GROUP, MOTOWN RECORDS AND SIR LUCIAN GRAINGE FOR RULE 11 SANCTIONS** |

I, Donald S. Zakarin, declare as follows:

       1.      I am a member of Pryor Cashman, LLP, counsel for Defendants Sir Lucian Grainge CBE, and Motown Records (a division of UMG Recordings, Inc.).  Plaintiff has also named Universal Music Group as a defendant but there is no such juridical entity.  Universal Music Group is an umbrella name commonly used to refer to all of the various companies and record labels that are encompassed within UMG Recordings, Inc.  I therefore assume that Plaintiff has misnamed Universal Music Group, intending to actually name UMG Recordings, Inc. and I will refer to Universal Music Group herein as UMG Recordings, Inc. ("UMG Recordings").   I have personal knowledge of the facts set forth in this Declaration and if called and sworn as a witness, I could and would competently testify thereto.

2.      I submit this declaration in support of the motion of Defendants Sir Lucian Grainge (CBE), Motown Records and UMG Recordings (sometimes collectively referred to herein as the "UMG Defendants") for Rule 11 sanctions against both Plaintiff and his counsel Mr. Blackburn. This motion has been served on Mr. Blackburn in accordance with the requirements of Rule 11 to afford him with the opportunity to avoid the imposition of sanctions.

3.      We do not represent Mr. Combs or any of his entities or the associates identified in the First Amended Complaint ("FAC") or the Second Amended Complaint ("SAC").[1] We represent only the UMG Defendants. Whatever the truth of the allegations that Plaintiff has made against Mr. Combs, his entities and his associates – and the extent to which Mr. Blackburn has demonstrated a willingness to ignore facts, indeed, to say things he knows are untrue, makes me deeply suspicious that his accusations against Mr. Combs and his associates are, at best, highly exaggerated – there was no basis for the accusations against the UMG Defendants.

4.      Prior to the service of this motion on Mr. Blackburn, as counsel to plaintiff, and in his personal capacity, the UMG Defendants moved to dismiss the SAC as it pertains to them. The declarations submitted in support of that motion to dismiss provide the factual detail showing that the SAC filed by Mr. Blackburn and his client was filled with indisputably false allegations against the UMG Defendants and Mr. Blackburn knew that they were false when he filed the SAC. The SAC is also legally baseless, even if one ignored the falsity of the allegations.

---

[1] Plaintiff and Mr. Blackburn moved for leave to amend to file the SAC and leave was granted after a teleconference with the Court on April 9, 2024. As described below and in my declaration in support of the UMG Defendants' motion to dismiss the SAC, not only do the changes from the FAC confirm Plaintiff's and Mr. Blackburn's violation of Rule 11, Mr. Blackburn straight out knowingly told this Court falsehoods at the April 9, 2024 conference.

**In Jettisoning The Foundational Allegations of the FAC, the SAC Confirms That the Allegations of the FAC Were Baseless To Begin With**

5.      The SAC confirms that the foundational allegations of the FAC were not only false but were not, and could not have been, filed in compliance with Rule 11.  Mr. Blackburn seems to believe that pleadings are a game of "whack-a-mole."  If one set of accusations is shown to be false, then he is free to simply file a different set of accusations, apparently under the rubric of "no harm, no foul."  But the accusations he has made against the UMG Defendants in both the FAC and the SAC are criminal accusations.  There is harm and there is a foul.

6.      I am attaching the declarations submitted in support of the motion to dismiss the SAC in support of the UMG Defendants' motion for Rule 11 sanctions.  Attached hereto as Exhibit 1 is the declaration of Sir Lucian Grainge dated April 18, 2024.  Attached hereto as Exhibit 2 is the declaration of Martha Braithwaite dated April 18, 2024.  Attached hereto as Exhibit 3 is the declaration of Ethiopia Habtemariam dated March 27, 2024.  Attached hereto as Exhibit 4 is my declaration, dated April 24, 2024.

7.      At the outset, as I did in my declaration in support of the UMG Defendants' motion to dismiss, I want to walk through an analysis of the purported changes Mr. Blackburn has made from the FAC in the SAC and how those changes confirm not only the purposeful falsity of the FAC but the equally purposeful falsity of the SAC.

8.      Without the slightest factual basis – indeed contrary to the declaration of Ms. Habtemariam and to the redacted copy of the May 4, 2022 license agreement between Motown Records and Love Records, Inc., provided to Mr. Blackburn as part of the UMG Defendants' motion to dismiss the FAC, filed on March 27, 2024 – Mr. Blackburn has substituted an entirely new foundational allegation for all of the claims against the UMG Defendants: that Motown Records and/or UMG Recordings was in a "general business partnership" with Love Records,

Inc. and/or Mr. Combs.  This new foundational allegation is as false as the original foundational allegation of the FAC.

9.      The FAC based all of its criminal accusations on the foundational allegations that Motown Records was the "parent company" of Love Records, Inc. and that the UMG Defendants were liable for the alleged conduct of Combs under a "respondent (sic) superior" relationship. The "parent company" allegation was simply invented by Plaintiff and Mr. Blackburn, as was the non-existent "respondeat superior" relationship.  Without bothering to flag the change he made in the SAC for the Court (no blackline of the changes made in the SAC were provided in Mr. Blackburn's motion to amend), the SAC eliminates this foundational "parent company" allegation along with the "respondent (sic) superior" allegation, swapping it out for the equally baseless "general business partnership" allegation.

10.     What is the explanation for this fundamental change?  None is offered.  Yet now the "general business partnership" allegation, in lieu of the "parent company" allegation, coupled with the absurd allegation that somehow the UMG Defendants were responsible to monitor and control how Mr. Combs supposedly spent the monies paid by Motown Records to Love Records, Inc. under their license agreement, are the centerpiece of strident criminal accusations the SAC makes against the UMG Defendants.

11.     Indeed, demonstrating only how completely indifferent Mr. Blackburn and Plaintiff are to their Rule 11 obligations, the SAC goes so far as to claim that Mr. Combs did not file or pay taxes and that the UMG Defendants were somehow responsible for monitoring and compelling him to pay his taxes.  The fact that neither Plaintiff nor Mr. Blackburn have any knowledge of Mr. Combs' tax filings is no deterrent to their willingness to say anything, with or without a good faith basis.  But Mr. Blackburn's invention of an obligation on the part of the

4

UMG Defendants to oversee the tax filings of Mr. Combs is nothing short of breathtakingly ludicrous.

12.     With the abandonment of the baseless "parent company" assertion, instead of dismissing the complaint as against the UMG Defendants, Mr. Blackburn simply invented a "general business partnership" allegation for the SAC.  He did so despite being fully aware that it is completely untrue.  As I said, Mr. Blackburn seems to view the filing of pleadings in Federal Court as a game of whack-a-mole: each time you demonstrate that what he has written is utterly untrue, he simply changes what he writes to something equally untrue.

13.     When Mr. Blackburn first tried to file the SAC containing the baseless "general business partnership" allegation (he could not do so without leave of Court), he was immediately put on notice by Ms. Habtemariam's personal counsel, Ashlee Lin, that the allegation in the SAC that Motown Records and Love Records, Inc. entered into a "general business partnership" was not only false but was directly contrary to what they had told him.  Indeed, Ms. Lin pointed out that her firm had expressly rejected Mr. Blackburn's attempt to manufacture this false "general business partnership" narrative in a declaration he had sought to have Ms. Habtemariam sign, and which she rejected because it was false.  Attached hereto as Exhibit 5 is the March 26, 2024 letter from Ms. Lin to Mr. Blackburn.

14.     Mr. Blackburn was also specifically told by Ms. Habtemariam, who, as the head of Motown Records, made the license agreement with Love Records, Inc., that there was no partnership, only a distribution license for one album.

15.     And as noted above, not only had Mr. Blackburn been told by both Ms. Habtemariam and her counsel that there was no "general business partnership," by the time he filed the SAC (on April 12), more than two weeks had passed since he received (on March 27)

5

the UMG Defendants' motion to dismiss the FAC which included a redacted copy of the license agreement (attached again on this motion as Exhibit A to the current declaration of Ms. Braithwaite). And that license agreement, at paragraph 16.11, specifically provided that there was no partnership between Motown Records and Love Records, Inc.

16. But worse yet, consistent with Mr. Blackburn's willingness to completely misrepresent indisputable documents, in paragraph 218 of the SAC, he specifically states that Ms. Habtemariam's declaration, attached to the SAC, "states that she was given approval by Defendant UMG **to enter the partnership with Sean Comes** (sic) to help establish Love Records."

17. It is literally incomprehensible how Mr. Blackburn could have written these words when the Habtemariam declaration is attached to the SAC. Nowhere in her declaration does Ms. Habtemariam say any such thing. The word "partnership" is nowhere mentioned in the declaration attached to the SAC (and her declaration in support of UMG's motion to dismiss specifically refutes any such alleged partnership). Rather, Ms. Habtemariam states in her declaration attached to the SAC that Motown Records entered into a **license agreement** with Love Records, Inc. to distribute an album and that UMG approved of Motown Records entering into a license agreement. It did not enter into a "partnership" of any sort and most assuredly not a general business partnership and neither Mr. Grainge nor UMG approved of Motown Records entering into a partnership with Love Records, Inc. or with Mr. Combs.

18. Mr. Blackburn seems to believe that it is ok if he invent things that were not said and did not happen. His conduct is the antithesis of the good faith required of attorneys under Rule 11.

19.     But as I indicated above, Mr. Blackburn's conduct in this regard is not some outlier.  He seems to feel unencumbered by any need to be truthful in his papers or, indeed, in response to direct questions from this Court.   The hearing on April 9, 2024 provides a further troubling example of Mr. Blackburn's dishonesty.  A copy of the transcript of that hearing is attached to my declaration in support of the UMG Defendants' motion dismiss as Exhibit 6.

20.     On page 2 of that transcript, the Court asked Mr. Blackburn whether he had served the other defendants with the complaint (meaning the defendants other than the UMG Defendants).  I believe that the Court wanted to assure that the Plaintiff and Mr. Blackburn were expeditiously undertaking to prosecute their claims instead of simply filing a complaint filled with poisonous accusations.

21.     Mr. Blackburn represented to the Court that he had sent a Rule 4 waiver form to Mr. Combs' counsel, who did not respond, so he sent out his process server to serve the Combs defendants.

22.     The Court then asked when these things occurred and on page 3 of the transcript, Mr. Blackburn directly represented to the Court that he had emailed the Rule 4 waiver form to Combs' counsel on March 13 and that he sent the complaint to be served on the Combs defendants to the process server 5 days later (on March 18, 2024).

23.     However, contrary to Mr. Blackburn's representation, I was aware that the docket did not reflect any request for the issuance of a summons so that his representation could not have been truthful.  In fact, as shown by ECF 39, Mr. Blackburn did not even request the issuance of a summons until April 17, 2024, a month later than he represented to this Court that he had sent the complaint to a process server for service (and that request was rejected by the

clerk as it was not properly filed and as of the date of this declaration, Mr. Blackburn still has yet to refile such request for the issuance of a summons).

24.    In fact, even Mr. Blackburn's representation to this Court about sending an email requesting a Rule 4 waiver of service from the Combs' defendants on March 13, 2024 was untrue. Attached to my declaration in support of the UMG Defendants' motion to dismiss as Exhibit 7 is an email from Mr. Blackburn to Jonathan Davis dated March 25, 2024 (with some unprofessional emoji's included) requesting a Rule 4 waiver. I am advised that this is the first and only request that Mr. Blackburn made of Mr. Davis for a waiver.

25.    Just like paragraph 218 of the SAC completely misrepresents what Ms. Habtemariam's declaration (attached to the SAC) says, so too did Mr. Blackburn's direct statements to this Court misrepresent indisputable documented facts. Mr. Blackburn has a deeply troubling inability or unwillingness to tell the truth, even when there are documents showing him to be not telling the truth.

26.    But there are more examples of Mr. Blackburn's dishonesty. The FAC alleged that both Sir Lucian Grainge and Ms. Habtemariam were supposedly aware of the alleged sex trafficking by Combs because, in detailed paragraphs, the FAC purported to recount Plaintiff's supposed personal knowledge that he saw them at "listening parties" where the alleged "sex trafficking" supposedly took place. Indeed, the FAC specifically alleged, in *haec verba* allegations, that Plaintiff personally saw both Grainge and Habtemariam at Combs' homes and that they each, separately, disappeared with Mr. Combs' into his bedroom for hours.

27.    These knowingly false statements were abandoned in the SAC (and the declarations of Mr. Grainge and Ms. Habtemariam submitted in support of the motions to dismiss both the FAC and the SAC conclusively debunked these baseless allegations).

28.     But in his letter motion to amend, Mr. Blackburn intentionally misrepresented to this Court what is expressly said in the FAC: he claimed that the FAC alleged only that Combs told Plaintiff that Grainge and Habtemariam were at his homes, not that Plaintiff ever saw or met them there.  That is not what the FAC said.  On the contrary, the FAC specifically stated that Plaintiff saw them there and saw them going into Mr. Combs' bedroom with Mr. Combs on multiple occasions.  Nowhere did the FAC even suggest that Plaintiff had only supposedly been told this by Mr. Combs.

29.     As I said above, Mr. Blackburn has a demonstrated pattern of misrepresenting what exists on paper in black and white.  He appears to be willing to say and write anything without regard for whether it is true or false and even without regard for whether it can be swiftly shown to be false by documents that are indisputable.

30.     The completely false allegations about Sir Lucian Grainge and Ms. Habtemariam being at supposed "sex trafficking" parties may no longer be in the SAC, but Mr. Blackburn is silent about how these offensive allegations could ever have found their way into a complaint to begin with.  Even assuming it were true that Mr. Combs supposedly told it to Plaintiff (never mind that is not what is alleged in the FAC), that is no basis on which to accuse people of criminal conduct.  But Mr. Blackburn does not care about the reputational damage to individuals that his baseless accusations leave in their wake, not so long as he can self-promote on social media.

31.     Having abandoned the story about Mr. Grainge and Ms. Habtemariam being present at the alleged "sex trafficking" parties, the SAC needed a new theory on which to try to affix responsibility on the UMG Defendants for the alleged conduct of Mr. Combs.  Because no legally cognizable basis exists for imposing liability on a payor under a contract for what the

payee does with the payments, Mr. Blackburn simply invented a non-existent duty on the part of the UMG Defendants to supervise and control Mr. Combs' expenditure of his own money.

32.     Mr. Blackburn couples this non-existent duty with allegations for which he has no factual basis, to the effect that the UMG Defendants simply handed money over to Mr. Combs and that the license agreement was a "ruse."[2]

33.     First of all, Mr. Blackburn seems to be unaware of the fact that money is fungible. He ignores the fact that Mr. Combs is and was, in 2022, a very rich man (according to Forbes, in 2022 Mr. Combs was worth in excess of a billion dollars).  The license agreement provided for certain payments to be made to Love Records, including for the payment of invoiced recording costs.  Beyond paying for or reimbursing such costs, Motown was not in the business of running Love Records' financial accounting.

34.     But equally important, as documented by the declaration of Ms. Braithwaite in support of the motion to dismiss the SAC, Mr. Blackburn's uninformed assertions that Love Records did not make any recordings before September 2022 and that Motown Records simply handed money over to Mr. Combs (instead of paying third party vendors for the recording and other costs as provided in the license agreement) are utterly false.  Again, Mr. Blackburn has no compunction about saying and writing things without the slightest knowledge or basis (just as he has no compunction about saying and writing things that he knows are completely untrue).

---

[2] Even though the unauthorized SAC is clearly the handiwork of Mr. Blackburn and not the Plaintiff, unlike the FAC, which made virtually no allegations on "information and belief," in the unauthorized SAC, Mr. Blackburn plainly hoping to find a safe harbor that might spare him Rule 11 sanctions, litters "information and belief" allegations throughout the pleading and attributes the allegations to his client.  I think it clear that these "caveats" are a pretense.  The SAC is plainly Mr. Blackburn's handiwork.

35.     In effort to hold onto a baseless claim against the UMG Defendants, the SAC has replaced the FAC's completely baseless supposed actual knowledge of Sir Lucian Grainge of Mr. Combs' alleged activity with equally baseless "should have known" allegations that supposedly arise out of a legally and factually non-existent obligation to oversee and control how Love Records and/or Mr. Combs were supposedly spending monies payable under an arm's length commercial transaction.  The allegations are nonsensical and exists nowhere in the law or in the facts.[3]

36.     The FAC also claimed, without any possible factual or legal basis, that the UMG Defendants supposedly aided and abetted Combs' alleged sex trafficking activities by handing over "cash" to Combs (even alleging it was millions of dollars of cash).  The FAC also alleged that the UMG Defendants obstructed inquiry by the government into Combs' alleged sex trafficking activity by allegedly failing to file necessary tax forms respecting the alleged cash payments.   It is, of course, obvious that, just as Plaintiff and Mr. Blackburn cannot possibly have any knowledge about Mr. Combs' tax filings, they most certainly had no knowledge of the UMG Defendants' tax filings (as they are not a matter of public knowledge).

37.     The SAC tosses these "cash" allegations aside (other than for the absurd contention that the UMG Defendants were supposedly obligated to supervise and control Mr. Combs' tax filings).[4]   Instead, while acknowledging that Motown Records was obligated to

---

[3] The SAC persists with the FAC's chronologically baseless assertion that the UMG Defendants should have known about Mr. Combs' allegedly improper conduct from the Cassie Ventura complaint.  As noted in my declaration in support of the motion to dismiss the SAC, that complaint was not filed until November 2023, months after the license agreement was terminated.

[4] And while the "aiding and abetting" claim – which is non-existent as a matter of law – remains pleaded in the SAC, Mr. Blackburn acknowledged it had no basis at the April 9, 2024 hearing and withdrew it as against the UMG Defendants.

make payments to or for the benefit of Love Records, Inc. under the license agreement, the SAC offers up the unsupported (and false) conclusion that the UMG Defendants wired or made payments to Love Records, Inc. which supposedly were in excessive amounts (by a definition of excessive amounts that is not provided and does not exist) and that the UMG Defendants should have known Combs would or did use such funds to support the alleged "sex trafficking activity."

38.     Again, there is no factual basis for this assertion (and it is in fact, utterly untrue, as documented in the Braithwaite declaration).  It is a pure invention by Mr. Blackburn.

39.     Mr. Blackburn's complete indifference to the requirements of Rule 11 and the obligations of attorneys practicing in our courts could not be made clearer than by the changes he has made between the FAC and the SAC, his silence regarding how he came to plead the now jettisoned foundational allegations of the FAC and how he could possibly make his new foundational allegations in the SAC **after** he already knew that his "general business partnership" allegation was completely untrue.

40.     Mr. Blackburn has now filed three different complaints, each of which makes offensive criminal accusations against Sir Lucian Grainge, UMG Recordings and Motown Records that Mr. Blackburn not only lacked a good faith basis for asserting but in fact knew were false when he filed each pleading.

### The UMG Defendants are Entitled to Recover the Costs and Fees Incurred In Moving to Dismiss the Baseless Claims Against Them

41.     The service of this motion pursuant to Rule 11 is not the first notice we have provided to Plaintiff and Mr. Blackburn.  On March 4, 2024, I sent Mr. Blackburn a detailed letter identifying flaws in his Amended Complaint (which he had filed that day, following up on the original complaint filed on February 26, 2024).  I attach a copy of my transmittal email to Mr. Blackburn and my attached letter of March 4, 2024 is attached as Exhibit 8 to my declaration

in support of the UMG Defendants' motion to dismiss.  We also served a Rule 11 motion in connection with the motion to dismiss the FAC.  That motion was served more than 21 days ago but instead of filing that motion, to avoid burdening the Court with sequential Rule 11 motions, we are making this motion to update that prior Rule 11 motion.

42.     On March 4, 2024, approximately one hour after I had sent him my letter, Mr. Blackburn sent me back what one might call a "responsive" email.  I consider it anything but.  Ignoring the facts set forth in my letter, indeed quite obviously without bothering to conduct the slightest investigation into the facts set forth in my letter, Mr. Blackburn instead doubled down on the false allegations of the FAC.  A copy of Mr. Blackburn's email is attached hereto as Exhibit 6.

43.     In his email, he referred to a "public rollout," supposedly by Ms. Habtemariam, "celebrating the creation of Love Records in May 2022."  He also repeated the claim of the FAC (which Ms. Habtemariam's declaration conclusively refutes), that Ms. Habtemariam was supposedly present at Love Records' parties and the writers' camp.  He repeated the assertion that his client saw Sir Lucian Grainge and Ms. Habtemariam at Mr. Combs' home and that bags of cash were supposedly brought to Mr. Combs' home (again, this is directly contrary to what Mr. Blackburn's letter motion to amend falsely says was alleged in the FAC).

44.     Having already conducted my investigation into the facts (based on the allegations of the February 26, 2024 complaint, which, as to the UMG Defendants, was substantially unchanged in the FAC), I responded to Mr. Blackburn's March 4, 2024 email within about a half of an hour.  A copy of my email dated March 4, 2024 is attached hereto as Exhibit 7.

45.     In my email response to Mr. Blackburn, I noted that we had discovered that he had sent his complaint to the press (I believe he did so before it was filed).  I told him that the "bags of cash" assertion was "preposterously false" and that had he done any investigation, he would have known that Motown Records simply had a one album distribution deal with Love Records.  And I reiterated that his client could not have seen Sir Lucian Grainge at Mr. Combs' house in Los Angeles or Miami or anywhere else because he was never there.  I strongly suggested, again, that he dismiss all of the claims against all of my clients.

46.     As I have said, the false foundational allegations of the FAC were abandoned in the SAC.  Any lawyer with integrity, when all of the foundational allegations of a complaint they drafted are shown to be untrue, would carefully examine the facts before filing an amended complaint.  But not Mr. Blackburn.  Indeed, not only did he not examine the facts, he ignored them and simply created different allegations that he already knew to be false.

47.     It is perfectly obvious that in the time between March 4, 2024 and April 12, 2024, when he filed the SAC, Mr. Blackburn made no further effort to investigate the facts.  The baseless criminal accusations remain, only their foundation has been changed.[5]

48.     As noted above, the offensively false allegations made in the FAC, and repeated in Mr. Blackburn's March 4, 2024 email, have been abandoned in the SAC, even as Mr. Blackburn's letter motion to amend sought to hold onto the claims once based on these allegations.  But where did these false allegations come from?  What was their basis?  Why

---

[5] On March 4, 2024, Mr. Blackburn also received a "Rule 11" letter from Mr. Combs' counsel, Jonathan Davis.  A copy is attached hereto as Exhibit 8.  In his letter, in addition to referencing Plaintiff's criminal record (which should have prompted a more rigorous inquiry by Mr. Blackburn), Mr. Davis confirmed that Sir Lucian Grainge was never at any of Mr. Combs' homes (and that Ms. Habtemariam left Motown months before the one "listening party" the FAC identified).  He also confirmed that the license agreement and relationship between Motown and Love Records had been terminated long before the alleged "listening party"

should anything this Plaintiff and Mr. Blackburn say be believed when they are so indifferent to the truth that they think that they can make criminal accusations against people and companies based on lies and then simply make up new lies to try to support the same accusations?  Why should anything they say or write be believed when Mr. Blackburn is even willing to make false representations to this Court in response to direct questions posed by the Court?

49.     The "parent company" allegation of the FAC never had any basis.  The "general business partnership" allegation of the SAC has no basis.  Mr. Blackburn was expressly told there was no partnership by Ms. Habtemariam, the former head of Motown Records who made the deal with Love Records, Inc.  Weeks before he filed the SAC, he was provided with a copy of the license agreement which, in paragraph 16.11 thereof, expressly said there was no partnership.  Yet the non-existent "general business partnership" is the foundation for his claims against the UMG Defendants in the SAC and Mr. Blackburn filed the SAC knowing the allegation is untrue.

50.     It is indisputable that Mr. Blackburn and his client have filed three complaints filled with offensively false criminal accusations against the UMG Defendants knowing that their allegations are completely baseless, legally and factually.

51.     If these actions are not a Rule 11 violation, if these actions are not worthy of referral to the Second Judicial Department Attorney Grievance Committee, then I do know what is.

52.     As I indicated at the hearing on April 9, 2024, while we were pleased that Mr. Blackburn dismissed the FAC as against Ms. Habtemariam and that some of the most offensively false allegations of the FAC were removed from the proposed (and now filed) SAC, Sir Lucian Grainge, UMG Recordings, Inc. and Motown Records remain accused of engaging in vile

criminal acts that they never committed.  They are accused of failing to exercise supervision and control over Mr. Combs that they had no obligation, authority or ability to exercise.

53.     The fact that the SAC abandons accusations that had no basis to begin with (substituting newly invented and equally false accusations) does not wipe the slate clean.  The offensive allegations were made in a public document against my clients and Mr. Blackburn has publicized these allegations and the newly framed accusations of criminal conduct in the SAC remain offensively false.

54.     Mr. Blackburn, as Judge Cote has noted (in a decision attached hereto as Exhibit 9) has a pattern of failing to comply with his Rule 11 obligations.  Mr. Blackburn's conduct in this action occurred within a few days after Judge Cote already issued an Order To Show Cause regarding Mr. Blackburn's conduct in the case before her (and in other cases brought to her attention).

55.     As I said above, whatever the truth or falsity of the SAC's allegations against Mr. Combs and any of his companies and/or associates, there is no merit to the accusations made against the UMG Defendants.  Plaintiff and Mr. Blackburn have unfairly, without any basis in fact, and without conducting the slightest investigation into the facts required under Rule 11 – indeed, knowing that their accusations are untrue – publicly accused the UMG Defendants of engaging in criminal behavior.  The UMG Defendants, and in particular, Sir Lucian Grainge, should recover, as a sanction for violation of Rule 11, the costs and expenses they have incurred to defend against these claims.

56.     But that alone is not enough.  Mr. Blackburn should be referred to the Second Judicial Department Attorney Grievance Committee to assess his fitness to practice before the

Courts. I do not believe, in nearly 50 years of practice, I have encountered anyone who is less qualified to practice law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 24, 2024

Donald S. Zakarin

17

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RODNEY JONES, | |
| Plaintiff, | CASE NO.: 24-1457 |
| v. | |
| SEAN COMBS,<br>JUSTIN DIOR COMBS,<br>CUBA GOODING, JR. LUCIAN CHARLES<br>GRAINGE,<br>KRISTINA KHORRAM,<br>CHALICE RECORDING STUDIOS,<br>LOVE RECORDS,<br>MOTOWN RECORDS,<br>UNIVERSAL MUSIC GROUP,<br>COMBS GLOBAL ENTERPRISES,<br>JOHN and JANE DOES 1-10; and<br>ABC CORPORATIONS 1-10, | **DECLARATION OF SIR LUCIAN**<br>**GRAINGE IN SUPPORT OF MOTION**<br>**TO DISMISS SECOND AMENDED**<br>**COMPLAINT BY DEFENDANTS**<br>**UNIVERSAL MUSIC GROUP,**<br>**MOTOWN RECORDS AND SIR LUCIAN**<br>**GRAINGE** |
| Defendants. | |

I, Sir Lucian Grainge, CBE declare as follows:

1.    I am the Chairman and Chief Executive Officer of Universal Music Group, N.V.

("UMG NV"). UMG NV is a public company organized and existing under the laws of the

Netherlands with its principal operating offices and companies located in Santa Monica,

California. I have personal knowledge of the facts set forth in this Declaration and, if called and

sworn as a witness, I could and would competently testify thereto.

2.    I have been named personally as a Defendant in the original complaint, First

Amended Complaint ("FAC") and now in the Second Amended Complaint ("SAC"). Motown

Records, which is also a named defendant in the SAC, is not an independent company but a

record label that is a division of UMG Recordings, Inc. ("UMG Recordings"), which is an

indirect wholly owned subsidiary of UMG, NV. I am also the Chairman and Chief Executive

1

Officer of UMG Recordings, which is a Delaware corporation with its principal place of business in Santa Monica, California. Universal Music Group is also named as a Defendant in the SAC.[1]

## A. **The Court Lacks Personal Jurisdiction Over Me**

3.　　As the SAC (¶ 8) admits, I am a resident of California, not New York.[2] As I will detail below, I engaged in no activity in New York whatsoever with respect to this matter (in fact, beyond authorizing Ms. Habtemariam to make a deal to distribute one album recorded by Mr. Combs, I engaged in no activity with respect to this matter anywhere). I understand that Plaintiff's counsel, Mr. Blackburn, has been referred to the Grievance Committee of the Southern District of New York by Judge Cote for repeatedly failing to properly investigate personal jurisdiction over individuals he has sued in other cases.

4.　　The SAC has abandoned the every one of the four false allegations about my supposed New York activity that were in the FAC -- (i) that I was involved in disseminating unidentified false information to unidentified artists in New York (¶ 214); (ii) that I sent unidentified advertisements to unidentified artists in New York (¶ 220); (iii) that I oversaw the unidentified marketing and soliciting to unidentified artists in New York (¶ 222); and (iv) that I was supposedly present in Mr. Combs' alleged home in New York at which Mr. Combs engaged in alleged sex trafficking (¶ 343(f)).

5.　　The SAC now accuses Combs and his colleagues of the first three actions (SAC ¶¶ 231-234) and the SAC no longer alleges that I was ever at any of Mr. Combs' homes. Thus,

---

[1] Universal Music Group is not an actual entity but a name commonly used to refer generally to the various companies and labels owned by UMG NV. I assume Plaintiff intended to name UMG Recordings, but he and his counsel have not bothered to correct this in the SAC.

[2] The Plaintiff and his counsel identified my California addresses in the FAC for no purpose other than to harass me. Having invaded my privacy unnecessarily, I understand that they have removed my addresses from the SAC.

the bases for jurisdiction over me in New York, which were untrue to begin with, now no longer

even exist.

### B. The SAC Completely Changes The Foundational Bases For Claims Against Me, Motown Records and UMG Recordings

6.      The FAC originally claimed that Motown Records was the supposed "parent

company" of Love Records, Inc., and therefore we were responsible for his actions under a

"respondent (sic) superior" relationship.  The SAC replaces these allegations with the equally

baseless "general business partnership" allegation by which Plaintiff and his counsel seek to

make me, Motown Records and UMG Recordings responsible for the allegedly wrongful

activities of Mr. Combs and his associates.

7.      As detailed in the accompanying declaration of our counsel, Donald Zakarin,

based upon a declaration of Plaintiff that was submitted to this Court on April 9, 2024, and based

on Mr. Blackburn's own communications with this Court, there was never **any** basis for the

"parent company" allegation and the "respondent (sic) superior" allegation.  It appears instead

that they were simply made up.[3]

8.      The "general business partnership" allegation is completely contrary to the clear

and unambiguous language of the license agreement between Motown Records and Love

Records, Inc. (which I understand has been provided to Plaintiff and Mr. Blackburn in redacted

form).  And from this non-existent "general business partnership," Plaintiff and Mr. Blackburn

---

[3] In the FAC, the Plaintiff also specifically alleged personally seeing me at Mr. Combs' homes in Los Angeles and Miami at which there were allegedly "sex trafficking" parties.  Indeed, according to the FAC, Plaintiff observed both me and Ms. Habtemariam (at separate times apparently) disappearing into Mr. Combs' bedroom with him for hours.  As I was never at any of Mr. Combs' homes, this accusation was knowingly false.  I am advised that the Plaintiff's declaration essentially disavows having any personal knowledge of anything, attributing virtually everything that is alleged in the FAC and SAC to what he was supposedly told by Mr. Combs.

3

fabricate an equally non-existent duty on the part of me, Motown Records and UMG Recordings to supervise and control the manner in which Love Records, Inc. and/or Mr. Combs spent the monies Motown Records was required to pay to or on behalf of Love Records, Inc. under the license agreement.

9.      As set forth in the accompanying declaration of Martha Braithwaite, who negotiated and executed the license agreement, there was never any partnership of any kind between Motown Records and/or UMG Recordings with either Mr. Combs or Love Records, Inc. On the contrary, the license agreement itself specifically provided that there was no partnership or joint venture between Motown Records and Love Records, Inc.  Instead, the parties were independent contractors.

10.     Given it is my understanding that Plaintiff's counsel was provided with a redacted copy of the license agreement, I do not understand how he can, in good faith, make this "general business partnership" allegation in the face of the plain terms of that agreement. Further, I understand that Mr. Blackburn was expressly advised by Ms. Habtemariam, before he ever drafted the SAC, that there was no partnership between Motown Records and Love Records, Inc. As Mr. Zakarin says in his declaration, the only possible  explanation for this allegation in the SAC is that Mr. Blackburn has chosen to ignore facts of which he is aware in effort to try to manufacture legally baseless and offensively false claims against me personally, Motown Records and UMG Recordings.

11.     The SAC's contention that Motown Records, UMG Recordings and I had some sort of obligation to supervise, monitor and control the use of any of the funds required to be paid to or on behalf of Love Records, Inc. by Motown Records under the terms of the license agreement is contrary to any business or legal principle of which I am aware.  I am advised that

4

the SAC even contends that I, Motown Records and UMG Recordings had an obligation to assure that Love Records, Inc. and/or Mr. Combs properly paid their taxes (¶ 383).

12.     While the prior false accusations of the FAC that I personally attended supposed "sex trafficking parties" at Mr. Combs' homes have been removed, the SAC continues to be filled with vile and completely untrue accusations against me personally.  It alleges horrible conduct on the part of Mr. Combs and his associates – never alleging any participation in such allegedly improper activities by me, Motown Records or UMG Recordings.  Instead, the SAC accuses me of "intentionally or unintentionally" funding such improper activities by virtue of our supposedly having provided funding through the license agreement that was allegedly misused by Mr. Combs and by supposedly failing to control how Mr. Combs supposedly used the monies paid to Love Records, Inc. by Motown Records (¶ 373).

13.     As Mr. Zakarin's declaration states, none of these allegations are supported by a single fact.  They are unsupported conclusions that are, in fact, completely untrue and absurd (and I fully intend to pursue both Plaintiff and his counsel for having made such false accusations against me).

14.     As I will detail below, I had nothing to do with Mr. Combs or Love Records, Inc. ("Love Records").  I had no role with respect to the license agreement or any payments made to Love Records, Inc. by Motown Records.  I had no oversight, nor any right to exercise any oversight or control, over Love Records, Inc. or Mr. Combs.  Indeed, given that money is fungible, I have no idea how any contracting party could ever have oversight and control over monies required to be paid to another contracting party under a license agreement once that money has been paid.

15.     I am the Chairman and Chief Executive Officer of a multi-national public

company. That alone is a full-time job, and I am also deeply committed to various philanthropic

causes. I do not get involved in the day-to-day operation of the thousands of agreements UMG

and its labels and publishers have entered into with artists and writers and did not do so with

respect to Motown Records' license agreement with Mr. Combs' company, Love Records. In

short, I had nothing to do with any of the actions alleged in the SAC.

### B. The Claims Against Me, Motown Records and UMG Recordings Are Factually And Offensively False

#### (i)     The SAC Advances Knowingly False Allegations

16.     The SAC purports to link me, Motown Records and UMG Recordings to an

alleged criminal racketeering enterprise and participating in and obstructing the government

from addressing alleged sex trafficking activity supposedly engaged in by Combs and certain of

his named associates. These accusations are based solely on the fabricated "general business

partnership" and the alleged failure on our part to fulfill the non-existent legal duty supposedly

imposed on us to control how Love Records, Inc. and/or Mr. Combs supposedly used the monies

paid by Motown Records under the license agreement.

17.     It is indisputable that Plaintiff's counsel has made these allegations despite the

fact that he is fully aware that they are completely false. He has been advised of the falsity by

Mr. Zakarin. He has been advised of the falsity by Ms. Habtemariam and her counsel. He has

our original motion to dismiss, which sets out the factual falsity of his accusations against me,

Motown Records and UMG Recordings and the legal baselessness of his claims. He has the

redacted license agreement between Motown Records and Love Records, Inc. which specifically

disclaims any partnership. Yet he has persisted in asserting offensively false claims against me,

Motown Records and UMG Recordings that have no basis whatsoever.

6

18.     As Plaintiff and Mr. Blackburn no doubt intended, these scandalously false

accusations against me (which Mr. Blackburn has commented on in social media), together with

the entirely unnecessary and improper publication of my private home address in the FAC, have

created serious risk to me and my family. As I have said, I do not intend to simply walk away

from this matter once it is dismissed but intend to pursue the fullest available remedies against

both Plaintiff and Mr. Blackburn, including bringing his conduct to the attention of the Second

Department in New York.

### (ii)     The False Premise of the SAC that Motown Records or UMG Recordings is in a General Business Partnership with Love Records, Inc. or Mr. Combs

19.     Having abandoned the original claim in the FAC that Motown Records

supposedly owned Love Records and therefore had an alleged "respondent superior"[sic] role, as

I said above, the SAC advances an equally baseless "general business partnership" allegation

coupled with the repeated assertion that UMG Recordings, Motown Records and I had a duty to

supervise and control how Mr. Combs and Love Records, Inc. used any of the monies that

Motown Records was obligated to pay to or on behalf of Love Records, Inc. under the license

agreement.

20.     No longer does the SAC claim, as the FAC did, that I personally attended

listening parties at Mr. Combs' homes in Los Angeles and Miami (and New York) where there

were allegedly sex workers and underage women being sexually exploited and plied with alcohol

and drugs and that I had a duty to prevent these things from happening.[4]

---

[4] In language that is unclear to me, in subparagraph (f) of paragraph 375 of the SAC, it appears
that Plaintiff and his counsel are continuing to allege that I supposedly was present at Chalice
Recording Studio when there was allegedly a shooting there. I was not present at Chalice
Recording Studio or at any of Mr. Combs' homes.

7

21.     Instead, in the SAC, our supposed responsibility comes from the non-existent "general business partnership" and the alleged duty to control the financial affairs of Love Records, Inc. and Mr. Combs. Nowhere, other than through the chronologically absurd Cassie Ventura complaint (filed in November 2023, long after Motown Records terminated the license agreement with Love Records, Inc.), and purely fictional conclusions, does the SAC identify any supposed basis on which I, Motown Records or UMG Recordings could supposedly have known of the alleged purposes to which Mr. Combs was supposedly putting the monies paid by Motown Records under the license agreement (even assuming that such knowledge, which we did not have, could create a basis for some liability).[5]

22.     To be clear, Motown Records, UMG Recordings, and I had no right or ability to exercise supervisory control or authority over Love Records or Mr. Combs. We did not have any control or authority with respect to the financial affairs of Mr. Combs or Love Records, Inc. and no obligation to exercise any such control. Mr. Combs was not our employee or our partner. Love Records, Inc. was not the partner of Motown Records or UMG Recordings. Motown Records' sole relationship to Mr. Combs and Love Records, Inc. was through a commonplace and ordinary arms-length relationship of a licensor (Love Records, Inc.) and licensee (Motown Records). And as Ms. Braithwaite states in her declaration, that relationship was terminated as of February 1, 2023.

23.     The FAC alleged a claim against me, Motown Records and UMG Recordings, claiming we were responsible for security at Chalice Recording Studio that was allegedly

---

[5] The SAC vaguely alleges that some unidentified employees of UMG Recordings or Motown Records supposedly were present at either Chalice Recording Studio or at alleged "listening parties" at Mr. Combs' homes. Who they are, when they attended and what occurred is nowhere mentioned in the SAC. I have no reason to believe that such vague allegations are any more truthful than any of the accusations that Plaintiff and Mr. Blackburn have made against me.

deficient. The SAC drops that claim. However, for some reason, the SAC continues to assert that Motown Records and UMG Recordings, along with Combs, Love Records, Inc. and Chalice Recording Studio, were responsible for security.

24.     Again, I do not understand how Plaintiff and Mr. Blackburn can make this allegation as they have no basis for it, and it has already been refuted in our original motion to dismiss. Both Ms. Braithewaite and Ms. Habtemariam specifically stated in their declarations that we were not responsible for any security at Chalice Recording Studio or any other Love Records, Inc. activity. Rather, either Mr. Combs or Love Records, Inc. were responsible for security. As I said above, I do not understand why Plaintiff and Mr. Blackburn persist in pleading claims and allegations that they know are false.[6]

### (iii)     I Have Never Been In Mr. Combs' Houses

25.     As I said in my original declaration in support of the motion to dismiss the FAC, contrary to the unsupported allegations that were in the FAC (¶¶ 162-167), I have never been in Mr. Combs' house in Los Angeles, Miami or anywhere else and I did not sponsor, or attend any "listening parties" at Mr. Combs' homes. I did not know – and do not know – whether there were ever any allegedly underage girls and sex workers supposedly being sexually exploited and plied with alcohol and drugs at any listening parties at Mr. Combs' house (and what Plaintiff calls "freak offs"). The false story in the FAC about my supposedly having spent hours in Mr. Combs' bedroom has not only been abandoned, but it appears that Plaintiff now claims only that he was supposedly told this by Mr. Combs. The notion that Mr. Combs would supposedly tell Plaintiff that I was not only at his homes, when I was never there, but that I also disappeared into

---

[6] I am advised that Mr. Combs' counsel has provided Plaintiff's counsel, Mr. Blackburn, with indisputable evidence showing that, contrary to what is alleged in the SAC, no alleged shooting took place at Chalice Recording Studios.

9

his bedroom with him for hours, is so completely ridiculous that, on its face, it is plainly one

more in a series of fabrications by either, or both, Plaintiff and his counsel.

26.     Further, the SAC's allegations regarding my supposed knowledge of any alleged

improper activity engaged in by Mr. Combs and his associates is also completely untrue. The

conclusions that are made throughout the SAC about Motown Records, UMG Recordings and/or

I funding Mr. Combs' alleged improper activities are not facts, are not true and make no sense.

Mr. Combs was and is, according to public press reports, worth a billion dollars. I do not know

how anyone could possibly determine the source of any dollar that was allegedly misused by Mr.

Combs for any supposed improper purpose.

27.     Motown Records had a briefly operative license agreement with Love Records,

Inc., and it had payment obligations under that license agreement. Motown Records had no right,

no ability and no duty to control how Love Records, Inc. spent any of the monies paid to it by

Motown Records.

### (iv)     The Sex Trafficking Allegations Are Completely Conclusory, Chronologically Baseless and Completely False

28.     The SAC, like the FAC also accuses me personally, along with Motown Records

and UMG Recordings, of the most scurrilously false allegations, claiming that we participated in,

aided and abetted and obstructed discovery of Mr. Combs' alleged sex trafficking (Seventh,

Fifteenth and Sixteenth "Causes of Action").[7]   Just as there was not a single fact, as opposed to

conclusions, supporting any such claim pleaded anywhere in the FAC, so too there is not a single

fact pleaded in the SAC. The claims are based on purely conclusory assertions about alleged

---

[7] I am advised that at the Court telephonic hearing on April 9, 2024, Mr. Blackburn advised that he was dropping this aiding and abetting claim. It is still alleged in the SAC but I believe it has been withdrawn (because it has no legal basis).

10

knowledge that we did not have, a general business partnership relationship that did not exist and a duty to effectively manage the financial affairs of Love Records, Inc. and Mr. Combs that also does not exist.

29.     As I have said, I have no personal knowledge of any of the alleged activities that supposedly took place at any of Mr. Combs' homes or on his boat (which I was also not on) or at Chalice Recording Studio. And I most assuredly did not participate in or aid and abet or obstruct anything relating to such alleged activity about which I knew nothing, never participated in, and never observed.

30.     While our original motion to dismiss already pointed out that the FAC's reference to a complaint filed by a Cassie Ventura was chronologically impossible (because, as documented in Mr. Zakarin's declaration, Ms. Ventura's complaint was not filed until November 16, 2023, long after Motown Records terminated its license agreement with Love Records), the SAC continues to make this same chronologically impossible allegation.[8] As I have said above, Plaintiff and Mr. Blackburn simply refuse to allow facts to deter them from making baseless claims.

31.     As Mr. Zakarin's declaration also notes, both the FAC and the SAC also point to some person by the name of Jonathan Oddi, who apparently also made some allegations against Mr. Combs on or about December 17, 2023. Again, since Motown Records terminated its agreement with Love Records Inc. long before Mr. Oddi's allegations, it remains chronologically impossible for his allegations to have provided any notice of anything to us.

_____

[8] The SAC refers to a fight that took place between Steven Stoute and Mr. Combs some 25 years ago. I fail to see how a 25 year-old event possibly bears on the SAC's alleged RICO and "sex trafficking" claims that supposedly arose in 2022 and 2023.

11

32.     The FAC falsely alleged that UMG Recordings, Motown Records and/or I provided Love Records, Inc. and/or Mr. Combs with cash. The SAC has not entirely dropped this accusation, but the primary allegation now is that monies Motown Records was obligated to pay under the license agreement were supposedly misused by Love Record, Inc. and/or Mr. Combs and that we were obligated to control how the funds were spent. Yet inconsistently, the SAC admits that Motown Records was obligated to pay or reimburse Love Records, Inc. for recording costs incurred by Love Records, Inc. (SAC ¶ 164).

## C. **The Amended Complaint Should Be Dismissed With Prejudice**

33.     Accordingly, for all of the reasons stated above and in the accompanying Declarations of Donald S. Zakarin, Martha Braithwaite and Ethiopia Habtemariam, and as set forth in detail in the accompanying Memorandum of Law, not only does the SAC fail to state any claim against me, UMG Recordings and Motown Records, but the claims are based on completely unsupported conclusions masquerading as "facts" - and the actual facts completely refute the fabrications of the SAC. Indeed, as noted above, in virtually all instances, the Plaintiff and his counsel already know that their allegations are baseless. Further, according to Plaintiff's own declaration, at most, the allegations are not even based on any personal knowledge of the Plaintiff but on hearsay statements supposedly made by Mr. Combs to Plaintiff, yet they have refused to eliminate them and dismiss the claims they have asserted against me, Motown Records and UMG Recordings.

34.     I have devoted my entire professional career to the music industry and have tried to lead an honorable personal and professional life. I believe I have succeeded in doing so. I have had the honor of being appointed Commander of the Order of The British Empire (CBE) in 2010. I was knighted in 2016 and inaugurated to the Order of the British Empire and Knight

12

Bachelor in 2016. I have received honors, recognizing my devotion to philanthropic causes, that I value highly, including the Spirit of Life Award from the City of Hope.

35.     It has been said that a single lie can destroy a reputation of integrity and that while it takes years to build a reputation, it can be ruined in five minutes. The original complaint, the FAC and the SAC, despite their completely different theories for attempting to hold me, Motown Records and UMG Recordings liable activities of which we had no knowledge and as to which we had no involvement, are filled with lies and are beyond reckless in their accusations against me, none of which have any factual basis but are instead are knowingly and maliciously false and defamatory.[9]

36.     The SAC as against me, UMG Recordings and Motown Records should be dismissed with prejudice and we should be awarded sanctions against the Plaintiff and his counsel.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 18, 2024


Sir Lucian Grainge, CBE

---

[9] I expect that my attorneys will do everything in their power to remedy the maliciously false accusations leveled in the Amended Complaint.