UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RODNEY JONES,<br><br>    *Plaintiff*,<br><br>  -against-<br><br>SEAN COMBS, JUSTIN DIOR COMBS, CUBA GOODING JR., LUCIAN CHARLES GRAINGE, KRISTINA KHORRAM, LOVE RECORDS, MOTOWN RECORDS, UNIVERSAL MUSIC GROUP, COMBS GLOBAL ENTERPRISES, JOHN and JANE DOES 1-10 and ABC CORPORATIONS. 1-10,<br><br>    *Defendants*. | Case No.: 24-cv-01457<br><br>**REPLY MEMORANDUM<br>OF LAW** |

**PRYOR CASHMAN LLP**
Donald S. Zakarin
James A. Janowitz
William L. Charron
Nicholas G. Saady
Alina Jamil Mian
7 Times Square, New York, NY 10036
Tel.: (212) 421-4100
Fax: (212) 798-6307

*Attorneys for the UMG Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT .....................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    SANCTIONS UNDER § 1927 AND THE COURT'S
        INHERENT POWER ARE FULLY WARRANTED ..........................................................2

        A.  Rule 11 Does Not Preempt and Bar Other Sanctions .....................................................2

        B.  Plaintiff's Claims Were Entirely Without Colorable Basis ............................................4

        C.  Blackburn Exhibited Bad Faith........................................................................................5

CONCLUSION ...............................................................................................................................10

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                                                          **PAGE(s)**

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ................................................................................................................3

*Chatham Partners, Inc. v. Fid. and Deposit Co.*,
   No. 99 Civ. 12308, 2001 WL 1262960 (S.D.N.Y. Oct. 19, 2001) ............................................3

*Galonsky v. Williams*,
   No. 96 Civ. 6207, 1997 WL 759445 (S.D.N.Y. Dec. 10, 1997) ................................................4

*Pac. Electric Wire & Cable Co. Ltd.*,
   No. 03 CIV. 9623 (JFK), 2005 WL 2036033 (S.D.N.Y. Aug. 23, 2005) ................................10

*Reichmann v. Neumann*,
   553 F. Supp. 2d 307 (S.D.N.Y. 2008) ......................................................................................3

*Schlaifer Nance & Company, Inc. v. Estate of Andy Warhol*,
   194 F. 3d 323 (2d Cir. 1999) .................................................................................................4, 6

*Unite Here v. Cintas Corp.*,
   500 F. Supp. 2d 332 (S.D.N.Y. 2007) .....................................................................................10

*Zunzurovski v. Fisher et. al.*,
   No. 23-CV-10881 (DLC) (S.D.N.Y. Apr. 3, 2024) .................................................................10


**STATUTE & RULE**

CPLR 11 ................................................................................................................................. *passim*

28 USC § 1927 ....................................................................................................................... *passim*

**PRELIMINARY STATEMENT**

Plaintiff and Mr. Blackburn wish to portray themselves as victims, but they are anything but. They subjected Sir Lucian Grainge, UMG Recordings, Inc. and Motown Records (collectively "UMG") to three successive complaints, accusing UMG of criminal conduct based on irreconcilably different "facts" and theories that varied from complaint to complaint, none of which had the slightest basis. UMG provided Mr. Blackburn with documentary evidence and sworn statements, conclusively refuting the false conclusions Plaintiff and Mr. Blackburn substituted for facts in the complaints and afforded them multiple opportunities to dismiss their claims. They refused to do so. In his own words, Mr. Blackburn "[r]efus[ed] to back down," (ECF No. 58 at 7), disregarding the law, the facts and even the Judge's observation that his theories for liability were not plausible.

Like the complaints he filed, Mr. Blackburn's opposing declaration is a work of fiction, feigning offense that UMG has the temerity to seek sanctions (accusing UMG's counsel of unethical conduct and "double crossing" him), when all Mr. Blackburn supposedly did was file and then withdraw a pleading in response to UMG's demand. He actually states that "the mere filing and withdrawal of a single Complaint cannot form the basis for § 1927 or discretionary sanctions." (*Id.* at 2.) Even were that true, it is not what happened here.

Instead, Mr. Blackburn filed one pleading and then another and then yet another. He ignored UMG's March 4 letter putting him on notice of his exposure to Rule 11 and 28 USC § 1927 sanctions. He ignored UMG's motion to dismiss the First Amended Complaint ("FAC") and their first Rule 11 motion. He ignored the Court's expressed doubt that his theories for holding UMG liable for the alleged actions of Combs were plausible. He boasted of declarations and

1

witness statements supporting his supposed claims, none of which has seen the light of day (and in his declaration Mr. Blackburn refuses to even to identify any such witnesses).

Only after forcing UMG to file two motions to dismiss and to serve two Rule 11 motions, when the deadline to respond to UMG's motion to dismiss was looming, did Jones and Mr. Blackburn fold their house of cards and admit, in a sworn declaration, that their claims against UMG had no legal basis. But that was true when the first complaint was filed on February 26. It was true when the FAC was filed on March 4 and it was true when the SAC was filed on April 12. UMG should never have had to spend some $500,000 to defend themselves against baseless claims. At the very least, fully informed by the information contained in UMG's motion to dismiss the FAC and its first Rule 11 motion, Mr. Blackburn should have folded his hand before filing the SAC, instead of causing UMG to incur more than an additional $200,000 in legal fees.

Mr. Blackburn seemingly believes that he can file completely false and outrageous pleadings and, so long as he withdraws such pleadings before Rule 11's 21 day safe harbor expires, he is immunized against sanctions or any consequences at all. He believes he can make offensively false and salacious accusations without consequence so long as he stays within that 21 day window. He is wrong. The law overwhelmingly supports that this Court may sanction him and Plaintiff under § 1927 and the Court's inherent powers for their bad faith and vexatious conduct. Mr. Blackburn and Jones richly deserve to be sanctioned.

## ARGUMENT

### I. SANCTIONS UNDER § 1927 AND THE COURT'S INHERENT POWER ARE FULLY WARRANTED

#### A. Rule 11 Does Not Preempt And Bar Other Sanctions

Rule 11, § 1927 and the Court's inherent power are different sanctioning mechanisms that serve different purposes. Rule 11 affords a party and his lawyer a 21-day safe harbor period to

withdraw frivolous and ill-researched submissions to the Court, while Section 1927 permits the sanctioning of counsel who vexatiously multiply proceedings, including those that occur where the lawyer withdraws an offensive pleading or other paper within the Rule 11 safe harbor period. The Court's inherent authority allows the Court broad discretion to issue sanctions as it sees fit for bad faith behavior of counsel and parties. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Reichmann v. Neumann*, 553 F. Supp. 2d 307, 319 (S.D.N.Y. 2008).

Here, despite having full information showing that there was no basis for claims against UMG, even before the SAC was filed, Mr. Blackburn chose to file it and then refused to withdraw it until long after he had vexatiously multiplied the proceedings in bad faith and for improper purposes, causing UMG to incur hundreds of thousands of dollars in legal costs. And in finally withdrawing the SAC, Mr. Blackburn swore the claims had no legal basis. That one time, he was correct and truthful.

Ignoring the facts of the cases he cites, Mr. Blackburn contends that "it would be improper for a court to impose sanctions pursuant to § 1927 and the court's inherent authority [so that] a party could evade Rule 11's safe harbor provision …." (ECF No. 58 at 5). But it is not the law that merely withdrawing a pleading within the Rule 11 "safe harbor" period bars sanctions under § 1927 or the Court's inherent authority for vexatiously multiplying proceedings. And it makes no sense that it would be the law as it would immunize a practitioner like Mr. Blackburn who engages in relentless and persistent serial abuse prior to such withdrawal.

In fact, the cases he cites actually support an award of sanctions here. For example, in *Chatham Partners, Inc. v. Fid. and Deposit Co.*, No. 99 Civ. 12308, 2001 WL 1262960, at *2 (S.D.N.Y. Oct. 19, 2001), Judge Martin declined to grant sanctions under Rule 11 for a frivolous complaint because a proper Rule 11 notice had not been served, but he <u>granted</u> sanctions under §

3

1927 because the plaintiff's lawyer vexatiously multiplied proceedings by filing a frivolous preliminary injunction motion within the Rule 11 safe harbor period. Judge Martin relied upon his prior opinion in *Galonsky v. Williams*, No. 96 Civ. 6207, 1997 WL 759445, at *7 (S.D.N.Y. Dec. 10, 1997), in which he had similarly declined to award Rule 11 sanctions against the plaintiff's lawyer for signing frivolous pleadings because the defendants had not "technical[ly]" complied with the Rule 11 safe harbor provision, but nonetheless awarded sanctions under § 1927, finding:

> Under § 1927, however, the Court may properly order such compensation. Thus, while the Court censures Mr. Kraft's conduct under Rule 11, it will only award sanctions under § 1927 …. In fixing the amount of sanctions, the Court must measure only the expenses, incurred to oppose those claims that were unreasonably multiplicative and vexatious.

The issue here is whether Mr. Blackburn engaged in conduct prior to his withdrawal of the SAC that was "unreasonably multiplicative and vexatious." As UMG's motion documents, it is patent that he did.

The Second Circuit has prescribed that sanctions under § 1927 and the Court's inherent authority should be awarded upon findings: (a) that a claim was made without a "colorable basis"; and (b) that the claim was pursued in "bad faith." *Schlaifer Nance & Company, Inc. v. Estate of Andy Warhol*, 194 F. 3d 323, 336 (2d Cir. 1999). Both conditions are satisfied here.

**B.     Plaintiff's Claims Were Entirely Without Colorable Basis**

"'[A] claim is entirely without color when it lacks *any* legal or factual basis.'" *Id.* at 337 (citation omitted).

In three complaints, Jones and Mr. Blackburn painted a picture of criminal depravity committed by UMG without any factual or legal basis. Based solely on a license agreement to fund and distribute a single recording, Jones and Mr. Blackburn claimed that UMG somehow obligated itself to monitor and control Combs' personal and professional conduct and that its

4

alleged failure to do so was criminal.  Mr. Blackburn's theory never had any basis in the law nor any factual basis (and the complete change in the foundation for these claims from the FAC to the SAC – from the baseless "parent company" allegation to the equally baseless "general business partnership" allegation - confirms just how baseless the claims were).

Over the course of three months, through extensive correspondence between counsel, a Court conference and four (now five) motions, Mr. Blackburn has yet to provide a single legal authority supporting his claims.  The Court specifically called attention to this omission during the April 9, 2024 conference, saying:

> I'm not hearing anything that would plausibly give rise to a theory that would make UMG liable because they gave him money and because they had a deal with respect to budgets and overseeing certain aspects of their distribution arrangement, that they had a duty to babysit him and prevent him from doing all these bad things and that somehow gives rise to liability on the part of the company, I just don't know of any authority for that.  But, you know, maybe on the motion, you'll respond to that?

(Transcript of April 9, 2024 Court Conference at 16-16 to 16-24).

The motion referenced by the Court was UMG's contemplated (and scheduled) motion to dismiss the SAC.  And, of course, when UMG made that motion, Mr. Blackburn could not respond, which is why he belatedly dismissed all of the claims against UMG.  In fact, in his opposition to this motion, beyond the same offensively false conclusory assertions ("I have the evidence," "the claims were in good faith"), Mr. Blackburn provides nothing that responds to the Court's direct question.  Because he cannot.

### C.     Blackburn Exhibited Bad Faith

"Bad faith can be inferred when the actions taken are 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'"

5

*Schlaifer*, 194 F.3d at 338 (citation omitted). "'[T]he court's factual findings of bad faith must be characterized by a high degree of specificity.'" *Id.* (citation omitted).

Mr. Blackburn's bad faith is illustrated through his own words:

- <u>February 26, 2024</u>:  The original Complaint outrageously published Sir Lucian Grainge's home addresses and his photo, accusing him of participating in "sex trafficking parties" at Combs' homes (when in fact, he was never there), requiring him to increase security for his family.  (ECF No. 1 at ¶¶ 8, 140-154, 168.)

- <u>March 4, 2024</u>:  Mr. Blackburn filed the FAC, targeting Grainge in particular, and adding more baseless allegations.  (ECF No. 2 at ¶¶ 8, 162-167.)  UMG sent Mr. Blackburn a letter that same day putting him on notice that his accusations were legally and factually baseless, noting that Grainge was never at Combs' homes and advising that UMG would seek sanctions under both Rule 11 and § 1927 if the FAC was not immediately withdrawn.  In response, Mr. Blackburn insisted that **"My client saw your clients at Mr. Combs' [sic] home and witnessed individuals bringing bags of cash to Mr. Combs' [sic] home."**  (Reply Declaration of Donald S. Zakarin dated June 7, 2024 (ECF No. 61) ("Reply Decl."), Ex. G (emphasis supplied).)  This bold assertion later disappeared (becoming only that this is what Combs supposedly told Jones).

- <u>March 23, 2024</u>:  After unsuccessfully trying to get Habtemariam to swear to a false declaration (rejected by her counsel), Mr. Blackburn dismissed the claims against her in return for a declaration that actually refuted his claims.  He then misrepresented her declaration, falsely alleging in paragraph 218 of the SAC that she said Motown entered into a partnership with Combs, when in fact she said no such thing.  (ECF No. 38 at ¶ 218.)  Indeed, on March 26, 2024, Habtemariam's counsel sent Mr. Blackburn a letter specifically refuting his partnership allegation.  (Reply Decl., Ex. G.)   Yet Mr. Blackburn both misrepresented the Habtemariam declaration and

ignored the letter from her counsel in swapping out the FAC's "parent company" allegation for the SAC's "general business partnership" allegation. Both of these foundational allegations were knowingly false.

- <u>March 27, 2024</u>: UMG moved to dismiss the FAC and served a Rule 11 motion on Mr. Blackburn (the motion included the license agreement which specifically refuted the partnership allegation). That same day, Mr. Blackburn tried to unilaterally file the SAC, which the clerk bounced (ECF No. 27.) The SAC dropped the false allegations that Plaintiff "saw" Grainge at Combs's homes and also dropped the "parent company" foundation for the claims, substituting the equally and knowingly false "general business partnership" allegation. (ECF No. 38 at ¶¶ 8, 12, 173; ECF No. 54-1 (Zakarin Rule 11 Decl.) at ¶¶ 9-15, 26-28.)

- <u>March 28, 2024</u>: Mr. Blackburn wrote to the Court trying to further prolong the baseless claims against UMG, ignoring the license agremeent and insisting, falsely, that "Ms. Habtemariam's declaration provided Plaintiff with the confirmation he needed concerning the business partnership and funding of the Love Album …." (ECF No. 30 at 2.) Again, Ms. Habtemariam said the exact opposite. Despite having possession of UMG's motion to dismiss, Mr. Blackburn stated that he saw **"no reason to withdraw the complaint against Defendants UMG, Motown, or Lucian Grainge,"** (*id.* at 1 (emphasis supplied)), and he defiantly labeled UMG's criticisms of his bad faith conduct as a "breathtaking … pearl clutch". (*Id.* at 3.)

As noted in the Zakarin Reply declaration, Mr. Blackburn seems to confuse rhetoric better suited for social media or tabloids, with evidence. As also noted therein, Mr. Blackburn also misrepresented the FAC, asserting that Jones never claimed to have actually seen Grainge at Combs's homes, but rather that Combs told Plaintiff that Grainge was there (*id.*) – when the FAC, as well as Mr. Blackburn's March 4 email, unequivocally insisted that Jones "saw" Grainge at

Combs's homes (the fact that the FAC had Grainge's photograph, from which Jones could have determined that he never saw Grainge, seems not to have dawned on Mr. Blackburn).

- April 9, 2024: Again using rhetoric rather than evidence – indeed, ignoring evidence – Mr. Blackburn pressed to file the knowingly baseless SAC, writing to the Court and labeling the license agreement (which specifically states there was no partnership between Motown and Love Records) a **"sham agreement."** (ECF No. 34 at 2, 4, 5 (emphasis supplied).) As noted above, during the conference, the Court made clear that Mr. Blackburn's linchpin theory of holding UMG responsible for Combs' conduct did not appear "plausible." Mr. Blackburn ignored everything and filed the SAC on April 12, vexatiously and in bad faith prolonging this action as against UMG without the slightest legal or factual basis for the claims.

- April 22, 2024: Mr. Blackburn, having already misrepresented Ms. Habtemariams's declaration in the SAC, sent an email to UMG's counsel initiating an attempt to obtain a declaration (and wide ranging documents) from UMG in exchange for dismissal. The declaration he sought was tantamount to an admission that his baseless accusations against UMG were true (which they were not). Reflecting his misguided belief that he could entice UMG to admit to false facts, he upped the ante the next day offering to strike all mention of UMG from the complaint (and in a classic "closing the barn door after the horse has left," proposing to seal the prior offensively false versions of the complaint). (ECF No. 58-3 at pp. 8-11.)

- April 24, 2024: UMG moved to dismiss the SAC. (ECF Nos. 40-42.) In addition, UMG rejected Mr. Blackburn's "settlement" proposal, making clear that he might yet "moderate, to some extent" the adverse consequences confronting him if he immediately dismissed the SAC (giving lie to Mr. Blackburn's assertion that UMG agreed to waive sanctions in return for dismissal, which never happened). (ECF No. 58-3 at pp. 5-7.) Blackburn defiantly replied that day: **"If you**

8

**want to file your sanctions motion, you are free to do so.  I did my due diligence, and I have my declarations and witness statements to defend my actions."**  (ECF No. 58-3 at p. 5 (emphasis supplied).)  Again, these are the supposed "declarations and witness statements" that have yet to see the light of day.  UMG duly served its second Rule 11 motion on April 26.

- May 8, 2024:  Mr. Blackburn wrote and stated that Plaintiff "has decided to withdraw all claims against Lucian Grainge.  We will proceed with our causes of action against Motown and UMG."  (ECF No. 58-3 at pp. 3-4.)  UMG responded on May 9 and demanded that all claims against UMG and Motown be dismissed.

- May 10, 2024:  With the due date for his opposition to UMG's motion approaching, Mr. Blackburn belatedly hoisted the white flag, stating that "we will consent to dismiss all claims against your clients with prejudice.  But we will reserve all rights."  (ECF No. 58-3 at p. 2.)  As detailed in the Zakarin Reply declaration, even then, Mr. Blackburn tried to convert capitulation into an agreement, which UMG rejected, requiring him to make a motion in which he admitted there was no basis for the claims against UMG.  Left with no alternative other than to oppose a motion he could not oppose, Mr. Blackburn agreed.

This history, documented in Exhibit A to the Zakarin Reply declaration and recounted in the declaration, unequivocally demonstrates Mr. Blackburn's bad faith in vexatiously prolonging and multiplying this proceeding against UMG for the improper purposes of (a) trying to extract some undeserved monetary payment; (b) pressuring UMG to manufacture false evidence for him in the form of a declaration that he could misuse in the action; and, (c) for (as Judge Cote has noted) Mr. Blackburn's own self-promotion.

The reason Mr. Blackburn tries to pretend that he filed a single pleading and promptly dismissed it is because the cases he relies on involved plaintiffs filing a single complaint and then

promptly withdrawing them following Rule 11 warnings. *See Pac. Electric Wire & Cable Co. Ltd.*, No. 03 CIV. 9623 (JFK), 2005 WL 2036033, at *6 (S.D.N.Y. Aug. 23, 2005) (declining to award sanctions because the plaintiff filed a single complaint, which he immediately withdrew "as soon as [Defendant] threatened to bring a Rule 11 Motion"). These cases are inapposite to the facts here.

Mr. Blackburn's reliance on *Unite Here v. Cintas Corp.*, 500 F. Supp. 2d 332 (S.D.N.Y. 2007), is similarly misplaced. Ironically Judge Cote, who recently referred Blackburn to this Court's Grievance Committee in *Zunzurovski v. Fisher et. al.,* No. 23-CV-10881 (DLC) (S.D.N.Y. Apr. 3, 2024), decided *Unite.* Judge Cote declined to award § 1927 sanctions in *Unite* because the plaintiff in that case "voluntarily discontinued the action less than a week after the October opinion was issued and less than one month after it filed the action," and thus "it cannot be concluded that the Plaintiff necessarily multiplied the proceedings or delayed the litigation." 500 F. Supp. 2d at 335-336. Again, that is not what Mr. Blackburn has done here.

## CONCLUSION

For all of the foregoing reasons and those set forth in UMG's moving papers and the Zakarin Reply declaration, UMG respectfully requests that the Court: (i) award sanctions against Mr. Blackburn in an amount to be determined by inquest pursuant to 28 U.S.C. § 1927; (ii) award sanctions against Mr. Blackburn and Plaintiff pursuant to the Court's inherent power; (iii) refer Mr. Blackburn to the Southern District Grievance Committee; and (iv) award the UMG Defendants such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 7, 2024

**PRYOR CASHMAN LLP**

By: _____
    Donald S. Zakarin
    James A. Janowitz
    William L. Charron
    Nicholas G. Saady
    Alina Jamil Mian

7 Times Square
New York, New York  10036
(212) 421-4100
dzakarin@pryorcashman.com

*Attorneys for the UMG Defendants*

11