# EXHIBIT A

# Timeline Of This Action Showing Mr. Blackburn's and Plaintiff's Shifting Theories for The Claims against UMG and Their Refusal To Dismiss Those Claims Until The Eve of The Due Date For Their Opposition To UMG's Motion To Dismiss The SAC

1. February 26, 2024: Original Complaint Filed (which gets bounced) (ECF 1);

2. March 4, 2024: Mr. Blackburn files First Amended Complaint ("FAC") (accepted by SDNY) (ECF 2);

   - The FAC differs from the Original Complaint, but the changes are not identified. The FAC not only includes photographs of Sir Lucian Grainge and Ethiopia Habtemariam, but also discloses their home addresses unnecessarily, exposing them to security risks.

3. March 4, 2024: Zakarin letter to Mr. Blackburn demanding dismissal of claims against the UMG Defendants (Sir Lucian Grainge, UMG Recordings, Inc. Ethiopia Habtemariam and Motown Records);

   - The letter specifically refers to Rule 11, why the FAC is not compliant with Rule 11 and makes clear that absent the claims being dropped, the UMG Defendants would seek Rule 11 sanctions;

   - The letter states: "[Y]ou can avoid a Rule 11 motion only by withdrawing the Complaint or immediately amending it to remove <u>all allegations and claims against Our Clients.</u>"

   - The letter details the falsity of the claims and allegations made against the UMG Defendants (see pp. 2 to 5);

   - "Depending on how swiftly you withdraw or amend this Complaint to delete all reference to Our Clients, we will evaluate when and where they will proceed against you and your client as well as evaluating proceeding under 28 U.S.C. Section 1927 against you."

**WITH REFERENCE TO THE JONES/BLACKBURN OPPOSITION TO THE PRESENT SANCTIONS MOTION, THE ZAKARIN MARCH 4 LETTER SPECIFICALLY REFERENCED, SEPARATELY, BOTH RULE 11 AND 28 USC § 1927 AND MADE CLEAR THAT OUR DETERMINATION ON SEEKING SANCTIONS UNDER 28 USC § 1927 WOULD DEPEND ON WHO SWIFTLY THE CLAIMS WERE WITHDRAWN (AND THEY WERE NOT WITHDRAWN SWIFTLY).  THUS, JONES AND MR. BLACKBURN WERE ON NOTICE OF THE POTENTIAL FOR SANCTIONS UNDER 28 USC § 1927 SOME THREE MONTHS AGO.**

4. March 4, 2024: Mr. Blackburn sends an email rejecting the Zakarin letter and, contrary to later admissions by both Jones and Mr. Blackburn, states: **"[M]y client saw your clients at Mr. Combs' homes and witnessed individuals bringing bags of cash to Mr. Combs' home."**

5. March 4, 2024: Zakarin sends email to Mr. Blackburn advising that his allegations are false and in fact, his client could not have seen Grainge at Combs' homes because he was never there.

6. March 21, 2024: Blackburn emails Zakarin, falsely states this is his third communication and states he is going to make a "subsequent" filing and claims that "I know that Mr. Grainge gave strict instructions to UMG's GC and executive team to 'fix" this issue with Mr. Jones." No such instruction exists and the subsequent filing, presumably, is the Second Amended Complaint.

7. March 21, 2024: Zakarin responds to Blackburn email reiterating that the claims were baseless.

8. March 11-23, 2024: Mr. Blackburn deals separately with Habtemariam's personal counsel, proposing to drop Habtemariam from the case in exchange for a declaration. Mr. Blackburn's draft declaration was rejected by Habtemariam's personal counsel as being false and inaccurate. Mr. Blackburn sought to get Habtemariam to state that there was a partnership between Motown Records and Love Records, which there was not. Habtemariam's ultimate declaration stated, truthfully, only that Motown Records entered into a license agreement with Love Records to distribute a single album. She denied any cash payments in her declaration and stated that Motown did not run, pay for or sponsor any listening parties. Mr. Blackburn, in return for this declaration, dismissed Habtemariam. (ECF 6 and 7);

9. March 26, 2024: Judge Oetken orders dismissal of Habtemariam and Chalice Recording Studios (ECF 18 and 19);

10. March 26 2024: Habtemariam's personal counsel, Ashlee Lin, sends Mr. Blackburn a letter advising that his proposed SAC is false in claiming that there was a partnership between Motown and Love Records, that paragraph 218 of the SAC is false as it is directly contrary to what Habtemariam's declaration states and objects to Mr. Blackburn's false statements to the media that Habtemariam was going to testify against Combs.

11. March 27, 2024: The UMG Defendants file their first motion to dismiss the FAC (ECF 24 to 26);

12. March 27, 2024: The UMG Defendants serve their first Rule 11 motion against Mr. Blackburn and Jones;

13. March 27, 2024: Mr. Blackburn files a purported Second Amended Complaint ("SAC"), without any identification of changes from the FAC and without consent of any defendant or permission from the Court (the clerk bounces it) (ECF 27);

**CRITICALLY, THE PROPOSED SAC COMPLETELY CHANGES THE FOUNDATIONAL ALLEGATIONS OF THE FAC THAT MOTOWN WAS THE PARENT COMPANY OF LOVE RECORDS, CONVERTING IT INTO AN ALLEGED PARTNERSHIP, WHICH HABTEMARIAM AND HER PERSONAL COUNSEL HAD ALREADY TOLD MR. BLACKBURN WAS COMPLETELY UNTRUE. THE PROPOSED SAC DROPS THE ALLEGATIONS OF HABTERMARIAM AND GRAINGE ATTENDING "SEX" PARTIES AT COMBS' HOMES AS WELL AS THE CASH ALLEGATIONS AND DROPS THE CALIFORNIA PREMISES LIABILITY CLAIM (AS HABTEMARIAM'S DECLARATION REFUTED IT) BUT OTHERWISE, CONTINUED TO CLAIM THAT THE UMG DEFENDANTS HAD ENGAGED IN CRIMINAL RACKETEERING AND SEX TRAFFICKING.**

14. March 27, 2024: Mr. Blackburn sends a letter to Court (ECF 28, which the clerk bounced);

- Ignoring Ms. Habtemariam's declaration and the letter from her counsel refuting any "partnership" allegation, ignoring that he had possession of the license agreement (attached to the declaration of Ms. Braithwaite in the UMG Defendants' motions to dismiss and for Rule 11 sanctions), without explaining the jettisoning of the "parent company" foundational allegation of the FAC, Mr. Blackburn doubles down on his "partnership" assertion, stating "Defendants are solely responsible for their public statements regarding their partnership with Mr. Combs";

- Without basis, Mr. Blackburn states that "[T]he March 27, 2024, motion to dismiss the first amended complaint, which the Second Amended Complaint has replaced, was filed in bad faith and was nothing more than a Public Relations stunt by the Defendants"

- Ignoring that he had failed to dismiss all of the claims against the UMG Defendants, Mr. Blackburn nevertheless both tries to justify his improper attempt to file the SAC without permission or leave of Court and pretends to be compliant with Rule 11:

**"Plaintiff did not formally file a motion to amend the pleading because he had a duty under the Safe Harbor rule to amend any issues raised by the Defendants, which Plaintiff did on March 25, 2024" and "The Plaintiff respectfully requests that the Court deny the Defendant's bad faith motion to dismiss a complaint that has been amended pursuant to the 21-day safe harbor rule"**

**In fact, the FAC had not been amended and in fact, Mr. Blackburn had not cured the issues raised in the Zakarin March 4 letter, the UMG Defendants' motion to dismiss the FAC or the first Rule 11 motion.**

15. March 28, 2024: Zakarin files a responsive letter to Court (ECF 29);

- "We expressly stated in our March 4 letter: "You can avoid a Rule 11 motion only by withdrawing the Complaint or immediately amending it to remove all allegations and claims against Our Clients." (Id. (emphasis supplied).) That has not been done."
- Again details the falsity of the claims and allegations made by Blackburn;

16. March 28, 2024:  Mr. Blackburn files a Letter Motion seeking leave to file SAC (ECF 30);

- Again, he acknowledges his opportunity to amend after our Rule 11 motion, stating: "Plaintiff amended the "allegedly deficient" pleading on March 25, 2024, on the 21st day of the 21-day Safe Harbor window" (assuming, wrongly, that th Zakarin March 4 letter was a Rule 11 notice) and "Plaintiff respectfully requests leave to amend, as the amendment is being made pursuant to the 21 safe harbor rule of what Plaintiff viewed as a demand to amend or withdraw";
- Mr. Blackburn also doubles down and refuses to dismiss the claims: "As Plaintiff sees no reason to withdraw the complaint against Defendants UMG, Motown, or Lucian Grainge, Plaintiff has opted to amend the pleading. It is clear from the Second Amended Pleading that Defendants either negligently or intentionally funded the activities of Defendant Sean Combs." Mr. Blackburn seemingly was not aware that the claims in the SAC against the UMG Defendants could not be based on "negligence."
- Blackburn goes into great detail regarding the supposed "facts" supporting the claims in the SAC (see pp. 2 to 4), all of which are entirely conclusory, not factual. He even includes the heading "Plaintiff Stands By The Claims Raised In The First Amended Complaint"
- Nowhere does Mr. Blackburn offer any explanation for the switch from "parent company" to "general business partnership" nor does he mention that Habtemariam and her personal counsel expressly rejected this assertion.

17. April 1, 2024: Zakarin files opposition to Letter Motion (ECF 31);

- "In accordance with Rule 11, Mr. Blackburn represented to this Court that the allegations of the FAC had a proper legal and factual basis" and yet he has now abandoned every foundational allegation of the FAC;
- The letter notes the misrepresentation of what was alleged in the FAC regarding the supposed presence of Grainge and Habtemariam at the "sex parties" at Combs' homes (the FAC alleged Jones personally observed them there, not that he was only told by Combs they were there, as Mr. Blackburn's letter contends);
- "Mr. Blackburn has demonstrated his contempt for the requirements of Rule 11. He has demonstrated his willingness to "say anything," regardless of whether he has the slightest factual basis for his allegations, and when caught, simply invent new and totally contrary allegations. He is indifferent to the harm caused to the

    UMG Defendants. The completely different theories of the SAC as compared to the FAC, the completely contrary "facts" underpinning the very same claims, shows how baseless both the FAC and SAC are."

The letter details all of the flaws of both the FAC and the SAC and why amendment would be futile.

18. April 4, 2024: Zakarin files letter informing Court of Judge Cote's ordering of sanctions against Mr. Blackburn as relevant to the pending motion (ECF 33);

19. April 9, 2024: Blackburn files a reply letter to Court again doubling down on claims (ECF 34)
    - The letter repeats conclusions and provides no facts to justify any of the claims against the UMG Defendants in the SAC and does not respond to the legal flaws identified in the Zakarin opposition letter:
        - "Plaintiff Proposed Second Amended Complaint Is Not Plead In Bad Faith"
        - "Plaintiffs' Claims Are Not Conclusory Or False"
        - "The Defendants Are Partners In The Combs RICO Enterprise"
        - "Defendants Recklessly Disregarded The Existence Of Sex Trafficking"
    - "In the end, UMG, Motown, and Lucian Grainge, in his capacity as CEO of UMG, are equally as liable for Sean Combs' sex trafficking and RICO enterprises as Mr. Combs is."

20. April 9, 2024: Court conference to discuss motion to file SAC and Court orders same;
    - As noted in the Zakarin Reply Declaration, Mr. Blackburn made direct misrepresentations to the Court regarding service of process. Mr. Blackburn refused to answer the Court's question about where the now abandoned "parent company" allegation had come from and Mr. Blackburn ignored the Court's observation that Mr. Blackburn's theory for liability against the UMG Defendants had no legal basis.

21. April 10-11, 2024: Email exchange between Zakarin and Mr. Blackburn in which Mr. Blackburn demands documents regarding the license agreement, Zakarin questions Blackburn's good faith basis for questioning the license agreement and rejects his demands.
    - Mr. Blackburn states in response to my question "do you have any "good faith" basis for questioning the authenticity of the agreement (which has been authenticated by the person who negotiated it and signed it in her declaration) "Answer: YES but provides nothing.
    - Zakarin responds on April 11 noting that Blackburn continues to make statements without any support and urges him to dismiss the claims immediately (even before filing the SAC).

22. April 12, 2024: SAC filed (ECF 38);

- Mr. Blackburn/Jones drops one TVPA claim and the premises liability claim, changes the foundational theory of "parent company" for "general business partnership" eliminates allegations of presence of Grainge at Combs' homes but persists with the accusations of criminal racketeering and sex trafficking.

23. April 22, 2024: Blackburn conveys a purported "settlement offer" via email which consists of demanding a declaration from the UMG Defendants making admissions, which would not be truthful, about the supposed misuse of the money paid by Motown under the license agreement and demanding the production of documents to which Mr. Blackburn had no entitlement

24. April 23, 2024: Mr. Blackburn conveys slight revisions to settlement offer via email;

25. April 24, 2024: The UMG Defendants file their motion to dismiss the SAC.

26. April 24, 2024: Mr. Blackburn acknowledges filing of the motion to dismiss and reiterates his supposed "settlement offer";

- "Please advise if your client is open to the offer that was made in my previous emails which you have chosen to ignore. If yes, then Plaintiff will voluntarily dismiss the claims against your client with prejudice.   We will then move to have the complaints sealed on consent."

27. April 24, 2024: Zakarin responds to Mr. Blackburn's "settlement" proposal rejecting it outright and making clear that Mr. Blackburn cannot file three separate pleadings filled with offensively false criminal allegations and then skate away free by proposing terms for dismissal of the claims.  And the letter notes that if the SAC as against the UMG defendants were immediately dismissed, Mr. Blackburn and his client might yet be able to "moderate, however slightly, the adverse consequences" they will suffer.  They did not immediately dismiss the SAC against the UMG Defendants.

28. April 24, 2024: Mr. Blackburn responds to Zakarin's email, doubling down on the supposed information he has to support his claims:

- "Prior to filing this lawsuit, I spoke with several individuals who were present at the recording studios at Chalice and Mr. Combs' homes, as well as the parties that Mr. Combs hosted for the Love Album. They all stated to me that they witnessed the things my client claimed in his pleadings. We will secure those declarations."

- "You reached out and denied those claims.  For example, you said that your client never provided bags of cash to Mr. Combs.  My client says he saw people bringing bags of cash into Mr. Combs' house and provided those details to law enforcement about where those bags of cash were located in his home.  He said he was informed by Mr. Combs that the money came from your clients.  You denied it, so it was removed from the pleading.  The same goes for the remaining claims, and I am not going to rehash them all here."

- "If your client's position is that they adhered to the terms of the agreement with Mr. Combs and Love Records, then it should not be a problem for them to attest to this. If you do not want to turn over any documents, that's fine. Your client has a duty to preserve them, and we will get the requested documents via a subpoena."

- "Attesting to the fact that your client was not aware of Mr. Combs' actions, which will be spelled out in clear and certain terms by the SDNY, and that they adhered to the terms of the agreement should be an easy lift unless your client cannot honestly attest to it."

- "If you want to file your sanctions motion, you are free to do so. I did my due diligence, and I have my declarations and witness statements to defend my actions."

**NOTABLY, WHILE MR. BLACKBURN CLAIMS TO HAVE DECLARATIONS AND WITNESS STATEMENTS, HE HAS REFUSED TO IDENTIFY A SINGLE SUCH WITNESS OR PROVIDE A SINGLE SUCH DECLARATION OR STATEMENT.**

29. April 26, 2024: UMG Defendants serve their second Rule 11 motion directed to the SAC.

30. May 8, 2024: Mr. Blackburn emails Zakarin proposing to dismiss only the claims against Grainge but keeping claims against UMG and Motown;

    - "My client has decided to withdraw all claims against Lucian Grainge. We will proceed with our causes of action against Motown and UMG."

    - "A few weeks ago, around April 11, 2024, I asked you to provide the signature certification page from DocuSign for the agreement you alleged Sean Combs signed with Motown Records. You refused to provide the signature certification page. As a result, we have secured over 30 examples of Mr. Combs' signature and retained the services of two handwriting experts with a combined experience of 70+ years. These experts have concluded that Mr. Combs did not sign the document you presented to the Court."

    - "In addition to the expert reports I will receive and file with the Court this week, I have a sworn declaration from a former Bad Boy Records executive who attests to personally signing agreements and contracts at Mr. Combs' direction."

    - "Additionally, in light of my expert reports and what I am confident will be a signature certification from DocuSign that will confirm the same, **I will file a cross-motion for sanctions under the Courts inherent power against your clients and your firm for conducting this litigation in bad faith by intentionally filing a document which you knew or should have known was false.** I attempted to resolve this issue with you. You refused to speak with me on the phone or provide the DocuSign signature confirmation page. You chose instead to be rude and disrespectful. As a result, Plaintiff had to spend thousands of dollars on experts to establish what could have been easily discovered through conversation and a review of the DocuSign signature confirmation page."

31. May 9, 2024: Zakarin email to Mr. Blackburn again laying out the baselessness of the claims in all three complaints and the irrelevancy of the Combs' signature issue. Noting that of course the claims against Grainge should be dismissed with prejudice but so should all claims against Motown and UMG Recordings, Inc. and detailing again the flaws in SAC and that the UMG Defendants Rule 11 motion, filed

32. May 10, 2024: Mr. Blackburn emails Zakarin, again talking about the irrelevant issue of whether Combs' signature is on the license agreement but states that he and Jones consent to dismissing all claims against the UMG Defendants with prejudice.

33. May 10, 2024: Email exchanges between Mr. Blackburn and Zakarin regarding the mechanics of dismissal. Zakarin rejects a stipulation as well as a joint motion and states that a motion to dismiss is necessary and if appropriate, UMG Defendants will then consent to the granting of the motion. Mr. Blackburn agrees to provide a draft motion.

34. May 13, 2024: Email from Mr. Blackburn providing, instead of a draft motion, a stipulation for dismissal. Zakarin rejects it and offers to prepare a motion and declaration for dismissal for Mr. Blackburn. Mr. Blackburn agrees to this procedure and Zakarin prepares and sends to Mr. Blackburn a declaration and notice of motion for dismissal.

    Email exchanges that day between Zakarin and Mr. Blackburn in which Mr. Blackburn makes some changes to his declaration and Zakarin makes a further change. Mr. Blackburn then makes another change and files the motion and declaration for dismissal.

35. May 13: Mr. Blackburn improperly files the motion for dismissal, calling it a stipulation and it gets rejected by the court;

36. May 14, 2024: The motion is refiled correctly as a motion for dismissal and Zakarin files his declaration consenting to the motion and reserving all of his clients' rights.

37. May 14, 2024: Judge Oetken orders dismissal of all claims against the UMG Defendants with prejudice;

38. May 14, 2024: Mr. Blackburn emails Zakarin expressing gratitude for how Zakarin has dealt with the matter.

39. May 17, 2024: UMG moves for sanctions under 28 USC § 1927 and the inherent power of the Court.

40. May 17, 2024 at 2:51pm ET: Mr. Blackburn reacts to motion with anger and outrage in an email to Zakarin, accusing him of "playing a dirty trick" to get the dismissal

    - "Even though I have a basis to believe that your client knowingly presented a document to the court that Sean Combs did not sign, I still agreed to dismiss your client from the case. The absence of Sean Combs' signature and the public statements from your clients concerning the partnership fall within the scope of general business partners under New York and California law."

- "Not only did I discover that he did not sign the agreement, but I also discovered the fact that your client has a history and pattern of covering up sexual assaults committed by their artist by paying their victims through unmarked international bank accounts. I have seen these agreements, and I know the account numbers."

41. May 17, 2024: Zakarin response to Mr. Blackburn rejecting his accusations noting he has filed multiple pleadings and sent emails filled with completely false assertions and anticipating that his opposition to the motion for sanctions will be no different.

42. May 17, 2024 at 5:34pm ET: Blackburn sends another email to Pryor Cashman

    - "I could have defended the motion to dismiss by providing the reports from my handwriting experts. I felt bad for your client because, through my research for the handwriting experts, when I compiled over 50 examples of his signature from old contracts with UMG and other record labels, it is evident that he had a pattern and practice of defrauding people in the industry by intentionally having others sign agreements on his behalf so he could preserve the option of denial later."

    - "I shared this view with my client and convinced him to agree to the voluntary dismissal. As I stated to him, it is unconscionable to sue the UMG defendants in light of what we discovered because they were victims of fraud. I voluntarily dismissed the case to focus primarily on Sean Combs and the remaining defendants."

    - "Notably absent from your previous email is any denial of your clients paying off sexual assault victims with secret international accounts. I hope they are prepared to explain these transactions. I anticipate Mr. Grange will clutch his pearls, pretend that he knew nothing of the sort, and fire the head of legal and A&R to save his hide"

    - "Your clients are as bad, if not worse than Sean Combs, and I hope they are prepared to explain this. Unclean Hands!"

43. May 18, 2024: Zakarin responds to Mr. Blackburn's email noting that having reviewed all of their communications, contrary to Mr. Blackburn's assertions, at no time did Zakarin or UMG ever offer, promise, or even suggest that if the claims against UMG were dismissed, they would forego seeking sanctions.