# **<u>EXHIBIT G</u>**

# EXHIBIT 5



**EISNER**, LLP

March 26, 2024

**VIA EMAIL ONLY**

Tyrone Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
E-Mail: tblackburn@tablackburnlaw.com

### RE:   RODNEY JONES V. SEAN COMBS, ET AL. – SDNY NO. 24 CIV. 1457
### CEASE AND DESIST ISSUED BY ETHIOPIA HABTEMARIAM

Dear Mr. Blackburn:

As you are aware, this Firm is legal counsel to Ethiopia Habtemariam ("Ethiopia"). Reference is made to the lawsuit captioned *Rodney Jones v. Sean Combs et al.*, No. 24 Civ. 1457 (S.D.N.Y.) (the "Action") initiated by your client Rodney Jones ("Jones") on February 26, 2024. When the Action was first filed, you improperly named Ethiopia as a defendant, without any legitimate cause or factual basis.

As you know, on March 21, 2024, Jones and Ethiopia entered into a "Dismissal Agreement" whereby Ethiopia agreed to provide a declaration concerning her complete lack of involvement in the claims or issues raised by the Action (the "Declaration"). In connection with the foregoing, as it was clear Ethiopia had no knowledge related to the claims in the lawsuit, Jones agreed to dismiss her from the Action with prejudice.

The Declaration, which is less than two pages, summarizes Ethiopia's employment history with Universal Music Publishing Group ("UMG") and Motown Records ("Motown"). The Declaration notes Motown's license agreement with Love Records, Inc. ("Love Records"), relating to rights to distribute *The Love Album*, and goes on to confirm Ethiopia has no knowledge supporting Jones's claims that (i) Motown or UMG sponsored listening parties or writers camps, or (ii) Motown or UMG made cash payments to Sean Combs ("Combs") or Love Records.

The Declaration provides no other information relating to the Action, does not mention your client, and expressly disclaims any knowledge or information relating to your client's allegations. The Declaration explains to your client that Ethiopia has nothing to do with the claims and issues raised by the Action; it does not support your client's allegations in any way, shape, or form. In fact, it is clear from the Declaration that Ethiopia has no knowledge whatsoever that would be useful to support any of Jones's claims.

Nonetheless, you filed a fraudulent and misleading Second Amended Complaint, appending the Declaration, which completely mischaracterizes the Declaration. For example, the Second Amended Complaint alleges that the Declaration states that Motown and Love Records entered into a "general partnership" (¶ 11; *see also* ¶ 218)—you made this claim even *after our Firm informed you* that there was no partnership, *and after we rejected all of the language you had originally proposed* in any earlier draft of the Declaration related to this point.

Further, it appears that you and your client have touted Ethiopia's innocuous Declaration to the media and social media channels as somehow indicating Ethiopia will be "testifying against" Combs, or otherwise

#2868195v4

433 North Camden Drive | 4th Floor | Beverly Hills, CA 90210
T 310.855.3200 | F 310.855.3201

www.eisnerlaw.com

152 West 57th Street | 48th Floor | New York, NY 10019
T 646.876.2600 | F 212.600.5020



testifying on behalf of Jones.  Indeed, it appears you and your client have gone as far as explicitly representing to the media, including outlets such as Sandra Rose and The Neighborhood Talk, that Ethiopia will "testify against" Combs, presumably in effort to garner additional media attention.  To be clear, such representation is spurious and without any factual basis whatsoever.  While Ethiopia will of course comply with her lawful obligations in responding to any subpoena, Ethiopia has never indicated, in the Declaration or otherwise, that she has any intention of providing testimony on behalf of Jones.

Accordingly, your and your client's misrepresentations about Ethiopia are completely untrue, and blatantly defamatory.  We are surprised that you would be willing to take actions, designed to spread false information, and risk exposing both you and your client to liability.  We expect that Judge Oetken will not appreciate your conduct either.

Accordingly, demand is hereby made that (i) you immediately cease and desist from making any further misrepresentations relating to Ethiopia, including any suggestion that she has agreed to testify against Combs or otherwise on Jones's behalf; and (ii) you contact any media outlets or other third parties to whom you misrepresented Ethiopia intends to testify against Combs and withdraw such representation.

The foregoing is not a waiver of any defenses, nor a complete expression of our clients' rights and remedies, all of which remain expressly reserved.

Very truly yours,

Ashlee Lin

433 North Camden Drive | 4th Floor | Beverly Hills, CA 90210
T 310.855.3200 | F 310.855.3201

www.eisnerlaw.com

152 West 57th Street | 48th Floor | New York, NY 10019
T 646.876.2600 | F 212.600.5020

# EXHIBIT 6

## Zakarin, Donald S.

| | |
|---|---|
| **From:** | Tyrone Blackburn <tblackburn@tablackburniaw.com> |
| **Sent:** | Monday, March 4, 2024 7:03 PM |
| **To:** | Zakarin, Donald S. |
| **Cc:** | Charron, William; Janowitz, James A. |
| **Subject:** | Re: Jones v. Combs et. al.  24 Civ. 1457 |

Mr. Zakarin,

Ethiopia did a public rollout on behalf of Motown, celebrating the creation of Love Records in May of 2022. She was also present at Love Record parties and the writer's camp. My client saw your clients at Mr. Combs' home and witnessed individuals bringing bags of cash to Mr. Combs' home. Mr. Combs attributed this cash to the labels (i.e., your clients).

I am open to having a conversation with you if you would like to discuss your letter or the claims that my client has raised in his pleading.

Regards,

Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC.
Phone: 347-342-7432
TABlackburnlaw.com

> On Mar 4, 2024, at 6:00 PM, Zakarin, Donald S. <DZakarin@pryorcashman.com> wrote:
>
> Mr. Blackburn:
>
> Attached please find our Rule 11 letter on behalf of our clients, Sir Lucian Grainge, Ethiopia Habtemariam, Universal Music Group and Motown Records regarding your Amended Complaint in the above action.
>
> *Donald S. Zakarin*
> Pryor Cashman, LLP
> 7 Times Square
> New York, NY 10036
> 212-326-0108 (P)
> 212-798-6306 (F)
> 347-820-0793 (C)
> dzakarin@pryorcashman.com

\*\*\*CONFIDENTIALITY NOTICE\*\*\*

This email contains confidential information which may also be legally privileged and which is intended only for the use of the recipient(s) named above. If you are not the intended recipient, you are hereby notified that forwarding or copying of this email, or the taking of any action in reliance on its contents, may be strictly prohibited. If you have received this email in error, please notify us immediately by reply email

and delete this message from your inbox.
<Ltr to Tyrone Blackburn RE Combs_UMG(8465776.3).pdf>

# EXHIBIT 7

## Zakarin, Donald S.

| | |
|---|---|
| **From:** | Zakarin, Donald S. |
| **Sent:** | Monday, March 4, 2024 7:32 PM |
| **To:** | Tyrone Blackburn |
| **Cc:** | Charron, William; Janowitz, James A. |
| **Subject:** | RE: Jones v. Combs et. al.  24 Civ. 1457 |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Mr. Blackburn:

Your client's assertions, which you seem to have taken at face value instead of doing the slightest investigation into the facts (or you yourself embellished and further falsified them), are completely false and your allegations in the Complaint regarding our clients are baseless.  The notion of bags of cash being delivered to Combs by my clients is so preposterously false that it is inconceivable that any reputable lawyer would, without a very comprehensive investigation into such a nonsensical assertion, take the word of any client, let alone Mr. Jones, and include such allegations in a public pleading (and publicly disseminate such defamatory lies by sending the pleading to the press).  As to "celebrating" the "creation" of Love Records, had you conducted the slightest inquiry, you would have known that while Motown initially and simply entered into a distribution deal for the Combs' album that Love Records was working on – and Love Records is an entity in which Universal and Motown had and have no interest – that distribution deal was terminated as of February 2023.  Your client never saw Sir Lucian Grainge at Combs' house in LA or Miami or anywhere else because he was never there.

We have provided you with notice regarding the falsity of the allegations of your complaint.  I strongly suggest you undertake to dismiss all claims and all of the offensively false allegations against our clients or we will proceed as I have already stated.

On behalf of my clients, I specifically reserve all of their rights and remedies.

*Donald S. Zakarin*
Pryor Cashman, LLP
7 Times Square
New York, NY 10036
212-326-0108 (P)
212-798-6306 (F)
347-820-0793 (C)
dzakarin@pryorcashman.com

**From:** Tyrone Blackburn <tblackburn@tablackburnlaw.com>
**Sent:** Monday, March 4, 2024 7:03 PM
**To:** Zakarin, Donald S. <DZakarin@pryorcashman.com>
**Cc:** Charron, William <WCharron@pryorcashman.com>; Janowitz, James A. <JJanowitz@pryorcashman.com>
**Subject:** Re: Jones v. Combs et. al. 24 Civ. 1457

Mr. Zakarin,

Ethiopia did a public rollout on behalf of Motown, celebrating the creation of Love Records in May of 2022. She was also present at Love Record parties and the writer's camp. My client saw your clients at Mr. Combs' home and witnessed individuals bringing bags of cash to Mr. Combs' home. Mr. Combs attributed this cash to the labels (i.e., your clients).

I am open to having a conversation with you if you would like to discuss your letter or the claims that my client has raised in his pleading.

Regards,

Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC.
Phone: 347-342-7432
TABlackburnlaw.com

> On Mar 4, 2024, at 6:00 PM, Zakarin, Donald S. <DZakarin@pryorcashman.com> wrote:
>
> Mr. Blackburn:
>
> Attached please find our Rule 11 letter on behalf of our clients, Sir Lucian Grainge, Ethiopia Habtemariam, Universal Music Group and Motown Records regarding your Amended Complaint in the above action.
>
> *Donald S. Zakarin*
> Pryor Cashman, LLP
> 7 Times Square
> New York, NY 10036
> 212-326-0108 (P)
> 212-798-6306 (F)
> 347-820-0793 (C)
> dzakarin@pryorcashman.com
>
> ---
>
> ***CONFIDENTIALITY NOTICE***
>
> This email contains confidential information which may also be legally privileged and which is intended only for the use of the recipient(s) named above. If you are not the intended recipient, you are hereby notified that forwarding or copying of this email, or the taking of any action in reliance on its contents, may be strictly prohibited. If you have received this email in error, please notify us immediately by reply email and delete this message from your inbox.
> <Ltr to Tyrone Blackburn RE Combs_UMG(8465776.3).pdf>

# EXHIBIT 8

# JONATHAN D. DAVIS, P.C.

ATTORNEYS AT LAW

1 ROCKEFELLER PLAZA
SUITE 1712
NEW YORK, NEW YORK 10020

TEL: (212) 687-5464
FAX: (212) 697-2521
WWW.JDDAVISPC.COM

March 4, 2024

**VIA EMAIL/PDF**

Tyrone A. Blackburn, Esq.
T.A. Blackburn Law
1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236

Re: Fed R. Civ. P. 11 Warning Letter - *Jones v. Combs, et al.*, 24-cv-01457

Dear Mr. Blackburn:

As you are aware, my co-counsel, Shawn Holley and Bobbi C. Sternheim, and I are the attorneys for Sean Combs, Justin Combs, Love Records, and CE Opco, LLC d/b/a Combs Global in the above-referenced action.

Your recently filed revised or amended Complaint, dated March 2, 2024 (the "Complaint" or "Compl."), on behalf of Rodney Jones, is false, defamatory, and recklessly damaging to our clients. If you do not immediately withdraw it, we will move against you and your client under Fed. R. Civ. P. 11 for sanctions, including attorney's fees, at the appropriate time. You have already caused – and will continue to cause – irreparable harm, including financial, reputational, and emotional damages, to our clients by reason of your frivolous claims.

Had you made even the slightest effort to investigate the facts underlying Mr. Jones's alleged claims, you would have quickly recognized that they were fabricated and built upon lies and improbable scenarios. Instead, unable to force Mr. Combs's hand to settle your client's baseless claims, you elected to victimize Mr. Combs, his sons, employees, and former business relationships by suing them as a tactic to induce Mr. Combs to pay Mr. Jones undeserved monies to prevent your filing of egregiously fake claims.

If you seriously considered the source of the allegations in the Complaint, namely, Mr. Jones, someone with a criminal history, including a conviction for reckless homicide and sexual assault, and a restraining order obtained by an ex-girlfriend, then you would have embraced our repeated overtures to educate you about his connection to Mr. Combs and to avoid the legal and ethical lapses that now overwhelm you.

Instead, you continue to engage in a campaign of avoidance and provocation. Your brazen behavior towards Ms. Holley is inexplicable. Your emails and Instagram posts, including charges

Tyrone A. Blackburn, Esq.
March 4, 2024
Page 2

that she attended one of Mr. Combs's house parties (a client she just met and began representing), that her representation of Mr. Combs will lead to his incarceration at Riker's Island or elsewhere, and the emojis of water drips (representing your strategy to harass and taunt both parties and lawyers with old texts and videos), is beyond any standard of reasonable or appropriate conduct of a lawyer. Your baseless charge this weekend that Mr. Combs is bribing witnesses and that you will contact law enforcement is outrageous and reckless. All of your conduct violates the New York Rules of Professional Conduct ("RPC"), is manifestly undignified, and contravenes the standards of practice in the Southern District of New York.

## A.     **Your Multiple Rule 11 Violations**

Under Rule 11, every attorney who files a pleading or other paper "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that, among other things:

> (1) "it is not being presented for any improper purpose;"
>
> (2) "the claims … and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" and
>
> (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

You have violated each of these requirements. First, the Complaint was filed for the "improper purpose" of forcing Mr. Combs to pay your client tens of millions of dollars to prevent Mr. Jones from spreading scandalous lies. The Complaint contains vicious lies about alleged sexual and criminal conduct that never occurred. It also alleges harm that was never suffered by Mr. Jones – or anyone else for that matter – by acts or conduct committed by Mr. Combs, defendants, or anyone else mentioned in your pleading. Second, not a single fact supports any of your client's defamatory, salacious claims – let alone ones that can be established by extending, modifying, or reversing existing law or establishing new law. Third, none of the purported facts in the Complaint have any credible evidentiary support or can be supported after a reasonable opportunity to investigate or discover facts. In short, the Complaint is entirely made up and borders on extortion by an ex-felon.

Your misconduct is ample ground for a sanction under Rule 11. *See, e.g., Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 541 (2d Cir. 2023) (affirming award of attorney's fees under Rule 11 where complaint contained numerous allegations "that a reasonable attorney would know are inaccurate, irrelevant, or frivolous"); *Goldman v. Barrett*, No. 15-cv-9223 (PGG), 2019 WL 4572725, at *5 (S.D.N.Y. Sept. 20, 2019) (imposing monetary sanction under Rule 11 where

Tyrone A. Blackburn, Esq.
March 4, 2024
Page 3

counsel filed complaint "containing vague and implausible allegations which he had to have
known were based on no more than speculation" and "when confronted with evidence suggesting
that the claims were untrue … [he] refused to withdraw the claims"), *aff'd*, 825 F. App'x 35 (2d
Cir. 2020); *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 398 (S.D.N.Y. 2007) (imposing
dismissal of complaint as Rule 11 sanction where evidence "directly contradicted" many
allegations and counsel was put on notice).

## B.     Your "Bury the Head in the Sand" Legal Strategy

As demonstrated below, from Thursday, February 22, until Monday, February 26 at 3:38
p.m., I repeatedly attempted to address with you the falsity of the accusations in your demand
letter, dated February 21, 2024 (the "Demand Letter"), which was sent on the morning of February
22. Without speaking to me, you filed the Complaint well before 5 p.m. on February 26. I was
alerted to the filing only after I received an email from NBC Network News seeking comment on
a myriad of questions stemming from your filing, which contained "[a]llegations [that] included
violation of RICO, sexual assault, sexual harassment, negligent infliction of emotional distress,
violation of the Trafficking Victims' Protection Act, obstruction and enforcement of the
Trafficking Victims' Protection Act." [Email from Diana Diasrath to Jonathan D. Davis, dated
February 26, 2024, at 4:22 p.m.][1] When I ultimately obtained a copy of the Complaint that evening,
I learned that you repeated, almost verbatim, the false and scandalous allegations in the Demand
Letter.

Following my receipt of the Demand Letter, I promptly emailed and telephoned you to
discuss the content of your letter. But you did not respond. On Friday afternoon, February 23, you
finally acknowledged, via email, my previous day's communications, but you failed to talk to me
as I had requested. The substance of your email was that Mr. Jones "is not waiting beyond
Monday" to file his complaint, but that you and I "will be in touch over the weekend" with the
"hope to have an answer by Sunday" regarding settlement. On Saturday morning, you emailed,
stating, among other things, that you would send me "a draft of Mr. Jones's complaint by …
tomorrow … [adding that] [y]ou will receive 2; one will be a thin complaint to be filed on Monday,
and the second will be the amendment that will be filed on Wednesday [February 28]."

I emailed you Saturday afternoon, inquiring when you could speak on Sunday to "discuss
the contents of your email … [so that I could] set the record straight." Having not heard from you,
I again emailed you on Sunday, at 11:20 a.m., inquiring when we could speak, but I never heard
back from you. On Monday, February 26, at 9:47 a.m., I again emailed you, at which time I
"encourage[d] you to call [Ms. Holley and me] because we don't want you to make an unforced
error here. If you commence any action without speaking to us, you are likely headed for an
outcome you could surely have avoided."

---

[1] In addition to the flagrant ethical violations detailed below, you transmitted to the media your defamation-riddled
Complaint *before* it was filed with the district court, vitiating any litigation privilege that might have applied and
exposing you and your client to liability for damages. *See Gottwald v. Sebert*, 40 N.Y.3d 240, 254 (2023).

Tyrone A. Blackburn, Esq.
March 4, 2024
Page 4

## C.     The Obvious Falsehoods in the Demand Letter and Complaint

Although you attempted to distort my February 26 email, the "unforced error" and "outcome" that I implicitly referred to and wanted to avoid was your filing of a demonstrably false pleading. If you had contacted me, I would have provided you with concrete, indisputable evidence that what you were about to prominently highlight in your pleading, which was already in the Demand Letter, were falsehoods and could not be corroborated by any credible evidence or testimony. Without commenting on each falsehood, I planned to apprise you, if we had spoken, of the following incontrovertible facts that disproved the bald-faced lies in your Complaint:

First, Mr. Combs and his son, Justin Combs, were never involved in the shooting of "Mr. G" on September 12, 2022, which you allege occurred inside a bathroom at Chalice Recording Studio, in Los Angeles. Compl. ¶¶ 31-55. These allegations are bald-faced lies. Neither of the Combs were near where you alleged the shooting occurred. Mr. G was shot outdoors several blocks from the recording studio. The shooters were a crew of thieves who robbed Mr. G at gun point and then shot him. Mr. Combs and his son were never suspects, never investigated, and never interviewed by the police. The individuals suspected of committing this crime and other robberies, Rudolph Flowers, Laron Bundley, and Taniqueka Harris, were arrested on November 17, 2023. Mr. Flowers is the suspected shooter. They are all awaiting trial.

Second, the Complaint alleges that "[o]n or about July 2, 2023," Mr. Combs held a "'listening party'" at his "home," which was attended by "J[ustin] Combs, sex workers, and some underage girls." *Id*. at ¶¶ 118-28. These allegations are bald-faced lies. Mr. Combs and his son never cavorted with or entertained "underaged girls" at any time for any immoral, illegal, or other purpose. The photographs imbedded in the Complaint are not photographs of any underage women or sex workers, but rather images of adult guests at that party. In particular, the photograph depicting Mr. Combs embracing a female is not an "underage girl," but, instead, his thirty-three year-old then-girlfriend, who is a mother of young children. *Id*. at ¶ 128. Likewise, the photograph depicting Justin Combs standing next to a female is not an "underage girl," but, instead, his girlfriend, who is thirty-two years old. *Id*. Furthermore, the Complaint's damning allegation that Mr. Combs's son, Christian Combs, "drugg[ed] and sexually assaulted a woman" at some unspecified time is a bald-faced lie. *Id*. at ¶ 30. If an action is pursued against Mr. Combs's son, then it will be defeated with lightning speed and result in legal and financial consequences to you and anyone else participating in its filing.

Third, the Complaint alleges in multiple paragraphs that Lucian Grainge, the Chairman and CEO of Universal Music Group ("UMG"), "sponsored and attended several Love Album listening parties at Mr. Combs' home in Los Angeles, California." *E.g.*, *id*. at ¶¶ 164, 219, 341. These allegations are bald-faced lies. Mr. Grainge has *never* visited any of Mr. Combs's residences and never attended a party that Mr. Combs held at any residence. Moreover, the business relationship between Love Records and Motown Records, one of UMG's divisions, was severed on February 1, 2023, which was five months before the date of the "listening party" alleged in the Complaint and eight months before the release of "The Love Album: Off the Grid" ("Love Album"). And, finally, Ethiopia Habemariam, the former head of Motown Records, stepped down as CEO of the

Tyrone A. Blackburn, Esq.
March 4, 2024
Page 5

label on or about November 29, 2022, which means that she left the label more than nine months before the alleged listening party.

Fourth, the Complaint alleges that Mr. Combs "share[d] a video of who he claims was Stevie J anally penetrating a Caucasian male without a condom … to ease Mr. Jones' anxiety concerning homosexuality." *Id*. at ¶ 91. Not only is that allegation a bald-face lie and disputed by Mr. Combs, but it is also disputed by the person who is in the photograph, a black porn actor named "Knockout," who has publicly acknowledged the image is of him from a film from years ago. The now-demonstrated inaccuracy of your allegation cannot be remedied by the post-hoc insertion of Mr. Jones's "position that Mr. Combs provided him with the video and identified the individual in the video as Stevie J." *Id.* at ¶ 91 n.9.

Fifth, the Complaint alleges that "Mr. Jones resided at Mr. Combs['s] residence located in Los Angeles, California, New York City, and Miami, Florida … and [that he] spent several weeks on a yacht rented by Mr. Combs in the US Virgin Islands." *Id*. at ¶¶ 26, 177. These allegations are bald-faced lies. Mr. Jones never lived with Mr. Combs. During periods that Mr. Jones provided engineering services for the Love Album, he spent certain days at Mr. Combs's residences to work at his home recording studio in Los Angeles and Miami, along with many producers, musicians, and other technical staff that were needed to complete the album tracks. While there were late night work sessions, technical staff, like your client, stayed in the guest cottages at Mr. Combs's residence in Miami only, but never elsewhere. Mr. Combs does not own a residence in New York. And Mr. Jones never traveled to the U.S. Virgin Islands with or for Mr. Combs. There are multiple witnesses who can substantiate those facts, together with security video. Mr. Jones was no more than a third-party vendor who performed services for the Love Album, and he was neither Mr. Combs's confidante, nor his personal friend, nor anyone else's in the household.

Sixth, the Complaint alleges, among other things, that Kristina Khorram "openly order[ed] her assistants to keep Mr. Combs 'high' off gummies and pills;" … that all employees were "required … to walk around … with cocaine, GHB, ecstasy, marijuana gummies …, and Tuci (a pink drug that is a combination of ecstasy and cocaine) …;" that she "ordered sex workers, and prostitutes for Mr. Combs;" and that she was "instrumental in organizing and executing the RICO enterprise." *Id*. at ¶¶ 178-84. These and the other allegations about Ms. Khorram are bald-faced lies. He had little or nothing to do with her. Ms. Khorram is an executive who, among other professional functions, runs Mr. Combs's day-to-day *business* affairs and was never distracted by technical staff such as your client.

Seventh, the Complaint alleges that Mr. Jones performed work "under an implied work-for-hire agreement," that he was listed as a producer of "nine songs" on "[the] Love Album[']s final release," and that he was not paid "for his work." *Id*. at ¶¶ 24, 135, 139-41. Mr. Jones was paid approximately $60,000, including expenses, for all work performed on the Love Album. That sum was paid by TriStar Sports & Entertainment on behalf of Love Records. The Complaint falsely alleges that he was not "compensate[d] … for his work," and it also falsely alleges that he was a "producer" on nine songs. *Id.* He was hired as an engineer, and sometime session musician, and that is precisely what he was paid for doing. Only months after the Love Album was released did

Tyrone A. Blackburn, Esq.
March 4, 2024
Page 6

Mr. Jones contend for the first time that he was owed money and that he should be credited as a producer.

## D.    **Your Improper and Inaccurate February 26 Email**

Ms. Holley and I were never given the opportunity to share the above facts and information with you. You finally surfaced at 12:21 p.m. on the Monday you filed the initial Complaint, but only to declare disingenuously in your February 26 email that we were not being earnest with you in discussing the disputed claims, despite your not returning a single call that I made to you over four days. Furthermore, you gave us only a couple of days to mull over your astronomical settlement demands. You then stated that "[a]t 5 pm [that Monday], I will file a redacted version of the attached complaint …. THERE IS NOTHING YOU SAY OR DO TO STOP ME FROM FILING." You added, among other things, that, after filing the Complaint, "[we] will have until the end of the day tomorrow to resolve the case …. Failure to do so will result in an amended complaint being filed on Wednesday, with the addition of New York State, Florida State, and California State Civil RICO claims."

You ended your February 26 email stating that Mr. Jones's settlement demand was being increased by many millions of dollars, and even that newly increased demand would be further increased by many millions more on February 27. I emailed you a little over an hour later to make clear to you the following:

> We have made earnest attempts to contact you this past weekend
> and this morning. We have indisputable facts, including video and
> statements, which contradict what Rodney Jones has told you.
> Before you file a pleading (for which there is no looming statute of
> limitations) containing false information, you should be aware that
> independent witnesses, who are unrelated to Mr. Combs, have
> provided information that undermines and negates your client's
> allegations. Failure to communicate with us and to ignore this
> critical information places your client in legal jeopardy and yourself
> in ethical jeopardy. We are attempting to have a substantive
> conversation with you to alert you to facts that will prevent
> an unnecessary error. This is a professional courtesy, not a threat.

You never responded to my email either by telephone, email, or text. Having never heard from you, I again emailed you at 3:38 p.m. at which time I reiterated that we possessed evidence that your allegations were "provably false;" that you told us that we could not dissuade you from filing the Complaint (which I reminded you was "inconsistent with your ethical obligations to fully investigate facts before filing a federal complaint"); and that "if you insist[ed] on filing" the Complaint (despite being "on notice of its falsity"), then "you must nonetheless remove all personal information, including addresses and photographs," to protect those named in the action from unnecessary harm or injury.

Tyrone A. Blackburn, Esq.
March 4, 2024
Page 7

As before, you ignored my email and filed the Complaint without any redaction, except for the identity of two non-parties, whom you presumably revealed anyway, based on the chatter on social media, by the telling details you provided about those individuals. The Complaint you filed was not the "thin complaint" that you promised in your February 23 email. It was the "amended complaint" that you threatened (in your February 26 email) to file on February 27 (one which was unredacted with RICO allegations), if the case was not resolved sooner. You did not keep your word about the Complaint and you did not remove the home addresses and photographs of any of the individual defendants, placing them at risk of harassment and harm. Since the filing of the lawsuit, and today's amended filing, defendants have been pursued, threatened, and/or victimized by the public and media. None of this would have occurred if you had conducted a reasonable inquiry into the facts, not filed the pleading for an improper purpose, and complied with your ethical obligations.

## E.    **Your Violation of the Rules of Professional Conduct**

You have violated not only Rule 11 by filing a fraudulent complaint, but also many ethical rules under the RPC, including the Standards of Civility ("Standards"). Based on the content of the pleading, you violated RPC 3.1(a), 3.3(a)(1), 3.4(e), 4.4(a), and 8.4(c), respectively:

> (1)    a lawyer cannot bring an action "unless there is a basis in law and fact for doing so that is not frivolous," and "[a] lawyer's conduct is 'frivolous' if" … he "knowingly asserts material factual statements that are false" or "the conduct … serves merely to harass or maliciously injure another;"

> (2)    a lawyer cannot knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;"

> (3)    a lawyer cannot use "means that have no substantial purpose other than to embarrass or harm a third person;"

> (4)    a lawyer cannot engage in "dishonesty" and/or "misrepresentation;" and

> (5)    a lawyer cannot "present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter."

By filing the Complaint, and its amendment, you asserted claims that have no basis in fact or law, which are both dishonest and factual misrepresentations, and which have been knowingly filed with a court to maliciously injure defendants and to embarrass and harm third parties regarding sexual and criminal acts that never happened. All of this could have been avoided if you had returned my multiple emails and telephone calls to discuss your Demand Letter and draft

Tyrone A. Blackburn, Esq.
March 4, 2024
Page 8

complaint. I alerted you to what I wanted to discuss, but even so, you proceeded full steam ahead to file the Complaint with willful blindness to the truth. And, even this past weekend, you threatened to contact law enforcement based on made-up facts with the obvious intent to induce Mr. Combs to settle your client's false claims and to extract an undeserved settlement.

Finally, you have violated many of the Standards, including Section I.A, B, and C, respectively: "[l]awyers should act in a civil manner regardless of the ill feelings that their clients may have toward others;" "lawyers should avoid ... disparaging personal remarks or acrimony toward other counsel, parties or witnesses;" and "[l]awyers should not engage in conduct intended primarily to harass or humiliate witnesses." Finally, Section IV provides that "[a] lawyer should promptly return telephone calls and electronic communications and answer correspondence reasonably requiring a response, as appropriate."

\* \* \* \*

Based on all the foregoing, your actions cannot be justified or ignored by us. They violate Rule 11 and many ethical rules and obligations. We urge you to immediately withdraw the amended Complaint or, at the very least, correct it to allege claims that are predicated on actual facts supporting a *bona fide* claim. If you fail to take corrective action, then we will promptly file a Rule 11 motion at the earliest possible opportunity, as well as pursue all other available remedies against you and your client.

Nothing omitted from this letter shall constitute a waiver of any of the defendants' rights, privileges, or defenses, all of which are hereby expressly and fully reserved.

Very truly yours,

*/s/ Jonathan D. Davis*

Jonathan D. Davis

JDD:hs

cc: Shawn Holley, Esq.
    Bobbi C. Sternheim, Esq.

# EXHIBIT 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                         :          23cv10881 (DLC)

ALEKSANDAR ZUNZUROVSKI,        :

                                           :      OPINION AND ORDER

                     Plaintiff,   :

         -v-                        :

                                           :

LIANE FISHER, et al.,        :

                                         :

                     Defendants.  :

                                         :
------------------------------------- X

APPEARANCES:

For plaintiff:
Tyrone A. Blackburn
T.A. Blackburn Law
1242 East 80th St
Brooklyn NY 11236

For defendant:
Lisa Lynn Shrewsberry
Traub Lieberman Straus & Shrewsbury LLP
Seven Skyline Drive
Hawthorne, NY 10532

DENISE COTE, District Judge:

    Attorney Tyrone A. Blackburn filed this action, asserting
that jurisdiction exists pursuant to 28 U.S.C. § 1332.  He did
so without conducting a reasonable inquiry to support that
assertion.  Because this filing appears to be part of a pattern,
he will be referred to this Court's Grievance Committee.

## Background

Plaintiff filed this legal malpractice action on December
14, 2023, against defendant-attorneys Liane Fisher and Michael
J. Taubenfeld, and their law firm Fisher Taubenfeld, LLP. He
did so after being advised by defense counsel that complete
diversity of citizenship did not exist because the plaintiff and
defendant Fisher are both domiciled in New Jersey.

On February 9, defense counsel requested an immediate
conference to discuss, inter alia, adverse counsel's abusive
tactics and the lack of subject matter jurisdiction.[1] Defense
counsel submitted the December 15 email she had sent to
Blackburn repeating her representation to him that defendant
Fischer is domiciled in New Jersey. In response, Blackburn
filed a notice of voluntary dismissal as to defendant Fisher on
February 9 and objected to the request for an immediate
conference. Blackburn explained that he had voluntarily
dismissed the action as to Fisher even though defense counsel
had not produced evidence of Fisher's residence. The dismissal
of Fisher did not solve the question regarding jurisdiction,
however, since defendant Fisher Taubenfeld, LLP, takes the
citizenship of its partners. See, e.g., Platinum-Montaur Life

---

[1] The initial conference, scheduled for February 16, had been
adjourned at Blackburn's request to March 5.

2

Sciences, LLC v. Navidea Biopharmaceuticals, Inc., 943 F.3d 613,
615 (2d. Cir. 2019).

An Order of February 15 directed plaintiff's counsel to
show cause why Rule 11 sanctions should not be imposed for his
failure to conduct a reasonable inquiry into the defendants'
citizenship prior to filing the complaint in this action. The
Order also listed by docket number five other actions Blackburn
had filed in this district that had been dismissed for lack of
jurisdiction or transferred or dismissed for lack of venue. In
a letter of February 16, Blackburn asserted that he had
researched the addresses for the defendants in the instant
action by using a "Lexis Nexis people search," which showed
Fisher's residence is 225 Broadway. He added that a search of
the records of the New York Department of State Division of
Corporations showed that Fisher Taubenfeld LLP is a New York
limited liability partnership.

At a conference held on March 5, Blackburn consented to
dismissing the action without prejudice. Blackburn explained
that he believed that defendant Fisher resided in New York
because his client had told him so and because a LexisNexis
search indicated that Suite 750 at 225 Broadway was her current
residence. He accepted that what he had done was not an
adequate search for the residence of defendant Fisher or the
residence of each of the partners of the defendant law firm. He

3

was not prepared to address each of the five cases listed in the
February 15 Order.  Blackburn was directed to file by March 19:
1) an affidavit from the plaintiff regarding their discussion of
Fisher's residence, and 2) an explanation of his basis for
asserting he had complied with Rule 11 in the five cases listed
in the February 15 Order.

Blackburn's submission on March 19 ("March 19 Letter")
included his client's declaration.  The plaintiff represents
that he had told Blackburn that defendant Fisher had "shared
with me that she lived 'in the city.'"  Blackburn also presented
a description of the five cases which he had filed in this
district but which had been dismissed due to a lack of
jurisdiction or a change of venue.

## Discussion

Blackburn has, as he admits, failed to meet his Rule 11
obligations in this case. It appears that this is part of a
pattern.  The Court declines to impose sanctions pursuant to
Rule 11 or its inherent power but will refer him to this Court's
Grievance Committee.  There is a basis to believe that Blackburn
is filing cases in this district without diligently
investigating the existence of either jurisdiction or venue, as
required by Rule 11.

4

Fed. R. Civ. P. 11(b) provides that by presenting a
pleading, written motion, or other paper to the Court, an
attorney certifies that to the best of his or her knowledge,
information, and belief, formed after an inquiry reasonable
under the circumstances, it is not being presented for any
improper purpose, such as to harass; that the claims and other
legal contentions are warranted by existing law; and that the
factual contentions have evidentiary support.  Rule 11
"explicitly and unambiguously imposes an affirmative duty on
each attorney to conduct a reasonable inquiry into the viability
of a pleading before it is signed."  Gutierrez v. Fox, 141 F.3d
425, 427 (2d Cir. 1998) (citation omitted).  If an attorney
alleges jurisdiction "when reasonable inquiry would show that it
did not exist, he may be held liable for sanctions substantial
in amount."  Id. at 427.  As this Court advised Blackburn, it
"may enforce Rule 11 even after the plaintiff has filed a notice
of dismissal under Rule 41(a)(1)."  Cooter & Gell v. Hartmarx
Corp., 496 U.S. 384, 395 (1990).

Blackburn was advised by defense counsel before he filed
this action that diversity jurisdiction did not exist because
defendant Fisher lives in New Jersey, as does the plaintiff.
Blackburn had not done a reasonable investigation to satisfy his
Rule 11 obligation to confirm the existence of diversity

5

jurisdiction before that conversation, but he abjectly failed to
do so after that warning.

Blackburn asserts he relied on two sources of information
in deciding that Fisher is domiciled in New York: his client
and a LexisNexis search. He asserts that his client told him
that Fisher lived in "New York"; the plaintiff asserts that he
told Blackburn that Fisher lived in the "city." Neither
Blackburn nor his client have described a basis from which
Blackburn could reasonably rely on his client to know Fisher's
domicile for purposes of establishing diversity jurisdiction.
Blackburn's reliance on the LexisNexis search was no more
reliable. It listed Suite 1700 at 225 Broadway. 225 Broadway
is an office building; indeed, it is the business address of
Fisher Taubenfeld LLP, as shown on the firm's website.

Even after conceding that Fisher must be dismissed from
this lawsuit because her domicile in New Jersey destroyed
diversity jurisdiction, Blackburn sought to pursue this case
against her law firm and her law partner. But, as a
partnership, Fisher's domicile in New Jersey meant there was
still no diversity jurisdiction for this lawsuit.

This failure to conduct the investigation required by Rule
11 appears to be a pattern. In the February 15 Order and at the
March 5 conference, this Court advised Blackburn that it had
identified five cases -- discussed below -- that he had filed in

this district that were dismissed for lack of jurisdiction or
because of a change of venue.  An Order of March 5 directed
Blackburn to file a letter regarding his compliance with the
requirements of Rule 11 in those cases.  Blackburn's March 19
letter response to the March 5 Order does not dispel this
Court's concerns.

1. Jones v. Fox Rothschild LLP (19cv11573)

The Jones v. Fox Rothschild LLP action was transferred to
the District of New Jersey in May of 2020, about five months
after Blackburn filed it in December of 2019 in this district.
The defendants were a limited liability partnership organized
under the laws of Pennsylvania with offices in New York and New
Jersey, and an attorney at that firm.  The plaintiff had worked
in the firm's New Jersey offices and represented that she lived
in California when the action was filed.  The Honorable Alvin
Hellerstein, in the order transferring the case, noted that the
case "includes serious allegations of sexual harassment (in New
Jersey), attempted rape (in New Jersey), and potential failures
of the staff of an office (located in New Jersey)," and that the
complaint was "bereft of meaningful reference to New York."  The
only allegations relating to New York were that the attorney-
defendant had sent some of the allegedly improper text messages
to the plaintiff while working out of the firm's New York
office.  In opposing the motion to transfer, the plaintiff had

7

attempted to salvage venue by filing an affidavit containing
allegations that Judge Hellerstein found "hard to credit."
19cv11573 (ECF No. 36 at 3, n.1).

In his March 19 Letter, Blackburn refers to Fox
Rothschild's "domicile" as being Pennsylvania, presumably
because the firm is organized under Pennsylvania law and based
in Philadelphia. This phrasing suggests that Blackburn
continues to misunderstand that unlike a corporation, the
citizenship of a partnership is determined by the citizenship of
each of its partners. The March 19 Letter also fails to
acknowledge that the lawsuit lacked any meaningful connection to
New York. Blackburn appears to take solace from the fact that
Judge Hellerstein did not sanction him for filing an action
without proper venue in this district.

2. Weingarten v. CBS et al (20cv2598)

As in Jones, in Weingarten v. CBS, the events alleged in
the complaint occurred outside of New York. Blackburn filed the
Weingarten action in March of 2020. Defense counsel had advised
plaintiff's counsel to withdraw the case and re-file it in the
Western District of Pennsylvania, where the events had occurred;
plaintiff had refused to do so. The defendants then moved to
dismiss. CBS's motion to dismiss quoted Judge Hellerstein's
language from Jones and noted that "[p]laintiff's counsel has
recently encountered this same issue." 20cv2598 (ECF No. 28 at

8

8). On January 13, 2021, the parties agreed to dismiss the action in its entirety with prejudice.

In his March 19 Letter, Blackburn states that his involvement in Weingarten was limited to filing a pro hac vice motion for an out-of-state attorney, and that he "did not sign the complaint" or the motion papers. But his electronic signature does in fact appear on the initial complaint, the amended complaint (which was filed after the pro hac motion was granted), and the memoranda in opposition to each defendant's motion to dismiss. 20cv2598 (ECF No. 1 at 20; No. 23 at 19; No. 36 at 23; No. 44 at 19). Even if he was not the only or even the lead attorney on the case, Rule 11's requirements apply to any attorney who "present[s] to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it." Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 63 n.6) (quoting Fed. R. Civ. P. 11(b)) (emphasis supplied).

3. von der Schmidt et al. v. Higgins et al. Actions --
23cv3389 ("April von der Schmidt Action") and 23cv3919
(May von der Schmidt Action")

The two von der Schmidt actions asserted subject matter jurisdiction based on diversity of citizenship. The April von der Schmidt Action was filed on April 21, 2023, and dismissed by the Honorable Jesse Furman for lack of subject-matter jurisdiction on May 4, 2023. As Judge Furman wrote, the

plaintiffs amended their complaint twice at the Court's direction, "but still failed to allege the citizenship of every party. Plaintiffs allege the residence of themselves and the individual defendants . . . but, as the Court has repeatedly admonished, allegations of residency alone are insufficient." 23cv3389 (ECF No. 9).

A mere six days later, the same plaintiffs, still represented by Blackburn, filed the May von der Schmidt Action against the same defendants. 23cv3919 (ECF No. 1). That action was assigned to the Honorable Kevin P. Castel. In a November 30, 2023 Order, Judge Castel noted that Blackburn, "on behalf of his clients, invokes the Court's diversity jurisdiction but in doing so -- and despite the recent dismissal of an overlapping claim against substantially the same defendants before Judge Furman -- he fails to allege the citizenship, i.e. the domicile, of his clients." 23cv3919 (ECF No. 38 at 2). Judge Castel further noted that the complaint "artfully" disclosed the residency and national citizenship of each plaintiff but not their domicile. Id. There was also a failure to allege the place of incorporation and principal place of business of the corporate defendant.

Judge Castel thus ordered the plaintiffs to produce supporting affidavits indicating when the change in domicile had

10

occurred,[2] the states in which plaintiffs filed their tax

returns, and the state of their voter registrations and drivers'

licenses. In a December 3 letter, Blackburn indicated that the

plaintiffs could not produce the required information and

therefore requested that the Court dismiss the case without

prejudice. Judge Castel did so on December 18, with the caveat

that, "[i]n the event a new action is filed in this Court

raising factually related claims against any of the named

defendants, plaintiffs' counsel shall mark the civil cover sheet

of the new action as related to this action and request that it

be assigned" to Judge Castel. 23cv3919 (ECF No. 40).

In his March 19 Letter to this Court, Blackburn blamed the

complaint's failure to properly allege diversity jurisdiction in

the von der Schmidt Actions on the allegedly erratic behavior by

one of the plaintiffs in that case. He adds that he had sought

to withdraw as counsel for the plaintiff in the May von der

Schmidt Action.

4. Emanuel v. Harron et al (23cv4211)

Meanwhile, Blackburn filed the Harron case on May 21, 2023

-- 17 days after Judge Furman's "repeated[] admonish[ments]"

about the failure to properly allege citizenship in an action

---

[2] The November 30, 2023 Order indicated that the plaintiffs had
recently alleged their domicile as New York, but were now
alleging it was California.

11

based on diversity.  23cv3389 (ECF No. 9).  The Harron
complaint, brought on behalf of a New York plaintiff, asserted
the existence of diversity jurisdiction on the basis of the
individual defendant's alleged domicile in New Jersey.  Roughly
four months later, on September 25, Blackburn requested that the
Honorable John Cronan, to whom the case had been assigned,
dismiss the case without prejudice because of a lack of complete
diversity.

     In the interim, Blackburn had been pursuing entry of a
default judgment against the defendants.  On September 19,
however, an attorney for the defendants advised the Court that
the individual defendant was a long-time resident of New York
who is registered to vote in New York and has a New York
driver's license.  Defense counsel added that the location where
service on the defendant was attempted was a virtual office in
New Jersey.  Defense counsel sought to file a motion to dismiss
on multiple grounds, including lack of subject matter
jurisdiction, and to file a motion to strike scandalous and
irrelevant allegations attributing racism to the defendants.

     In his September 25 letter to Judge Cronan requesting
dismissal of the action, Blackburn explained that his client
"knew" Harron's domicile to be 35 Journal Square, 4th floor,
#4006, in Jersey City.  That address is an office building.  A
simple Google search confirms as much -- as does the Proof of

12

Service filed by Blackburn as an exhibit to his motion for
default judgment.

Blackburn claims in his March 19 Letter to this Court that
the address "was corroborated by a skip trace search conducted
by my process serving company". He adds that he had "several"
telephone conversations with the defendant in which she
confirmed to him that she resided at the Journal Square address.
Blackburn asserts that the Harron case was the only case of the
five listed in the February 15 Order in which he erred regarding
an individual defendant's domicile.

5. The Instant Action

Just 11 days after filing the December 3, 2023 letter
admitting he could not establish diversity in the May von der
Schmidt Action, Blackburn filed the complaint in this case. As
Blackburn has admitted, he failed to comply with his Rule 11
obligations in doing so. Blackburn argues, however, that
neither he nor his client gained anything by filing this case in
federal instead of state court. The record in this case, and
the history of his other cases in this District, contradict that
claim.

At the March 5 conference, defense counsel reported that
Blackburn had told her he filed this case in federal court
because doing so would make the press more likely to pick up on
it. A reasonable inference from Blackburn's pattern of behavior

13

is that he improperly files cases in federal court to garner media attention, embarrass defendants with salacious allegations, and pressure defendants to settle quickly. Indeed, his submissions to this Court have been rife with disturbing allegations against the defendants and defense counsel. Blackburn has called defense counsel in this action a "disgusting racist" for rejecting his preferred mediators. In response to this Court's Order requiring plaintiff to submit an affidavit "regarding the representation made by the plaintiff to counsel regarding Fisher's residence," Blackburn filed a wholly inappropriate 53-paragraph affidavit containing multiple irrelevant and scandalous accusations against Fisher.

Regardless of Blackburn's intentions, his actions in this and prior cases indicate a repeated failure to meet his Rule 11 obligations. Cf. Storey v. Cello Holdings, LLC, 347 F.3d 370, 387 (2d Cir. 2003) ("[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness, and is not based on the subjective beliefs of the person making the statement." (citation omitted)). Significant resources have been spent by judges of the Court and defendants named in actions he has filed to address glaring deficiencies in his filings. A referral to this Court's Grievance Committee is warranted.

14

## Conclusion

Tyrone A. Blackburn is referred to the Grievance Committee
of this district for such action as it deems appropriate.

Dated:   New York, New York
         April 3, 2024

DENISE COTE
United States District Judge

15