UNITED STATES FEDERAL COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RODNEY JONES,<br><br>    Plaintiff,<br><br>v.<br><br>SEAN COMBS,<br>JUSTIN DIOR COMBS,<br>ETHIOPIA HABTEMARIAM,<br>LUCIAN CHARLES GRAINGE,<br>KRISTINA KHORRAM,<br>CHALICE RECORDING STUDIOS,<br>LOVE RECORDS,<br>MOTOWN RECORDS,<br>UNIVERSAL MUSIC GROUP,<br>COMBS GLOBAL ENTERPRISES,<br>JOHN and JANE DOES 1-10 and<br>ABC CORPORATIONS. 1-10<br><br>    Defendants. | Case Number: 24-1457<br><br>**OPPOSITION TO COMBS DEFENDANTS (minus Justin Combs) MOTION TO DISMISS AND REQUEST TO TAKE JUDICIAL NOTICE OF COMBS FEDERAL INDICTMENT** |

**OPPOSITION TO LOVE RECORDS, COMBS GLOBAL ENTERPRISES, KRISTINA KHORRAM, AND SEAN COMBS (COLLECTIVELY, "COMBS DEFENDANTS" (MINUS JUSTIN COMBS) MOTION TO DISMISS AND REQUEST TO TAKE JUDICIAL NOTICE OF COMBS FEDERAL INDICTMENT**

**PRELIMINARY STATEMENT**[1]

The must deny the RICO Enterprise Defendants Hail Mary Motion to Dismiss. Sean Combs ("SC"), Love Records ("LR"), Kristina Khorram ("KK"), and Combs Global Enterprises ("CGE") (collectively, "the Combs RICO Enterprise"), the Court needs only to Google, and it would be abundantly clear that SC has zero credibility, and to quote United State President Joe Biden, he "has the morals of an alley cat." SC is a criminally indicted, racketeering sex trafficking, illegal prostitution facilitating, accused drugs and guns dealer, accused Mexican cartel drug runner, accused murderer, and <u>*confirmed*</u> woman beater.

After first denying the claims of his former spouse, Cassie Ventura, SC was seen viciously and violently grabbing, shoving, dragging, and kicking Ms. Ventura in a hotel in California[2]. Ms. Ventura attempted to escape Mr. Combs, but as the video shows, he refused to let her go. He beat her and attempted to kidnap her (by attempting to drag her back into the hotel room against her will) to make her stay.



---

[1] This writer will not entertain the personal attacks directed at me by Counsel for the defendants. It is clear they are obsessed with me, and although initially flattering, their obsession has become creepy.
[2] https://www.cnn.com/2024/05/17/entertainment/video/sean-diddy-combs-cassie-venture-surveillance-digvid

2

SC recklessly caused the death of several people in 1991[3] at City College, and then callously structured his investments in a way to hide his assets from the families of the victims. That same year he gang raped a sixteen-year-old Caucasian child from North Carolina, Liza Gardner, who was visiting an artist from his label in the state of New Jersey[4]. In the late 90s, as detailed in a forthcoming complaint, he manipulated rapper Biggie Smalls' final artist expense report through voodoo accounting and billed him for $600,000 to cover his funeral[5], which SC publicly claimed his label would pay for. Not to mention the fact that after rapper Biggie Smalls died, SC and his lawyer manipulated the final contract Biggie Smalls had with Bad Boy Entertainment and awarded himself the lion's share of Biggie Smalls publishing rights, completely robbing his heirs of their rightful inheritance[6]. A few years later, he shoots Natania Ruben[7] in the face at Club New York, and transfers the blame to his teenage artist, rapper Shyne Burrow[8]. A couple years before that, he stormed into the offices of Bad Boy Entertainment with a baseball bat and forced Kirk Burrows, the co-owner of Bad Boy Entertainment, to sign over his 25% share of the company to SC's mother, Janice Combs[9]. The list goes on and on, but needless to say, SC has consistently been a cancer in society, and as the Court will see below, on September 19, 2024, his 'chickens have come home to roost.'

## RELEVANT FACTS

Plaintiff Jones fully incorporates all facts and attachments detailed in the Second Amended Complaint.

## REQUEST FOR JUDICIAL NOTICE OF FEDERAL INDICTMENT

According to Rule 201(b)(2) of the Federal Rules of Evidence, Plaintiff Rodney Jones hereby respectfully requests this Court take notice of certain public records and documents, as detailed below:

---

[3] https://nypost.com/2024/04/04/us-news/brother-of-man-killed-during-deadly-stampede-at-diddy-backed-charity-event-says-karma-catching-up-to-him/
[4] https://people.com/sean-diddy-combs-accuser-says-she-was-minor-during-alleged-rape-8608692
[5] https://www.nydailynews.com/1997/03/19/biggies-body-is-carried-through-his-brooklyn-home-passing-thousands-of-fans-in-1997/
[6] https://eurweb.com/2024/biggie-smalls-was-trapped-in-a-bad-label-deal-diddy-didnt-care/
[7] https://www.thedailybeast.com/woman-who-claims-diddy-shot-her-in-the-face-cheers-his-downfall
[8] https://www.forbes.com/sites/maryroeloffs/2024/09/20/-protg-shyne-barrow-says-diddy-destroyed-my-life-what-to-know-about-their-contentious-past/
[9] https://www.billboard.com/music/music-news/former-business-partner-suing-p-diddy-70344/

I. **THE COURT MAY TAKE JUDICIAL NOTICE OF FACTS THAT ARE NOT SUBJECT TO REASONABLE DISPUTE WHERE THEIR ACCURACY CAN BE DETERMINED BY RELIABLE SOURCES**

According to Rule 201(b)(2) of the Federal Rules of Evidence, courts may take judicial notice of facts that are not subject to reasonable dispute and are capable of accurate and ready determination by resorting to sources whose accuracy cannot reasonably be questioned. Where a Court is supplied with the necessary information, taking judicial notice is mandatory. *See* Fed. R. Evid. 201(d). Pleadings and public filings are just the kinds of documents that are not subject to reasonable dispute and are capable of an accurate and ready determination under Rule 201(b)(2) of the Federal Rules of Evidence. Accordingly, it is proper for courts to take judicial notice of the existence of such documents. *See Roe v. Johnson*, 334 F. Supp. 2d 415, 419-20 (S.D.N.Y. 2004) (recognizing that a court, according to Rule 201(b), may take notice of the public record); *see also A.I. Trade Finance, Inc. v. Centro Internationale Handelsbank AG*, 926 F. Supp. 378, 387 (S.D.N.Y. 1996) (in taking judicial notice of a judgment in Vienna, Austria, the Court pointed out that "[t]he Second Circuit has noted that Rule 201 permits a court to take judicial notice of a foreign judgment").

Here, Mr. Jones requests the Court to take judicial notice of a September 19, 2024, true and correct copy of the federal indictment of Defendant Sean Combs, which is attached hereto as **Exhibit 1**. Additionally, Mr. Jones requests the Court to take judicial notice of the following Complaints filed against Sean Combs:

- in the matter of *Graves v. Combs et al.,* United States District Court, Southern District of New York, Case No 1:24-cv-07201-AT;
- in the matter of *English v. Combs et al.,* United States District Court, Southern District of New York, Case 1:24-cv-05090-AT;
- in the matter of *Jane Doe v. Combs et al.,* United States District Court, Southern District of New York, Case 1:23-cv-10628-JGLC;
- in the matter of *USA v. Combs et al.,* United States District Court, Southern District of New York, Case 1:24-cr-00542-ALC;
- in the matter of *McKinney v. Combs et al.,* United States District Court, Southern District of New York, Case 1:24-cv-03931-NRB;
- in the matter of *Richard v. Combs et al.,* United States District Court, Southern District of New York, Case 1:24-cv-06848-KPF;

a true and correct copy of which is attached hereto as **Exhibit 2**.

There is no dispute regarding the existence of these documents. *See* 21B Wright & Graham, Federal Practice and Procedure: Evidence 2d § 5106.4 (noting that, in contrast to facts

4

discussed within court documents, it is proper to take judicial notice of the fact that the court documents exist). Additionally, "[c]onsideration of documents subject to judicial notice does not necessarily convert a motion to dismiss into a motion for summary judgment." *Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 588 (S.D.N.Y. 2006).

Court documents are public records of which the Court can take judicial notice. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("Courts routinely take judicial notice of documents filed in other courts[.]"); *Global Network Commc'ns v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (citation and internal quotation marks omitted); *see, e.g., Blount v. Moccia*, No. 1:16-cv-4505-GHW, 2017 U.S. Dist. LEXIS 192983, 2017 WL 5634680, at *2 n.5 (S.D.N.Y. November 21, 2017) (taking judicial notice of indictment but expressing no opinion as to the innocence or guilty of those indicted); Bond v. City of New York, No. 14-cv-2431, 2015 U.S. Dist. LEXIS 130922, 2015 WL 5719706, at *2 (E.D.N.Y. September 28, 2015) (taking judicial notice of "fact of the grand jury indictment"); *Obilo v. City Univ. of N.Y.*, No. 10-cv-5118, 2003 U.S. Dist. LEXIS 2886, 2003 WL 1809471, at *4-5 (E.D.N.Y. February 28, 2003) (noting that it is "well established" that a court may take judicial notice of a grand jury indictment). In taking judicial notice of the indictment, the Court expresses no opinion as to the innocence or guilt of the indicted party. *Young v. Commissioner*, No. 6:18-cv-00135 (DNH/TWD), 2018 U.S. Dist. LEXIS 172986, at *11-12 n.5, 123 A.F.T.R.2d (RIA) 2019-660 (N.D.N.Y. October 4, 2018).

Under Federal Rule of Evidence 201, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). It is well established that a court may "take judicial notice of its own orders," and "its own records." *Rosado-Acha v. Red Bull GmbH*, No. 15 Civ. 7620, 2016 U.S. Dist. LEXIS 84543, 2016 WL 3636672, at *7 (S.D.N.Y. June 29, 2016) (citations omitted). The Court thus grants the Motion and takes judicial notice of these documents. *Levin v. Bank of N.Y. Mellon*, No. 09-CV-5900 (JPO), 2019 U.S. Dist. LEXIS 22788, at *83 n.2 (S.D.N.Y. February 12, 2019).

As Your Honor did in *Levin*, and for the reasons stated above, Plaintiff Jones respectfully requests the Court to take judicial notice according to FCRP 201(c)(2) of the documents attached here as **Exhibit 1 and 2**.

### **UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK, DAMIAN WILLIAMS, CONFIRMS EVIDENCE OF SEAN COMBS ENGAGING IN RACKETEERING, FACILITATION OF PROSTITUTION, AND SEX TRAFFICKING**

Upon reviewing the **fourteen-page** federal RICO indictment of Sean Combs, the Court will notice that the indictment closely mimics Plaintiff Jones's Second Amended Complaint. In the press conference announcing the indictment of Mr. Combs, the US Attorney for the Southern District of New York, Damian Williams, shared that the SDNY has over 50 witnesses, has secured hours of video evidence, flight data, as well as other corroborating evidence to fully support the federal RICO, and TVPA charges, which are identical to the claims raised by Plaintiff Jones in his second amended Complaint. The following is a link to Mr. Williams's press conference announcing the Combs indictment: https://youtu.be/Y7-4Jwgi7t0?si=PztoqmxAAv1hdmTo

Although Mr. Williams did not name the businesses that comprise the "Combs Enterprise," which is nearly the exact name Plaintiff Jones used in the Second Amended Complaint, "the Combs Rico Enterprise," or the members of the RICO enterprise, Plaintiff is **VERY** confident that Love Records, Combs Global Enterprises, Kristina Khorram, Frankie Santella, Brendan Paul, Justin Combs, and Moy Baun will be identified as members of the enterprise.

There are others, such as Mr. Combs's accountant who wired money to Mr. Jones, the travel agent who booked the flights for the sex workers to travel both nationally and internationally, and the attorney who has worked as Mr. Combs's fixer for over 30 years, and who has aided and abetted him in covering up and executing many of his crimes. In an effort not to impede Mr. Combs's criminal prosecution, Plaintiff has opted not to name these individuals in this opposition to the Motion to dismiss.

If, in their reply, the Defendants decide to foolishly 'look a gift horse in the mouth[10],' then Plaintiff will gladly supplement this opposition memo and provide the Court with the identities of the individuals referenced above.

### **STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure cannot be granted unless a complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009); *see also* Fed R. Civ. P. 12(b)(6). In reviewing a motion to dismiss

---

[10] https://www.merriam-webster.com/dictionary/look%20a%20gift%20horse%20in%20the%20mouth

under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d. Cir. 2015) (quoting *Jaghory v. NY State Dep't of Educ.*, 131 F.3d 326, 329 (2d. Cir. 1997)). Regarding discrimination claims, courts require only that plaintiffs' claims "provide an outline of what is necessary to render [employment discrimination] claims for relief plausible." *Pahuja v. Am. Univ. of Antigua*, 11 Civ. 4607, 2012 US Dist. (SDNY December 18, 2012) (quoting *Somersett v. City of New York*, 2011 US Dist. (SDNY June 28, 2011)).

As the Supreme Court has specified, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, noting that "[d]etermining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. in 1950.

## ARGUMENT

I. **THE PLAINTIFF HAS NOT FAILED TO STATE A RICO CLAIM**:

The grand jury's indictment of Plaintiff creates a presumption of probable cause. *See Bernard,* 25 F.3d at 104 (holding that a grand jury indictment creates a presumption that the arrest was procured with probable cause). *Almonte v. Florio*, 2004 U.S. Dist. LEXIS 335, at *22 (S.D.N.Y. Jan. 12, 2004). It goes without saying that after the indictment of Sean Combs, the bombastic bloviations in the Defendants motion to dismiss did not age well.

Here, as evidenced by US Attorney Williams's press conference and the Grand Jury Indictment in Exhibit 1, Defendant Sean Combs and the Combs RICO Enterprise are presumed guilty of being a RICO criminal organization. Defendants go on to make a series of baseless arguments for dismissal of Plaintiffs' civil RICO claims. As discussed below, none of these arguments has any merit, and – to the contrary – numerous federal courts adjudicating substantially similar racketeering cases have sustained civil RICO claims that look exactly like the RICO claims in the present case. Paragraphs 201 to 276 of the Plaintiff's Second Amended Complaint provide more than enough detail to inform the defendants of their violations of federal RICO laws.

First, Defendants contend that Plaintiff supposedly has not alleged the existence of RICO "enterprises" because, presumably, Plaintiff failed to allege a "hierarchy, organization and activities" sufficient to show that the members functioned as a unit. This is absurd. As clearly

7

alleged in the Complaint, KK, Brendan Paul, Frankie, Moy, Justin, and Stevie J, were all members of the RICO enterprise.

Sean Combs was the head, KK was the chief of staff, Brendan was the drug runner (as evidenced by his arrest and conviction over the summer of 2024), Moy was an assistant of Sean Combs and KK who would pay the sex workers, Justin would recruit women, and Stevie J would carry Sean Combs gun in and out of clubs, and was also responsible for recruiting sex workers. If the defendants are confused as to how each individual listed above fits into the RICO enterprise, the Plaintiff will eagerly provide those additional details in an amended pleading.

As stated in several letters filed on the docket, Love Records was a sex trafficking money laundering operation funded by Motown Records and UMG. As evidenced by the declaration of Motown Records counsel, Motown gave Sean Combs over 1 million dollars to cover the previously incurred costs of creating the Love Album. Motown Counsel did not confirm if Sean Combs actually incurred any prior expenses. In fact, she states that she had a working relationship with Sean Combs's lawyer, Kenny Meiselas, the same Kenny Meiselas who aided and abetted Sean Combs in his commission of several criminal acts. As stated above, Kenny Meiselas presented Kirk Burrows with documents transferring his 25% share of Bad Boy Entertainment to Sean Combs's mother, Janice Combs, as Sean Combs was swinging a baseball bat above his head. Motown's attorney admitted to not confirming the alleged expenses, and as evidenced by the Plaintiff's sworn affidavit, Sean Combs told him that Motown and UMG funded the Club Love parties where prostitution, sex trafficking, and drugging were prevalent.

Love Records and Combs Global are each alleged to be a separate corporate enterprise. As corporate enterprises, Love Records and Combs Enterprises have their own independent corporate existence and are inherently distinct from the actions in which they may engage, including racketeering activity. However, Defendants try to make an issue out of Plaintiff's allegation that Love Records and Combs Global existed for the purpose of furthering sex trafficking and money laundering, that does not change the fact that – as corporate enterprises – they had a separate legal existence from the underlying patterns of racketeering activity, which is all that is required. See, e.g., State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C., 2015 U.S. Dist. LEXIS 104332 at * 13 (E.D. Mich. 2015)("[T]o the extent Defendants claim that the pattern of racketeering activity cannot be used to reveal the existence of an enterprise, or that the enterprise cannot exist for the purpose of accomplishing the racketeering activity, this position was rejected

8

by the Supreme Court in" Boyle v. United States, 556 U.S. 938 (2009)); Lyons, supra, 843 F. Supp. 2d at 368 (rejecting argument identical to the one raised by the Defendants herein, and noting that "the Supreme Court has made clear that a wholly illegitimate enterprise, just like a legitimate enterprise, may constitute an enterprise under RICO."); Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243, 274 (E.D.N.Y. 2012)(rejecting identical argument, and holding that "Corporations are expressly included in the definition of enterprise. … Although the purpose of Excel was fraud, a wholly illegitimate organization, just like a legitimate one, may constitute a RICO enterprise.")

Second, Defendants appear to contend that Plaintiff has not pleaded the RICO predicate acts of mail and wire fraud with the requisite particularity under Rule 9(b). Tellingly, however, Defendants never get around to actually showing how Plaintiff's wire and mail fraud allegations fail to satisfy Rule 9(b). As discussed above, Plaintiff has pleaded the overall mechanics of Defendants' fraudulent scheme in exacting detail and backs up its allegations with numerous, claim-specific examples of the Defendants' unlawful activity, as well as detailed charts setting forth large, representative examples of instances in which the Defendants used the mail and wires in furtherance of their fraudulent scheme. Numerous federal courts – adjudicating racketeering cases just like this one – have held allegations with a virtually identical, or even lesser, level of detail sufficient under Rule 9(b). See, e.g., Korn, Zuberi, Hamilton Healthcare, Ningning He, Lyons, Clear Vision Windshield Repair, supra.

If the defendants would like additional details as to how they used the mail and the United States banking system to commit their mail and wire fraud, the Plaintiff will gladly replead and include the identity of the defendant's accountant, as well as the account number which they used to commit their wire fraud. We will also provide the identity of the travel agent who booked all of the flights and rented all of the chartered planes that Mr. Combs and the members of the Combs RICO enterprise used to traffic prostitutes, victims of sexual trafficking, drugs, and unmarked guns both nationally and internationally. We will also provide the name of the charter company that knowingly had Mr. Combs's name on multiple flight manifests traveling to and from national and international destinations, all on the same day and often at the same time, while Mr. Combs was sitting in his house in Miami. Maybe Mr. Combs will provide a sworn declaration under penalty of perjury attesting to what and/or who was on those planes.

We will also provide detailed information (dates, times, and places) when Mr. Combs and the members of his RICO enterprise used TSA to transport cocaine, tusi, ketamine, and other illegal drugs both nationally and internationally.

Third, Defendants advance a groundless argument to the effect that Plaintiff failed to plead "relatedness" or "continuity" based solely on their misguided position that Plaintiff failed to plausibly plead an enterprise. On September 19, 2024, a grand jury in the Southern District of New York indicted Sean Combs for operating a RICO Enterprise, and as detailed above, a grand jury's indictment of a plaintiff creates a presumption of probable cause that the Plaintiff is guilty of the underlying charge. In this case, it is RICO.

Plaintiff has plausibly pled a RICO claim, but if the Court believes that Plaintiff must replead his claim, Plaintiff respectfully requests leave to amend.

## II. THE PLAINTIFF HAS NOT FAILED TO STATE A TVPA CLAIM:

The Combs Defendants' attack on Jones' TVPA claim can be distilled into a handful of arguments. As demonstrated in detail infra, each of those arguments is meritless.

The Combs Defendants assert that the TVPA claim is so "facially implausible" and "outlandish" that it can be disposed of on a motion to dismiss. (Def. Mem. at 16.) But unlike those cases, Jones does not allege that the 9/11 attacks never happened, nor do the Combs Defendants assert that Jones' claims rise to the level of "delusional or irrational."[11] Moreover, the category of cases that can be dismissed on a finding that the claims are "fantastic" or "delusional" is necessarily narrow. *See Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (a "complaint may not be dismissed . . . simply because the court finds the plaintiff's allegations unlikely"). Accordingly, Jones' TVPA claim should not be dismissed for this reason.

The Combs Defendants also assert that Jones has failed to allege that he was compelled to act based on "force, fraud or coercion." (Def. Mem. at 15, *citing* SAC ¶¶ 298-313. But the Combs Defendants fail to acknowledge that Jones' TVPA claim "incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein." SAC ¶ 298. And the 297 paragraphs in the SAC preceding Jones' TVPA claim are replete with allegations of force, fraud and/or

---

11   Neither of the cases cited by the Combs Defendant is on point. In *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011), the Plaintiff alleged, inter alia, that no plane crashed into the Pentagon on September 11, 2001. *See also Leib-Podry v. Tobias*, No. 22-CV-8614 (VEC) (JW), 2024 WL 1421152, *5 (S.D.N.Y. February 13, 2024) (characterizing the pro se Plaintiff's allegations of forced surgery as "delusional and irrational"), report and recommendation adopted, 2024 WL 1134597 (S.D.N.Y. March 15, 2024).

coercion.  E.g. SAC ¶¶ 29(c) (display of firearms); 36-37 (shooting); 73-75 (repeated assaults by Combs); 94-98 (sexual assault by Combs' associate); 100-01 and 106-07 (use of "force"); 108 ("forced" sexual acts); 113 (use of "power and influence to intimidate and force"); 114 (false representations); 115 (threat); 143-46 (threats); 187-89 (threats); 252(c) (display and use of firearms); 278-80 (physical and sexual assault).  These allegations are more than sufficient to establish "fraud, force or coercion" at the Motion to dismiss stage.

While citing no authority, the Combs Defendants also criticize Jones' alleged failure to "link" any specific sex act to any specific threat.  (Def. Mem. at 15-16.)  But the SAC is replete with details regarding both sex acts and threats, and neither the plain language of the TVPA nor the Federal Rules of Civil Procedure require that any "linkage" between the two be alleged.  In fact, the only case cited by the Combs Defendants on the issue of causation is Noble v. Weinstein, 335 F. Supp. 3d 504 (S.D.N.Y. 2018), denied a Rule 12(b)(6) motion to dismiss a TVPA claim. See id. at 515 ("Plaintiff's Amended Complaint adequately states a claim under Section 1591 against Harvey Weinstein").

The Combs Defendants also assert that Jones' TVPA claim is flawed because it fails to allege "commercial sex acts" and that Jones does not allege that "anything of value was given or received."  (Def. Mem. at 17 [brackets omitted], *citing Corradino v. Liquidnet Holdings, Inc.,* No. 19 CIV. 10434 (LGS), 2021 WL 2853362 at *3 (S.D.N.Y. July 8, 2021).  But while Corradino correctly found that sexual harassment did not give rise to a TVPA claim, it also recognized that allegations of promises of career advancement or other compensation connected to sex acts would suffice to state a claim under the TVPA.  *See id*.  ("The prospect of career advancement can render a sex act commercial in nature").  *See also Acevedo v. eXp Realty, LLC*, ___ F. Supp. 3d ___, ___, 2024 WL 650189, *15 (C.D. Cal. January 29, 2024) (distinguishing Corradino based on the difference between "sexual harassment" and "sex acts").

The SAC alleges numerous such promises.  E.g. SAC ¶¶ 91, 114, 189, 211, 215, 231, 252. For this reason, the Combs Defendants' "anything of value" argument fails.

Finally, the Combs Defendants assert that the TVPA claim against Combs Global must be dismissed because Jones has not alleged that it participated in or benefited from the numerous sex acts alleged in the SAC.  (Def. Mem. at 17-18, *citing Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019).  But Combs Global is owned and controlled by – and legally indistinguishable from – Sean Combs.  Moreover, "traditional vicarious liability rules" apply to

11

TVPA claims, and those rules are sufficient to state a claim against Combs Global at the Rule 12(b)(6) stage. *See T.S. v. Wyndham Hotels & Resorts, Inc.*, Case No. CV-2530 (PJS/ECW), 2024 WL 3927382, *3-6 (D. Minn. August 23, 2024) (collecting cases addressing vicarious liability under the TVPA and denying Motion to dismiss TVPA claim). For both of those reasons, the allegations in the SAC are sufficient to state a TVPA claim against Combs Global.

Plaintiff has plausibly pled a TVPA claim, but if the Court believes that Plaintiff must replead his TVPA claim, Plaintiff respectfully requests leave to amend.

### III. THE PLAINTIFF STATES A SEXUAL ASSAULT CLAIM AGAINST MR. COMBS:

The Plaintiff plausibly pleads a claim for sexual assault. If the defendants would like Plaintiff to draw a diagram, Plaintiff would happily oblige. "[D]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment." *Redd*, 678 F.3d at 177. (quoting *Worth v. Tyler*, 276 F.3d 249, 268 (7th Cir. 2001)). *Small v. Garland*, No. 18-CV-5659 (BCM), 2021 U.S. Dist. LEXIS 63010, at *46 (S.D.N.Y. March 31, 2021). the touching of the buttocks or the leg can constitute sexual abuse (*see Matter of Selena J.*, 35 AD3d 610, 825 NYS2d 749 [2006]; *People v Gray*, 201 AD2d 961, 607 NYS2d 828 [1994]; *People v Felton*, 145 AD2d 969, 971, 536 NYS2d 340 [1988]), and the intent to gain sexual gratification may be inferred from the acts themselves (*see People v Stewart*, 57 AD3d 1312, 1315, 870 NYS2d 157 [2008], *cert denied* 558 US __, 130 S Ct 1047, 175 L Ed 2d 890, 2010 WL 58462 [2010]; *Matter of Kryzstof K.*, 283 AD2d 431, 723 NYS2d 888 [2001]). *Matter of Daniel R.*, 2010 NY Slip Op 970, ¶ 3, 70 A.D.3d 839, 841, 894 N.Y.S.2d 165, 168-69 (App. Div. 2nd Dept.).

Plaintiff did not go into graphic detail as to the extent of Sean Combs's sexual assault, but it is evident from the multiple civil lawsuits and the fourteen-page indictment the kind of sexually deviant monster Sean Combs is. If the Court believes that Plaintiff must replead his Sexual Assault claim, Plaintiff respectfully requests leave to amend. Plaintiff will provide additional detail and cite the relevant state penal statutes relating to the disturbing actions Sean Combs visited upon Plaintiff.

### IV. THE PREMISES LIABILITY CLAIM DOES NOT FAIL:

The Plaintiff plausibly pled his premises liability claim under both Florida and Virginia law. As to the element of foreseeability, Jane Doe 1, Sean Combs, and Yung Miami were all in

the bathroom snorting coke. Plaintiff went to the restroom to urinate, and Jane Doe 1 entered and attempted to perform oral sex on Plaintiff. Sean Combs, Moy, and Yung Miami were all outside the restroom, laughing loudly and egging Jane Doe 1 on. Furthermore, when Plaintiff exited the restroom, they were all physically present when she proceeded to undress and mount Plaintiff, attempting to have sex with him.

As it pertains to Cuba Gooding Junior, three months prior to sexually assaulting Plaintiff, he had pled guilty to "forcible touching[12]" in New York State court. To say that it was unforeseeable is laughable at best and downright ridiculous at worst. Cuba Gooding, Jr. is an Oscar-winning actor who has fallen from grace. His conviction was international news[13]. Sean Combs knew or should have known that he had an issue keeping his hands to himself.

Confusingly, Defendants claim that the premises liability pleading is insufficient because Plaintiff failed to allege that Defendant Combs exercised sufficient control of a third party. For starters, to even get to Defendant Combs's home on Start Island in Miami, Florida, Jane Doe 1 has to go through two layers of security. The first layer is the security to even get onto Star Island, which Mr. Combs would have had to advise in advance that Jane Doe 1 was coming, and then the second layer of security requires Jane Doe 1 to sign an NDA and get through the armed security guards that are detailed outside of Defendants Combs home. Saying that he did not have sufficient control over Jane Doe 1 is a sign of lunacy.

As it pertains to damages, Defendants argue that Plaintiff has not alleged damages, and presumably was not damaged because he "rebuffed" the attempted tortfeasor. With this logic, I guess Defendant Combs did not really harm Cassie Ventura as he stomped her into the ground, because she managed to curl up in a ball and "rebuff" some of his kicks and stomps. I guess she was not harmed by the vase he tossed at her body because she extended her arm and "rebuffed" it away. The sheer idiocy of this argument does not deserve a response.

Being sexually harassed and assaulted is known to cause victims to suffer from emotional distress. The Plaintiff is in ongoing therapy now and has been for over a year. The Plaintiff sees his therapist multiple times a week. As detailed in the section below, Plaintiff's damages are established through his emotional distress.

---

[12] https://www.nytimes.com/2022/10/13/nyregion/cuba-gooding-jr-guilty-plea-harassment.html
[13] https://apnews.com/article/entertainment-cuba-gooding-jr-manhattan-new-york-arts-and-f98b526d43114ec803b98f8b62ab9645

13

Plaintiff has plausibly pled a Premises Liability claim, but if the Court believes that Plaintiff must replead his Premises Liability claim, Plaintiff respectfully requests leave to amend.

V.   **THE EMOTIONAL DISTRESS CLAIMS AGAINST COMBS DOES NOT FAIL**:

In order to prevail on a claim of intentional infliction of emotional distress under New York law, a plaintiff must show "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996)(citing Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993)). Because the Court finds that Plaintiff has not made a sufficient showing with respect to even the first element, her claim must fail. See Matute v. Hyatt Corp. et al., 1999 U.S. Dist. LEXIS 2873, 98 Civ. 1712 (AGS), 1999 WL 135204, at *4 (March 11, 1999).

New York sets a very rigorous standard for demonstrating "extreme and outrageous conduct." In order to satisfy the standard, a plaintiff must show that the behavior to which she was subjected was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Murphy v. American Home Products Corp., 58 N.Y.2d 293, 302, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)(quoting Restatement of Torts, Second, § 46, comment d (1965)); see also Howell, 81 N.Y.2d at 121 (setting forth standard, and noting that the first element -- outrageous conduct -- "serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine."). *Guzman v. ARC XVI Inwood*, 97 Civ. 0031 (THK), 1999 U.S. Dist. LEXIS 3983, at *39-40 (S.D.N.Y. March 30, 1999).

In fact, in the employment context, the majority of instances in which plaintiffs have prevailed on such claims have been in sexual harassment cases involving some type of physical assault. See Mohamed v. Marriott Int'l Inc., 905 F. Supp. 141, 158 (S.D.N.Y. 1995) (citing O'Reilly v. Executone of Albany, Inc., 121 A.D.2d 772, 503 N.Y.S.2d 185, 186 (3d Dep't 1986)(sustaining intentional infliction of emotional distress claim where Plaintiff was subjected to repeated sexual harassment by her supervisor including sexual jokes, comments, and inquiries, sexually oriented physical contact, and exposed to sexually explicit materials); Koster v. Chase Manhattan Bank, N.A., 609 F. Supp. 1191, 1198 (S.D.N.Y. 1985)(holding that Plaintiff's

allegations that her supervisor had forced her to engage in an ongoing sexual relationship were sufficient to state a cause of action for intentional infliction of emotional distress)). See also Gerzog, 907 F. Supp. at 604 ("In the rare instances where New York courts have found the Complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery.")(citing cases). *Guzman v. ARC XVI Inwood*, 97 Civ. 0031 (THK), 1999 U.S. Dist. LEXIS 3983, at *42-43 (S.D.N.Y. March 30, 1999).

Here, Plaintiff pleads facts establishing that Defendant Combs not only groped him and sexually assaulted him, he forced him to engage in sex acts with prostitutes and sex workers and recorded Plaintiff without his knowledge or consent. Furthermore, Plaintiff pled that he was drugged and woke up with two sex workers and Defendant Combs in bed with him.

It is important to note that Defendant Combs has conveniently picked and chosen when to apply the laws of other states. They did not allege that Plaintiff failed to satisfy the standards set by the states of California or Florida, the locations where Defendant Combs owns the property, and where the majority of these assaults took place.

**California**: [harassing e-mails might constitute intentional infliction of emotional distress]; *Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 809 [52 Cal. Rptr. 3d 376] [anonymous e-mails graphically threatening physical harm insufficient]; see *Kiseskey v. Carpenters' Trust for So. California* (1983) 144 Cal. App. 3d 222, 229–230 [192 Cal.Rptr. 492] [threats of harm or death to Plaintiff and his family for failure to sign new union agreement sufficiently "outrageous"].) If properly pled, a claim of sexual harassment can establish "the outrageous behavior element of a cause of action for intentional infliction of emotional distress." (*Fisher v. San Pedro Peninsula Hospital*(1989) 214 Cal. App. 3d 590, 618 [262 Cal. Rptr. 842].) *Hughes v. Pair*, 46 Cal. 4th 1035, 1051, 95 Cal. Rptr. 3d 636, 651, 209 P.3d 963, 976 (2009).

**Florida** follows a similar standard to New York. Needless to say, the Plaintiff's pleading satisfies the pleading standards of both Florida and California.

Plaintiff has plausibly pled his emotional distress claims, but if the Court believes that Plaintiff must replead his emotional distress claims, Plaintiff respectfully requests leave to amend.

///
///
///
///

15

VI. **THE BREACH OF ORAL CONTRACT CLAIM DOES NOT FAIL**:

New York courts generally construe the statute of frauds narrowly, voiding only those oral contracts 'which by their very terms have absolutely no possibility in fact and law of full performance within one year.'" *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 110 (2d Cir. 2014) (quoting *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 454, 472 N.E.2d 992, 483 N.Y.S.2d 164, 165 (1984)). *Komlossy v. Faruqi & Faruqi, LLP*, 714 F. App'x 11, 13 (2d Cir. 2017).

Here, the Plaintiff's Breach of Oral Contract claim survives the fraud statute. All of the songs composed by Mr. Jones were completed in less than a year. Mr. Jones possesses every version of every song for which he is seeking compensation. The versions are all timestamped, and Mr. Jones can establish through limited discovery, that he completed the work on *Deliver Me, Stay PT 1, Reachin', What's Love, Stay Awhile, Moments, Need Somebody, Homecoming*, and *Tough Love* in less than a year. Additionally, Mr. Jones played an instrument on the following songs: *Brought My Love, and Creepin Remix*. This was also completed within less than a year.

None of the terms of this contract, which Mr. Jones outlines in the pleading, violate the statute of fraud, as Mr. Jones performed his part of the contract within less than a year. In fact, several of the songs were completed within 60 days of Mr. Jones' arrival at Love Records.

Plaintiff has plausibly pled his breach of oral contract claim, but if the Court believes that Plaintiff must replead his breach of oral contract claims, Plaintiff respectfully requests leave to amend.

VII. **LEAVE TO AMEND**:

Plaintiff respectfully requests leave to amend if the Court deems any part of Plaintiff's pleading insufficient. Fed. R. Civ. P. 15(a). This and the other Federal Rules reject the approach that pleading is a game of skill in which one misstep by Counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. *Willard Dairy Corporation v. National Products Corporation*, 373 U.S. 934, 935, 83 S.Ct. 1534, 10 L.Ed.2d 691 (1963) (citing *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering a motion for leave to amend, the Court should examine the underlying facts and whether the Plaintiff should be permitted to test claims on the merits rather than the technical requirements of pleading. In *re ML-Lee Acquisition Fund II, L.P., and ML-Lee*

*Acquisition Fund* (Retirement Accounts) *II, L.P. Securities Litigation*, 848 F.Supp. 527, 567 (D. Del. 1994) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

According to Rule 15(a)(2), a party may amend its pleading upon the opposing party's written consent or with leave of Court. Fed. R. Civ. P. 15(a)(2), Courts will freely grant leave to amend "when justice so requires." Fed. R. Civ, P. 15(a)(2); see *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *in re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,1434 (3d Cir, 1997). Nevertheless, the Court may, in its discretion, deny a motion for leave to amend in one of three instances: (1) the movant engaged in undue delay, bad faith, or dilatory motives; (2) the amendment would cause undue prejudice to the non-movant; or (3) amendment would be futile, See, e.g., *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *BTG Int'l Ltd. v. Actavis Labs. FL, Inc.*, Civil No. 15-5909 (KM), 2017 U.S. Dist. LEXIS 18273, 2017 WL 529446, at *2 (D.NJ. February 8, 2017). Ultimately, the decision of whether to grant leave to amend lies within the Court's sound discretion. *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

The Plaintiffs seek to amend their Complaint to supplement viable facts, evidence, and causes of action against Defendants. The Plaintiff is not acting in bad faith, with a dilatory motive, or delay. See, *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993); also, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Foman v. Davis*, 371 U.S. at 182; *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F.Supp.2d 484, 487 (D. Del. 2003). On the contrary, Plaintiff is acting in good faith to place detailed facts on the record and to ensure that every cause of action that can be brought is raised. Plaintiffs believe the amended Complaint would survive a challenge under Rule 12(b)(6) and 9. See, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. The plaintiffs seek to amend their Complaint to clarify legal allegations, add facts, and provide further detail and evidence to support their case.

Granting leave to amend the Complaint will not substantially delay this action in any way. This Motion is being filed early in this case. The proposed amended Complaint would set forth more specific facts and additional evidence supporting the Plaintiff's claim for damages. Where a claim is vulnerable to dismissal under Rule 12(b)(6), but the Plaintiff moves to amend, "leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Indeed, under the liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a merely deficient

complaint. See *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). The Third Circuit has gone so far as to hold that "[w]hen a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [it] has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002). Accordingly, the Court should freely give leave to amend a Complaint "when justice so requires" and leave under Rule 15(a) should be freely granted. See FRCP 15(a)(2); *Foman v. Davis*, 371 U.S. 178 (1962); *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984), cert. denied, 469 U.S. 1122 (1985).

## **CONCLUSION**:

The Plaintiff requests the Court to deny the Defendant's Motion to Dismiss the Plaintiff's Second Amended Complaint. If the Court is inclined to grant any part of the Defendant's Motion to dismiss, the Plaintiffs respectfully request leave to amend to rectify any issues the Court identifies in the Plaintiff's pleading. Finally, Plaintiff respectfully requests that the Court take judicial notice of Exhibit 1 and Exhibit 2.

Dated: September 30, 2024

                                                                        /s/*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Tel: 347-342-7432
TBlackburn@TABlackburnlaw.com