UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RODNEY JONES,

                    Plaintiff,

          -v-

SEAN COMBS, *et al.*,

                    Defendants.

24-CV-1457 (JPO)

MEMORANDUM
 AND ORDER

---

J. PAUL OETKEN, District Judge:

    Plaintiff brings this suit alleging, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961, *et seq.*, and the Trafficking Victims Protection Act of 2000 ("TVPA"), 18 U.S.C. §§ 1591, *et seq.*, based on Defendant Sean Combs's alleged sexual misconduct. Before the Court is a motion for sanctions brought by a subset of defendants associated with Universal Music Group and implicated in the case as a result of their business dealings with Mr. Combs. For the reasons that follow, the motion is denied.

**I.    Background**

    Plaintiff Rodney Jones brought this action against Sean Combs and an assortment of additional defendants purportedly associated with Combs, asserting a variety of claims based on Combs's alleged history of sexual assault and human trafficking. (ECF No. 1 ("Compl.").) In each of three successive complaints, Jones named several defendants affiliated with Universal Music Group ("UMG"), including: UMG itself; Lucian Grainge, UMG's chief executive; Motown Records ("Motown"), a record label owned by UMG; and Ethiopia Habtemariam, Motown's chief executive (collectively the "UMG Defendants"). (*Id.*; ECF No. 2 ("FAC"); ECF

No. 38 ("SAC").)[1]  Before voluntarily dismissing them from the case, Jones alleged that the UMG Defendants were responsible for Combs's misconduct, though the rationale underlying the defendants' alleged responsibility changed between the first and second amended complaints. The initial complaint and first amended complaint alleged that UMG, Motown Records, Grainge, and Habtemariam were the "employer, parent company, sponsor, and respondent [sic] superior of . . . Combs," and participated directly in his criminality.  (*See* FAC ¶ 222.)  Jones then dismissed Habtemariam from the suit (ECF No. 8), and updated his allegations against UMG, Motown, and Grainge.  The second amended complaint alleged that UMG, Motown Records, and Grange were liable based on a license agreement between Motown and Love Records that created a partnership between the entities.  (*See* SAC ¶¶ 160-73.)  The first two complaints also claimed Grainge and Habtemariam attended Combs's alleged "sex trafficking" parties (FAC ¶¶ 162-64; 171-74), but Jones dropped these allegations from the second amended complaint.

Jones's lawyer, Tyrone Blackburn, filed the initial complaint on February 2, 2024. (Compl.)  Although the complaint made it onto the ECF docket, it was docketed with a notice of a "filing error" and Blackburn was instructed to "re-file" it.  (*Id.*)  On March 4, 2024, Blackburn filed another version of the "Complaint" with modest changes (but the same substantive allegations).  (FAC.)  On the same day, the UMG Defendants sent Blackburn a letter notifying him of their intent to move for Rule 11 sanctions, thereby beginning the 21-day Rule 11 safe harbor period.  (ECF No. 29-1.)  On March 27, 2024, Defendants filed a motion to dismiss the first amended complaint.  (ECF No. 24.)  After several attempts to file a second amended

---

[1] The parties appear to dispute whether the document filed by Mr. Blackburn on March 4, 2024 is an "amended" complaint, creating some confusion on the docket as to whether the complaint has been amended once or twice.  (ECF No. 25 at 1 n.1.)  Because this dispute is immaterial, the Court does not resolve it.

complaint without the Court's leave, Blackburn received leave (ECF No. 36), and filed a second amended complaint on April 12, 2024 (SAC). On April 24, 2024, the UMG Defendants filed an updated motion to dismiss the second amended complaint. (ECF No. 40.)

On May 14, 2024, Blackburn moved to voluntarily dismiss all claims against the UMG Defendants (ECF No. 49), to which the UMG Defendants consented (ECF No. 50). In his motion for voluntary dismissal, Blackburn attested that "[b]ased on [his] examination of all of the papers submitted in support of both motions to dismiss . . . [he has] concluded that there is no legal basis for the claims and allegations that were made against the UMG Defendants." (ECF No. 49-1 at 2.) Blackburn withdrew the claims against the UMG Defendants within the 21-day "safe harbor" period prescribed by Rule 11(c)(2) of the Federal Rules of Civil Procedure. (*See* ECF No. 53 ("Mem.") at 12-13.) Three days later, on May 17, 2024, the UMG Defendants nonetheless moved the Court to sanction Jones and Blackburn under its inherent power and 28 U.S.C. § 1927. (ECF No. 52.) Blackburn opposed their motion on June 3, 2024 (ECF No. 58), and the UMG Defendants replied on June 7, 2024 (ECF No. 60). Subsequently, the other defendants in the case moved to dismiss the operative complaint for failure to state a claim. (ECF Nos. 66, 71.)

## II.     Legal Standard

Under Rule 11, a motion for sanctions "must be served" on the opposing party first, and it may not be filed if the challenged conduct "is withdrawn or appropriately corrected within 21 days after service" of the motion. Fed. R. Civ. P. 11(c)(2). Because Jones and Blackburn withdrew the offending allegations within Rule 11's safe harbor period, the UMG Defendants have instead asked the Court to impose sanctions under two different sources of authority.

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the

excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To succeed under § 1927, a plaintiff must demonstrate "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (quoting *Agee v. Paramount Commc'ns Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)). The second prong—bad faith—can be established by inference from completely meritless actions. *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) ("[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."). Awards pursuant to § 1927 may be imposed only against the attorney, not the client. *Id*.

"A federal court may [also] 'exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023) (quoting *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). The standard for imposing sanctions pursuant to the Court's inherent power is the same as that under Section 1927: "(1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Revson*, 221 F.3d at 79 (quotation marks omitted). Importantly, "whereas each of [Rule 11 and Section 1927] reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." *Chambers*, 501 U.S. at 46. That form of sanction power works "to fill in the interstices" left by existing rules and statutes. *Id*. However, while "[t]he Supreme Court has made clear that a district court has inherent authority to sanction," *Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992), such sanctions must be imposed "with restraint and discretion." *Schlaifer Nance & Co., Inc. v. Est. of Warhol*, 194 F.3d 323, 334

(2d Cir. 1999). Finally, while § 1927 sanctions may only be imposed on an attorney, sanctions under the Court's inherent authority may be imposed on a party as well. *See Weiss v. Yotta Techs., Inc.*, No. 22-CV-8569, 2024 WL 4285849, at *5 (S.D.N.Y. Sept. 25, 2024).

Before punishing actions taken "on behalf of a client" under either § 1927 or its inherent authority, the Court "must make an explicit finding of bad faith." *Rossbach*, 81 F.4th at 143. Negligence or recklessness alone does not suffice. *Id.* Moreover, "a sanction of attorneys' fees—whether premised on a lawyer's representational or non-representational conduct—must always be supported by a finding of bad faith." *Id.* This stands in contrast to Rule 11 sanctions, which, on a motion by opposing counsel, may be imposed for "objectively unreasonable" conduct in the absence of subjective bad faith. *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013); *see also Weiss*, 2024 WL 428584, at *4 n.2 ("Underlying the Second Circuit's approach is the recognition that sanctions imposed pursuant to the court's inherent authority may be levied only upon a finding of bad faith, obviating the requirement for a safe harbor that protects attorneys and parties from much more innocent conduct that may be sanctionable under Rule 11.").

**III.   Discussion**

Because the standards for imposing § 1927 and inherent authority sanctions are the same, the Court evaluates them together. Jones and Blackburn have already admitted, in complying with Rule 11 and withdrawing the relevant claims, that "there is no legal basis" for those claims, so the crux of the inquiry is whether there is clear evidence that they[2] acted with subjective bad faith.

---

[2] While the UMG Defendants repeat the phrase "Plaintiff and Blackburn" throughout their filings (*see, e.g.*, Mem. at 9 ("Plaintiff and Blackburn decided to simply change their

While Jones and Blackburn are not formally shielded from sanctions by a safe harbor withdrawal, as Blackburn is from Rule 11 sanctions, their willingness to voluntarily withdraw the offending claims is still somewhat persuasive evidence that they were not acting in bad faith. Sanctioning them despite their timely withdrawal of the offending claims "would have the unwanted and undesirable effect of rendering Rule 11's separate motion and safe harbor provisions meaningless." *Richtone Design Grp., L.L.C. v. Classical Pilates, Inc.*, No. 06-CV-0547, 2007 WL 1098706, at *2 n.1 (S.D.N.Y. Apr. 10, 2007) (quotation marks omitted).

Moreover, while Defendants attempt to make hay out of the fact that Jones and Blackburn technically filed two amended complaints, the Court is not inclined to hold that against them for purposes of this motion. The initial and first amended complaints do not differ greatly in substance,[3] and it appears that the first amended complaint was filed primarily because minor mistakes—an erroneous title and cover sheet—affected the filing of the initial complaint. Of course, Jones and Blackburn could have withdrawn the claims in the seven days between filing the initial complaint and the first amended complaint,[4] but Defendants did not reach out to them in that short window of time, and there is no reason to think that they had more information available to them on March 4 than they did on February 26.[5]

---

'facts'"), 12 ("Plaintiff and Blackburn persisted with the SAC")), their arguments do not distinguish between the two, or explain how Jones specifically acted in bad faith.

[3] It appears that Blackburn used the week to edit and, in some cases, augment the complaint. Whether or not this was proper, it is not the focus of the UMG Defendants' sanctions request.

[4] The Court reiterates that the so-called "original" complaint was never accepted by the Court due to an ECF filing error, making it unclear whether the first amended complaint was a true amendment. (ECF Nos. 1, 2; Mem. at 13.)

[5] Based on the UMG Defendants' memorandum of law, it appears that the first time the UMG Defendants notified Jones and Blackburn about the problems with his claims was *after* the filing of the first amended complaint on March 4, 2024. (*See* Mem. at 5 (chastising Jones and Blackburn for "ignoring UMG's March 4, 2024 written notice of the falsity of the accusations

Nor were the complaints' allegations themselves so outlandishly and obviously false that the Court is willing to infer bad faith from their implausibility alone. Across the various complaints, Jones and Blackburn made two general kinds of allegations to which the UMG Defendants object. First, the initial and first amended complaints alleged that Grainge and Habtemariam personally attended parties hosted by Combs and attended by Jones. Jones and Blackburn modified and then withdrew these allegations once the UMG Defendants objected to them—that is, between the UMG Defendants' March 4, 2024 letter and the filing of the second amended complaint. (Mem. at 13.) Even when a "case should not have been brought in the first place," § 1927 (and inherent authority)[6] sanctions are generally "not aimed at a plaintiff's pre-filing conduct." *Rates Tech., Inc. v. Mediatrix Telecom, Inc.*, No. 05-CV-2755, 2012 WL 948661, at *2 (E.D.N.Y. Mar. 19, 2012); *see also Neu Prods. Inc. v. Outside Interactive, Inc.*, No. 23-CV-4125, 2024 WL 1161498, at *10 (S.D.N.Y. Mar. 19, 2024) (Gorenstein, Mag. J.), *report and recommendation adopted*, No. 23-CV-4125, 2024 WL 2992351 (S.D.N.Y. June 13, 2024). That is particularly true where, as here, Blackburn's client attested under oath to the veracity of the allegations.[7] (ECF No. 58-1 ¶ 78.)

---

and lack of legal merit of the claims, ignoring UMG's motion to dismiss the FAC and its first served motion for Rule 11 sanctions, [and] ignoring UMG's motion to dismiss the SAC and UMG's second served Rule 11 motion").)

[6] "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Kassenoff v. Kassenoff*, No. 22-CV-2162, 2024 WL 291225, at *3 (S.D.N.Y. Jan. 25, 2024) (quotation marks omitted).

[7] In withdrawing these claims, Blackburn admitted that they lacked a "legal basis." (ECF No. 49-1 ¶ 3.) But neither Blackburn nor Jones has admitted that the factual basis for the claims was fabricated, much less that they were fabricated for improper purposes. Lawyers and their clients may decide that their claims are legally insufficient for any number of reasons, and the timely withdrawal of the claims once their flaws were pointed out by Defendants provides some evidence suggestive of good faith. The Court also declines to exercise its discretion to sanction

Second, the UMG Defendants object to the various complaints' allegations that there was a "partnership" between Motown Records and Combs's own label, Love Records. (*See* ECF No. 58 ("Opp.") at 11.) According to Defendants, "there was no partnership, only an arm's length license agreement," which Defendants attached to their declarations in support of their motions to dismiss. (*See* Mem. at 10.) While Jones and Blackburn did have access to the license agreement before filing the second amended complaint, there was sufficient circumstantial evidence of a partnership that the Court declines to infer bad faith from their misreading of the contract. Specifically, UMG posted about a "partnership" with Mr. Combs on its LinkedIn page, and Motown Records posted about a "partnership" on its website. (ECF No. 28 at 1-2.)

Given the Court's determination that Jones and Blackburn did not levy these allegations in bad faith, it also concludes that Blackburn did not so egregiously misstate the applicable law with respect to RICO and the TVPA as to warrant sanctions. (*Cf.* Mem. at 4-5.) While such claims may have ultimately failed regardless, they were not so thoroughly without a basis that the Court can infer bad faith from their assertion alone.

Certain other factors also weigh against a finding a bad faith. "While Plaintiff's faith in [his] [claims] was clearly misguided, its decision to continue with this suit weighs against the conclusion that this litigation was undertaken simply to score an easy settlement." *Joao Control*

---

Plaintiff directly based on the apparent falsity of these allegations. Plaintiff alleges that, on various occasions, "Mr. Combs drugged him," leaving him "dizzy[] and confused." (FAC ¶ 104; *see also id.* ¶ 216) Under these circumstances, the court cannot conclude that there is "clear and convincing evidence" that Plaintiff fabricated his allegations against the UMG Defendants in bad faith, rather than simply being mistaken. *Cf. Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 286 n.22 (2d Cir. 2021). The Court is also mindful of the chilling effect that imposing sanctions on a party like Jones could have on future victims of sexual abuse. *See, e.g.*, *Doe v. Albuquerque Pub. Sch.*, No. 18-CV-00085, 2019 WL 1472332, at *8 (D.N.M. Apr. 3, 2019) (imposing sanctions "solely against Plaintiff's counsel so that future victims of alleged sexual abuse are not discouraged from coming forth and seeking legal representation").

*& Monitoring Sys., LLC v. Digit. Playground, Inc.*, No. 12-CV-6781, 2018 WL 1596068, at *6 (S.D.N.Y. Mar. 28, 2018) (discussing bad faith in the context of patent litigation). The UMG Defendants provide no evidence that Blackburn attempted to coerce them into executing a rushed settlement. And while the allegations in this case are certainly salacious and threatening to Defendants' reputations, the harms that lawsuits like this one seek to avoid are commensurately grave, and remedial statutes like the TVPA are to be construed liberally. *See, e.g.*, *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018). Finally, it is not clear that Blackburn has engaged in a "pattern of litigation designed to evade previous rulings." *Pentagen Technologies Int'l Ltd. v. United States*, 172 F.Supp.2d 464, 473 (S.D.N.Y. 2001), *aff'd*, 63 F. App'x 548 (2d Cir. 2003). Defendants point to Judge Cote's referral of Blackburn to the S.D.N.Y. grievance committee. *Zunzurovski v. Fisher*, No. 23-CV-10881, 2024 WL 1434076, at *2 (S.D.N.Y. Apr. 3, 2024). That referral, however, was for Blackburn's apparently recurrent failure to "investigat[e] the existence of either jurisdiction or venue," not for the sort of misconduct alleged here—bad faith fabrication of allegations. *Id*. Judge Cote also made no finding of bad faith in *Zunzurovski*[8] and declined to impose even Rule 11 sanctions. *Id*. Therefore, while Blackburn may have acted incompetently at times, there is insufficient evidence for the Court to conclude that he has engaged in a pattern of bad faith.

---

[8] Judge Cote did observe that "[a] reasonable inference from Blackburn's pattern of behavior is that he improperly files cases in federal court to garner media attention, embarrass defendants with salacious allegations, and pressure defendants to settle quickly." *Zunzurovski*, 2024 WL 1434076, at *5. While this may be true, a "reasonable inference" is not enough here—rather, "a showing of bad faith by clear and convincing evidence is a prerequisite to imposing sanctions under both § 1927 and the district court's inherent authority." *Liebowitz*, 6 F.4th at 286 n.22.

**IV.     Conclusion**

For the foregoing reasons, the UMG Defendants' motion for sanctions (ECF No. 52) is DENIED. Plaintiff's motion to voluntarily dismiss all claims in the second amended complaint against Grainge, Motown Records, and UMG (ECF No. 49) is GRANTED, and those claims are dismissed with prejudice.

The Clerk of Court is directed to close the motions at Docket Numbers 49 and 52.

SO ORDERED.

Dated: December 13, 2024
       New York, New York

_____
J. PAUL OETKEN
United States District Judge