UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RODNEY JONES,<br>    *Plaintiff*,<br>-against-<br><br>SEAN COMBS,<br>JUSTIN DIOR COMBS,<br>CUBA GOODING JR.,<br>LUCIAN CHARLES GRAINGE,<br>KRISTINA KHORRAM,<br>LOVE RECORDS,<br>MOTOWN RECORDS,<br>UNIVERSAL MUSIC GROUP,<br>COMBS GLOBAL ENTERPRISES,<br>JOHN and JANE DOES 1-10 and<br>ABC CORPORATIONS. 1-10,<br>    *Defendants*. | Case No.: 24-cv-01457<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF'S MOTION FOR LEAVE TO SERVE DEFENDANTS CUBA GOODING JR. AND JUSTIN DIOR COMBS BY PUBLICATION** |

MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF'S MOTION FOR LEAVE TO SERVE DEFENDANTS CUBA GOODING JR. AND JUSTIN DIOR COMBS BY PUBLICATION

## **TABLE OF CONTENTS**

- Preliminary Statement
- Factual Background
- Legal Standard
- Argument
    - Plaintiff Has Established Impracticability Under CPLR § 308(5)
    - Service by Publication in Major Circulation Newspapers is Reasonably Calculated to Provide Notice
    - Celebrity Status and Gated Living Do Not Exempt Defendants from Service
    - Failure to Allow Alternate Service Will Result in Prejudice
- Conclusion

## **TABLE OF AUTHORITIES**

**Federal Cases**
- Bozza v. Love, No. 15-cv-3271 (LGS), 2015 WL 4039849 (S.D.N.Y. July 1, 2015)
- D.R.I., Inc. v. Dennis, No. 03-cv-10026 (PKL), 2004 WL 1237511 (S.D.N.Y. June 3, 2004)
- Fortunato v. Chase Bank USA, N.A., No. 11-cv-6608 (JFK), 2012 WL 2086950 (S.D.N.Y. June 7, 2012)
- Grammenos v. Lemos, 457 F.2d 1067 (2d Cir. 1972)
- Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)
- Ortiz v. CM Prof'l Painting Corp., No. 21-cv-0821 (GRB/JMW), 2022 U.S. Dist. LEXIS 45788 (E.D.N.Y. Mar. 14, 2022)
- Phillips v. City of New York, No. 21-cv-8149 (ALC) (SLC), 2024 U.S. Dist. LEXIS 35251 (S.D.N.Y. Feb. 28, 2024)
- S.E.C. v. Nnebe, No. 01-CV-5247 (KMW), 2003 WL 402377 (S.D.N.Y. Feb. 21, 2003)
- S.E.C. v. Tome, 833 F.2d 1086 (2d Cir. 1987)

**New York State Cases**
- Franklin v. Winard, 189 A.D.2d 717 (1st Dep't 1993)
- Safadjou v. Mohammadi, 105 A.D.3d 1423 (4th Dep't 2013)

**California State Cases**
- Bein v. Brechtel-Jochim Group, Inc., 6 Cal. App. 4th 1387 (1992)
- Clint Eastwood v. Norok Innovation, No. 2:21-cv-00356 (C.D. Cal. 2021)
- Khourie, Crew & Jaeger v. Sabek, 200 Cal. App. 3d 1009 (1988)
- Olvera v. Olvera, 232 Cal. App. 3d 32 (1991)

**PRELIMINARY STATEMENT**

This motion arises from Defendants deliberate, sustained, and well-documented evasion of service. Despite extensive efforts by Plaintiff—including personal service attempts at multiple verified addresses, formal and informal waiver requests, a professional skip-trace investigation, physical surveillance, and over $1,000 in service-related expenses—Defendants Cuba Gooding Jr. and Justin Dior Combs have thwarted all conventional methods of service. Their actions are not merely evasive; they are part of an intentional strategy to frustrate the judicial process and avoid accountability in a serious federal lawsuit alleging sexual abuse, trafficking, and related claims.

Federal Rule of Civil Procedure 4(e)(1), in conjunction with New York CPLR §§ 308(5) and 316, empowers this Court to authorize service by publication when personal service is impracticable. That threshold has been met and exceeded here. Mr. Gooding has refused service in multiple civil proceedings across jurisdictions and is known for ignoring legal summonses even after personal service. Mr. Combs has remained cloistered within private gated properties and shielded by security personnel despite repeated process server visits and certified mailings.

Both Defendants are aware of this action. Mr. Gooding discussed the lawsuit in a nationally aired podcast; Mr. Combs' father—Defendant Sean Combs—was served and is actively litigating. The Plaintiff has exhausted all reasonable avenues to effectuate service. Their continued absence from these proceedings is the result of avoidance, not ignorance.

Courts in the Second Circuit and in analogous California cases involving high-profile litigants and gated estates have repeatedly held that such conduct warrants alternate service, including publication. Plaintiff now seeks leave to publish notice in the *New York Times* and *Los Angeles Times*, newspapers reasonably calculated to apprise Defendants of the claims against them.

Without court intervention, these Defendants will succeed in remaining outside the reach of due process. Plaintiff respectfully requests that the Court authorize service by publication and allow this case to proceed on the merits without further delay.

## FACTUAL BACKGROUND

This motion is supported by a voluminous factual record that reflects Plaintiff's exhaustive, multi-pronged efforts to serve Defendants Cuba Gooding Jr. and Justin Dior Combs—efforts that have spanned across two coasts, multiple process servers, high-security properties, and strategic evasions. The record establishes not only the impracticability of personal service under CPLR § 308 but also a pattern of intentional avoidance that, if left unaddressed, would frustrate the integrity of these proceedings.

A. **Repeated and Unsuccessful Attempts to Serve Cuba Gooding Jr.**

Between October and November 2024, Plaintiff engaged ABC Legal to attempt personal service on Cuba Gooding Jr. at three known California addresses:

- 12100 Wilshire Blvd., Los Angeles, CA: Process server was denied access by building staff on October 21, 2024. The receptionist confirmed that Mr. Gooding was no longer represented at the location and refused to accept documents (Ex. A).
- 19401 Parthenia St., Northridge, CA: Between October 22 and 25, 2024, residents and neighbors repeatedly informed process servers that they had never heard of Mr. Gooding and that he was not associated with the property (Ex. B).
- 196 N. Carmelina Ave., Los Angeles, CA: Service was attempted five times from November 20 to 26, 2024. Neighbors advised that Mr. Gooding moved out "years ago," and the property was occupied by unrelated individuals (Ex. C).

Following these failed physical attempts, Plaintiff retained ABC Legal to conduct a professional skip-trace investigation. The resulting report confirmed that no current, servable address for Mr. Gooding could be identified through standard databases or public records (Ex. D). Mr. Gooding is no stranger to these tactics. In *Kelsey Harbert v. Gooding Jr.* and *Jasmine Abbay v. Gooding Jr.*, New York courts were forced to proceed toward default judgments after similar evasion, even where personal service had been achieved. These cases—both stemming from sexual assault allegations—exhibit a clear pattern of conduct by Mr. Gooding: acknowledge the lawsuit publicly, refuse to cooperate privately and disappear procedurally (Ex. J).

B. **Justin Dior Combs' Gated Evasion and Coordinated Noncompliance**

Between October 2024 and January 2025, Plaintiff deployed multiple process servers, targeted addresses in California and Florida, and directed personal surveillance to serve Defendant Justin Dior Combs. Despite this, Mr. Combs has consistently remained out of reach, relying on physical and strategic barriers:

- 1550 N. El Centro Ave, Los Angeles, CA – A gated residential complex that denied access to the process server despite repeated visits (Ex. E).

4

- <u>8600 Wilshire Blvd., Beverly Hills, CA</u>—The process server confirmed that the subject had moved; no forwarding address was provided (Ex. E).
- <u>1 and 2 Star Island Drive, Miami Beach, FL</u> – Process servers were unable to gain access at the guardhouse or entry gates on multiple occasions. Gate photos document these blocked access points (Ex. G).

Beyond physical barriers, Plaintiff undertook a series of stakeouts at Mr. Combs' known locations, monitored social media for his whereabouts, and even identified the process server who successfully served his brother, Christian Combs, at the same compound. That server was assigned but denied entry at Justin's residence despite identical conditions (Ex. H).

Most telling is the conduct of attorney Jonathan Davis. On May 17, 2024, Mr. Davis represented the Plaintiff's counsel that he would accept service for all "Combs defendants," including Justin Dior Combs. The Plaintiff relied on this representation and transmitted Rule 4(d) waivers accordingly. However, Mr. Davis failed to return the waiver for Justin and, without explanation, withdrew from further communication—demonstrating a coordinated pattern of obstruction (Blackburn Decl. ¶13).

C. **Service Costs, Due Diligence, and Proof of Concealment**

Plaintiff has incurred over $1,000 in process server fees, investigative costs, and certified mailings in the effort to effectuate service on these two Defendants (Exs. D, F). The attempts span:

- Multiple failed entry efforts at high-security properties;
- Interviews with neighbors, doormen, and property staff;
- Formal skip-trace and address tracing;
- Direct and electronic service attempts through known legal counsel and
- Surveillance and photo-documentation of physical obstructions.

All of this underscores that traditional service has not only failed—it is impracticable, and no further attempts by conventional means would serve any purpose. Both Defendants are public figures. They are known to reside at the locations targeted. They are aware of this lawsuit. Yet, they have effectively hidden in plain sight through a calculated pattern of silence and avoidance.

.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 4(e)(1) permits service of a summons on an individual "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Because this action is pending in the Southern District of New York, New York's Civil Practice Law and Rules (CPLR) governs.

Under CPLR § 308(5), a court may fashion an alternative method of service if it is demonstrated that service by traditional means—personal delivery (§ 308(1)), delivery to a person of suitable age and discretion plus mailing (§ 308(2)), or affixing to the door plus mailing (§ 308(4))—is "impracticable." The statute does not require a showing of complete impossibility, nor must the Plaintiff exhaust every conceivable method of service. Instead, Plaintiff must show that "actual prior attempts to serve a party by conventional means were unsuccessful and that the circumstances reasonably suggest that further attempts would be equally futile." See *SEC v. Nnebe*, No. 01-CV-5247 (KMW), 2003 WL 402377, at *3 (S.D.N.Y. February 21, 2003); *Franklin v. Winard*, 189 A.D.2d 717, 717 (1st Dep't 1993).

Courts have consistently emphasized that the standard of "impracticability" under CPLR § 308(5) is a flexible one, determined on a case-by-case basis. See *Grammenos v. Lemos*, 457 F.2d 1067, 1070–71 (2d Cir. 1972) ("Service need not be impossible, only impracticable, to justify court-ordered substitution."). The focus is on the reasonableness and thoroughness of the Plaintiff's efforts, not perfection. The Court may exercise discretion to tailor an alternative method of service suited to the circumstances.

Once the Court determines that traditional service is impracticable, CPLR § 316 allows for service by publication. While publication is a disfavored method of notice due to its limited likelihood of actual communication, it is recognized as constitutionally valid when no better method is available. See *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). See also *Fortunato v. Chase Bank USA, N.A.*, No. 11-CV-6608 (JFK), 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012) (granting service by publication where defendant's whereabouts were unknown despite diligent efforts).

Publication service is particularly appropriate where, as here, the defendants have no accessible residence, avoid contact with process servers, and maintain physical barriers (such as

6

private gates or security details) that prevent any possibility of personal delivery. Courts in both New York and California—jurisdictions frequently handling litigation involving high-profile or celebrity defendants—have upheld service by publication under these circumstances. See, e.g., *Bein v. Brechtel-Jochim Grp., Inc.*, 6 Cal. App. 4th 1387, 1394 (1992) (allowing alternate service on a guard at a gated community); *Khourie, Crew & Jaeger v. Sabek*, 200 Cal. App. 3d 1009 (1988) (rejecting a defendant's attempt to defeat service by residing in a locked building).

Finally, courts have consistently approved publication in widely read newspapers such as the *New York Times* and *Los Angeles Times*, where the defendants' exact location is unknown, but those publications are reasonably likely to provide actual or constructive notice.

In sum, when personal service proves impracticable, and the defendant is evading notice, Rule 4(e)(1), CPLR § 308(5), and § 316 collectively empower courts to direct alternate means of service—including publication—so long as the method selected is consistent with due process and reasonably calculated to inform the defendant.

## ARGUMENT

I. **Plaintiff Has Established Impracticability Under CPLR § 308(5)**

New York law is clear: when personal service becomes impracticable, courts may authorize alternative methods, including service by publication, so long as the proposed method is reasonably calculated to provide notice. See *Grammenos v. Lemos*, 457 F.2d 1067, 1070–71 (2d Cir. 1972); *Franklin v. Winard*, 189 A.D.2d 717, 717 (1st Dep't 1993); CPLR § 308(5). "Impracticability" does not require absolute impossibility or proof of every conceivable attempt. Rather, the test is whether the Plaintiff has made a good-faith, diligent effort to serve the defendant by conventional means and has demonstrated that continued reliance on those methods is likely to be futile. *SEC v. Nnebe*, No. 01-cv-5247, 2003 WL 402377, at *3 (S.D.N.Y. February 21, 2003); *Ortiz v. CM Prof'l Painting Corp.*, No. 21-cv-0821, 2022 U.S. Dist. LEXIS 45788, at *6 (E.D.N.Y. March 14, 2022).

Here, Plaintiff has gone beyond what is required. He has:

- Attempted service on Cuba Gooding Jr. at multiple known addresses in California, all of which were confirmed to be outdated, vacated, or refused (Blackburn Decl. ¶¶ 3–4; Exs. A–C);
- Engaged professional investigators and conducted a formal skip-trace, yielding no viable alternative address (Blackburn Decl. ¶ 4; Ex. D);
- Made repeated attempts to serve Justin Dior Combs at luxury residences in Beverly Hills, Los Angeles, and Miami Beach, where physical gates and security guards denied all access (Blackburn Decl. ¶¶ 8–9; Exs. E–G);

- Expended significant resources—well over $1,000—in process serving, stakeouts, mailing, and investigative efforts (Blackburn Decl. ¶¶ 5, 10; Exs. D, F).

Moreover, both Defendants have a demonstrated pattern of obstruction. Mr. Gooding has failed to appear in at least two other civil sexual misconduct cases, even after service was perfected. Mr. Combs' counsel initially agreed to waive service on his behalf, then reneged without justification, further delaying proceedings (Blackburn Decl. ¶ 13).

This record of deliberate noncompliance meets—and exceeds—the standards for impracticability. See *Bozza v. Love*, No. 15-cv-3271 (LGS), 2015 WL 4039849, at *1 (S.D.N.Y. July 1, 2015) (Court permitted alternate service after failed attempts at known addresses and unsuccessful waiver); *D.R.I., Inc. v. Dennis*, No. 03-cv-10026 (PKL), 2004 WL 1237511, at *1–2 (S.D.N.Y. June 3, 2004) (alternate service granted following ten failed service attempts and defendant's avoidance of process).

II. **SERVICE BY PUBLICATION IN MAJOR CIRCULATION NEWSPAPERS IS REASONABLY CALCULATED TO PROVIDE NOTICE**

Once a court finds personal service impracticable, it may authorize service by publication according to CPLR § 316. While publication is considered a method of last resort, it is entirely appropriate when no better means of reaching the defendant exists. See *Fortunato v. Chase Bank USA, N.A.*, No. 11-cv-6608 (JFK), 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012) (Court approved publication after unsuccessful attempts to locate the defendant and denied social media service due to reliability concerns); *Olvera v. Olvera*, 232 Cal. App. 3d 32, 40 (Cal. Ct. App. 1991) (publication deemed constitutionally sufficient where extensive efforts to locate defendant failed).

Here, Plaintiff proposes publication in the *New York Times* and *Los Angeles Times*—highly circulated newspapers with proven reach in the regions where both Defendants reside, work, or maintain strong connections. These outlets are appropriate given the public profiles of the Defendants and the likelihood that they, or those around them, will see the notice or be made aware of it.

Courts have upheld newspaper publication in similar circumstances, especially where a defendant has taken affirmative steps to avoid detection. In *Clint Eastwood v. Norok Innovation*, No. 2:21-cv-00356 (C.D. Cal. 2021), the Court granted leave to serve evasive online actors by publication after repeated failed personal service efforts. This mirrors the circumstances here, where publication is the only available method to break through the Defendants' calculated silence.

8

Furthermore, Plaintiff's offer to also send courtesy copies by mail to the last-known addresses—even if ineffective—further supports the reasonableness of the request under the due process standard set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

### III. CELEBRITY STATUS AND GATED LIVING DO NOT EXEMPT DEFENDANTS FROM SERVICE

Defendants cannot shield themselves from litigation by hiding behind private security gates, concierge services, or exclusive real estate. Courts have universally rejected such tactics. In *Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1394 (Cal. Ct. App. 1992), the Court upheld substitute service on a guard at a gated community where the defendant had made herself inaccessible. Likewise, in *Khourie, Crew & Jaeger v. Sabek*, 200 Cal. App. 3d 1009, 1013 (Cal. Ct. App. 1988), the Court rejected a defendant's attempt to avoid service by living in a locked building, emphasizing that the judicial system cannot be undermined by self-created fortresses.

The Plaintiff has shown that Mr. Combs resides in a compound that is physically impenetrable without security cooperation. Despite multiple process server visits and photographic evidence of the barriers (Ex. G), access was flatly denied. The California courts have noted that "residing in a gated community does not make one immune from suit."

Mr. Gooding, similarly, has made himself unreachable despite public appearances, event participation, and media visibility. The fact that both Defendants are public figures with substantial resources only heightens the need for judicial intervention—they cannot be allowed to weaponize their status to block due process.

### IV. FAILURE TO ALLOW ALTERNATE SERVICE WILL RESULT IN PREJUDICE

Without an order authorizing service by publication, Plaintiff cannot proceed against these Defendants—despite their knowledge of the case and substantial evidence of wrongdoing. Their evasion is prejudicial not only to Plaintiff's claims but to the integrity of the judicial process.

Courts have recognized that when Defendants obstruct service, it is the Court's responsibility to craft practical solutions. See *S.E.C. v. Tome*, 833 F.2d 1086, 1092–93 (2d Cir. 1987). The proposed method here—publication in reputable newspapers for four consecutive weeks, coupled with mailing to last-known addresses—ensures procedural fairness and satisfies the requirements of due process under both federal and state law.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Grant leave to serve Defendants Cuba Gooding Jr. and Justin Dior Combs by publication in the *New York Times* and *Los Angeles Times* once per week for four consecutive weeks;
2. Extend the service deadline as necessary to permit publication to occur and
3. Deem service is complete 28 days after the first publication.

Executed: April 7, 2025
Brooklyn, New York

*/s/ Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
