UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RODNEY JONES,                                          :
                                                       :
                              Plaintiff,               :
                                                       :
              v.                                       :     Case No. 24-cv-01457 (JPO)
                                                       :
SEAN COMBS, JUSTIN DIOR COMBS, CUBA                    :     **DEFENDANT SEAN COMBS'S**
GOODING, JR., LUCIAN CHARLES GRAINGE,                  :     **AMENDED ANSWER TO THE**
KRISTINA KHORRAM, LOVE RECORDS,                        :     **SECOND AMENDED COMPLAINT[1]**
MOTOWN RECORDS, UNIVERSAL MUSIC                        :     **AND COUNTERCLAIMS**
GROUP, COMBS GLOBAL ENTERPRISES, JOHN                  :
and JANE DOES 1-10; and ABC CORPORATIONS              :     **JURY TRIAL DEMANDED**
1-10,                                                  :
                                                       :
                              Defendants.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Defendant Sean Combs ("Defendant") by his attorneys, hereby answers the Second

Amended Complaint (ECF No. 38) of Plaintiff, Rodney Jones, as follows and states any

allegation in the Second Amended Complaint not expressly admitted is hereby denied:

        1.      Paragraph 1 of the Second Amended Complaint states legal conclusions to which

no response is required.

        2.      Paragraph 2 of the Second Amended Complaint states legal conclusions to which

no response is required.

---

[1] By Opinion and Order dated March 24, 2025, the First, Ninth, Eleventh, and Seventeenth Causes of Action in the Second Amended Complaint were dismissed in their entirety, and the Sixth Cause of Action was dismissed as to CEOpco, LLC (t/a Combs Global) f/k/a Combs Enterprises, LLC (named incorrectly in the Complaint as Combs Global Enterprises and referred to herein as "Combs Global"). ECF No. 86 (the "Motion to Dismiss Decision"). Accordingly, pursuant to the Motion to Dismiss Decision, all claims against Defendants Love Records, Inc. (named incorrectly in the Summons and Complaint as Love Records) and Combs Global have been dismissed and Love Records, Inc. and Combs Global are no longer parties to this action. Accordingly, Love Records, Inc. and Combs Global have no obligation to answer the allegations in the Second Amended Complaint, and in any event deny all allegations as to them in the Second Amended Complaint.

3.      Paragraph 3 of the Second Amended Complaint states legal conclusions to which no response is required.

4.      Paragraph 4 of the Second Amended Complaint states legal conclusions to which no response is required.

5.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of the Second Amended Complaint.

6.      Defendant admits the allegations in Paragraph 6 of the Second Amended Complaint except as to Mr. Combs' alleged domiciles.  The allegations in Paragraph 6 of the Second Amended Complaint concerning Mr. Combs' alleged domiciles are legal conclusions to which no response is required.

7.      Defendant admits the allegations in Paragraph 7 of the Second Amended Complaint except as to Mr. Justin Dior Combs' domicile.  The allegation in Paragraph 7 of the Second Amended Complaint concerning Mr. Justin Combs' alleged domicile is a legal conclusion to which no response is required.

8.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Second Amended Complaint.

9.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Second Amended Complaint.

10.      Defendant admits the allegation in the first sentence of Paragraph 10 of the Second Amended Complaint.  The second and third sentences of Paragraph 10 of the Second Amended Complaint contain legal conclusions as to which no response is required, and to the extent a response is required, Defendant denies them.

2

11. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Second Amended Complaint.

12. Defendant denies the allegations in Paragraph 12 of the Second Amended Complaint which concern Defendant, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 12 of the Second Amended Complaint.

13. Defendant admits that Mr. Sean Combs launched Love Records, but denies that Love Records has a principal place of business in California and Delaware, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 13 of the Second Amended Complaint.

14. Defendant admits that CEOpco, LLC (t/a Combs Global) f/k/a Combs Enterprises, LLC (named incorrectly in the Second Amended Complaint as Combs Global Enterprises and referred to herein as "Combs Global") was involved in businesses across the music, fashion, beverage, marketing, film, television, and media industries, but otherwise denies the allegations in Paragraph 14 of the Second Amended Complaint.

15. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Second Amended Complaint.

16. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Second Amended Complaint.

17. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Second Amended Complaint.

18. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Second Amended Complaint.

19. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Second Amended Complaint.

20. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Second Amended Complaint.

21. The allegations in Paragraph 21 of the Second Amended Complaint are legal conclusions to which no response is required.

22. The allegations in Paragraph 22 of the Second Amended Complaint are legal conclusions to which no response is required.

23. Defendant denies the allegations in Paragraph 23 of the Second Amended Complaint.

24. Defendant denies the allegations in Paragraph 24 of the Second Amended Complaint.

25. Defendant denies the allegations in Paragraph 25 of the Second Amended Complaint.

26. Defendant denies the allegations in Paragraph 26 of the Second Amended Complaint.

27. Defendant denies the allegations in Paragraph 27 of the Second Amended Complaint.

28. Defendant denies the allegations in Paragraph 28 of the Second Amended Complaint.

29. Defendant denies the allegations in Paragraph 29 of the Second Amended Complaint to the extent they concern Defendant. As to the allegations in Paragraph 29 of the Second Amended Complaint that pertain to persons and entities other than Defendant, Defendant

4

lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Second Amended Complaint.

30.    Defendant admits the allegations in Paragraph 30 of the Second Amended Complaint.

31.    Defendant admits the allegations in Paragraph 31 of the Second Amended Complaint concerning Defendant and his son Justin Combs.  As to the allegations in Paragraph 31 of the Second Amended Complaint pertaining to persons other than Defendant and his son, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Second Amended Complaint.

32.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the Second Amended Complaint.

33.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the Second Amended Complaint.

34.    Defendant denies the allegations in Paragraph 34 of the Second Amended Complaint.

35.    Defendant denies the allegations in Paragraph 35 of the Second Amended Complaint.

36.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Second Amended Complaint.

37.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Second Amended Complaint.

38.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Second Amended Complaint.

39. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Second Amended Complaint.

40. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Second Amended Complaint.

41. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Second Amended Complaint.

42. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Second Amended Complaint.

43. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Second Amended Complaint.

44. Defendant denies the allegations in Paragraph 44 of the Second Amended Complaint to the extent they concern Defendant. As to the allegations in Paragraph 44 of the Second Amended Complaint pertaining to persons and entities other than Defendant, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Second Amended Complaint.

45. Defendant denies the allegations in Paragraph 45 of the Second Amended Complaint.

46. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of the Second Amended Complaint.

47. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of the Second Amended Complaint.

48. Defendant denies the allegations in Paragraph 48 of the Second Amended Complaint to the extent they concern Defendant. Defendant lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in Paragraph 48 of the Second Amended Complaint concerning the alleged "screenshots."

49.    Defendant denies the allegations in Paragraph 49 of the Second Amended Complaint.

50.    Defendant admits there was private security at the writers' camp, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 of the Second Amended Complaint.

51.    Defendant denies the allegations in Paragraph 51 of the Second Amended Complaint.

52.    Paragraph 52 of the Second Amended Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 52 of the Second Amended Complaint.

53.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 of the Second Amended Complaint.

54.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Second Amended Complaint.

55.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of the Second Amended Complaint.

56.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the Second Amended Complaint.

57.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Second Amended Complaint.

58. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Second Amended Complaint.

59. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the Second Amended Complaint.

60. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Second Amended Complaint.

61. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Second Amended Complaint.

62. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of the Second Amended Complaint.

63. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 of the Second Amended Complaint.

64. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 of the Second Amended Complaint.

65. Defendant denies the allegations in Paragraph 65 of the Second Amended Complaint.

66. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 of the Second Amended Complaint.

67. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 of the Second Amended Complaint.

68. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 of the Second Amended Complaint.

69.     Defendant denies the allegations in Paragraph 69 of the Second Amended Complaint to the extent they concern Defendant.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 69 of the Second Amended Complaint.

70.     Defendant denies the allegations in Paragraph 70 of the Second Amended Complaint.

71.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 of the Second Amended Complaint.

72.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 of the Second Amended Complaint.

73.     Defendant denies the allegations in Paragraph 73 of the Second Amended Complaint.

74.     Defendant denies the allegations in Paragraph 74 of the Second Amended Complaint.

75.     Defendant denies the allegations in Paragraph 75 of the Second Amended Complaint.

76.     To the extent the allegations in Paragraph 76 of the Second Amended Complaint pertain to Mr. Combs, Defendant denies the allegations in Paragraph 76 of the Second Amended Complaint.  As to the allegations in Paragraph 76 of the Second Amended Complaint that pertain to persons other than Mr. Combs, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 of the Second Amended Complaint.

77.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 of the Second Amended Complaint.

9

78.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 of the Second Amended Complaint.

79.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 of the Second Amended Complaint.

80.     Defendant denies the allegations in Paragraph 80 of the Second Amended Complaint concerning Mr. Combs.  As to the allegations in Paragraph 80 of the Second Amended Complaint that pertain to persons other than Mr. Combs, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80 of the Second Amended Complaint.

81.     Defendant denies the allegations in Paragraph 81 of the Second Amended Complaint.

82.     Defendant denies the allegations in Paragraph 82 of the Second Amended Complaint.

83.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 of the Second Amended Complaint.

84.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84 of the Second Amended Complaint.

85.     Defendant admits the allegations in Paragraph 85 of the Second Amended Complaint.

86.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86 of the Second Amended Complaint.

87.     Defendant admits the allegations in Paragraph 87 of the Second Amended Complaint.

88.     Defendant denies the allegations in Paragraph 88 of the Second Amended Complaint.

89.     Defendant denies the allegations in Paragraph 89 of the Second Amended Complaint.

90.     Defendant denies the allegations in Paragraph 90 of the Second Amended Complaint.

91.     Defendant denies the allegations in Paragraph 91 of the Second Amended Complaint.

92.     Defendant admits the allegations in Paragraph 92 of the Second Amended Complaint as they relate to Mr. Combs and Yung Miami, but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92 of the Second Amended Complaint.

93.     Defendant denies the allegations in Paragraph 93 of the Second Amended Complaint that pertain to him.  As to the allegations in Paragraph 93 of the Second Amended Complaint that pertain to persons other than Mr. Combs, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93 of the Second Amended Complaint.

94.     Defendant denies the allegations in Paragraph 94 of the Second Amended Complaint that pertain to him.  As to the allegations in Paragraph 94 of the Second Amended Complaint that pertain to persons other than Mr. Combs, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94 of the Second Amended Complaint.

95.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95 of the Second Amended Complaint.

96.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96 of the Second Amended Complaint.

97.    Defendant denies the allegations in Paragraph 97 of the Second Amended Complaint.

98.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 of the Second Amended Complaint.

99.    Defendant denies the allegations in Paragraph 99 of the Second Amended Complaint.

100.    Defendant denies the allegations in Paragraph 100 of the Second Amended Complaint.

101.    Defendant denies the allegations in Paragraph 101 of the Second Amended Complaint.

102.    Defendant denies the allegations in Paragraph 102 of the Second Amended Complaint.

103.    Defendant denies the allegations in Paragraph 103 of the Second Amended Complaint.

104.    Defendant denies the allegations in Paragraph 104 of the Second Amended Complaint.

105.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105 of the Second Amended Complaint.

106.    Defendant denies the allegations in Paragraph 106 of the Second Amended Complaint.

107.    Defendant denies the allegations in Paragraph 107 of the Second Amended Complaint.

108.    Defendant denies the allegations in Paragraph 108 of the Second Amended Complaint that pertain to him.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to others in Paragraph 108 of the Second Amended Complaint.

109.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to others in Paragraph 109 of the Second Amended Complaint.

110.    Defendant denies the allegations in Paragraph 110 of the Second Amended Complaint.

111.    Defendant denies the allegations in Paragraph 111 of the Second Amended Complaint that pertain to him.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to others in Paragraph 111 of the Second Amended Complaint.

112.    Defendant denies the allegations in Paragraph 112 of the Second Amended Complaint.

113.    Defendant denies the allegations in Paragraph 113 of the Second Amended Complaint that pertain to him.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to others in Paragraph 113 of the Second Amended Complaint.

114.     Defendant denies the allegations in Paragraph 114 of the Second Amended Complaint.

115.     Defendant denies the allegations in Paragraph 115 of the Second Amended Complaint.

116.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116 of the Second Amended Complaint.

117.     Defendant denies the allegations in Paragraph 117 of the Second Amended Complaint.

118.     Defendant denies the allegations in Paragraph 118 of the Second Amended Complaint.

119.     Defendant denies the allegations in Paragraph 119 of the Second Amended Complaint.

120.     Defendant denies the allegations in Paragraph 120 of the Second Amended Complaint.

121.     Defendant denies the allegations in Paragraph 121 of the Second Amended Complaint.

122.     Defendant denies the allegations in Paragraph 122 of the Second Amended Complaint.

123.     Defendant denies the allegations in Paragraph 123 of the Second Amended Complaint.

124.     Defendant denies the allegations in Paragraph 124 of the Second Amended Complaint.

125.    Defendant denies the allegations in Paragraph 125 of the Second Amended Complaint.

126.    Defendant denies the allegations in Paragraph 126 of the Second Amended Complaint.

127.    Defendant denies the allegations in Paragraph 127 of the Second Amended Complaint.

128.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128 of the Second Amended Complaint.

129.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 129 of the Second Amended Complaint.

130.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130 of the Second Amended Complaint.

131.    Defendant denies the allegations in Paragraph 131 of the Second Amended Complaint.

132.    Defendant denies the allegations in Paragraph 132 of the Second Amended Complaint.

133.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 133 of the Second Amended Complaint.

134.    Defendant denies the allegations that pertain to him in Paragraph 134 of the Second Amended Complaint.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 134 of the Second Amended Complaint.

135. Defendant denies the allegations in Paragraph 135 of the Second Amended Complaint.

136. Defendant denies the allegations that pertain to him in Paragraph 136 of the Second Amended Complaint.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 136 of the Second Amended Complaint.

137. Defendant denies the allegations that pertain to him in Paragraph 137 of the Second Amended Complaint.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 137 of the Second Amended Complaint.

138. Defendant denies the allegations that pertain to him in Paragraph 138 of the Second Amended Complaint.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 138 of the Second Amended Complaint.

139. Defendant denies the allegations that pertain to him in Paragraph 139 of the Second Amended Complaint.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 139 of the Second Amended Complaint.

140. Defendant denies the allegations in Paragraph 140 of the Second Amended Complaint.

141. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 141 of the Second Amended Complaint.

142. Defendant denies the allegations in Paragraph 142 of the Second Amended Complaint.

143. Defendant denies the allegations in Paragraph 143 of the Second Amended Complaint.

144. Defendant denies the allegations in Paragraph 144 of the Second Amended Complaint.

145. Defendant denies the allegations in Paragraph 145 of the Second Amended Complaint.

146. Defendant denies the allegations in Paragraph 146 of the Second Amended Complaint.

147. Defendant denies the allegations in Paragraph 147 of the Second Amended Complaint.

148. The allegations in Paragraph 148 of the Second Amended Complaint purport to describe a pleading filed in a different litigation; Defendant refers the Court to that document for a full and complete recitation of its contents, and otherwise denies the allegations in Paragraph 148 of the Second Amended Complaint.

149. Defendant denies the allegations in Paragraph 149 of the Second Amended Complaint.

150. Defendant denies the allegations in Paragraph 150 of the Second Amended Complaint.

151. Defendant denies the allegations that pertain to him in Paragraph 151 of the Second Amended Complaint.  Defendant lacks knowledge or information sufficient to form a

belief as to the truth of the allegations concerning others in Paragraph 151 of the Second Amended Complaint.

152. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 152 of the Second Amended Complaint.

153. Defendant denies the allegations in Paragraph 153 of the Second Amended Complaint.

154. Defendant denies the allegations in Paragraph 154 of the Second Amended Complaint.

155. Defendant denies the allegations in Paragraph 155 of the Second Amended Complaint.

156. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 156 of the Second Amended Complaint.

157. Defendant denies the allegations in Paragraph 157 of the Second Amended Complaint.

158. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 158 of the Second Amended Complaint.

159. Defendant denies the allegations that pertain to him in Paragraph 159 of the Second Amended Complaint.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 159 of the Second Amended Complaint.

160. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160 of the Second Amended Complaint.

161.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161 of the Second Amended Complaint.

162.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162 of the Second Amended Complaint.

163.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163 of the Second Amended Complaint.

164.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 164 of the Second Amended Complaint.

165.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165 of the Second Amended Complaint.

166.    Defendant admits that Plaintiff Jones worked on the Love Album.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 166 of the Second Amended Complaint.

167.    Defendant denies the allegations in Paragraph 167 of the Second Amended Complaint.

168.    Defendant denies the allegations in Paragraph 168 of the Second Amended Complaint.

169.    Defendant admits the allegations in Paragraph 169 of the Second Amended Complaint.

170.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 170 of the Second Amended Complaint.

171.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 171 of the Second Amended Complaint.

172. Defendant denies the allegations in Paragraph 172 of the Second Amended Complaint.

173. The allegations in Paragraph 173 of the Second Amended Complaint contain legal conclusions as to which no response is required.  To the extent a response is required, Defendant denies the allegations.

174. Defendant denies the allegations that pertain to him in Paragraph 174 of the Second Amended Complaint.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 174 of the Second Amended Complaint.

175. Defendant denies the allegations that pertain to him in Paragraph 175 of the Second Amended Complaint.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 175 of the Second Amended Complaint.

176. Defendant denies the allegations in Paragraph 176 of the Second Amended Complaint.

177. Defendant denies the allegations in Paragraph 177 of the Second Amended Complaint.

178. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 178 of the Second Amended Complaint.

179. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 179 of the Second Amended Complaint.

180. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 180 of the Second Amended Complaint.

181. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 181 of the Second Amended Complaint.

182. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182 of the Second Amended Complaint.

183. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 183 of the Second Amended Complaint.

184. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 184 of the Second Amended Complaint.

185. Defendant denies the allegations that pertain to him in Paragraph 185 of the Second Amended Complaint. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 185 of the Second Amended Complaint.

186. Defendant denies the allegations in Paragraph 186 of the Second Amended Complaint.

187. Defendant denies the allegations that pertain to him in Paragraph 187 of the Second Amended Complaint. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 187 of the Second Amended Complaint.

188. Defendant denies the allegations that pertain to him in Paragraph 188 of the Second Amended Complaint. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 188 of the Second Amended Complaint

189. Defendant denies the allegations in Paragraph 189 of the Second Amended Complaint.

190. Defendant denies the allegations in Paragraph 190 of the Second Amended Complaint.

191. Defendant denies the allegations in Paragraph 191 of the Second Amended Complaint.

192. Defendant denies the allegations in Paragraph 192 of the Second Amended Complaint.

193. Defendant denies the allegations in Paragraph 193 of the Second Amended Complaint.

194. Defendant denies the allegations in Paragraph 194 of the Second Amended Complaint.

195. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning others in Paragraph 195 of the Second Amended Complaint.

196. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 196 of the Second Amended Complaint.

197. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 197 of the Second Amended Complaint.

198. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 198 of the Second Amended Complaint.

199. Defendant denies the allegations in Paragraph 199 of the Second Amended Complaint.

200.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 200 of the Second Amended Complaint.

## FIRST CAUSE OF ACTION

201.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.  Moreover, pursuant to the Opinion and Order of United States District Judge Paul Oetken dated March 24, 2025, the First Cause of Action in the Second Amended Complaint has been dismissed in its entirety and thus no response to Paragraphs 201-276 is required.  *See* ECF No. 86 at pp. 8-12.  In the event it is determined that a response to Paragraphs 201-276 is required, Defendant expressly reserves the right to amend his responses to these Paragraphs, including to deny the allegations and deny Plaintiff's entitlement to any relief requested therein.

## SECOND CAUSE OF ACTION

277.    Defendant repeats his answers to the allegations in all preceding paragraphs as if fully set forth herein.

278.    The allegations in Paragraph 278 of the Second Amended Complaint contain legal conclusions as to which no response is required.  To the extent a response is required, Defendant denies the allegations.

279.    Defendant denies the allegations in Paragraph 279 of the Second Amended Complaint.

280.    Defendant denies the allegations in Paragraph 280 of the Second Amended Complaint.

281.    The allegations in Paragraph 281 of the Second Amended Complaint contain legal conclusions as to which no response is required.  To the extent a response is required, Defendant denies the allegations.

282.    The allegations in Paragraph 282 of the Second Amended Complaint contain legal conclusions as to which no response is required.  To the extent a response is required, Defendant denies the allegations.

### THIRD CAUSE OF ACTION

283.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.  The Third Cause of Action in the Second Amended Complaint does not assert allegations against Mr. Combs and thus no response by Defendant to Paragraphs 283-287 of the Second Amended Complaint is required.  To the extent a response is required, Defendant denies the allegations in Paragraphs 283-287 of the Second Amended Complaint as they pertain to him, and lacks knowledge or information sufficient to determine the truth of allegations as to persons other than him.

### FOURTH CAUSE OF ACTION

288.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.

289.    The allegations in Paragraph 289 of the Second Amended Complaint contain legal conclusions as to which no response is required.  To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

290.    The allegations in Paragraph 290 of the Second Amended Complaint contain legal conclusions as to which no response is required.  To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

291.    The allegations in Paragraph 291 of the Second Amended Complaint contain legal conclusions as to which no response is required.  To the extent a response is required, Defendant

denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

292.   The allegations in Paragraph 292 of the Second Amended Complaint contain legal conclusions as to which no response is required.  To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

## FIFTH CAUSE OF ACTION

293.   Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.

294.   The allegations in Paragraph 294 of the Second Amended Complaint contain legal conclusions as to which no response is required.  To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

295.   The allegations in Paragraph 295 of the Second Amended Complaint contain legal conclusions as to which no response is required.  To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

296.   The allegations in Paragraph 296 of the Second Amended Complaint contain legal conclusions as to which no response is required.  To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

297.   The allegations in Paragraph 297 of the Second Amended Complaint contain legal conclusions as to which no response is required.  To the extent a response is required, Defendant

denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

## SIXTH CAUSE OF ACTION[2]

298. Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.

299. The allegations in Paragraph 299 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

300. The allegations in Paragraph 300 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

301. The allegations in Paragraph 301 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

302. The allegations in Paragraph 302 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

---

[2] Pursuant to the Opinion and Order of United States District Judge Paul Oetken dated March 24, 2025, the Sixth Cause of Action in the Second Amended Complaint has been dismissed as to Defendant Combs Global. *See* ECF No. 86 at 21.

303. The allegations in Paragraph 303 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

304. The allegations in Paragraph 304 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

305. The allegations in Paragraph 305 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

306. The allegations in Paragraph 306 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

307. The allegations in Paragraph 307 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

308. The allegations in Paragraph 308 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant

denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

309. The allegations in Paragraph 309 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

310. The allegations in Paragraph 310 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

311. The allegations in Paragraph 311 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

312. The allegations in Paragraph 312 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

313. The allegations in Paragraph 313 of the Second Amended Complaint contain legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the allegations as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations pertaining to others.

## SEVENTH CAUSE OF ACTION

314.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.  The Seventh Cause of Action in the Second Amended Complaint does not assert allegations against Mr. Combs and thus no response by Defendant to Paragraphs 314-331 of the Second Amended Complaint is required.  Moreover, Plaintiff voluntarily dismissed his claims against Defendants Lucian Charles Grainge, UMG, Motown Records, and Universal Music Group—the only Defendants against whom the Seventh Cause of Action was brought.  *See* ECF No. 86 at 2 n.2.  Because Plaintiff voluntarily dismissed the Seventh Cause of Action, Defendant need not address the allegations in Paragraphs 314-331 of the Second Amended Complaint.

## EIGHTH CAUSE OF ACTION

332.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.  The Eighth Cause of Action in the Second Amended Complaint does not assert allegations against Mr. Combs and thus no response by Defendant to Paragraphs 332-336 of the Second Amended Complaint is required.  To the extent a response is required, Defendant denies the allegations in Paragraphs 332-336 of the Second Amended Complaint as they pertain to him and lacks knowledge or information sufficient to determine the truth of allegations as to persons other than him.

## NINTH CAUSE OF ACTION

337.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.  Moreover, pursuant to the Opinion and Order of United States District Judge Paul Oetken dated March 24, 2025, the Ninth Cause of Action in the Second Amended Complaint has been dismissed in its entirety and thus no response to Paragraphs 337-341 is required.  *See* ECF No. 86 at pp. 24-25.

**TENTH CAUSE OF ACTION**

342.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.  The Tenth Cause of Action in the Second Amended Complaint does not assert allegations against Mr. Combs and thus no response by Defendant to Paragraphs 342-347 of the Second Amended Complaint is required.  To the extent a response is required, Defendant denies the allegations in Paragraphs 342-347 of the Second Amended Complaint as they pertain to him, and lacks knowledge or information sufficient to determine the truth of allegations as to persons other than him.

**ELEVENTH CAUSE OF ACTION**

348.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.  Moreover, pursuant to the Opinion and Order of United States District Judge Paul Oetken dated March 24, 2025, the Eleventh Cause of Action in the Second Amended Complaint has been dismissed in its entirety and thus no response to Paragraphs 348-353 is required. *See* ECF No. 86 at pp. 24-25.

**TWELFTH CAUSE OF ACTION**

354.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.  The Twelfth Cause of Action in the Second Amended Complaint does not assert allegations against Mr. Combs and thus no response by Defendant to Paragraphs 354-359 of the Second Amended Complaint is required.  To the extent a response is required, Defendant denies the allegations in Paragraphs 354-359 of the Second Amended Complaint as they pertain to him, and lacks knowledge or information sufficient to determine the truth of allegations as to persons other than him.

## THIRTEENTH CAUSE OF ACTION

360.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.  The Thirteenth Cause of Action in the Second Amended Complaint does not assert allegations against Mr. Combs and thus no response by Defendant to Paragraphs 360-364 of the Second Amended Complaint is required.  To the extent a response is required, Defendant denies the allegations in Paragraphs 360-364 of the Second Amended Complaint as they pertain to him, and lacks knowledge or information sufficient to determine the truth of allegations as to persons other than him.

## FOURTEENTH CAUSE OF ACTION

365.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.  The Fourteenth Cause of Action in the Second Amended Complaint does not assert allegations against Mr. Combs and thus no response by Defendant to Paragraphs 365-369 of the Second Amended Complaint is required.  To the extent a response is required, Defendant denies the allegations in Paragraphs 365-369 of the Second Amended Complaint as they pertain to him, and lacks knowledge or information sufficient to determine the truth of allegations as to persons other than him.

## FIFTEENTH CAUSE OF ACTION

370.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.  The Fifteenth Cause of Action in the Second Amended Complaint does not assert allegations against Mr. Combs and thus no response by Defendant to Paragraphs 370-376 of the Second Amended Complaint is required.  Moreover, Plaintiff voluntarily dismissed his claims against Defendants Lucian Charles Grainge, Motown Records, and Universal Music Group—the only Defendants against whom the Fifteenth Cause of Action was brought.  *See* ECF No. 86 at 2

31

n.2.  Because Plaintiff voluntarily dismissed the Fifteenth Cause of Action, Defendant need not address the allegations in Paragraphs 370-376 of the Second Amended Complaint.

**SIXTEENTH CAUSE OF ACTION**

377.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein.  The Sixteenth Cause of Action in the Second Amended Complaint does not assert allegations against Mr. Combs and thus no response by Defendant to Paragraphs 377-393 of the Second Amended Complaint is required.  Moreover, Plaintiff voluntarily dismissed his claims against Defendants Lucian Charles Grainge, Motown Records, and Universal Music Group—the only Defendants against whom the Sixteenth Cause of Action was brought.  *See* ECF No. 86 at 2 n.2.  Because Plaintiff voluntarily dismissed the Sixteenth Cause of Action, Defendant need not address the allegations in Paragraphs 377-393 of the Second Amended Complaint.

**SEVENTEENTH CAUSE OF ACTION**

394.    Defendant repeats his answers to all preceding paragraphs as if fully set forth herein. Moreover, pursuant to the Opinion and Order of United States District Judge Paul Oetken dated March 24, 2025, the Seventeenth Cause of Action in the Second Amended Complaint has been dismissed in its entirety and thus no response to Paragraphs 394-402 is required.  *See* ECF No. 86 at pp. 29-30.

**RESPONSE TO PRAYER FOR RELIEF**

Defendant, Sean Combs, denies every allegation in the Second Amended Complaint except those expressly admitted above, and denies that Plaintiff is entitled to any damages, relief, judgment, award, fees, or costs whatsoever.

## AFFIRMATIVE DEFENSES

Defendant states the following affirmative defenses and reserves his right to later assert other and additional defenses, cross-claims, counterclaims, and third-party claims not asserted herein of which he becomes aware through discovery or other investigation as may be appropriate.  In asserting these affirmative defenses, Defendant does not assume any burden of proof, persuasion, or production with respect to any issue where the applicable law places the burden upon another party.

## FIRST AFFIRMATIVE DEFENSE

1.    The Second Amended Complaint fails to state a claim against Defendant upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

2.    Plaintiff's claims are barred in whole or in part through accord and satisfaction.

## THIRD AFFIRMATIVE DEFENSE

3.    Plaintiff's claims are barred in whole or in part by the statute of limitations.

## FOURTH AFFIRMATIVE DEFENSE

4.    Plaintiff's claims are barred in whole or in part by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

5.    Plaintiff's claims are barred in whole or in part by the doctrine of waiver and/or estoppel.

## SIXTH AFFIRMATIVE DEFENSE

6.    Plaintiff has suffered no damages attributable to any wrongful conduct by Defendant.

## SEVENTH AFFIRMATIVE DEFENSE

7.      If Plaintiff has any injuries or damages, such injuries or damages were the result of acts of third parties over which Defendant has no responsibility or control.  Any damage, loss, or liability sustained by Plaintiff must be reduced, diminished, and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than Defendant under the principles of equitable allocation, set-off, proportionate responsibility, and comparative fault.

## EIGHTH AFFIRMATIVE DEFENSE

8.      Plaintiff's claims are barred by the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE

9.      Plaintiff's claims are barred by Plaintiff's failure to mitigate.

## TENTH AFFIRMATIVE DEFENSE

10.     Plaintiff is not entitled to recover any punitive damages because Defendant did not engage in any wrongful conduct, let alone conduct with malice or reckless disregard for Plaintiff's rights.

## ELEVENTH AFFIRMATIVE DEFENSE

11.     Plaintiff voluntarily engaged in or otherwise consented to the alleged conduct at issue.

## TWELFTH AFFIRMATIVE DEFENSE

12.     Plaintiff's claims are barred, in whole or in part, by the doctrine of *in pari delicto*, as Plaintiff was equally or more responsible for the alleged conduct at issue.

## DEMAND FOR A JURY TRIAL

Defendant Sean Combs demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant prays for relief as follows:

34

1.  That the Second Amended Complaint be dismissed, with prejudice and in its entirety as to Defendant;

2.  That Plaintiff take nothing by reason of this Second Amended Complaint as to Defendant and that judgment be entered against Plaintiff and in favor of Defendant;

3.  That Defendant be awarded his attorney's fees and costs incurred in defending against this frivolous and vexatious action as asserted against him; and

4.  That Defendant be granted such other and further relief as the Court may deem just and proper.

## COUNTERCLAIMS

Defendant Counterclaim-Plaintiff Sean Combs, by his attorneys, asserts the following counterclaims against Plaintiff Counterclaim-Defendant Rodney Jones:

## NATURE OF THE ACTION

1.      These counterclaims arise from Rodney Jones shamelessly abusing his position of trust to gain unauthorized access to video footage belonging to Counterclaim-Plaintiff Sean Combs, and to exploit such property in violation of federal and state law as part of his campaign to spread baseless lies about Mr. Combs in pursuit of an undeserved payout.

2.      Mr. Jones was engaged as an independent contractor, performing recording engineer services for Love Records at a fixed hourly rate.  For over a year, between approximately October 2022 and October 2023, he was welcomed into Mr. Combs's home, invited to accompany Mr. Combs on extensive travel at Mr. Combs's expense, and afforded access to Mr. Combs and his prominent team in order to produce content on the Love Album. When the scope of his work was concluded, and when, upon information and belief, Mr. Jones was facing mounting legal fees to defend himself against accusations of serious sexual misconduct (having nothing to do with Mr. Combs), Mr. Jones demanded more money than what had been agreed upon.  When Mr. Combs refused to accede to Mr. Jones's baseless demands, Mr. Jones filed this lawsuit as retribution and in an effort to capitalize on a wave of meritless civil litigation against Mr. Combs.

3.      Years later it was revealed that, in addition to fabricating outlandish claims, Mr. Jones exploited Mr. Combs's trust by stealing computer drives that contained footage owned by Mr. Combs and intended for use by Mr. Combs in a documentary about his life.  Mr. Jones accessed those drives without authorization, copied the footage contained on them without authorization, and sold the stolen footage to Netflix, Inc., West Tower Road, LLC, and/or Curtis

36

"50 Cent" Jackson (together, the "Documentary Competitors") to use in their own competing documentary about Mr. Combs.

4.      Upon information and belief, as part of his agreement to sell the stolen footage, Mr. Jones was interviewed in the Netflix documentary—a bargained-for opportunity Mr. Jones leveraged to spread outrageous lies about his former benefactor.  As a result of Mr. Jones's unlawful conduct, Mr. Combs lost the exclusive use of his footage and suffered significant financial and reputational harm.

## THE PARTIES

5.      Counterclaim-Plaintiff Sean Combs is an individual who presently resides in New Jersey.

6.      Counterclaim-Defendant Rodney Jones is an individual who, upon information and belief, presently resides in New York State.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction pursuant to, *inter alia*, 28 U.S.C. §§ 1331, 1332, and 1367 because (1) this action includes counterclaims that arise under the laws of the United States, and (2)  the state law claims asserted in this action are so related to the claims arising under the laws of the United States that they form part of the same case or controversy under Article III of the United States Constitution.

8.      This Court has personal jurisdiction over Rodney Jones because he initiated this action in this district thereby subjecting himself to this Court's jurisdiction.  Mr. Jones is also independently subject to the personal jurisdiction of this Court because he is subject to personal jurisdiction of the courts in New York State.

9.    Venue is proper in this judicial district because Counterclaim-Defendant chose this judicial district to bring suit in.  Venue is also proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these counterclaims occurred in this judicial district.

## FACTUAL BACKGROUND

### I.    MR. COMBS HAS BEEN WORKING ON A DOCUMENTARY ABOUT HIS LIFE FOR YEARS

10.    Mr. Combs became famous for his extraordinary and historic achievements as a musician and music producer, hip hop impresario, record label owner, fashion designer, pathbreaking spirits entrepreneur, committed philanthropist, and cultural icon.  Mr. Combs is among the most accomplished businessmen of his generation.

11.    For years, Mr. Combs has been working on a documentary project about his own life (the "Combs Documentary").

12.    To create content for the Combs Documentary, Mr. Combs and his affiliated entities engaged various videographers to film aspects of his life, including videographers who accompanied Mr. Combs to St. Barths in or around December 2022.

### II.    MR. JONES STEALS COMBS DOCUMENTARY FOOTAGE IN ST. BARTHS WHILE WORKING AS AN ENGINEER ON COMBS'S ALBUM

13.    Mr. Jones, who also goes by the name "Lil Rod," was engaged by Mr. Combs's record label, Love Records (the "Label"), in or around October 2022 as an independent contractor to perform certain sound engineering services on Mr. Combs's album titled "The Love Album: Off the Grid" (the "Album").  Mr. Jones performed engineering work for the Label over the period of approximately October 2022 to October 2023.  As part of this work, Mr. Jones voluntarily travelled with Mr. Combs to various locations, including California, Florida, New York, and St. Barths, while Mr. Combs worked on the Album.

38

14.     In or around December 2022, Mr. Combs travelled to St. Barths.  In addition to taking some time for a personal vacation, Mr. Combs worked on the Combs Documentary and the Album during the trip.  Mr. Jones voluntarily travelled to St. Barths to perform engineering services for work that was being done on the Album.

15.     Around the same time, videographers working on the Combs Documentary also travelled to St. Barths to support Mr. Combs's work on the Combs Documentary.

16.     One of the videographers stored footage that he shot for the Combs Documentary on various external computer storage drives (the "Computer Drives").

17.     Upon information and belief, the videographer traveled with the Computer Drives between California, Florida, New York, and to and from St. Barths as part of his duties in filming for the Combs Documentary pursuant to his agreements with Mr. Combs and his affiliates.

18.     During the trip to St. Barths members of Mr. Combs's team stayed in one of three primary lodging locations: a yacht where Mr. Combs, his family, friends, and some limited staff stayed; a villa for additional family and friends; and a villa rented just for staff.

19.     Mr. Jones was supposed to stay in the staff villa.  However, after first coming to the yacht, Mr. Jones did not want to leave.

20.     There was no room available for Mr. Jones on the yacht—but that did not deter Mr. Jones, who preferred to sleep on couches on the yacht to remain in the vicinity of Mr. Combs.

21.     During the day, staff, including videographers and music professionals, would come from the staff villa to the yacht to work with Mr. Combs.  Mr. Jones was usually already there, enjoying his time on the yacht.  Staff would also travel with Mr. Combs on the island when he left the yacht.

22.     When videographers arrived to the yacht, they would set up their workstations, including cameras, computers, and external computer drives.  These workstations were for the sole use of the videographers.

23.     Mr. Combs fostered an open, collaborative, working environment for those working with him and placed a great deal of trust in those working on his team.  Mr. Combs expected that those working with him would use the space and freedom to foster creativity and enable those working with Mr. Combs to give their full creative energy to their work.  Mr. Jones grossly abused that trust.

24.     Upon information and belief, Mr. Jones devised a plan to exploit the trust provided to him by Mr. Combs during the St. Barths trip and to obtain leverage over Mr. Combs by stealing valuable footage that Mr. Combs and the videographers were collecting for Mr. Combs's documentary.

25.     Upon information and belief, one day during the trip to St. Barths, when one videographer was away from his workstation, Mr. Jones accessed the videographer's workstation without authorization and secretly stole certain Computer Drives containing footage the videographer had filmed for the Combs Documentary (the "Stolen Computer Drives").

26.     The footage on the Stolen Computer Drives belonged to Mr. Combs and Jones was not authorized to access the Stolen Computer Drives.

27.     Upon information and belief, Mr. Jones clandestinely accessed the Stolen Computer Drives without the knowledge or authorization of Mr. Combs or the videographer and found Combs Documentary footage contained therein (the "Stolen Footage").

28.     Upon information and belief, Mr. Jones took steps to conceal his theft from the videographer and Mr. Combs, including but not limited to, hiding the Stolen Computer Drives in

40

a location that the videographer and Mr. Combs would not see and continuing to hide them from the videographer and Mr. Combs even after the St. Barths trip concluded.

29.    The Stolen Footage generally depicts Mr. Combs, Mr. Jones, and others (a) working on a musical album on a yacht in St. Barths; (b) working on a musical album in Mr. Combs's home in Miami, Florida; and (c) socializing, exercising, or otherwise interacting with various individuals on a yacht in St. Barths and Mr. Combs's home in Miami, Florida.

30.    The St. Barths trip continued, with Mr. Combs and the videographer unaware of Mr. Jones's theft.

31.    Mr. Jones was scheduled to depart St. Barths before Christmas.  However, Mr. Jones enjoyed being on the yacht in St. Barths so much that he wanted to stay.  Despite the logistical challenges, Mr. Combs and his staff accommodated Mr. Jones's request to extend his stay.

32.    Once Mr. Combs and his staff learned that Mr. Jones wanted to stay past Christmas, they even went out of their way to purchase a last-minute Christmas gift for Mr. Jones so he would not be without a gift on the Holiday.

33.    By stealing the Stolen Computer Drives and Stolen Footage, Mr. Jones grossly betrayed the trust Mr. Combs and his team extended him.

34.    After the trip, in early 2023, Mr. Jones returned to Miami with Mr. Combs.

35.    Upon information and belief, following the theft, Mr. Jones connected the Stolen Computer Drives to the internet in order to copy the Stolen Footage.

36.    Upon information and belief, Mr. Jones travelled with the Stolen Computer Drives and the Stolen Footage in St. Barths, California, New York, and Florida.

37. At no time did Mr. Combs or the videographer authorize Mr. Jones to access or take the Stolen Computer Drives, copy the Stolen Footage, or use the Stolen Footage for any purpose.

38. Mr. Jones knew that the Stolen Footage belonged to Mr. Combs and knew that he did not have authorization to access the computer drives or copy the footage.

39. Mr. Combs did not become aware of Mr. Jones's theft until December 2025 when it came to his attention that the Stolen Footage—footage Mr. Combs had created for use in his own forthcoming documentary—had been published by Netflix in a competing documentary.

40. Upon information and belief, Mr. Jones remains in possession of the Stolen Computer Drives to this day.

## III.   JONES' ATTEMPTED EXTORTION AND RETALIATION

41. After the trip to St. Barths, Mr. Jones continued to work on the Album and submitted invoices to the Label for his engineering services.

42. In 2023, Mr. Jones took a break from working with Mr. Combs on the Album and accepted an opportunity to work on a music tour for Mr. Combs's competitor, 50 Cent.

43. Upon information and belief, while working on 50 Cent's tour in 2023, Mr. Jones regularly wore a hat promoting Mr. Combs's brand "Bad Boy," proudly publicizing his affiliation with Mr. Combs.

44. Mr. Jones did not stay on 50 Cent's tour for long, and instead returned to work on the Album with Mr. Combs in short order, evidently preferring to work with Mr. Combs.

45. Mr. Jones was compensated for his work on the Album, as well as for out-of-pocket expenses, including meals.  However, perceiving an opportunity to profit further, Mr. Jones demanded more.

46.    After the Label paid Mr. Jones, he sought additional fees for work he described as "producer services" that he allegedly performed on the Album.  Mr. Jones kept increasing his demand again and again, sometimes increasing his demand before the Label could even respond to his prior demand.  Mr. Jones's demands for more money lacked any contractual or equitable basis and the amounts he sought were incommensurate with the work performed.  Rather, they reflect Mr. Jones's unscrupulous approach to seeking to profit off of Mr. Combs's success.

47.    Upon information and belief, at or around the time Mr. Jones was making increasing demands for payment from the Label, he needed money to defend against legal troubles he was facing.

48.    Upon information and belief, Mr. Jones had been accused of sexually assaulting a woman in or around October 2022 and November 2023, and he was seeking cash to pay for his defense.

49.    The Label refused Mr. Jones's unjustified demands for more money.

50.    When the Label refused his outrageous demands, Mr. Jones filed the underlying complaint in this case, making outrageous and wholly unsubstantiated claims of sexual abuse and sex trafficking in a transparent attempt to humiliate, malign, and embarrass Mr. Combs in retaliation for refusing Mr. Jones further payment.

51.    In an attempt to extract an undeserved payout, Mr. Jones dressed up a run of the mill commercial disagreement as a salacious, seventeen count complaint alleging RICO conspiracy (which claim has since been dismissed), sexual assault and harassment, premises liability, violation of the TVPA, aiding and abetting and being a beneficiary of a violation of the TVPA (which claims have since been dismissed), obstruction of the enforcement of the TVPA (which claim has since been dismissed), negligent and intentional infliction of emotional distress

(which claims have since been dismissed), and breach of contract (which claim has since been dismissed).  Mr. Jones's complaint consists of nearly 100 pages, countless tall tales, shameless celebrity namedrops, and irrelevant images, all designed to punish Mr. Combs for the Label's refusal to accede to Mr. Jones's payment demands and in a misguided attempt to obtain a financial windfall at Mr. Combs's expense.

52.     Mr. Jones brought the underlying complaint against Mr. Combs as well as other deep-pocketed individuals and entities he perceived as affiliated with Mr. Combs.

53.     Among the defendants were several defendants affiliated with Universal Music Group (the "UMG Defendants").  As the Court would observe, "the rationale underlying" the UMG Defendants' "alleged responsibility changed between the first and second amended complaints."  In fact, Mr. Jones's attorney later admitted that "there is no legal basis for the claims and allegations that were made against the UMG Defendants" and, on May 13, 2024, moved to voluntarily dismiss them from the underlying complaint, which the Court granted on December 13, 2024.

54.     Mr. Jones also named Mr. Combs, his business enterprises, and his former chief of staff, Kristina Khorram, as defendants—all of whom sought dismissal of the underlying complaint.  On March 24, 2025, the Court dismissed many of the claims remaining against Mr. Combs, his businesses, and Ms. Khorram, including the alleged RICO conspiracy, negligent and intentional infliction of emotional distress, and breach of contract claims asserted against Mr. Combs and his businesses.  All claims against Mr. Combs's businesses were dismissed.

55.     Mr. Jones also named Cuba Gooding, Jr. and Justin Combs as defendants.  On May 6, 2025, the Court denied Mr. Jones's request to effectuate service of Mr. Gooding, Jr. and

Justin Combs by alternative means and dismissed them from the underlying action without prejudice.  Mr. Jones never served Gooding, Jr. or Justin Combs.

56.    Mr. Jones's once sprawling lawsuit has now been reduced to a suit against two defendants and limited to isolated allegations of sexual misconduct (all of which are meritless).

57.    On information and belief, Mr. Jones intends to use his underlying lawsuit to promote his personal brand and gain publicity for a book that he is writing.

**A.    Mr. Jones Sells the Stolen Footage to Combs's Documentary Competitors**

58.    On or around December 2, 2025, the Documentary Competitors released a documentary purporting to be about Mr. Combs's life titled "Sean Combs: The Reckoning" (the "Competing Documentary").  The Competing Documentary takes an unabashedly pejorative view of Mr. Combs, collecting statements from a host of people with axes to grind and who stand to personally benefit from the proliferation of false claims.

59.    In a seemingly endless quest to unjustly profit from Mr. Combs, Mr. Jones appears in Episode 4 of the Competing Documentary, giving a lengthy interview filled with malicious, false, and defamatory statements against Mr. Combs against the backdrop of the Stolen Footage, which, upon information and belief, he sold to the Documentary Competitors.

60.    Indeed, Episode 4 of the Competing Documentary displays on-screen text that states: "Lil Rod provided the filmmakers with footage of his 13 months working with Combs."

61.    Upon information and belief, Mr. Jones falsely informed the Documentary Competitors that the Stolen Footage was his to sell, rather than belonging to Mr. Combs.

62.    Upon information and belief, the sale of the Stolen footage took place in California.

63. Upon review of the Competing Documentary, it became apparent, for the first time, that Mr. Jones had provided footage that belonged to Mr. Combs to the Documentary Competitors for use in the Competing Documentary.

64. Shortly after the Competing Documentary was released, Mr. Combs learned information that formed the belief that Mr. Jones had stolen such footage from a videographer in St. Barths.

65. The Competing Documentary illustrated, for the first time, portions of what the Stolen Footage consisted of. The Stolen Footage displayed in the Competing Documentary generally depicts Mr. Combs, Mr. Jones, and others (a) working on a musical album on a yacht in St. Barths; (b) working on a musical album in Mr. Combs's home in Miami, Florida; and (c) socializing, exercising, or otherwise interacting with various individuals on a yacht in St. Barths and Mr. Combs's home in Miami, Florida.

66. The Stolen Footage was filmed and compiled by one or more videographers, at the direction of Mr. Combs and pursuant to agreements with those videographers and Mr. Combs's affiliate entities. Mr. Combs owns all rights and interests, including copyrights to the Stolen Footage.

67. Mr. Combs was entitled to, and intended to, make exclusive use of the Stolen Footage for the Combs Documentary he was making about his life.

68. Instead, as the intended consequence of Mr. Jones's unlawful and unscrupulous conduct, the Stolen Footage was misappropriated into Mr. Combs's direct competitors' Competing Documentary.

69. The Stolen Footage played a prominent role in the Competing Documentary. Mr. Jones's interview spans roughly 20 minutes of Episode 4, with the Stolen Footage playing

prominently with Mr. Jones's interview playing in the background.  The Stolen Footage also appears in other portions of Episode 4 in addition to Mr. Jones's interview.

70. The Stolen Footage was essential to the Competing Documentary.  Indeed, public reports reference "never-before-seen footage of Combs and his inner circle" as contributing to a "staggering examination" of Mr. Combs.

71. The Competing Documentary is a tired, lengthy, rehashing of old, meritless allegations against Mr. Combs.  Without the theft and gross misappropriation of the Stolen Footage to directly compete with Mr. Combs's own planned documentary, the Competing Documentary would not have been commercially viable.

72. Exclusivity is highly valuable for documentary footage.  Indeed, the Competing Documentary heavily advertised its use of the Stolen Footage as "never-before-seen."

73. Mr. Jones's theft and subsequent sale of the Stolen Footage to the Documentary Competitors, deprived Mr. Combs of the exclusive use of the Stolen Footage for the Combs Documentary, causing significant damage to Mr. Combs.

**B.**   **Mr. Jones Defames Mr. Combs in the Competing Documentary**

74. Upon information and belief, Mr. Jones used the Stolen Footage as his leverage to secure significant air time in the Competing Documentary.

75. Mr. Jones used this airtime to lodge false and defamatory statements against Mr. Combs.

*Mr. Jones falsely accuses Mr. Combs of being involved in the shooting death of "G"*

76. Among the many false and defamatory statements made by Mr. Jones in the Competing Documentary, Mr. Jones falsely claims that Mr. Combs was involved in the shooting death of an individual named "G" at Chalice Recording Studio.

77.     Specifically, Mr. Jones falsely states: "One day, we got our headphones on and we're working.  I see this guy named 'G.'  I don't know his full name.  I see him, Justin, and Puff [Mr. Combs] go in the bathroom together.  Moments later, I hear . . . boom, boom, two shots. . . . I see Justin and Puff [Mr. Combs] walk out.  I open the door and 'G' was in there just bleeding. He was bleeding out. . . . I got to get this guy outside so when the ambulance come, he can be getting in. . . . The police did arrive.  Puff [Mr. Combs] said, 'tell them the shooting did not happen here.'  And the way they were saying it, they weren't asking.  Know what I'm saying?"

78.     In other words, Mr. Jones falsely accused Mr. Combs and his son of shooting a man.  In fact, the shooting at Chalice Recording Studio took place *outside*, not inside a bathroom as claimed by Mr. Jones.  Public reports have identified other individuals who are suspects in a series of robberies in the area as the alleged culprits of the shooting – not Mr. Combs.  Mr. Combs was inside the studio and had no involvement in the shooting.

79.     Because he himself was on the scene at the time in question, Mr. Jones knew his accusations about Mr. Combs's purported involvement in the Chalice Recording Studio shooting were false and recklessly broadcasted them on the Netflix documentary anyway.

*Mr. Jones falsely claims that Mr. Combs "groom[ed]" and sexually harassed him*

80.     In his interview, Mr. Jones falsely stated that Mr. Combs "was definitely grooming" him by buying him "sneakers," "promis[ing] [him] $250,000," "promis[ing] [him] the house right next door [to Mr. Combs's house]," and by having a "conversation about making [him] the producer of the year."

81.     Mr. Jones continued, falsely claiming that Mr. Combs showed him a "video with someone penetrating a Caucasian man from the rear end" and told Mr. Jones that "this is the way to success in music."

48

82.     Mr. Jones continued, falsely claiming that Mr. Combs slept in the same bed as Mr. Jones: "There were days we [meaning Mr. Jones and Mr. Combs] would party and I would wake up not knowing what the hell happened.  Some days, there was (sic) girls next to me.  Woke up some days, *he* [meaning Mr. Combs] was in the bed."

83.     Mr. Combs never "groom[ed]" Mr. Jones.

84.     Mr. Combs never promised or gave Mr. Jones anything to entice him into sexual acts.

85.     Mr. Combs never told Mr. Jones that having anal sex "is the way to success in music."

86.     Mr. Combs never slept in the same bed as Mr. Jones.

87.     Because such things did not happen to him, Mr. Jones knew these statements were false and published them in his interview on Netflix notwithstanding such knowledge.

*Mr. Jones falsely claims that Mr. Combs instructed him to recruit sex workers*

88.     In his interview shown in the Competing Documentary, Mr. Jones falsely stated that he "was told to" go to a strip club in Miami and that "they [meaning Mr. Combs and his team] put [Jones] on recruiting sex workers."  He falsely explained that "they [meaning Mr. Combs and his team] gave me the Bad Boy hat – they would tell me 'yo, put this hat on, get some girls to come back to the house.'"

89.     Mr. Combs never told Mr. Jones to "recruit[] sex workers."

90.     Mr. Combs never told Mr. Jones to put on his "Bad Boy hat" and "get some girls to come back to the house."

91.     Upon information and belief, Mr. Jones had a personal proclivity for sleeping with sex workers and would hire sex workers for himself on his own accord.

92.    Mr. Jones's statements in his Netflix interview accusing Mr. Combs of directing him to procure sex workers are false and Mr. Jones knew they were false.

*Mr. Jones falsely states that Mr. Combs drugged him without his knowledge.*

93.    Mr. Jones also falsely claimed in his interview in the Competing Documentary that he was given drugs by Mr. Combs without his knowledge: "It would be the tuci, the cocaine, or even molly – we were all on these products, whether we knew it or not."  "I would wake up feeling sore, still not understanding exactly what's . . . transpiring.  But this is me starting to understand that I was drugged pretty often."

94.    The meaning of this statement is clear: Mr. Jones claimed (falsely) that Mr. Combs drugged him without his knowledge and abused him.

95.    Upon information and belief, Mr. Jones voluntarily consumed drugs and alcohol while working on the Album.

96.    Mr. Jones's statements in his Netflix interview that Mr. Combs drugged him are positively false and Mr. Jones knew they were false because no such thing ever happened.

*Mr. Jones falsely claims that Mr. Combs filmed him engaging in sexual activity without his consent with "hidden cameras everywhere" on his "property"*

97.    Mr. Jones also falsely claimed in the Competing Documentary that Mr. Combs filmed him engaging in sexual activity, without his consent, using "hidden cameras."

98.    During the same discussion in which Mr. Jones claimed he was engaging in drug-fueled sex acts, he claimed to have discovered "hidden cameras" that were "hidden . . . everywhere" in Mr. Combs's "property."

99.    In other words, Mr. Jones claimed (falsely) that Mr. Combs had used these "hidden cameras" to secretly record him engage in sexual activity.

100.    That statement is false and Mr. Jones knew or recklessly disregarded it was false when he broadcasted it to the world.

101.    During his interview in the Competing Documentary, Mr. Jones lied and made the false statements described above knowing they were false or in reckless disregard of their falsity, and as part of his campaign for revenge and to profit from Mr. Combs.  Mr. Jones knew the statements were false because the statements concerned events that had purportedly involved Mr. Jones personally, yet he knew from his own personal experience that these things had not happened to him.

102.    Mr. Jones made the foregoing false and defamatory statements in bad faith, as part of a deliberate effort to damage Mr. Combs's reputation, undermine his business, and poison the public's perception of him, which was the goal of the Documentary Competitors in creating the Competing Documentary.

103.    Mr. Jones eagerly peddled these lies to enrich himself, knowing that his claims were false.

104.    Mr. Jones's false claims caused significant harm to Mr. Combs.  The Competing Documentary has been viewed across the globe, likely by millions of people.  Moreover, many viewers published and republished the Competing Documentary's content, including Jones's false and defamatory statements.

105.    The defamatory statements described herein and broadcasted globally accused Mr. Combs of serious crimes and seriously injured him in his trade and business; they were defamatory per se and caused him significant and lasting damage.

106.    The unrelenting tide of negative publicity resulting from Mr. Jones's lies has caused and will continue to cause Mr. Combs significant reputational and economic harm.

## FIRST CAUSE OF ACTION
### (Computer Fraud and Abuse Act – 18 U.S.C. § 1030(g))

107.    Counterclaim-Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

108.    As set forth above, Counterclaim-Plaintiff is the owner of the Stolen Footage on the Stolen Computer Drives.

109.    As set forth above, Counterclaim-Defendant did not own the Stolen Computer Drives and when he stole the Stolen Computer Drives and accessed them without authorization to unlawfully copy the Stolen Footage, he intentionally accessed, and obtained information from, the Stolen Computer Drives without authorization.

110.    The Stolen Computer Drives constitute a protected computer as defined by the Computer Fraud and Abuse Act.

111.    As set forth above, this unauthorized access of the Stolen Computer Drives resulted in significant loss to Counterclaim-Plaintiff aggregating in excess of $5,000 in value.

## SECOND CAUSE OF ACTION
### (California Computer Data Access and Fraud Act – Cal. Penal Code § 502(e))

112.    Counterclaim-Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

113.    As set forth above, Counterclaim-Plaintiff is the owner of the Stolen Footage on the Stolen Computer Drives.

114.    As set forth above, Counterclaim-Defendant knowingly accessed and used, without permission, the Stolen Computer Drives and Stolen Footage.

115.    As set forth above, such access and use were for the purpose of wrongfully obtaining data (the Stolen Footage) and money (the proceeds of the unlawful sale of the Stolen Footage to the Documentary Competitors).

116.    The Computer Drives and Stolen Footage, respectively, constitute a "computer system" and "data" as used in Cal. Penal Code § 502(c)(1).

117.    As set forth above, this unauthorized access of the Stolen Computer Drives and copying of the Stolen Footage resulted in significant loss to Counterclaim-Plaintiff.

### THIRD CAUSE OF ACTION
### (Receipt of Stolen Property – Cal. Penal Code § 496(c))

118.    Counterclaim-Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

119.    As set forth above, Counterclaim-Defendant received property consisting of the Stolen Footage and Stolen Computer Drives that was stolen or obtained in a manner constituting theft.

120.    As set forth above, Counterclaim-Defendant concealed the theft of the Stolen Footage and Stolen Computer Drives and withheld the Stolen Footage and Stolen Computer Drives from Counterclaim-Plaintiff.

121.    As set forth above, Counterclaim-Defendant sold the Stolen Footage to the Documentary Competitors.

122.    As set forth above, Counterclaim-Defendant knew that the Stolen Footage and Stolen Computer Drives had been stolen or obtained in a manner constituting theft.

123.    As set forth above, Counterclaim-Defendant's receipt, concealment, withholding, and sale of the Stolen Computer Drives and Stolen Footage resulted in significant loss to Counterclaim-Plaintiff.

## FOURTH CAUSE OF ACTION
### (Conversion)

124.    Counterclaim-Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

125.    As set forth above, Counterclaim-Plaintiff owns the Stolen Footage and has the right to possess both the Stolen Footage and the Stolen Computer Drives.

126.    As set forth above, Counterclaim-Defendant dispossessed Counterclaim-Plaintiff of the Stolen Computer Drives and Stolen Footage in a manner that is inconsistent with Counterclaim-Plaintiff's property rights over the Stolen Computer drives and Stolen Footage.

127.    As set forth above, Counterclaim-Defendant intended to exercise ownership over the Stolen Computer drives and Stolen Footage inconsistent with Counterclaim-Plaintiff's right of possession over the Stolen Computer drives and Stolen Footage.

128.    As set forth above, Counterclaim-Defendant exercised an unauthorized dominion over the Stolen Computer Drives and Stolen Footage to the exclusion of Counterclaim-Plaintiff's right.

129.    As set forth above, Counterclaim-Defendant's dispossession of and unlawful dominion over the Stolen Computer Drives and Stolen Footage resulted in significant loss to Counterclaim-Plaintiff.

## FIFTH CAUSE OF ACTION
### (Violation of Article 1240 of the French Civil Code)

130.    Counterclaim-Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

54

131.    Article 1240 of the French Civil Code provides: "Any act whatsoever by man which causes damage to another person obliges the person through whose fault it occurred to make reparation for it."

132.    As set forth above, Counterclaim-Defendant committed affirmative acts, including, among other things, stealing the Stolen Computer Drives, accessing the Stolen Computer Drives without authorization, copying the Stolen Footage contained thereon, and selling the Stolen Footage to the Documentary Competitors while misrepresenting that that the Stolen Footage was his to sell rather than belonging to Mr. Combs.

133.    Counterclaim-Defendant's acts, including his theft of the Stolen Computer Drives, his unauthorized access to the Stolen Computer Drives, and his unauthorized copying and sale of the Stolen Footage under false pretenses, were wrongful and constitute fault within the meaning of Article 1240 of the French Civil Code.

134.    Counterclaim-Defendant's wrongful acts directly and proximately caused damage to Counterclaim-Plaintiff, including the loss of the exclusive use of the Stolen Footage, the loss of possession of the Stolen Computer Drives and the Stolen Footage, and significant economic and reputational harm.

135.    A direct causal link exists between Counterclaim-Defendant's fault and the damage suffered by Counterclaim-Plaintiff.

136.    By reason of the foregoing, and pursuant to Article 1240 of the French Civil Code, Counterclaim-Defendant is obliged to make reparation to Counterclaim-Plaintiff for all damage caused by his wrongful acts, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
**(Unfair Business Practices - Cal. Bus. & Prof. Code § 17200 *et seq.*)**

137.    Counterclaim-Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

138.    As set forth above, Counterclaim-Defendant engaged in an unlawful, unfair, or fraudulent business act or practice when he stole the Stolen Computer Drives, accessed them without authorization, copied and stole the Stolen Footage, and then sold the Stolen Footage to the Documentary Competitors—direct competitors of Counterclaim-Plaintiff—while misrepresenting that the Stolen Footage was his to sell rather than belonging to Mr. Combs.

139.    As set forth herein, Counterclaim-Defendant's conduct is forbidden by various laws, including the Copyright Act, 17 U.S.C. § 501,[3] the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), Receipt of Stolen Property, Cal. Penal Code § 496(c), common law Conversion, common law Unfair Competition, and common law Unjust Enrichment.

140.    As set forth above, Counterclaim-Defendant's theft of the Stolen Computer Drives and Stolen Footage, unauthorized copying of the Stolen Footage, and unlawful sale of the Stolen Footage to the Documentary Competitors resulted in significant harm to Counterclaim-Plaintiff.

## SEVENTH CAUSE OF ACTION
**(Unfair Competition)**

141.    Counterclaim-Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

142.    As set forth above, Counterclaim-Defendant stole the Stolen Computer Drives and Stolen Footage, which belonged to Counterclaim-Plaintiff.

---

[3] Counterclaim-Plaintiff reserves the right to amend these counterclaims to assert a claim for copyright infringement under 17 U.S.C. § 501.

143.    As set forth above, Counterclaim-Defendant misappropriated Counterclaim-Plaintiff's property by using the Stolen Computer Drives and Stolen Footage to compete against Counterclaim-Plaintiff's own use of that property—namely, by selling the Stolen Footage to the Documentary Competitors, while misrepresenting that the Stolen Footage was his to sell rather than belonging to Mr. Combs, and depriving Counterclaim-Plaintiff of the significant economic advantage that accompanies the exclusive right to use such footage for his own Documentary.

144.    As set forth above, Counterclaim-Defendant's misappropriation and pawning off of Counterclaim-Plaintiff's property was done in bad faith.

145.    As set forth above, Counterclaim-Defendant's unfair competition resulted in significant loss to Counterclaim-Plaintiff.

## EIGTH CAUSE OF ACTION
### (Unjust Enrichment)

146.    Counterclaim-Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

147.    As set forth above, by stealing the Stolen Computer Drives and Stolen Footage, and selling the Stolen Footage to the Documentary Competitors, Counterclaim-Defendant received a benefit and was enriched in the form of the payment he received as a result of the sale.

148.    As set forth above, Counterclaim-Defendant's retention of that benefit is unjust and equity and good conscience militate against permitting Counterclaim-Defendant to retain the benefit.  Counterclaim-Defendant had no right to take the Stolen Computer Drives and Stolen Footage, which was owned by Counterclaim-Plaintiff.  Counterclaim-Defendant also had no right to sell the Stolen Footage to the Documentary Competitors.

149.    As set forth above, Counterclaim-Defendant's retention of that benefit was at the expense of Counterclaim-Plaintiff.  As a result of Counterclaim-Defendant selling the Stolen

Footage to the Documentary Competitors, Counterclaim-Plaintiff has been denied the significant economic advantage of his right to make exclusive use of the Stolen Footage which has caused significant harm to Counterclaim-Plaintiff.

## NINTH CAUSE OF ACTION
### (Replevin)

150.    Counterclaim-Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

151.    As set forth above, Counterclaim-Plaintiff has a possessory right to the Stolen Computer Drives and Stolen Footage superior to that of Counterclaim-Defendant.  Counterclaim-Defendant has no right to possess the Stolen Computer Drives and Stolen Footage.

152.    Counterclaim-Plaintiff is entitled to the immediate possession of the Stolen Computer Drives and Stolen Footage.

153.    As set forth above, Counterclaim-Plaintiff has been damaged by Counterclaim-Defendant's wrongful detention of the Stolen Computer Drives and Stolen Footage.

## TENTH CAUSE OF ACTION
### (Defamation)

154.    Counterclaim-Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

155.    As set forth above, Counterclaim-Defendant made false and defamatory statements during his interview in the Competing Documentary, which have the tendency to expose and, in fact, did expose Counterclaim-Plaintiff to public contempt, ridicule, hatred, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.

156.    Counterclaim-Defendant's defamatory statements included the following false assertions (which are specifically set forth in detail above):

58

      a.     Counterclaim-Plaintiff participated in the shooting death of an individual identified as "G";

      b.     Counterclaim-Plaintiff "groom[ed]" and sexually harassed Counterclaim-Defendant;

      c.     Counterclaim-Plaintiff instructed Counterclaim-Defendant to "recruit" sex workers;

      d.     Counterclaim-Plaintiff drugged Counterclaim-Defendant without his knowledge; and

      e.     Counterclaim-Plaintiff secretly recorded Counterclaim-Defendant engaging in sexual activity using "hidden cameras."

157. The statements published by Counterclaim-Defendant accuse Counterclaim-Plaintiff of serious crimes and tended to harm Counterclaim-Plaintiff in his business and profession.

158. Counterclaim-Defendant's false and defamatory statements constitute defamation *per se*.

159. Counterclaim-Defendant's false and defamatory statements were published to countless third-parties across the world in the Competing Documentary, as more fully set forth above.

160. Counterclaim-Defendant's false and defamatory statements were made without privilege or authorization.

161. Counterclaim-Defendant's false and defamatory statements directly and proximately caused substantial economic and reputational harm to Counterclaim-Plaintiff.

162.    As set forth more fully above, Counterclaim-Defendant published the defamatory statements with actual malice, while knowing, or at a minimum, recklessly disregarding that the defamatory statements were false because, among other things, Counterclaim-Defendant knew that (a) the shooting of "G" took place outside the studio and did not involve any participation by Counterclaim-Plaintiff, who was inside the studio at the time of the shooting; (b) the actual shooters in the Chalice Recording shooting incident have been identified in public reporting; (c) Counterclaim-Plaintiff did not "groom" Counterclaim-Defendant, never promised Counterclaim-Defendant "$250,000," that he would purchase Counterclaim-Defendant a "house right next door" to his own, or that he would make Counterclaim-Defendant "producer of the year," and never told Counterclaim-Defendant that a video depicting someone penetrating a Caucasian man from the rear end was the "way to success in music"; (d) Counterclaim-Plaintiff did not instruct Counterclaim-Defendant to recruit sex workers; (e) Counterclaim-Plaintiff never drugged Counterclaim-Defendant without his knowledge; and (f) Counterclaim-Plaintiff never secretly recorded Counterclaim-Defendant engaging in sex acts with "hidden cameras" because Counterclaim-Defendant never saw such footage (indeed, no such secret footage exists).  Despite all this, Counterclaim-Defendant uttered and published the defamatory statements anyway with the goal of taking revenge against Mr. Combs and profiting from his appearance on the Competing Documentary.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Plaintiff respectfully requests judgment:

1.       Awarding Counterclaim-Plaintiff money damages, including statutory treble damages, in an amount to be determined at trial;

2.       Awarding Counterclaim-Plaintiff his reasonable attorneys' fees and costs;

3.       Ordering that Counterclaim-Defendant immediately return the Stolen Computer Drives and Stolen Footage to Counterclaim-Plaintiff and destroy any copies of the Stolen Footage retained by Counterclaim-Defendant; and

4.       Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Counterclaim-Plaintiff demands a jury trial.

Dated:  August 11, 2026
        New York, New York

Respectfully submitted,

SHER TREMONTE LLP

By:     */s/ Erica A. Wolff*
        Erica A. Wolff
        Michael Tremonte
        Mark Cuccaro
        Benjamin J. Shack Sackler
        90 Broad Street, 23rd Floor
        New York, NY 10004
        (212) 202-2600
        ewolff@shertremonte.com
        mtremonte@shertremonte.com
        mcuccaro@shertremonte.com
        bshacksackler@shertremonte.com

        *Attorneys for Defendant Counterclaim-Plaintiff*
        *Sean Combs*

61