UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rodney Jones,<br>Plaintiff and Counterclaim-Defendant,<br>v.<br><br>Sean Combs, Justin Dior Combs, Cuba Gooding, Jr., Lucian Charles Grainge, Kristina Khorram, Love Records, Motown Records, Universal Music Group, Combs Global Enterprises, JOHN and JANE DOES 1–10, and ABC CORPORATIONS 1–10,<br>Defendants.<br>______<br>Sean Combs,<br>Counterclaim-Plaintiff,<br><br>v.<br><br>Rodney Jones,<br>Counterclaim-Defendant. | Case No. 1:24-cv-01457 (JPO)<br><br>Plaintiff and Counterclaim-Defendant's Memorandum of Law in Support of Motion to Dismiss Counterclaims |

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF AND COUNTERCLAIM-DEFENDANT RODNEY JONES'S
MOTION TO DISMISS COUNTERCLAIMS

# TABLE OF CONTENTS


PRELIMINARY STATEMENT

LEGAL STANDARD UNDER RULES 8 AND 12(b)(6)

ARGUMENT

I. THE COMMON PREMISE OF COUNTS I–IX LACKS A PLAUSIBLE FACTUAL BASIS
  - A. Information-and-belief allegations require a plausible factual foundation
  - B. The documentary credit does not plead theft, access, sale, payment, or possession
  - C. Jones's prior device allegations show why source and provenance matter
  - D. Combs Does Not Plead the Source, Creator, or Chain of Rights for the Disputed Footage

II. COUNT I FAILS TO PLEAD UNAUTHORIZED ACCESS AND QUALIFYING CFAA LOSS
  - A. Cause of action and pleading requirements
  - B. The Counterclaims Do Not Plausibly Connect Jones to an Unauthorized Computer-Access Event
  - C. Paragraph 111 Pleads a Dollar Amount, not a Qualifying CFAA Loss
  - D. The statutory deficiency requires dismissal of Count I

III. COUNT II FAILS TO PLEAD KNOWING UNAUTHORIZED ACCESS, PROHIBITED USE, OR CALIFORNIA STATUTORY REACH
  - A. Cause of action and pleading requirements
  - B. Paragraphs 114–117 Repeat Access and Use Conclusions Without Pleaded Facts
  - C. The California allegations do not identify a California computer event

IV. COUNT III FAILS TO PLEAD STOLEN PROPERTY, KNOWING CONDUCT, OR SALE
  - A. Cause of action and pleading requirements
  - B. The allegedly stolen character of the property and Jones's knowing conduct remain unsupported conclusions
  - C. The copying-based branch is preempted by federal copyright law

v. COUNT IV FAILS TO PLEAD DOMINION OVER IDENTIFIED PROPERTY
  - A. Cause of action and pleading requirements
  - B. Paragraphs 125–129 do not cure the missing factual connection between the claimed property and Jones's accused interference
  - C. Loss of exclusive exploitation is not a distinct conversion wrong

VI. COUNT V FAILS TO PLEAD FAULT, CAUSATION, OR A BASIS FOR APPLYING FRENCH LAW
  - A. Cause of action and governing requirements
  - B. The asserted fault and causal connection depend on the same unsupported attribution
  - C. Offshore yacht allegations require a maritime analysis, not automatic French-law application

VII. COUNT VI FAILS TO PLEAD A CALIFORNIA BUSINESS PRACTICE, VALID PREDICATES, OR AVAILABLE UCL RELIEF
  - A. Cause of action and pleading requirements
  - B. The alleged business practice depends on the same unsupported taking-and-sale narrative

C. The unlawful-prong allegations depend on the predicates actually identified in paragraph 139
D. The UCL does not authorize the damages Combs demands
VIII. COUNT VII FAILS TO PLEAD INDEPENDENT MISAPPROPRIATION AND ASSERTS COPYRIGHT-EQUIVALENT EXPLOITATION RIGHTS
A. Cause of action and pleading requirements
B. The alleged misappropriation assumes rather than supports the identity of the disputed material
C. Paragraphs 143–145 add labels, not a qualitatively different obligation
IX. COUNT VIII FAILS TO PLEAD SUPPORTED ENRICHMENT OR INDEPENDENT EQUITABLE BASIS
A. Cause of action and pleading requirements
B. The alleged enrichment depends on an unsupported transaction and source attribution
C. Paragraphs 147–149 rest entirely on the conventional tort allegations
D. The demand for exploitation proceeds is independently copyright preempted
X. COUNT IX FAILS TO PLEAD PRESENT WRONGFUL DETENTION AND SEEKS COPYRIGHT-EQUIVALENT COPY CONTROL
A. Cause of action and pleading requirements
B. The assertion of Jones's present detention lacks supporting facts
C. The copy-control theory enforces reproduction and distribution rights
XI. COUNT X FAILS AT LEAST AS TO UNSUPPORTED DEFAMATORY IMPLICATIONS, DEFECTIVE ACTUAL-MALICE ALLEGATIONS, AND FAIR-REPORT-PROTECTED STATEMENTS
A. Cause of action and pleading requirements
B. The allegations must be tested statement by statement
C. Paragraph 162(f) does not plead actual malice from Jones's alleged failure to see a recording
D. Section 74 Bars Any Statement That Fairly and Truly Reports Jones's Judicial Allegations
XII. COUNTS I–IX SHOULD BE DISMISSED, AND THE INDEPENDENT DEFECTS DEFEAT THE SPECIFIED THEORIES AND REMEDIES
CONCLUSION

## TABLE OF AUTHORITIES

CASES

- *Arista Records LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)
- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992)
- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)
- *Biro v. Condé Nast*, 807 F.3d 541 (2d Cir. 2015)
- *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004)
- *Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)
- *Cholowsky v. Civiletti*, 69 A.D.3d 110 (2d Dep't 2009)
- *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43 (2006)
- *Computer Associates International, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992)

- *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66 (1993)
- *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777 (2012)
- *Dillon v. City of New York*, 261 A.D.2d 34 (1st Dep't 1999)
- *Foman v. Davis*, 371 U.S. 178 (1962)
- *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006)
- *Gottwald v. Sebert*, 40 N.Y.3d 240 (2023)
- *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995)
- *Kakizaki v. Riedel*, 811 F. Supp. 129 (S.D.N.Y. 1992)
- *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)
- *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)
- *Lauritzen v. Larsen*, 345 U.S. 571 (1953)
- *Lopez v. BigCommerce, Inc.*, No. 16-CV-8970 (JPO) (S.D.N.Y. Aug. 1, 2017)
- *Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017)
- *Moxie Pest Control (Utah), LLC v. Nielsen*, No. 24-4076 (10th Cir. Jan. 21, 2026)
- *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004)
- *Siry Investment, L.P. v. Farkhondehpour*, 13 Cal. 5th 333 (2022)
- *Solomon R. Guggenheim Foundation v. Lubell*, 77 N.Y.2d 311 (1991)
- *Stanacard, LLC v. Rubard, LLC*, No. 12-CV-5176, 2016 WL 462508 (S.D.N.Y. Feb. 3, 2016)
- *Stepanov v. Dow Jones & Co., Inc.*, 120 A.D.3d 28 (1st Dep't 2014)
- *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011)
- *Thyroff v. Nationwide Mutual Insurance Co.*, 8 N.Y.3d 283 (2007)
- *Vigilant Insurance Co. of America v. Housing Authority*, 87 N.Y.2d 36 (1995)
- *Williams v. Williams*, 23 N.Y.3d 592 (1969)


STATUTES


- 18 U.S.C. § 202
- 18 U.S.C. § 1030(a)(2)(C)
- 18 U.S.C. § 1030(c)(4)(A)(i)(I)
- 18 U.S.C. § 1030(e)(11)
- 18 U.S.C. § 1030(g)
- Cal. Bus. & Prof. Code § 17200 et seq.
- Cal. Penal Code § 496(a)
- Cal. Penal Code § 496(c)
- Cal. Penal Code § 502(c)(1)
- Cal. Penal Code § 502(e)(1)
- Cal. Penal Code § 502(j)
- French Civil Code article 1240
- N.Y. Civ. Rights Law § 74
- N.Y. Civ. Rights Law § 76-a(1)–(2)


RULES


- Fed. R. Civ. P. 8
- Fed. R. Civ. P. 8(a)(2)
- Fed. R. Civ. P. 12(b)(6)
- Fed. R. Civ. P. 12(d)
- Fed. R. Civ. P. 44.1

## PRELIMINARY STATEMENT

Defendant and Counterclaim-Plaintiff Sean Combs's ("Combs") Counterclaims rest solely on labels, not facts. Combs repeatedly refers to "Stolen Computer Drives" and "Stolen Footage," but does not identify the videographer, the specific drives, when they were discovered missing, how the Netflix documentary footage was traced to those drives, or any nonconclusory facts tying Plaintiff/Counterclaim-Defendant Rodney Jones ("Jones" or "Lil Rod") to unauthorized access, theft, sale, payment, or current possession of any drive.

Those omissions are defeating as to Counts I–IX. Combs alleges that, during a St. Barths trip referenced in the SAC, Jones accessed a videographer's workstation, stole external drives, copied footage, traveled with it, sold it to competing documentary producers in California, and still possesses the drives, but each link is alleged only on information and belief or in conclusory terms. The only concrete allegation is an on-screen credit stating that "Lil Rod provided the filmmakers with footage of his 13 months working with Combs," which does not plausibly allege theft, unauthorized access, sale, payment, or present possession. The basis for dismissal is Combs's deficient pleading, not Jones's denials. The Counterclaims also omit basic facts about the footage's provenance. Although Combs alleges the footage was created at his direction by unnamed videographers under agreements with affiliated entities and that he owns all rights, he pleads no creator, no agreement, no assignment or chain of title, no drive inventory, and no facts tying the Netflix footage to any drive allegedly taken from a St. Barths workstation. Jones, by contrast, alleges the recordings came from his own phone—at Combs's direction and sometimes by Combs himself. SAC ¶ 28, ¶ 149 & n.35.

The Counterclaims do not plead facts resolving that source dispute; similarity in time and location is not enough to plausibly identify a stolen videographer drive as the source. The count-specific defects confirm the same problem. Although Combs filed these Counterclaims in a New York federal action, he invokes a patchwork of federal law, California statutes, French law, and common-law theories without alleging facts to satisfy each claim's elements, territorial reach, or remedies. Count I fails to plead a qualifying CFAA loss. Count II invokes a California computer statute without alleging any California-based access. Count III invokes California's stolen-property statute without plausibly alleging theft, knowledge, receipt, withholding, or sale. Counts IV and IX conflate physical possession of drives with copyright-style control over copies. Count V relies on French law without facts supporting its application. Count VI seeks UCL relief but

rests on deficient predicates. Counts VII and VIII repackage the same footage allegations as unfair competition and unjust enrichment. Count X fails to the extent it rests on unsupported defamatory implications, inadequate actual-malice allegations, or statements protected as fair and true reports of judicial allegations. This motion does not ask the Court to choose between competing narratives. It asks the Court to apply Rules 8 and 12(b)(6) to Combs's Counterclaims. Combs cannot plead theft by labeling footage "stolen," plead unauthorized access by assuming a stolen drive, plead a sale or payment from an on-screen "provider" credit, or plead present possession based solely on the documentary's existence. Because the Counterclaims allege no facts making those inferences plausible, Counts I–IX should be dismissed, and the deficient portions of Count X should be dismissed as well.

## LEGAL STANDARD UNDER RULES 8 AND 12(b)(6)

Jones moves under Federal Rule of Civil Procedure 12(b)(6), which authorizes dismissal of any claim for relief, including a counterclaim, that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This motion challenges the legal sufficiency of Combs's Counterclaims, not the Court's subject-matter jurisdiction.

To survive dismissal, Combs must plead facts that make each counterclaim plausible, not merely possible. The Court accepts well-pleaded factual allegations and draws reasonable inferences in Combs's favor, but it need not accept legal conclusions, labels, or "threadbare recitals of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Allegations that are "merely consistent with" liability do not suffice; the pleaded facts must permit a reasonable inference of liability and raise the claim above speculation. Id.; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). The inquiry is element by element.

These standard matters because Combs repeatedly substitutes defined terms and conclusions for pleaded facts. Calling footage "Stolen Footage" does not plead theft. Calling drives "Stolen Computer Drives" does not plead unauthorized access, copying, sale, payment, or present possession. The Court must disregard those conclusory labels and examine whether the factual allegations make the required elements plausible.

On this motion, the Court may consider ECF No. 120, documents attached to or incorporated into it, documents integral to the Counterclaims, and matters properly subject to

judicial notice. Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002). The Court may also take judicial notice of the SAC, ECF No. 38, for the fact that the allegations were made, not for the truth of any disputed allegation. Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 156–57 (2d Cir. 2006). Jones relies on the SAC only to identify the pleaded source-and-provenance dispute concerning recordings, not to ask the Court to resolve that dispute in his favor.

Jones does not seek conversion to summary judgment under Fed. R. Civ. P. 12(d). His denials and factual reservations preserve his position; they are not the basis for dismissal. The basis for dismissal is the in insufficiency of Combs's own pleading and the independent legal defects addressed below.

## ARGUMENT

### I. The Common Premise of Counts I–IX Lacks a Plausible Factual Basis.

#### *A. Information-and-belief allegations require a plausible factual foundation.*

Information-and-belief pleading remains subject to plausibility. It is permissible where the relevant facts are peculiarly within the opposing party's possession and control or where factual information makes the inference of culpability plausible. Arista Records LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010). The pertinent question is the factual basis for the inference, not the mere use of the words information and belief. Jones challenges the missing connection between the footage displayed in the documentary, the unidentified videographer's alleged drives, and the theft, access, copying, sale, payment, and possession attributed to Jones.

Paragraphs 24–25, 27–28, 35–36, 40, 59, and 61–62 plead on information and belief of the alleged plan, taking, access, concealment, copying, travel, continued drive possession, and sale. Paragraph 4 similarly links the interview to an alleged sale agreement on information and belief. Paragraph 60 instead quotes an on-screen credit. Paragraph 3 affirmatively alleges the theft, access, copying, and sale; paragraph 38 alleges knowledge; paragraph 66 asserts ownership; and paragraph 147 affirmatively alleges payment. Jones does not argue that Combs omitted the labels. He argues that the labels lack the pleaded facts necessary to make the inference plausible.

The alleged creators and source materials are matters Combs attributes to his own production arrangements, yet the pleading remains vague. Paragraph 12 refers to "various videographers"; paragraph 16 to "one of the videographers"; paragraph 25 to "one videographer"; and paragraph 66 to "one or more videographers." None identifies the purported creator of the disputed footage. . Paragraph 66 does nothing more than allude to agreements involving affiliate

entities. It does not identify the agreements, nor does it explain how they establish a chain of title to Combs individually. These omissions concern Combs's alleged source, property, and rights. They are not facts narrowly confined to Jones's knowledge.

*B.* ***The documentary credit does not plead theft, access, sale, payment, or possession.***

The quoted credit states: "Lil Rod provided the filmmakers with footage of his 13 months working with Combs." Counterclaims ¶ 60. It says nothing about computer drives, a videographer, lack of permission, unauthorized access, copying, sale, payment, a California transaction, or present possession. Providing footage is not stealing a drive. Providing footage is not accessing a computer without authorization. Providing footage is not selling footage. Providing footage is not receiving payment. And providing footage is not retaining a physical drive. The documentary credit therefore cannot supply all the intermediate facts that Combs's theory requires.

Paragraphs 29 and 65 describe work and interactions on the yacht and at Combs's Miami home. Paragraph 66 asserts that videographers filmed and compiled the disputed footage under agreements with Combs's affiliate entities and that Combs owns all rights, including copyrights. Jones disputes that attribution. The pleading identifies no distinguishing feature connecting the published material to the particular drives allegedly taken in December 2022. The problem is not the absence of forensic proof, serial numbers, or an attached assignment. The problem is the absence of pleaded facts connecting the documentary footage to the allegedly stolen drives.

*C.* ***Jones's prior device allegations show why source and provenance matter.***

SAC paragraph 28 states: "Mr. Combs required Mr. Jones to record him constantly. On several occasions, Mr. Combs took Mr. Jones's cell phone and began recording himself." It further alleges hundreds of hours of footage and audio. SAC paragraph 149 describes Combs recording himself while coaching Jones concerning sex-worker solicitation. Separately, footnote 35 on page 60 identifies a recording allegedly made by Combs at a Miami club. Those allegations concern a separate source of recordings using Jones's own devices; they do not admit possession of a videographer's drives.

The Court may notice the SAC for the fact that those allegations were made, not for their truth. Global Network, 458 F.3d at 156–57. Jones relies on those allegations only to identify the pleaded source-and-provenance dispute that Combs's Counterclaims fail to bridge. The dismissal argument instead addresses ECF No. 120 itself: publication, a provider credit, and undescribed information do not plausibly supply the particular connection to Jones's accused taking, access,

sale, and retained possession. The Court should test that inference against the factual allegations actually pleaded in the Counterclaims.

Counts I–IX should be dismissed because the common attribution of wrongful conduct is not plausibly pleaded. The sections below apply that defect to each count and identify independent statutory, remedial, territorial, and preemption grounds. References to taking, access, withholding, copying, sale, payment, or possession describe Combs's allegations only. They are not admissions by Jones.

### *D. Combs Does Not Plead the Source, Creator, or Chain of Rights for the Disputed Footage.*

Jones maintains that the disputed materials were on his personal devices and that he signed no confidentiality agreement with Combs. The motion preserves those positions without seeking to adjudicate title on competing evidence. Combs must state his own actionable interest and Jones's alleged violation of it. Combs's assertion that unnamed videographers created the footage must be connected to the particular materials at issue and to the rights Combs personally claims.

Paragraph 66 alleges creation and ownership, but names no original videographer, engineer, or photographer for the disputed material. Jones challenges the combination of generic creators, unidentified source recordings, affiliate agreements, and an unexplained attribution to allegedly stolen drives. A missing name alone is not a Rule 8 defect. Nor does personal-device possession alone decide copyright ownership: ownership of a material object and copyright are distinct. 17 U.S.C. § 202. The issue is the plausibility of Combs's asserted source and superior interest, not a presumption that depicting Combs gives him title. The creator's identity, the recording's provenance, and the claimed right are related but distinct parts of Combs's ownership theory.

## II. Count I Fails to Plead Unauthorized Access and Qualifying CFAA Loss.

### *A. Cause of action and pleading requirements.*

Count I invokes the CFAA's civil remedy, 18 U.S.C. § 1030(g). Counterclaims ¶¶ 107-111. It alleges intentional, unauthorized access to a protected computer and the obtaining of information, the conduct addressed by § 1030(a)(2)(C). To recover civilly, a plaintiff must plead damage or loss by reason of the violation and that the conduct involves one factor listed in § 1030(c)(4)(A)(i)(I)–(V). The invoked factor requires loss aggregating at least $5,000 during a one-year period. 18 U.S.C. § 1030(a)(2)(C), (c)(4)(A)(i)(I), (g).

Section 1030(e)(11) defines loss to include reasonable costs of responding to the offense, assessing damage, and restoring the affected data, program, system, or information, together with revenue lost and other consequential damages incurred because of interruption of service. The statute thus distinguishes response expenditures from commercial losses caused by subsequent use of information. Pleading the value of misappropriated information does not establish that the claimant incurred a qualifying response expense or lost revenue because computer service was interrupted.

Nexans illustrates that distinction in the context of competitive exploitation. The court rejected lost revenue attributable to the subsequent competitive use of information rather than interruption of service and rejected executive travel expenses not shown to concern computer investigation or repair. Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 478 (S.D.N.Y. 2004). Although decided on summary judgment, Nexans identifies the statutory categories that the present pleading must plausibly allege.

*B.* ***The Counterclaims Do Not Plausibly Connect Jones to an Unauthorized Computer-Access Event.***

Paragraph 109 repeats the accusation that Jones stole drives and accessed them without authorization. Its "as set forth above" reference leads to paragraphs 25, 27, and 35, which allege the acts on information and belief. Paragraphs 39 and 63–64 identify later publication and undescribed information as the basis for the theft inference. They do not explain how Combs allegedly traced the displayed footage to the alleged drives or how Jones was connected to an unauthorized computer event. The provider credit in paragraph 60 establishes neither the alleged source of the footage nor any unauthorized computer-access event.

Unauthorized access is conduct that must be plausibly attributed to Jones, not a consequence presumed from the presence of footage in a documentary. The pleading must allege facts supporting that conduct; it cannot infer a computer-access violation from the mere appearance of footage in a documentary. The common factual deficiency therefore reaches the conduct element of Count I as well as the independent loss deficiency discussed below. Calling the material stolen in a defined term does not establish the event that the statute prohibits.

*C.* ***Paragraph 111 Pleads a Dollar Amount, not a Qualifying CFAA Loss.***

Paragraph 111 alleges "significant loss" aggregating "in excess of $5,000 in value." Those words state an amount, not a qualifying category. It identifies no intrusion-response expenditure,

forensic assessment, restoration expense, or revenue lost because of interrupted computer service. The incorporated narrative alleges no qualifying expense. . Therefore, the allegation states only a statutory conclusion, without facts showing the claimed amount is a cognizable loss under the statute.

The earlier allegations describe different harms—lost exclusive value from the footage's exploitation (¶¶ 67–73) and reputational/economic injury from alleged false statements (¶¶ 104–106), not CFAA response costs, and they do not tie any claimed loss to an interruption of computer service. The alleged injury is publication and exploitation, not intrusion-related expense.

Similarly, Paragraphs 63–64 allege only discovery of the footage's use and grounds to suspect Jones took the drives. It fails to identify any CFAA "loss."

*D. **The statutory deficiency requires dismissal of Count I.***

Moxie supplies a useful contrast. There, the complaint alleged more than $5,000 in costs investigating the offender's identity, methods, and extent of access. The Tenth Circuit distinguished those intrusion-response expenses from investigation of a competitor's later use of information. Moxie Pest Control (Utah), LLC v. Nielsen, No. 24-4076, slip op. at 11–13 (10th Cir. Jan. 21, 2026). Combs alleges no comparable expenditure. The defect is the absence of facts identifying qualifying loss, not the absence of technological damage as a prerequisite to every response-cost claim.

## III. Count II Fails to Plead Knowing Unauthorized Access, Prohibited Use, or California Statutory Reach.

*A. **Cause of action and pleading requirements.***

Count II, paragraphs 112–117, invokes California Penal Code § 502(e), with paragraph 116 expressly identifying § 502(c)(1). That substantive provision requires knowing access and, without permission, alteration, damage, deletion, destruction, or other use of data or a computer to execute a prohibited scheme or wrongfully control or obtain money, property, or data Civil recovery requires an owner or lessee of the computer, system, network, program, or data to suffer damage or loss by reason of the violation. Cal. Penal Code § 502(c)(1), (e)(1).

Territorial reach is an additional defect. California statutes presumptively do not apply extraterritorially absent contrary legislative intent. Sullivan v. Oracle Corp., 51 Cal. 4th 1191, 1207 (2011). Although § 502(j) can deem access to occur in multiple jurisdictions, the inquiry still turns on where the prohibited access or use occurred (including any cross-border access),not merely a later participant's residence or commercial presence.

*B. **Paragraphs 114–117 Repeat Access and Use Conclusions Without Pleaded Facts.***

Paragraph 114 alleges knowing unauthorized access and use; paragraph 115 alleges a purpose of obtaining footage and sale proceeds. Those assertions depend on the same claimed source drives, copying event, and transaction discussed in the common narrative. The pleading does not explain the factual connection between the disputed recordings and a computer event performed by Jones. Paragraph 116 identifies statutory categories, not facts showing Jones' conduct.

The purpose allegation also assumes the disputed sale. Paragraphs 59, 61, and 62 allege the transaction on information and belief, while paragraph 60 quotes a credit that mentions provision of footage but no payment. The pleading must support knowing access, prohibited use, and resulting injury with a plausible factual account. Repeating the asserted purpose of obtaining proceeds cannot establish an access event or transaction whose factual basis remains unstated. Count II therefore fails on the common attribution defect, independently of territorial reach.

*C. **The California allegations do not identify a California computer event.***

Paragraphs 114–115 allege unauthorized access and use for obtaining footage and sale proceeds. Those allegations identify conduct and purpose but not the location of the access or use. Paragraph 25 places the initial taking in St. Barths. Paragraph 35 alleges subsequent connection and copying without locating that event. The operative count thus incorporates an identified foreign taking and an unlocated copying event, then invokes a California statute.

The interview location must be distinct from the transaction alleged in paragraph 62. Jones alleges his documentary segment was filmed in New York, not California. ¶¶ 59–60 describe the interview and credit without locating filming. ¶ 62 alleges, on information and belief, a California sale, but pleads no facts identifying the transaction. ¶ 36 alleges travel with drives and footage in California and elsewhere; it does not place the interview in California. A New York interview does not convert these separate allegations into admitted California conduct.

Section 502(j) can deem access to occur in multiple jurisdictions, but it does not create an access event the pleading never alleges. The Counterclaims identify no California-based access—no computer in California accessed from elsewhere, and no access initiated in California to a computer elsewhere. ¶ 35 does not locate copying, and ¶ 36 alleges travel, not access. As pleaded (¶¶ 114–117), territoriality hinges entirely on the unsupported sale allegation in ¶ 62.

Section 502(c)(1) includes prohibited use of data, not just the moment of initial access. The Court must therefore examine whether the alleged California sale constitutes that prohibited use,

rather than impose a requirement that every act occur in California. Jones challenges the unsupported transaction attribution and its connection to the statutory conduct. He does not offer his interview location as extrinsic proof disproving a sale. A California sale label cannot supply missing factual allegations concerning unauthorized access, prohibited use, or the transaction itself.

## IV. Count III Fails to Plead Stolen Property, Knowing Conduct, or Sale.

### *A. Cause of action and pleading requirements.*

Count III (¶¶ 118–123) invokes California Penal Code § 496(c). Section 496(a) bars knowingly receiving, concealing, withholding, or selling property stolen or obtained by theft, Section 496(a) bars knowingly receiving, concealing, withholding, or selling property stolen or obtained by theft, and § 496(c) authorizes a civil action by anyone injured. Combs must plead stolen property, Jones's knowing prohibited conduct, and resulting injury.

Jones does not argue that Section 496 categorically excludes an alleged original taker from civil liability. See Siry Investment, L.P. v. Farkhondehpour, 13 Cal. 5th 333, 353 n.15, 361-62 (2022). The defect is different: Combs does not plausibly plead that the property was stolen, that Jones knowingly handled stolen property, or that Jones sold it.

### *B. The allegedly stolen character of the property and Jones's knowing conduct remain unsupported conclusions.*

Paragraphs 119–122 merely recite receipt, concealment, withholding, sale, and then recycle the same allegation that Jones took a videographer's drives and the same inference drawn from later publication. Combs does not plead facts establishing the footage's identity and provenance, any theft, or Jones's involvement; it is not plausibly "stolen" merely because it depicts Combs or resembles footage Combs intended to use in his own documentary.

The knowledge allegation in paragraph 122 depends on a pleaded chain showing the footage was stolen as alleged and that Jones knowingly received, withheld, or sold it. Neither the provider credit nor paragraph 64's reference to undisclosed information establishes that chain. Combs must plead facts, not assume them from the labeled "Stolen Footage".

Count III should be dismissed because its prohibited-conduct and knowledge allegations rest on the common unsupported attribution. The preemption analysis supplies an independent ground against the copying-based theory.

### *C. The copying-based branch is preempted by federal copyright law.*

Section 301 preempts a state-law claim when the subject matter falls within the general scope of copyright and the right asserted is equivalent to the exclusive rights protected by federal

law. The state-law claim survives only if it requires an extra element that makes the asserted right qualitatively different from a copyright right. Intent, awareness, bad faith, or an allegation that the defendant knew he lacked permission ordinarily changes only the defendant's state of mind, not the nature of the right asserted.

Intent, awareness, or bad faith does not avoid § 301 preemption; the claim must rest on a duty different from copyright's exclusive rights. A confidentiality duty could suffice, but none is pleaded here: Jones signed no NDA, the Counterclaims identify none, and paragraph 23's "trust" allegation alleges no promise, terms, or restriction. Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716–17 (2d Cir. 1992).Paragraph 121 alleges sale of the footage. Paragraphs 67–73 describe the loss of exclusive commercial exploitation. That branch of Count III seeks recovery for dissemination of copies and the resulting loss of exclusivity. The allegation that Jones knew he lacked permission does not change the right being asserted. The theory remains that Combs possessed the exclusive authority to authorize reproduction and distribution and that Jones exercised those rights without consent.

## V. Count IV Fails to Plead Dominion Over Identified Property

### *A.* **Cause of action and pleading requirements.**

Count IV, paragraphs 124–129, asserts conversion. Under New York law, the requirements are the claimant's possessory right or interest in property and the defendant's dominion over or interference with that property in derogation of the claimant's right. Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 49–50 (2006). The claim must plausibly connect the defendant's interference to the claimed property. A copying-based state-law theory must additionally survive Section 301.

Where the claimed property is intangible, however, unauthorized copying or use does not establish conversion unless the alleged interference excludes the claimant from possession or use of the property. See Thyroff v. Nationwide Mut. Ins. Co., 8 N.Y.3d 283, 292–93 (2007); Vigilant Ins. Co. of Am. v. Hous. Auth., 87 N.Y.2d 36, 44 (1995). Judge Oetken applied that rule in Lopez v. BigCommerce, Inc., No. 16-CV-8970 (JPO)(S.D.N.Y. Aug. 1, 2017), dismissing a conversion claim where the alleged unauthorized use of a photograph did not deprive the plaintiff of possession of or access to the original. Thus, alleged copying of intangible material must be distinguished from wrongful dominion over an identified physical device.

Paragraph 125 alleges ownership of footage and a right to possess footage and drives. Paragraphs 126–128 allege dispossession and unauthorized dominion. Paragraph 129 alleges

resulting loss. Those paragraphs must be applied to the particular property and interference for which recovery is sought. Ownership of a drive, possession of stored footage, and an exclusive right to authorize copies are different interests. A claim based on the last interest is a copying-control theory, not a possession-based conversion theory.

*B.* ***Paragraphs 125–129 do not cure the missing factual connection between the claimed property and Jones's accused interference.***

The possession and dominion allegations must concern the particular property allegedly interfered with. Paragraph 125 claims rights in drives and footage; paragraphs 126–128 assert that Jones dispossessed Combs and exercised dominion. Those repetitions do not explain how footage in a later documentary identifies the alleged drives or establishes that Jones took, retained, or controlled them. Paragraph 40 alleges continued possession on information and belief without describing supporting information.

SAC paragraph 28's underscores that the recordings' source is disputed, not conceded. The Counterclaims must plead facts plausibly tying the footage Jones allegedly supplied to Combs alleged drivees; they cannot assume provenance to establish dominion or conversion. Count IV fails on that fails on that missing link, and its effort to enforce exclusive reproduction rights is independently subject to subject to Section 301.

*C.* ***Loss of exclusive exploitation is not a distinct conversion wrong.***

The challenged theory centers on paragraph 35's copying allegation, paragraphs 61–62's sale allegations, and paragraphs 67–73's asserted loss of exclusivity. Liability on that theory depends on Jones's alleged reproduction and commercial dissemination of footage. The asserted injury is deprivation of the economic advantage of controlling its use in a documentary. Those are the same rights and commercial interests addressed by federal copyright law.

Lopez confirms that the alleged loss of exclusivity does not establish conversion. The Counterclaim does not allege that Jones's supposed copying or transfer prevented Combs from accessing, possessing, or using any original footage. It alleges only that the supposed copying impaired Combs's ability to exploit the footage exclusively. That is an alleged interference with reproduction and distribution rights, not dispossession of intangible property. See Lopez, 1:16-cv-08970-JPO; Stanacard, LLC v. Rubard, LLC, No. 12-CV-5176, 2016 WL 462508, at *20 (S.D.N.Y. Feb. 3, 2016).

The same theory is independently preempted. A claim based on reproducing, transferring, or distributing copies asserts rights equivalent to those protected by the Copyright Act. See Lopez,

2017 WL 3278932, at *6; Kakizaki v. Riedel, 811 F. Supp. 129, 133 (S.D.N.Y. 1992). Neither an allegation of bad faith nor a disputed assertion of ownership changes the nature of the right Combs seeks to enforce. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716–17 (2d Cir. 1992).

Briarpatch requires separate identification of a possession-based extra element. Briarpatch Ltd., L.P. v. Phx. Pictures, Inc., 373 F.3d 296 (2d Cir. 2004) at 306–07. The operative distinction is between interference with possession and interference with exclusive exploitation. A conversion theory directed to the latter cannot avoid preemption through an allegation that Combs owned the content. Ownership identifies the person asserting the right; it does not change the nature of the exclusive right being asserted against Jones.

## VI. Count V Fails to Plead Fault, Causation, or a Basis for Applying French Law.

### A. *Cause of action and governing requirements.*

Count V, paragraphs 130–136, invokes French Civil Code article 1240. Paragraph 131 quotes the provision as requiring reparation when a person's fault causes damage to another. As pleaded, the requirements are fault, damage, and a causal connection. Paragraphs 132–133 identify alleged taking, access, copying, and sale as fault. Paragraph 134 alleges lost possession, lost exclusive use, and economic and reputational harm. Paragraph 135 recites causation. Jones challenges the absence of supporting facts, not the existence of these allegations

Article 1240's invocation does not settle governing law. For nonmaritime tort issues, New York's choice-of-law framework examines interests and contacts rather than mechanically applying the law of a place named in the pleading. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496 (1941); Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 72–74 (1993). Rule 44.1 supplies the foreign-law determination procedure. Fed. R. Civ. P. 44.1. The same issue-specific approach applies to the other nonfederal counts. Jones's use of New York elements for common-law claims does not concede that one jurisdiction governs every alleged act.

### B. *The asserted fault and causal connection depend on the same unsupported attribution.*

Paragraphs 132–133 call the alleged taking, access, copying, and sale affirmative wrongful acts. These paragraphs do not add facts connecting Jones to the accused acts. They incorporate the same inference from publication of footage to theft of a videographer's drives and from a provider credit to a sale. The defect concerns the factual basis for the pleaded fault and its attribution to Jones, not merely the name of the foreign-law theory.

Paragraph 134 groups lost possession, lost exclusivity, and reputational injury. Paragraph 135 asserts a direct causal link. Those allegations depend on the disputed attribution of the materials and conduct to Jones. The separate defamation narrative cannot supply the missing source connection for a property claim. Jones challenges plausible fault and causation on that basis, not because Combs omitted those elements by name. The territorial and maritime questions separately prevent treating French law as the automatic governing rule.

*C.* ***Offshore yacht allegations require a maritime analysis, not automatic French-law application.***

The alleged workstation was on a yacht. Paragraphs 18–22 describe the yacht and the videographers' workstations; paragraph 25 alleges taking during the St. Barths trip. Jones states that the yacht was far offshore, not situated on the island. He disputes the alleged taking altogether. The Counterclaims supply neither coordinates nor distance from shore nor the vessel's flag. Their geographic shorthand does not establish that the accused shipboard conduct occurred on French land or that article 1240 governs it.

Maritime tort jurisdiction requires both location and connection. Location asks whether the tort occurred on navigable waters or whether a vessel on navigable waters caused land-based injury. Connection asks whether the type of incident could disrupt maritime commerce and whether the general activity substantial relates to traditional maritime activity. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534, 538–41 (1995). An offshore, shipboard setting triggers this analysis; offshore location or the word "yacht" does not satisfy it

Where maritime choice of law applies, the place of a shipboard wrong is not independently decisive. Lauritzen weighed maritime contacts, including the vessel's flag and the parties' connections, and explained the limits of a mechanical territorial rule. Lauritzen v. Larsen, 345 U.S. 571, 583–92 (1953). That seaman-injury case is a cautionary guide not a holding that this footage dispute arises in admiralty. Labeling the trip "St Barths" does not, by itself, establish French law. The Court should first determine maritime applicability and then the governing law before treating Civil Code article 1240 as the liability standard

The relevant events must also remain separate. Paragraph 25 concerns the alleged workstation taking during the trip; paragraph 35 concerns later copying without a stated location; paragraph 62 concerns an alleged California sale. Paragraph 134 combines possession, exclusivity, economic injury, and reputational injury. Even a maritime determination concerning the alleged yacht incident would not automatically determine the law governing every later transaction or

publication. Conversely, subsequent exploitation does not establish the situs or maritime character of the earlier alleged taking. Jones requests rejection of an automatic French-law premise and application of the governing framework to each disputed wrong. He separately seeks dismissal for insufficiently pleaded fault and causation, as explained above. The governing-law issue does not substitute for that element-based challenge.

## VII. Count VI Fails to Plead a California Business Practice, Valid Predicates, or Available UCL Relief.

### *A. Cause of action and pleading requirements.*

Count VI, paragraphs 137–140, invokes California's Unfair Competition Law, Business and Professions Code § 17200 et seq. It reaches unlawful, unfair, or fraudulent business acts or practices. A claimant must plead the practice, the applicable liability theory, and injury in fact involving lost money or property resulting from the practice. Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322–30 (2011). The remedy must fall within the UCL's authority.

The statute does not authorize damages. Its remedies include injunctions and restitutionary relief. Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1266–67 (1992). A claim for compensatory or punitive damages cannot be maintained under the UCL merely because the same conduct supports another cause of action. The available remedy is a separate question from whether the conduct is characterized as unlawful, unfair, or fraudulent.

### *B. The alleged business practice depends on the same unsupported taking-and-sale narrative.*

Paragraph 138 combines alleged taking, access, copying, sale, and a representation of ownership. Their repetition as a business practice does not add facts connecting the displayed recordings to the alleged drives or Jones to the asserted transaction. Paragraph 140's allegation of harm similarly assumes that the alleged practice occurred. It supplies no additional basis for attributing the conduct to Jones.

The unlawful prong requires a sufficient predicate, and the unfair or fraudulent labels require an actionable practice. The common narrative does not become factually stronger by listing six legal theories in paragraph 139. Each incorporated theory depends on its own elements and the same disputed attribution. Count VI should be dismissed for that deficiency. Independently, the particular predicates, copying-based branches, and damages demand fail for the reasons set out below.

### *C. The unlawful-prong allegations depend on the predicates actually identified in paragraph 139.*

Paragraph 139 identifies six predicates: Copyright Act § 501; CFAA § 1030(g); Penal Code § 496(c); conversion; common-law unfair competition; and unjust enrichment. Each predicate must supply a legally sufficient basis for the challenged unlawful practice. Repeating those names does not establish their elements. The CFAA predicate fails for the loss deficiency explained in Part I. The unjust-enrichment predicate encounters the substantive and preemption defects explained in Part VIII.

The copyright-based branch fails under Section 301. Paragraph 138 identifies copying and sale of footage as part of the alleged unlawful practice. Paragraph 140 alleges resulting harm. When the asserted right is control of reproduction and distribution, the UCL label adds no independent obligation. Maloney applied copyright preemption to claims including a UCL theory directed to exploitation of protected works. Maloney v. T3Media, Inc., 853 F.3d 1004 (9th Cir. 2017). Briarpatch and Altai supply the governing equivalence framework.

Footnote 3's reservation of a separate copyright claim does not supply an extra element. The reservation addresses a possible future pleading. It changes neither the acts alleged in paragraph 138 nor the right asserted through the present UCL claim. That right must be evaluated now. A state-law claim seeking compensation for unauthorized reproduction remains subject to Section 301 even when the claimant reserves a separately labeled copyright cause of action.

*D. **The UCL does not authorize the damages Combs demands.***

Count VI cannot recover lost licensing revenue, lost documentary value, or reputational damages as compensatory damages under the UCL. Those demands seek compensation for harm, not simply restoration of money or property. Bank of the West forecloses the requested damages remedy. The pleading's use of the phrase significant harm does not expand the statutory remedies, and the general prayer for money damages cannot supply authority the statute withholds.

## VIII. Count VII Fails to Plead Independent Misappropriation and Asserts Copyright-Equivalent Exploitation Rights.

*A. **Cause of action and pleading requirements.***

Count VII, paragraphs 141–145, alleges common-law unfair competition through bad-faith misappropriation of property and commercial advantage. The New York theory requires an appropriated commercial interest and conduct constituting wrongful misappropriation in bad faith; a copying-based theory must also survive Section 301. Computer Associates International, Inc. v. Altai, Inc., 982 F.2d 693, 716–17 (2d Cir. 1992). An obligation qualitatively different from

copyright, such as confidentiality, can change the equivalence analysis. Merely characterizing copying as bad faith does not.

Paragraph 143 identifies the claimed commercial interest: the economic advantage associated with exclusive use of footage in Combs's documentary. It identifies the alleged appropriation as use of the footage to compete with that documentary, specifically sale to the Documentary Competitors. Paragraph 144 characterizes the conduct as bad faith. Paragraph 145 alleges resulting loss. The pleaded theory therefore turns on control of the work's commercial exploitation.

### *B.* ***The alleged misappropriation assumes rather than supports the identity of the disputed material.***

Paragraph 142 repeats that Jones stole drives and footage. Paragraph 143 characterizes his alleged use and sale as misappropriation, and paragraph 144 adds bad faith. None identifies the information linking the recordings supplied to the filmmakers with a videographer's allegedly missing drives. The count assumes that Jones's alleged provision of footage establishes his acquisition of Combs's claimed property through wrongful conduct.

The commercial-interest allegation does not fill that gap. Combs's asserted intention to use footage exclusively explains his claimed economic interest, not the source of every recording Jones possessed. Jones's earlier pleading alleges a different source: recordings made using his own phone, including recordings by Combs. The Counterclaims must support their specific misappropriation accusation rather than infer it from shared subject matter. Count VII fails on that common deficiency, with preemption providing an independent ground against the exploitation-based theory.

### *C.* ***Paragraphs 143–145 add labels, not a qualitatively different obligation.***

The commercial advantage pleaded in paragraph 143 is the alleged exclusive right to use footage. The conduct allegedly destroying that advantage is copying and sale to competing documentary producers. Proving that theory requires proof that Jones exploited footage without Combs's authorization. It does not, as framed, require an obligation distinct from the asserted right to control reproduction and distribution. The core elements of the challenged theory are therefore equivalent to copyright rights.

Paragraph 144's bad faith allegation does not cure preemption. Altai turns on the nature of the right asserted, not the defendant's intent. Even deliberate copying or sale still targets a

copyright-equivalent right; labeling it "unfair" or "commercially harmful" adds rhetoric, not an independent duty.

Paragraph 143's alleged ownership representation fares no better. It is pleaded as part of the same unauthorized transfer of copies, and the claimed injury remains loss of Combs's exclusive exploitation rights. The count identifies no distinct commercial interest or separate harm that would make the claim qualitatively different from copying.

The Counterclaims cannot avoid the equivalence implying a confidentiality contract from "trust" and collaboration. Paragraph 23 alleges trust and an open working environment. Paragraph 37 alleges lack of authorization; and paragraph 66 references videographer/affiliate agreements—not any confidentiality undertaking by Jones. Without a pleaded duty and terms tied to the materials and breach, the Court cannot supply an "independent duty." On the copying-based theory alleged, generalized trust and alleged bad faith do not satisfy Altai.

## IX. Count VIII Fails to Plead Supported Enrichment or Independent Equitable Basis.

### *A. Cause of action and pleading requirements.*

Count VIII, paragraphs 146–149, requires enrichment at Combs's expense under circumstances in which equity and good conscience require restitution. Unjust enrichment is not a catchall and is unavailable where it simply duplicates or replaces a conventional contract or tort claim. Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790–91 (2012). The required equitable basis cannot consist solely of relabeling the same wrong underlying the other tort counts.

Section 301 supplies a separate limitation. In Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306–07 (2d Cir. 2004), the Second Circuit held that unjust enrichment based on unauthorized exploitation of copyrightable material does not contain a qualitatively different extra element. Judge Oetken applied that rule in Lopez, holding that an unjust-enrichment claim based entirely on the unauthorized use of protected material was preempted. Count VIII therefore must allege both an independent equitable basis under Corsello and a right qualitatively different from control over reproduction, distribution, or exploitation.

### *B. The alleged enrichment depends on an unsupported transaction and source attribution.*

Paragraph 147 affirmatively alleges payment from a sale. Paragraph 3 also affirmatively alleges sale, while paragraphs 4, 59, and 61–62 plead aspects of the supposed transaction on information and belief. Jones disputes all of them. His objection concerns their factual support when read together. Paragraph 60's credit says provided, not sold or paid; paragraph 64 describes

no information establishing payment. These citations support a challenge to the inference of compensated transfer, not an assertion that the pleading contains no sale or payment allegation.

The issue is not whether Jones disputes the sale, but whether Combs pleads facts supporting a compensated transfer. The objection is not a mandatory requirement to plead an exact price or attach a contract; it is the absence of factual support for converting a provider credit into the accused transaction and an enrichment at Combs's expense. The source-attribution problem also remains: the count assumes that the material allegedly sold was Combs's property obtained through the accused taking. Those defects warrant dismissal alongside the independent Corsello and preemption grounds.

*C.* ***Paragraphs 147–149 rest entirely on the conventional tort allegations.***

Paragraph 147 alleges that Jones received payment by taking the drives and footage and selling the footage to the Documentary Competitors. Paragraph 148 alleges that retention is unjust because Jones had no right to take the property or sell the footage. Paragraph 149 alleges that the enrichment came at Combs's expense because the sale deprived him of the economic advantage of exclusive use. Those allegations identify the same wrongful taking and exploitation asserted in the preceding tort counts.

The missing matter is an independent equitable basis. Paragraph 148 supplies no circumstance making retention unjust apart from the alleged taking and unauthorized sale. Paragraph 149 supplies no injury distinct from loss of exclusive exploitation. If the alleged inequity is established only by proving the conventional wrongs already pleaded, the unjust-enrichment label duplicates those claims. Corsello forecloses using equity as an additional name for the same asserted liability.

Nor does alternative pleading eliminate the substantive limitation. Rule 8 permits alternative theories; it does not remove the elements of each theory. An unjust-enrichment count must still allege circumstances supporting that cause of action. Here the count repeats the same property, conduct, claimed entitlement, and exploitation injury. Its asserted equitable obligation is wholly derivative of the wrongs described in the conversion, stolen-property, and unfair-competition counts.

*D.* ***The demand for exploitation proceeds is independently copyright preempted.***

Paragraph 149 identifies the economic interest underlying the proceeds demand as Combs's right to exclusive use of footage. The benefit identified in paragraph 147 is payment from exploiting that footage. The theory thus seeks the proceeds of unauthorized exercise of

reproduction and distribution rights. Under Briarpatch, enrichment does not supply the qualitatively different element necessary to sustain that state-law recovery.

## X. Count IX Fails to Plead Present Wrongful Detention and Seeks Copyright-Equivalent Copy Control.

### *A. Cause of action and pleading requirements.*

Count IX, paragraphs 150–153, seeks replevin: recovery of property based on a superior and immediate right to possession and the defendant's wrongful detention. The claim concerns the identified property and the claimant's entitlement to its delivery. Recovery of a chattel differs from control over all reproductions of a work. See Solomon R. Guggenheim Foundation v. Lubell, 77 N.Y.2d 311 (1991); Briarpatch, 373 F.3d at 306–07.

Paragraph 151 alleges superior possessory rights in drives and footage; paragraph 152 alleges immediate entitlement; paragraph 153 alleges damage from wrongful detention. Prayer paragraph 3 separately demands return of the drives and footage and destruction of retained footage copies. ECF No. 120 at 61. The requested relief therefore includes physical delivery and copy control. Those demands must be evaluated against the distinct property interests they seek to enforce.

### *B. The assertion of Jones's present detention lacks supporting facts.*

Paragraphs 151–153 claim superior possession, immediate entitlement, and wrongful detention. The asserted detention traces to paragraph 40, which alleges on information and belief that Jones still possesses the drives. The pleading does not describe the information supporting present possession. The later display of footage does not itself establish who possesses a physical source drive, whether Jones ever possessed that drive, or whether any drive remains with him.

The distinction matters to the required wrongful detention. A provider credit concerning footage is not an allegation establishing custody of a particular physical object. Jones denies taking or retaining the alleged drives. The count must plausibly connect him to the claimed detention rather than assume that providing recordings proves possession of the hardware Combs identifies. Count IX should be dismissed for that common factual deficiency, independently of the Section 301 objection to control over all reproductions.

### *C. The copy-control theory enforces reproduction and distribution rights.*

The challenged branch seeks control over copies because Combs claims exclusive authority over the footage. Paragraphs 35, 61–62, and 67–73 supply the copying, sale, and exploitation allegations. A demand to eliminate reproductions as a means of restoring exclusive exploitation

enforces the right to authorize reproduction and distribution. Replevin terminology does not itself add an independent possession-based element to that theory.

The distinction concerns liability, not merely the wording of a remedy. Destruction can be requested for different reasons. Here the preemption objection addresses destruction sought to enforce exclusive control of the audiovisual work, independent of wrongful detention of identified property. Where unauthorized reproduction alone establishes the asserted right to relief, the state-law theory is equivalent. Section 301 does not permit Combs to enforce the same exclusive reproduction-and-distribution rights by relabeling copies as property recoverable in replevin.

## XI. Count X Fails at Least as to Unsupported Defamatory Implications, Defective Actual-Malice Allegations, and Fair-Report-Protected Statements.

### *A. Cause of action and pleading requirements.*

Count X, paragraphs 154–162, asserts defamation. Its elements are a false factual statement concerning Combs, publication without privilege, the applicable degree of fault, and special harm or defamation per se. Dillon v. City of New York, 261 A.D.2d 34, 38 (1st Dep't 1999). The challenged meaning must be reasonably conveyed by the publication; Combs's characterization cannot substitute for the attributed words and context.

Civil Rights Law § 76-a requires knowledge of falsity or reckless disregard for damages in covered actions involving public petition and participation. It defines public interest broadly, excluding purely private matters. N.Y. Civ. Rights Law § 76-a(1)–(2). The documentary statements concern publicly discussed misconduct and litigation. The applicable fault inquiry therefore requires plausible facts supporting subjective knowledge or reckless disregard, not merely hostility or a desire to profit from publication.

Biro applies the federal plausibility requirement to allegations of actual malice. General allegations of state of mind do not eliminate the need for a plausible factual basis. Ill will, profit motive, or failure to investigate alone does not establish knowledge of falsity or reckless disregard. Biro v. Condé Nast, 807 F.3d 541, 544–46 (2d Cir. 2015). The analysis must connect the particular alleged falsity to the facts said to establish the speaker's subjective awareness.

### *B. The allegations must be tested statement by statement.*

Paragraph 156 groups multiple alleged statements by topic (shooting; grooming/harassment; recruiting sex workers; drugging; secret recording). The Court must evaluate each statement's words, meaning, and fault allegations; proof as to one cannot supply the elements for the rest.

For defamation by implication based on substantially true facts, Stepanov requires a rigorous showing that the publication, read as a whole, both conveys the defamatory inference and affirmatively signals the author's intent or endorsement of that inference. Meaning is an objective inquiry distinct from actual malice. Stepanov v. Dow Jones & Co., Inc., 120 A.D.3d 28, 37–38 (1st Dep't 2014). A plaintiff must derive the implication from the publication itself, not by appending an accusation to different words.

Paragraph 77 quotes a specific shooting narrative; Combs then assigns it a broader defamatory meaning. On a Rule 12(b)(6) motion, the Court must parse the actual words, in context, and test the pleaded inference statement by statement—Combs cannot collapse distinct statements into a single implication theory.

The same is true for paragraphs 97–99: references to cameras in residences, even in a drugs-and-sex discussion, do not themselves plead that Combs secretly recorded Jones's sexual activity. Combs must allege how the publication, read as a whole, conveys and endorses that specific inference.

### *C.* **Paragraph 162(f) does not plead actual malice from Jones's alleged failure to see a recording.**

Paragraph 162(f) relies on Jones's alleged failure to see secret recordings as the basis for alleging that he knew the hidden-camera accusation was false. The inference does not follow. A recording can exist without the person recorded ever seeing the resulting file. Lack of personal observation therefore does not establish knowledge of nonexistence. The allegation leaves a gap between what Jones allegedly did not see and what he allegedly knew.

The recording theory should be tested against its precise asserted meaning. If the accusation is that Jones claimed to have personally viewed a recording, the words must contain or convey that claim. If the accusation is that he claimed a concealed recording occurred, lack of access to the recording does not establish that he knew it had not occurred. The pleading cannot move between those two propositions while treating the same allegation of nonobservation as proof of knowing falsity.

The defect concerns the malice inference identified in paragraph 162(f), not an evidentiary demand for proof at the pleading stage. A plausible factual account of subjective doubt or fabrication could supply the required inference. This allegation does not: it treats absence of observation as knowledge that the event never happened. The Court should dismiss the recording

theory if that inference and the incorporated facts fail to establish plausible actual malice, rather than accept the conclusion simply because it is repeated in the count.

### *D.* Section 74 Bars Any Statement That Fairly and Truly Reports Jones's Judicial Allegations.

Civil Rights Law § 74 protects publication of a fair and true report of a judicial proceeding. Substantial accuracy is sufficient; verbatim reproduction is unnecessary. N.Y. Civ. Rights Law § 74; Cholowsky v. Civiletti, 69 A.D.3d 110, 114–15 (2d Dep't 2009). The defense requires both substantial correspondence to the proceeding and a publication that reports the proceeding.

The relevant SAC allegations are identifiable. Shooting allegations appear at paragraphs 34–45 and 48; promises at paragraphs 91, 114, and 189; the video at paragraph 89; recruitment and the Bad Boy cap at paragraphs 100–101, 106–107, and 109; laced liquor and Jones's condition at paragraphs 120 and 124; and cameras and asserted recordings at paragraphs 190–192. The comparison must remain specific: paragraph 189 alleges a Star Island home, not necessarily the precise house described in Counterclaims paragraph 80. The same-bed statement at Counterclaims paragraph 82 cannot be assigned a SAC counterpart without identifying one.

The reporting connection is separate from overlap in subject matter. By contrast, Counterclaims paragraph 60 quotes a footage-provider credit, not a statement reporting judicial allegations. The interview's New York filming location likewise does not establish that the publication reported judicial proceedings. Section 74 must be applied to the quoted statements and complete publication context properly considered under Chambers, rather than to an assumed caption, narration, or judicial attribution. Jones invokes protection for substantially accurate reports, not blanket immunity for every interview statement.

Gottwald also requires application of the qualification concerning proceedings maliciously instituted to defame. Gottwald v. Sebert, 40 N.Y.3d 240, 256–57 (2023); Williams v. Williams, 23 N.Y.2d 592, 599 (1969). Paragraphs 50–57 contain the relevant motive allegations. The privilege inquiry must apply that doctrine to the pleaded facts and properly considered material. Survival of claims on an earlier motion establishes neither their truth nor the purpose for commencing the action.

Jones seeks dismissal under Section 74 of statements established to be substantially accurate reports of the judicial allegations. The requested relief is statement specific. The actionable-meaning and malice objections remain separate grounds concerning the implications and recording theory identified above. The Court should decide each ground against the

corresponding words and supporting allegations, rather than treat the five subject headings as substitutes for the elements of defamation.

## XII. Counts I–IX Should Be Dismissed, and the Independent Defects Defeat the Specified Theories and Remedies.

Counts I–IX depend on the same unsupported attribution: footage in the documentary supposedly identifies material from a videographer's drives and establishes Jones's taking, unauthorized access, concealment, sale, and continued possession. The provider credit supplies none of those intermediate facts. Paragraph 64 refers to information but does not describe it. Incorporation and repetition cannot replace a plausible factual basis for the accused conduct. Jones denies that conduct and seeks dismissal of all nine counts on the defects identified above.

Independent grounds reinforce the requested relief. Count I lacks qualifying CFAA loss. Count VIII duplicates conventional tort theories and seeks copyright-equivalent exploitation recovery. Section 301 displaces the identified copying-based branches of Counts III, IV, VI, VII, and IX. The UCL does not authorize the damages demanded. Counts II and V additionally require the territorial and governing-law determinations identified in their respective sections. Those independent issues remain material even if the Court finds a sufficient factual attribution for a particular count.

Dismissal with prejudice is warranted for legally incurable theories. Any leave to amend must address the actual deficiency rather than repeat the same labels. Foman v. Davis, 371 U.S. 178, 182 (1962). ECF No. 120 first asserts these counterclaims. The legally equivalent copying theories and unavailable UCL damages cannot be cured by recharacterization. Any amendment directed to the factual attribution must supply a legally sufficient basis for the particular accused conduct and required elements.

## CONCLUSION

Jones respectfully requests (1) dismissal of Counts I–IX; (2) dismissal of the defective theories and any privileged statements alleged in Count X; and (3) dismissal with prejudice of legally incurable theories and remedies. Alternatively, the Court should dismiss any copyright-equivalent theories, strike the UCL damages demand, and grant such other claim-specific relief as warranted. Any leave to amend should be limited to viable theories that cure the deficiencies identified in this motion. Jones requests such other relief as the Court deems just and proper. Jones requests such other relief as the Court deems just and proper.

Dated: September 14, 2026
New York, New York

Respectfully submitted,

*Tyrone A. Blackburn, Esq.*
T.A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, New York 11236
(347) 342-1445
tblackburn@tablackburnlaw.com
Attorneys for Plaintiff and Counterclaim-Defendant Rodney Jones